

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 8 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| VICENTA CANTU; FELIX R. MUNOZ AND RUTH WEAVER §<br>§<br>§<br>Plaintiffs §<br>§<br>vs. §<br>§<br>CAMERON COUNTY and §<br>TONY YZAGGUIRE, JR., Tax Assessor- §<br>Collector of Cameron County and Director, §<br>Cameron County Automobile Crimes §<br>Enforcement Task Force, in his §<br>individual capacity § | Civil Action No. **B-03-096**<br><br>**JURY TRIAL REQUESTED** |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW, Vicenta Cantu, Felix R. Munoz and Ruth Weaver, Plaintiffs, complaining of

Cameron County and Tony Yzagguirre, Jr., Tax Assessor-Collector of Cameron County and

Director, Cameron County Automobile Crimes Enforcement Task force, in his individual capacity,

and show as follows:

I.

## NATURE OF THE ACTION

In this action, Plaintiffs allege that Defendants, acting under color of state law, violated their

right to freedom of speech and right to freedom of association as guaranteed by the First Amendment

to the United States Constitution when each Plaintiff spoke out about matters of public concern and

associated with Tax Assessor-Collector employees to speak out about illegalities occurring within the

Cameron County Tax Assessor-Collector's Office – specifically, the fact that Defendant Yzaguirre

violated Texas laws regarding the processing of vehicle registration papers to allow fraudulent

documents to be accepted by the Cameron County Tax Assessor-Collector's office as a paid "favor"

to Defendant Yzaguirre's friends and business associates.

II.

PARTIES

1.      Plaintiff, Vicenta Cantu, is a citizen and resident of Cameron County, Texas.  Ms. Cantu is the former Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force, Office of the Tax Assessor-Collector.

2.      Felix R. Munoz is a citizen and resident of Cameron County, Texas.  Mr. Munoz currently works for the Cameron County Office of the Tax Assessor-Collector and he is the former Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force.

3.      Ruth Weaver is a citizen and resident of Cameron County, Texas.  Ms. Weaver is the former Executive Secretary to Defendant Yzaguirre in his capacity as the Tax Assessor-Collector of Cameron County.

4.      Defendant Cameron County is a political subdivision of the State of Texas, who may be served by serving its County Judge, Gilberto Hinojosa at:   Cameron County Courthouse Administrative Building 4th floor 964 E. Harrison St. Brownsville, TX 78520.

5.      Defendant Tony Yzaguirre, Jr., Individually, is a citizen of Texas and resident of Cameron County, and is the Tax Assessor-Collector and the Director of the Cameron County Automobile Crimes Enforcement Task Force a division of Cameron County, Texas, a political subdivision of the State of Texas, and may be served with process at: 964 East Harrison, 1st Floor, Brownsville, Texas 78520.

III.

JURISDICTION AND VENUE

2

6.     This Court has jurisdiction over this action by reason of 28 U.S.C. §1331 and §1343, in that Plaintiffs, pursuant to the First Amendment to the United States Constitution seek to redress violations of their civil rights that they experienced at the hands of Defendants. Venue is proper pursuant to 28 U.S.C. §1391 because the acts complained of primarily occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Brownsville, Division.

## IV.

## FACTUAL BACKGROUND

### A.

### Plaintiff's Employment Background with Cameron County

7.     Plaintiff Cantu began her employment relationship with the Cameron County Tax Assessor-Collector on or about September 15, 1985 as an auto clerk processing vehicle registrations. During Plaintiff Cantu's employment, she received numerous pay increases and positive job evaluations.  On or about October 1, 1993, Plaintiff Cantu was promoted to the position of Head Cashier.  Further, on or about September 1, 2000, Plaintiff Cantu was ultimately promoted to the position of Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force.

8.     Plaintiff Munoz began his employment relationship with the Cameron County Tax Assessor-Collector on or about January 18, 1989. During Plaintiff Munoz' employment, he received numerous pay increases and positive job evaluations.  Among other duties, Mr. Munoz served as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force.

9.     Plaintiff Weaver began her employment relationship with the Cameron County Tax

3

Assessor-Collector on or about February 4, 1994.  During Plaintiff Weaver's employment, she received numerous pay increases and positive job evaluations. Plaintiff Weaver worked as Defendant Yzaguirre's Executive Secretary.

10.    During the course of Plaintiffs' employment with Defendant, they each spoke out about matters of public concern, the fact that Defendant Yzaguirre violated Texas laws regarding the processing of vehicle registration papers to allow fraudulent documents to be accepted by the Cameron County Tax Assessor-Collector's office as a paid "favor" to Defendant Yzaguirre's friends and business associates, and each of the Plaintiffs associated with each other to discuss these matters of public concern.  The adverse employment actions referenced herein were in retaliation for their federally protected speech and freedom of association.

## C.

### Texas Automobile Theft and Prevention Authority

11.    The Texas Automobile Theft and Prevention Authority was established by the 72nd Texas Legislature in 1991.

12.    The Texas Automobile Theft and Prevention Authority supports a statewide law enforcement network through grants, theft reduction initiatives, education and public awareness, funds a statewide vehicle registration program and works with border states in Mexico to reduce the number of stolen vehicles crossing the border.

13.    The Texas Automobile Theft and Prevention Authority is funded by a $1 per year fee for every automobile insured in Texas. The fee is collected for the Authority by the Comptroller of Public Accounts.

14.    The Automobile Theft and Prevention Authority is made up of a seven-member

4

Board of Directors, six are appointed by the Governor. Board members include two law enforcement representatives, two consumer representatives and two insurance representatives. The executive director of the Texas Department of Public Safety serves as an ex-officio member of the Board.

15.     Categories for projects eligible for grant funding by the Automobile Theft and Prevention Authority include activities such as enforcement/apprehension, prosecution/adjudication, public education, prevention of stolen auto parts sales and reduction of stolen vehicles moved across the Mexico border.

16.     Cameron County Automobile Crimes Enforcement Task Force receives a grant from the Texas Automobile Theft Prevention Authority.

## B.

### Plaintiff Cantu's Protected Speech and Protected Association
### Regarding Matters of Public Concern

17.     During Plaintiff Cantu's employment with Defendants, she noted that Defendant Yzaguirre was violating Texas laws, including, but not limited to Chapter 502 of the Texas Transportation Code, in the processing of vehicle registration documents. Specifically, Defendant Yzaguirre allowed fraudulent vehicle registration paperwork to pass through his office as a "paid" favor to friends and business associates.

18.     Plaintiff Cantu served as the Titles Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force, a subdivision of the Office of the Tax Assessor-Collector of Cameron County. It was Plaintiff Cantu's job to ensure that the vehicle registration paperwork going through the Cameron County's Tax Assessor-Collector's Office was lawful.

19.     In the course of Plaintiff's duties, she was to reject vehicle registrations which did not

meet legal requirements. However, on several occasions, Defendant Yzaguirre "overrode" her rejections and, despite the fact that the vehicle registration paperwork was clearly fraudulent, ordered Plaintiff Cantu to process the paperwork. On these occasions, Plaintiff told Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of Texas taxpayer money and violation of Texas laws.

20. The first time that Plaintiff Cantu spoke out about Defendant Yzaguirre's unlawful practices was on January 9, 2001. Plaintiff Cantu rejected several vehicle registration files because they did not comply with Texas law. Defendant Yzaguirre approached Plaintiff Cantu and asked her why the files were rejected. Plaintiff Cantu responded with words to the effect that the files did not comply with Texas laws. Defendant Yzaguirre became extremely upset and ordered Plaintiff Cantu to release the transactions and that the only thing she should be concerned about is whether the vehicle was stolen – "he didn't care about the rest." Plaintiff Cantu again told Defendant Yzaguirre that the Cameron County Tax Assessor-Collector's office and the Cameron County Automobile Crimes Enforcement Task Force were obligated to follow Texas law. Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law in the manner that the vehicle registrations were processed is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

6

21.     On or about June 29, 2001, Defendant Yzaguirre contacted Lt. Adalberto Bennett and told him to "close the case on Omar Garza" of Cardoza Used Cars. Omar Garza is one of the "friends and business associates" that Defendant Yzaguirre has accepted payments from to process fraudulent vehicle registrations.

22.     On or about July 30, 2001, Defendant Yzaguirre ordered Plaintiff Cantu to stop faxing complaints about fraudulent vehicle registration from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division. Defendant Yzaguirre told Plaintiff that she would only be allowed to fax such a complaint if he approved it first. These complaints that Plaintiff Cantu was faxing to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division were about fraudulent vehicle registration paperwork submitted by mostly "friends and business associates" of Defendant Yzaguirre. Plaintiff Cantu's act of faxing complaints regarding automobile registrations to the Texas Automobile Theft Prevention Authority is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in faxing the complaints about the fraudulent vehicle registrations from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division and telling Defendant Yzaguirre that those complaints should be faxed to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division, is speech involving a matter of public concern because it involves misuse of taxpayer money by the Cameron County Appraisal District and Defendant Yzaguirre's violation of Texas laws which are meant to prevent fraudulent vehicle titles and vehicle theft prevention.

23.     On November 27, 2001, Plaintiff Cantu rejected vehicle registration documentation submitted by Andres Angeles. Defendant Yzaguirre approached Plaintiff Cantu and demanded to

know why Mr. Angeles' vehicle registration paperwork had been rejected. Plaintiff explained that the paperwork did not meet the legal requirements to be accepted. Defendant Yzaguirre told Plaintiff Cantu, "I don't care" and passed the unlawful transaction. Plaintiff Cantu told Defendant Yzaguirre that his actions were unlawful. Defendant Yzaguirre told Plaintiff that if you keep doing this, referring to her speech about these vehicle registration transactions not meeting legal requirements, "you know what is going to happen to you". Plaintiff Cantu asked Defendant Yzaguirre what he meant by the comment and he responded that "she knew what he meant." Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law regarding the processing of vehicle title registrations is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

24.    On or about December 12, 2001, Defendant Yzaguirre removed Plaintiff Cantu from her job duties as Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force and replaced her with Lupita DeLeon. Ms. DeLeon was given a $3,000.00/year raise to assume that position. Plaintiff was removed from her position with the Cameron County Automobile Crimes Enforcement Task Force in retaliation for her protected speech to Defendant Yzaguirre regarding the illegalities of the manner in which he was processing vehicle registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

8

25.    On or about December 13, 2001, Defendant Yzaguirre called Lupita DeLeon and Plaintiff Cantu into his office and told them that from that point forward, vehicle titles were not going to Plaintiff Cantu for processing through the Automobile Crimes Enforcement Task Force. Instead, the vehicle titles were going to be given to Lupita DeLeon and Susana Castillo for processing. Defendant Yzaguirre stripped Plaintiff of her job duties in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

26.    Between December 13, 2001 and May 6, 2002, Plaintiff Cantu continued telling Defendant Yzaguirre that he was not following the law regarding the processing of fraudulent vehicle registrations. This speech is protected pursuant to the First Amendment to the United States Constitution.   Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

27.    On May 6, 2002, Plaintiff Cantu was again demoted.  This time Plaintiff Cantu was demoted  to a position as a clerk.  Plaintiff Cantu's work was highly scrutinized, unlike similarly situated employees. Defendant Yzaguirre demoted Plaintiff in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

9

28.     On May 17, 2002, Plaintiff Cantu was terminated in retaliation for her protected speech as stated in paragraphs 17-28 herein when she spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of Texas taxpayer money and violation of Texas laws.

29.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

## C.

### Plaintiff Munoz' Protected Speech and Protected Association Regarding Matters of Public Concern

30.     Plaintiff Munoz served as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force with Plaintiff Cantu and Plaintiff Weaver.

31.     Starting in October 2001, Plaintiff Munoz noticed Defendant Yzaguirre's friends and business associates coming into the Brownsville office of the Cameron County Office of the Tax Asesssor-Collector. Based upon Plaintiff Munoz' law enforcement training, each of these persons raised his suspicions because of their demeanor, habits in the office and the fact that they would process their vehicle registration business directly through Defendant Yzaguirre rather than through the regular process.

10

32.     Plaintiff Munoz saw Lupita DeLeon counting large amounts of money when Defendant Yzaguirre's friends and business associates came into the office to process vehicle registrations. This was not consistent with the requirements for vehicle registration. Plaintiff Munoz told Ms. DeLeon that it "looked bad" to be counting such large amounts of money in the open. This speech is protected pursuant to the First Amendment to the United States Constitution. Plaintiff's speech in telling Ms. DeLeon that it "looked bad" to be counting such large amounts of money in the open questioned the underlying transactions which culminated in those large amounts of cash. This speech is a matter of public concern because it involves business transactions of a public entity.

33.     On one occasion, Alfredo Gonzalez, told Plaintiff Munoz that every time that he went into Defendant Yzaguirre's office it would cost him [Gonzales] money. Plaintiff understood the comment to mean that Defendant Yzaguirre was accepting bribes in exchange for processing vehicle registrations.

34.     In the Spring of 2002, Plaintiff Munoz stated to Defendant Yzaguirre that he was highly suspicious of one of Defendant Yzaguirre's friends and that he should stay away from this person. Plaintiff Munoz also stated to Defendant Yzaguirre that he was concerned that Defendant Yzaguirre was giving these persons special treatment in the processing of their vehicle registrations – meaning unlawful activities were occurring within the Cameron County Tax Assessor-Collector's office. Plaintiff Munoz' act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, should stay away from this friend and that Plaintiff Munoz was concerned that Defendant Yzaguirre was giving these persons special treatment in the processing of their vehicle registrations – referencing that unlawful activities which were occurring within the Cameron County Tax Assessor-Collector's office — is free speech protected by the First

11

Amendment to the United States Constitution. This speech is of public concern because it involves the misuse of taxpayer funds and the violation of Texas laws by a public entity.

35.    Plaintiff Munoz also noted that the title paperwork was being stamped "sold for export".

36.    Because of his escalating concern over illegalities occurring within the Cameron County Tax Assessor-Collector's office regarding the processing of vehicle registration paperwork, in the Spring of 2002 Plaintiff Munoz spoke with Plaintiff Cantu, who was serving as the Titles and Registration Examiner. During Plaintiff Munoz' conversation with Plaintiff Cantu, Plaintiff Cantu told Plaintiff Munoz that she observed fraudulent vehicle registration paperwork being processed by Defendant Yzaguirre and that she had spoken out in opposition to such conduct to Defendant Yzaguirre. Plaintiff Cantu's and Plaintiff Munoz' speech in discussing fraudulent vehicle registration paperwork being processed by Defendant Yzaguirre is protected by the First Amendment to the United States Constitution. Further, Plaintiff Cantu and Plaintiff Munoz had the right to associate as guaranteed by the First Amendment to the United States Constitution with each other to discuss the fraudulent vehicle registration paperwork being processed by Defendant Yzaguirre because that is a matter of public concern.

37.    During Plaintiff Munoz' service as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force, Defendant Yzaguirre communicated to Mark Yates, the County Auditor, alleging that Plaintiff Munoz was "leaking" information to Plaintiff Cantu. This statement was made by Defendant Yzaguirre against Plaintiff Munoz in retaliation for Plaintiff Munoz' First Amendment rights to free speech and right to free association.

38.    Plaintiff Munoz was removed from his position as the Project Coordinator for the

12

Cameron County Automobile Crimes Enforcement Task Force on or about May 23, 2002 – just days after Plaintiff Cantu was terminated. Plaintiff Munoz was removed from his office and placed in the Harlingen Branch Tax Office. Plaintiff Munoz lost a $3,000.00/year stipend which he received for his work as Project Coordinator. Plaintiff Munoz was demoted and transferred to the Harlingen Branch Tax Office in retaliation for his protected speech against Defendant Yzaguirre and by Plaintiff Munoz' close association with Plaintiff Cantu in speaking out against and taking actions to see that Defendant Yzaguirre's unlawful conduct within the public entity stop.

39.     Plaintiff Munoz was demoted and suffered other adverse employment actions in retaliation for his protected speech and protected association as stated in paragraphs 30-38 herein when he spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws. Further, Plaintiff Munoz was retaliated against for his association with Plaintiff Cantu in discussing their concerns about Defendant Yzaguirre's unlawful actions as stated specifically in paragraphs 30-38 herein.

40.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations

13

### D.

### Plaintiff Weaver's Protected Speech and Protected
### Association Regarding Matters of Public Concern

41      During October 2001, Plaintiff Weaver told Defendant Yzaguirre that the "word out on the street is that certain people can get their automobile titles fixed through you [Yzaguirre] and that Esthela Guerra, a notary public, has privileges with you [Yzaguirre] to fix anything that is crooked." In response to Plaintiff Weaver's speech, Defendant Yzaguirre did not comment, but made a frown and walked away. Plaintiff Weaver's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

42.      During Plaintiff Weaver's employment with Defendants, Defendant Yzaguirre's friends told Plaintiff Weaver that they received special favors, which were in violation of Texas law, from Defendant Yzaguirre in the processing of their vehicle title registrations.

43.      After October 2001, Plaintiff saw Esthela Guerra walk into Defendant Yzaguirre's office and close the door behind her. This was on or about Ms. Guerra's birthday. Plaintiff Weaver heard Defendant Yzaguirre yelling, through the closed door, at Ms. Guerra and demanding to know why she was telling the public that "she could get things fixed through him." Defendant Yzaguirre continued to yell at Ms. Guerra and told her "Don't you ever expect my help in the future. Never come to my office again. Let's see what you are going to do now!" Plaintiff Weaver heard all of

14

this through the closed door as Defendant Yzaguirre was screaming very loud. Ms. Guerra left Defendant Yzaguirre's office in tears.

44.     From October 2001 until approximately May 2002, Plaintiff Weaver asked Defendant, on more than one occasion, why vehicle title registration transactions were being processed through administration rather than through the auto division – as was the practice and policy. Plaintiff Weaver's act of questioning Defendant Yzaguirre why some vehicle title registrations were going through his office (administration) and not through the auto division as was required by policy is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in questioning Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

45.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. Plaintiff Cantu and Plaintiff Weaver went to lunch together almost every day and worked closely together in the office. From 2001 to approximately May 2002, Plaintiff Cantu and Plaintiff Weaver discussed their concerns about Defendant Yzaguirre's unlawful actions in processing vehicle title registrations. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

46.     In or about May, June or July 2002, following Plaintiff Cantu's termination on or about May 17, 2002 and Plaintiff Munoz' demotion and transfer on or about May 23, 2002, Defendant Yzaguirre ordered Plaintiff Weaver to take all of her accrued vacation — which was

approximately three months. At the conclusion of the forced vacation leave, when Plaintiff Weaver returned to work, she was informed by Defendant Yzaguirre that she was terminated. Plaintiff Weaver was informed of her unlawful termination on or about September 27, 2002.

47.     Plaintiff Weaver was terminated and suffered other adverse employment actions in retaliation for her protected speech and protected association as stated in paragraphs 41-46 herein when she spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws. Further, Plaintiff Weaver was retaliated against for her association with Plaintiff Cantu in discussing their concerns about Defendant Yzaguirre's unlawful actions as stated specifically in paragraphs 30-38 and paragraphs 41-46 herein.

48.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations

## E.

### Defendant Yzaguirre is Final Policymaking Official in Regard to Adverse Actions Taken Against Plaintiffs

49.     Defendant Tony Yzaguirre, Jr. serves as the Tax Assessor-Collector and Director of the Cameron County Automobile Crimes Enforcement Task Force. Mr. Yzaguirre is a high policy

making official for Cameron County and the highest policy making official in regard to the Cameron County Automobile Crimes Enforcement Task Force and the office of the Cameron County Tax Assessor-Collector.  Further, Defendant Yzaguirre is the final policymaking authority in regard to hiring, firing and reassignment of the Plaintiffs.

50.     Pursuant to 13.06 of the Personnel Policies Manual of Cameron County, the Cameron County Commissioners have given Department Heads, such as Defendant Yzaguirre, the final authority to dismiss employees.

## V.

## CLAIMS

### A.

**Section 1983 – Infringement of First Amendment Rights of Free Speech**

51.     The preceding allegations in paragraphs 1 to 50  are incorporated herein as if each was restated and realleged in its entirety.

52.     Plaintiffs allege infringement of their constitutional right of free speech under the First Amendment to the United States Constitution against Cameron County and Defendant Yzaguirre in his Individual Capacity.

53.     The First Amendment to the United States Constitution states that Congress shall make no laws that abridge the right of free speech.  Therefore, at all times that Plaintiffs were employed with Cameron County, they had a clearly established federal constitutional right of free speech.  U.S. Const., Amend. I

54.     Section 1983 of the Civil Rights of 1871, 42 U.S.C. § 1983, prohibits any person acting under color of state law from depriving any citizen or person of the rights, privileges and

immunities secured by the Constitution.

55.    Plaintiffs allege that in the exercise of their right to free speech, they spoke out against unlawful vehicle registration practices by Defendant Yzaguirre.  Plaintiffs' statements concerned matters of public concern in that there may be no greater issue of public concern than an elected official's violation of laws. Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver each made their statements known to Defendant Yzaguirre as specifically set-out in paragraphs 1-50 herein.

56.    Plaintiffs allege that Defendant Cameron County and Defendant Yzaguirre, in his Individual capacity, acting under the color of state law, took reprisals and retaliation against Plaintiffs by firing Plaintiff Cantu and Plaintiff Weaver from their positions with the Cameron County Tax Assessor-Collector's office and by removing Plaintiff Munoz from his duties as Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; by stripping Plaintiff Munoz of a $3,000.00 stipend related to Plaintiff Munoz' Task Force Duties being taken away from him and by reassigning Plaintiff Munoz to another office in order to deprive Plaintiffs of their clearly established federal constitutional right of free speech under the First Amendment and their federal civil rights under Section 1983.  Plaintiffs' public and private statements and expressions against Defendant Yzaguirre's unlawful actions regarding the processing of vehicle registrations in Cameron County were the motivating and substantial factor in Defendants' decision to terminate Plaintiff Cantu's and Plaintiff Weaver's employment with Cameron County and to take adverse employment actions against Plaintiff Munoz.

57.    Plaintiffs further alleges that Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity, were acting pursuant to custom and policy established by Cameron County.  Defendant Yzaguirre, who as Tax Assessor-Collector of Cameron County, has the final

18

authority to make county policy regarding hiring and firing of department employees and taking

other employment actions regarding department employees, made the decision to terminate Plaintiff

Cantu and Plaintiff Weaver and remove Plaintiff Munoz from his duties as Project Coordinator for

the Cameron County Automobile Crimes Enforcement Task Force; strip Plaintiff Munoz of a

$3,000.00 stipend as a result of his Task Force Duties being taken away from him and by reassigning

Plaintiff Munoz to another office. Defendant Yzaguirre has the authority to establish personnel

policies, customs and practices for Cameron County in regard to the operation of the office of the

Tax Assessor-Collector and the hiring, firing and management of its employees. Plaintiffs further

allege that Cameron County ratified the retaliatory actions taken against all Plaintiffs. Moreover,

the County failed to properly train and supervise Defendant Yzaguirre in implementing personnel

termination decisions and other employee decisions and was deliberately indifferent to previous

occasions when similarly situated employees who complained were also retaliated against by adverse

employment actions.

58.    Plaintiffs' First Amendment right of free speech and their civil rights under Section

1983 were deprived as a direct and proximate result of the following Defendant's conduct: Cameron

County and Tony Yzaguirre, Jr., Individually.

59.    Defendant Cameron County and Defendant Yzaguirre, in his individual capacity,

actions were the direct and proximate cause of harm suffered by Plaintiffs. Plaintiffs are therefore

entitled to compensatory damages for the harm caused by Defendants in violating their clearly

established federal constitutional right of free speech and their civil rights under Section 1983.

Plaintiffs are also entitled to punitive damages against Defendant Yzaguirre in his individual

capacity.

**B.**

**Section 1983 – Infringement of First Amendment Rights of Free Association**

60.    The preceding allegations in paragraphs 1 to 50 are incorporated herein as if each was restated and realleged in its entirety.

61.    Plaintiffs allege infringement of their constitutional right of freedom of association under the First Amendment to the United States Constitution against Cameron County and Defendant Yzaguirre in his Individual Capacity.

62.    Discussion of public issues are integral to the operation of the system of government established by the United States Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." ***Buckley v. Valeo, Secretary of the United States Senate, 424 U.S. 1, 96 S.Ct. 612 citing Roth v. United States***, 354 U.S. 476, 484 (1957). Although First Amendment protections are not confined to "the exposition of ideas," ***Buckley citing Winters v. New York***, 333 U.S. 507, 510 (1948), "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs,... of course includ[ing] discussions of candidates...." ***Buckley citing Mills v. Alabama***, 384 U.S. 214, 218 (1966). This no more than reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," ***Buckley citing New York Times Co. v. Sullivan***, 376 U.S. 254, 270 (1964).

63.    Section 1983 of the Civil Rights of 1871, 42 U.S.C. § 1983, prohibits any person acting under color of state law from depriving any citizen or person of the rights, privileges and immunities secured by the Constitution.

20

64.    Plaintiffs allege that in the exercise of their right to free association, they organized to discuss unlawful vehicle registration practices by Defendant Yzaguirre. Plaintiffs' association concerned matters of public concern in that there may be no greater issue of public concern than an elected official's violation of laws. Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver each associated together to discuss unusual and unlawful practices occurring with the Cameron County Tax Assessor-Collector's office and to discuss ways to correct Defendant Yzaguirre's unlawful acts.

65.    Plaintiffs allege that Defendant Cameron County and Defendant Yzaguirre, in his Individual capacity, acting under the color of state law, took reprisals and retaliation against Plaintiffs by firing Plaintiff Cantu and Plaintiff Weaver from their positions with the Cameron County Tax Assessor-Collector's office and by removing Plaintiff Munoz from his duties as Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; by stripping Plaintiff Munoz of a $3,000.00 stipend related to Plaintiff Munoz' Task Force Duties being taken away from him and by reassigning Plaintiff Munoz to another office in order to deprive Plaintiffs of their clearly established federal constitutional right of free association under the First Amendment and their federal civil rights under Section 1983. Plaintiffs' association and statements and expressions about Defendant Yzaguirre's unlawful actions regarding the processing of vehicle registrations in Cameron County were the motivating and substantial factor in Defendants' decision to terminate Plaintiff Cantu's and Plaintiff Weaver's employment with Cameron County and to take adverse employment actions against Plaintiff Munoz.

66.    Plaintiffs further alleges that Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity, were acting pursuant to custom and policy established by

Cameron County. Defendant Yzaguirre, who as Tax Assessor-Collector of Cameron County, has

the final authority to make county policy regarding hiring and firing of department employees and

taking other employment actions regarding department employees, made the decision to terminate

Plaintiff Cantu and Plaintiff Weaver and remove Plaintiff Munoz from his duties as Project

Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; strip Plaintiff

Munoz of a $3,000.00 stipend as a result of his Task Force Duties being taken away from him and

by reassigning Plaintiff Munoz to another office. Defendant Yzaguirre has the authority to establish

personnel policies, customs and practices for Cameron County in regard to the operation of the office

of the Tax Assessor-Collector and the hiring, firing and management of its employees. Plaintiffs

further allege that Cameron County ratified the retaliatory actions taken against all Plaintiffs.

Moreover, the County failed to properly train and supervise Defendant Yzaguirre in implementing

personnel termination decisions and other employee decisions and was deliberately indifferent to

previous occasions when similarly situated employees who complained were also retaliated against

by adverse employment actions.

   67.  Plaintiffs' First Amendment right of free association and their civil rights

under Section 1983 were deprived as a direct and proximate result of the following Defendant's

conduct: Cameron County and Tony Yzaguirre, Jr., individually.

   68.  Defendant Cameron County and Defendant Yzaguirre, in his individual

capacity, actions were the direct and proximate cause of harm suffered by Plaintiffs. Plaintiffs are

therefore entitled to compensatory damages for the harm caused by Defendants in violating their

clearly established federal constitutional right of free association and their civil rights under Section

1983. Further, Plaintiffs are entitled to punitive damages against Defendant Yzaguirre in his

individual capacity.

## C.

### Section 1988 - Attorney's Fees

67.     The preceding allegations in paragraphs 1 to 50 are incorporated herein as if each was restated and realleged in its entirety.

68.     Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver allege this court against Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity.

69.     Because Defendants Cameron County and Defendant Yzaguirre's actions were taken under color of state law to deprive Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver of their right of free speech and free association under the First Amendment and their civil rights under Section 1983, Plaintiffs had to obtain the services of the Law Office of David Lee McGee and the Law Office of Gay E. Gilson to protect and secure their constitutional and civil rights and has therefore incurred attorneys' fees.

70.     Pursuant to 42 U.S.C. § 1988, Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver assert their claim for attorneys' fees against Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity if they prevail in their claims under Section 1983.

## D.

### INDIVIDUAL DEFENDANT YZAGUIRRE NOT ENTITLED TO QUALIFIED IMMUNITY

71.     Whether and to what extent a §1983 defendant is protected by an immunity from liability is a question of federal law because the immunity question involves the construction of federal statute. *See Howlett v. Rose*, 110 S. Ct. 2430, 2442-44 (1990); *Wood v.*

*Strickland*, U.S. 308, 314 (1975).

72.       Whether an official protected by qualified immunity may be held

personally liable for an allegedly unlawful official action generally turns on the "objective legal

reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at

the time the action was taken. *See Anderson v. Creighton*, 107 S.Ct. 3014 (1987); *Harlow v.*

*Fitzgerald*, 457 U.S. 800 (1982).

73.       The speech which Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver

exercised, and which is the basis of this lawsuit, was clearly established as being protected speech.

The details of Plaintiffs' speech is contained in paragraphs 1-50 herein.

74.       The following Fifth Circuit cases establish that the Plaintiff's speech had

been clearly established as protected speech:

A.       "There is perhaps no subset of matters of public concern more important than

bringing official misconduct to light." *Davis v. Ector County, Texas*, 40

F.3d 777,782 (5th Cir. 1994).

B.       In *Benningfield v. The City of Houston*, 157 F.3d 369 (5th Cir. 1998), the

Plaintiffs complained about sexual discrimination and a hostile working

environment in the police department where they worked. They alleged that

as a result of these complaints the police department waged a campaign of

retaliation against them which resulted in their constructive retaliation. The

Court, given these facts, held that their speech did constitute a matter of

public concern. The Court specifically held that the fact that the employee

chooses to communicate privately with his employer rather than spread his

views before the public does not automatically exclude the speech from being public. *Benningfield v. The City of Houston* 157 F3d 369 (5th Cir.1998), *citing Thompson v. City of Starkville, Miss.*, 901 F.2d 463-65 (5th Cir. 1990).

C.    Protesting improper promotions by filing grievances and aiding others in filing grievances is protected speech. *Thompson v. City of Starksville, Miss.*, 901 F.2d 456, 464 (5th Cir.1990).

D.    Complaints about tampering with criminal histories in a police department through internal grievance procedures is protected speech. *Benningfield v. The City of Houston* 157 F3d 369, 375 (5th Cir.1998).

E.    Complaints to the school board by faculty representatives about the school principal are protected speech. *Harris v. Victoria I.S.D.*, 168 F.3d 216 (5th Cir.1999).

F.    Reporting sexual harassment of supervisors is protected speech. *Wilson v. U.T. Health Center*, 973 F.2d 1263, 1269 (5th Cir.1992).

G.    Reporting suspected criminal activity of city council members is protected speech. *Schultea v. Woods,* 27 F.3d 112, 1120 (5th Cir.1994); *superceded on other grounds* 47 F.3d 1427 (1994) (en banc).

75.    The matters which Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver spoke out about, the unlawful processing of vehicle title registrations by Defendant Yzaguirre was clearly recognized as protected speech by the First Amendment to the United States Constitution at the time of the speech. Therefore, Defendant Yzaguirre is not protected by qualified immunity in taking adverse actions the Plaintiffs.

25

## PRAYER FOR RELIEF

76.        WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that after

trial, the Court grant Plaintiffs all legal and equitable relief to which they show themselves justly

entitled and which has been set-out in herein, including, but not limited to:

1. Compensatory damages;
2. Actual damages;
3. Exemplary and/or Puntive damages as allowed by law;
4. Front pay;
5. Back pay;
6. Pre-judgment interest;
7. Post-judgment interest;
8. Loss of past earnings;
9. Loss of future earnings;
10. Loss of retirement/other benefits;
11. Future mental anguish;
12. Past mental anguish;
13. Attorneys' fees and court costs as allowed by law;
14. Injunctive and equitable relief;
15. That Defendants be ordered to refrain from any retaliatory actions against Plaintiffs; and
16. Such other relief as Plaintiffs may show themselves justly entitled to by law or equity.

Respectfully submitted,

By: _____
DAVID LEE MCGEE
Law Office of David Lee McGee, P.C.
3827 North 10th Street, Suite 302 A
Plaza 10 Building
McAllen, Texas 78501
SBN 13612550/Fed I.D.5932
Telephone: (956) 687-2010
Facsimile:  (956) 687-2937
ATTORNEY IN CHARGE FOR
PLAINTIFFS

26

GAY E. GILSON
Law Office of Gay E. Gilson
719 South Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Facsimile (361) 887-0554
SBN 00784131/Fed.I.D. 16385
CO-COUNSEL FOR PLAINTIFFS