UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 7 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| VICENTA CANTU; FELIX R. MUNOZ; | § | |
| RUTH WEAVER; | § | |
| DIAMANTINA ALVARADO; AND | § | |
| LINDA GARCIA | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | Civil Action No. 03-CV-96 |
| | § | |
| CAMERON COUNTY and | § | **JURY TRIAL REQUESTED** |
| TONY YZAGUIRE, JR., Tax Assessor- | § | |
| Collector of Cameron County and Director, | § | |
| Cameron County Automobile Crimes | § | |
| Enforcement Task Force, in his | § | |
| individual capacity | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW, Vicenta Cantu, Felix R. Munoz, Ruth Weaver, Diamantina Alvarado and Linda Garcia, Plaintiffs, complaining of Cameron County and Tony Yzaguirre, Jr., Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, in his individual capacity,  and show as follows:

I.

## NATURE OF THE ACTION

In this action, Plaintiffs allege that Defendants, acting under color of state law, violated their right to freedom of speech and right to freedom of association as guaranteed by the First Amendment to the United States Constitution when each Plaintiff spoke out about matters of public concern and associated with Tax Assessor-Collector employees to speak out about illegalities occurring within the Cameron County Tax Assessor-Collector's Office – specifically, the fact that Defendant Yzaguirre violated Texas laws regarding the processing of vehicle registration papers to allow fraudulent

documents to be accepted by the Cameron County Tax Assessor-Collector's office as a paid "favor" to Defendant Yzaguirre's friends and business associates.

This pleading is being amended pursuant to FRCP 15(a) as the Defendants have not filed a responsive pleading at this time.

II.

PARTIES

1.      Plaintiff, Vicenta Cantu, is a citizen and resident of Cameron County, Texas.  Ms. Cantu is the former Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force, Office of the Tax Assessor-Collector.

2.      Felix R. Munoz is a citizen and resident of Cameron County, Texas.  Mr. Munoz currently works for the Cameron County Office of the Tax Assessor-Collector and he is the former Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force.

3.      Ruth Weaver is a citizen and resident of Cameron County, Texas.  Ms. Weaver is the former Executive Secretary to Defendant Yzaguirre in his capacity as the Tax Assessor-Collector of Cameron County.

4.      Diamantina Alvarado is a citizen and resident of Cameron County, Texas.  Ms. Alvarado is the former Supervisor of the Property Tax Collection Division for the Office of the Tax Assessor-Collector for Cameron County, Texas.

5.      Linda Garcia is a citizen and a resident of Cameron County, Texas.  Ms. Garcia is the former Manager of the San Benito Branch Office of the Office of the Tax Assessor-Collector for Cameron County, Texas.

6.      Defendant Cameron County is a political subdivision of the State of Texas, who may

be served by serving its County Judge, Gilberto Hinojosa at: Cameron County Courthouse Administrative Building 4th floor 964 E. Harrison St. Brownsville, TX 78520. Service has been accomplished and is not necessary at this time.

7.    Defendant Tony Yzaguirre, Jr., Individually, is a citizen of Texas and resident of Cameron County, and is the Tax Assessor-Collector and the Director of the Cameron County Automobile Crimes Enforcement Task Force a division of Cameron County, Texas, a political subdivision of the State of Texas, and may be served with process at: 964 East Harrison, 1st Floor, Brownsville, Texas 78520. Service has been accomplished and is not necessary at this time.

III.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this action by reason of 28 U.S.C. §1331 and §1343, in that Plaintiffs, pursuant to the First Amendment to the United States Constitution seek to redress violations of their civil rights that they experienced at the hands of Defendants. Venue is proper pursuant to 28 U.S.C. §1391 because the acts complained of primarily occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Brownsville, Division.

**IV.**

**FACTUAL BACKGROUND**

**A.**

**Plaintiff's Employment Background with Cameron County**

9.    Plaintiff Cantu began her employment relationship with the Cameron County Tax Assessor-Collector on or about September 15, 1985 as an auto clerk processing vehicle registrations.

3

During Plaintiff Cantu's employment, she received numerous pay increases and positive job evaluations. On or about October 1, 1993, Plaintiff Cantu was promoted to the position of Head Cashier. Further, on or about September 1, 2000, Plaintiff Cantu was ultimately promoted to the position of Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force.

10.    Plaintiff Munoz began his employment relationship with the Cameron County Tax Assessor-Collector on or about January 18, 1989. During Plaintiff Munoz' employment, he received numerous pay increases and positive job evaluations. Among other duties, Mr. Munoz served as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force.

11.    Plaintiff Weaver began her employment relationship with the Cameron County Tax Assessor-Collector on or about February 4, 1994. During Plaintiff Weaver's employment, she received numerous pay increases and positive job evaluations. Plaintiff Weaver worked as Defendant Yzaguirre's Executive Secretary.

12.    Plaintiff Alvarado began her employment with the Cameron County Tax Assessor-Collector on or about April 13, 1992 as an office clerk. During her career with the Cameron County Tax Assessor-Collector, she was promoted to various positions and received good evaluations.

13.    Plaintiff Garcia began her employment with the Cameron County Tax Assessor-Collector on or about December 13, 1993 as an auto/tax clerk in the Harlingen Branch Office. During Plaintiff Garcia's tenure with the Cameron County Tax Assessor-Collector's office, she received promotions and ultimately served as the Supervisor of the San Benito Branch Office.

14.    During the course of Plaintiffs' employment with Defendant, they each spoke out about matters of public concern, the fact that Defendant Yzaguirre violated Texas laws regarding the

4

processing of vehicle registration papers to allow fraudulent documents to be accepted by the Cameron County Tax Assessor-Collector's office as a paid "favor" to Defendant Yzaguirre's friends and business associates, and each of the Plaintiffs associated with each other to discuss these matters of public concern. The adverse employment actions referenced herein were in retaliation for their federally protected speech and freedom of association.

## C.

### Texas Automobile Theft and Prevention Authority

15.    The Texas Automobile Theft and Prevention Authority was established by the 72nd Texas Legislature in 1991.

16.    The Texas Automobile Theft and Prevention Authority supports a statewide law enforcement network through grants, theft reduction initiatives, education and public awareness, funds a statewide vehicle registration program and works with border states in Mexico to reduce the number of stolen vehicles crossing the border.

17.    The Texas Automobile Theft and Prevention Authority is funded by a $1 per year fee for every automobile insured in Texas. The fee is collected for the Authority by the Comptroller of Public Accounts.

18.    The Automobile Theft and Prevention Authority is made up of a seven-member Board of Directors, six are appointed by the Governor. Board members include two law enforcement representatives, two consumer representatives and two insurance representatives. The executive director of the Texas Department of Public Safety serves as an ex-officio member of the Board.

19.    Categories for projects eligible for grant funding by the Automobile Theft and Prevention Authority include activities such as enforcement/apprehension, prosecution/adjudication,

5

public education, prevention of stolen auto parts sales and reduction of stolen vehicles moved across the Mexico border.

20.    Cameron County Automobile Crimes Enforcement Task Force receives a grant from the Texas Automobile Theft Prevention Authority.

**B.**

**Plaintiff Cantu's Protected Speech and Protected Association
Regarding Matters of Public Concern**

21.    During Plaintiff Cantu's employment with Defendants, she noted that Defendant Yzaguirre was violating Texas laws, including, but not limited to Chapter 502 of the Texas Transportation Code, in the processing of vehicle registration documents. Specifically, Defendant Yzaguirre allowed fraudulent vehicle registration paperwork to pass through his office as a "paid" favor to friends and business associates.

22.    Plaintiff Cantu served as the Titles Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force, a subdivision of the Office of the Tax Assessor-Collector of Cameron County. It was Plaintiff Cantu's job to ensure that the vehicle registration paperwork going through the Cameron County's Tax Assessor-Collector's Office was lawful.

23.    In the course of Plaintiff's duties, she was to reject vehicle registrations which did not meet legal requirements. However, on several occasions, Defendant Yzaguirre "overrode" her rejections and, despite the fact that the vehicle registration paperwork was clearly fraudulent, ordered Plaintiff Cantu to process the paperwork. On these occasions, Plaintiff told Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a

6

matter of public concern because it involves misuse of Texas taxpayer money and violation of Texas laws.

24.    The first time that Plaintiff Cantu spoke out about Defendant Yzaguirre's unlawful practices was on January 9, 2001. Plaintiff Cantu rejected several vehicle registration files because they did not comply with Texas law. Defendant Yzaguirre approached Plaintiff Cantu and asked her why the files were rejected. Plaintiff Cantu responded with words to the effect that the files did not comply with Texas laws. Defendant Yzaguirre became extremely upset and ordered Plaintiff Cantu to release the transactions and that the only thing she should be concerned about is whether the vehicle was stolen – "he didn't care about the rest." Plaintiff Cantu again told Defendant Yzaguirre that the Cameron County Tax Assessor-Collector's office and the Cameron County Automobile Crimes Enforcement Task Force were obligated to follow Texas law. Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law in the manner that the vehicle registrations were processed is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

25.    On or about June 29, 2001, Defendant Yzaguirre contacted Lt. Adalberto Bennett and told him to "close the case on Omar Garza" of Cardoza Used Cars. Omar Garza is one of the "friends and business associates" that Defendant Yzaguirre has accepted payments from to process fraudulent vehicle registrations.

26.    On or about July 30, 2001, Defendant Yzaguirre ordered Plaintiff Cantu to stop

7

faxing complaints about fraudulent vehicle registration from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division. Defendant Yzaguirre told Plaintiff that she would only be allowed to fax such a complaint if he approved it first. These complaints that Plaintiff Cantu was faxing to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division were about fraudulent vehicle registration paperwork submitted by mostly "friends and business associates" of Defendant Yzaguirre. Plaintiff Cantu's act of faxing complaints regarding automobile registrations to the Texas Automobile Theft Prevention Authority is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in faxing the complaints about the fraudulent vehicle registrations from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division and telling Defendant Yzaguirre that those complaints should be faxed to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division, is speech involving a matter of public concern because it involves misuse of taxpayer money by the Cameron County Appraisal District and Defendant Yzaguirre's violation of Texas laws which are meant to prevent fraudulent vehicle titles and vehicle theft prevention.

27. On November 27, 2001, Plaintiff Cantu rejected vehicle registration documentation submitted by Andres Angeles. Defendant Yzaguirre approached Plaintiff Cantu and demanded to know why Mr. Angeles' vehicle registration paperwork had been rejected. Plaintiff explained that the paperwork did not meet the legal requirements to be accepted. Defendant Yzaguirre told Plaintiff Cantu, "I don't care" and passed the unlawful transaction. Plaintiff Cantu told Defendant Yzaguirre that his actions were unlawful. Defendant Yzaguirre told Plaintiff that if you keep doing this, referring to her speech about these vehicle registration transactions not meeting legal requirements,

8

"you know what is going to happen to you". Plaintiff Cantu asked Defendant Yzaguirre what he meant by the comment and he responded that "she knew what he meant." Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law regarding the processing of vehicle title registrations is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

28.    On or about December 12, 2001, Defendant Yzaguirre removed Plaintiff Cantu from her job duties as Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force and replaced her with Lupita DeLeon. Ms. DeLeon was given a $3,000.00/year raise to assume that position. Plaintiff was removed from her position with the Cameron County Automobile Crimes Enforcement Task Force in retaliation for her protected speech to Defendant Yzaguirre regarding the illegalities of the manner in which he was processing vehicle registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

29.    On or about December 13, 2001, Defendant Yzaguirre called Lupita DeLeon and Plaintiff Cantu into his office and told them that from that point forward, vehicle titles were not going to Plaintiff Cantu for processing through the Automobile Crimes Enforcement Task Force. Instead, the vehicle titles were going to be given to Lupita DeLeon and Susana Castillo for processing. Defendant Yzaguirre stripped Plaintiff of her job duties in retaliation for her protected

9

speech wherein she spoke out about the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

30.    Between December 13, 2001 and May 6, 2002, Plaintiff Cantu continued telling Defendant Yzaguirre that he was not following the law regarding the processing of fraudulent vehicle registrations. This speech is protected pursuant to the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

31.    On May 6, 2002, Plaintiff Cantu was again demoted. This time Plaintiff Cantu was demoted to a position as a clerk. Plaintiff Cantu's work was highly scrutinized, unlike similarly situated employees. Defendant Yzaguirre demoted Plaintiff in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

32.    On May 17, 2002, Plaintiff Cantu was terminated in retaliation for her protected speech as stated in paragraphs 21-31 herein when she spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of Texas taxpayer money and

10

violation of Texas laws.

33.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

## C.

### Plaintiff Munoz' Protected Speech and Protected Association Regarding Matters of Public Concern

34.     Plaintiff Munoz served as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force with Plaintiff Cantu and Plaintiff Weaver.

35.     Starting in October 2001, Plaintiff Munoz noticed Defendant Yzaguirre's friends and business associates coming into the Brownsville office of the Cameron County Office of the Tax Asesssor-Collector. Based upon Plaintiff Munoz' law enforcement training, each of these persons raised his suspicions because of their demeanor, habits in the office and the fact that they would process their vehicle registration business directly through Defendant Yzaguirre rather than through the regular process.

36.     Plaintiff Munoz saw Lupita DeLeon counting large amounts of money when Defendant Yzaguirre's friends and business associates came into the office to process vehicle registrations. This was not consistent with the requirements for vehicle registration. Plaintiff Munoz told Ms. DeLeon that it "looked bad" to be counting such large amounts of money in the open. This speech is protected pursuant to the First Amendment to the United States Constitution. Plaintiff's

speech in telling Ms. DeLeon that it "looked bad" to be counting such large amounts of money in the open questioned the underlying transactions which culminated in those large amounts of cash. This speech is a matter of public concern because it involves business transactions of a public entity.

37.    On one occasion, Alfredo Gonzalez, told Plaintiff Munoz that every time that he went into Defendant Yzaguirre's office it would cost him [Gonzales] money. Plaintiff understood the comment to mean that Defendant Yzaguirre was accepting bribes in exchange for processing vehicle registrations.

38.    In the Spring of 2002, Plaintiff Munoz stated to Defendant Yzaguirre that he was highly suspicious of one of Defendant Yzaguirre's friends and that he should stay away from this person. Plaintiff Munoz also stated to Defendant Yzaguirre that he was concerned that Defendant Yzaguirre was giving these persons special treatment in the processing of their vehicle registrations – meaning unlawful activities were occurring within the Cameron County Tax Assessor-Collector's office. Plaintiff Munoz' act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, should stay away from this friend and that Plaintiff Munoz was concerned that Defendant Yzaguirre was giving these persons special treatment in the processing of their vehicle registrations – referencing that unlawful activities which were occurring within the Cameron County Tax Assessor-Collector's office — is free speech protected by the First Amendment to the United States Constitution. This speech is of public concern because it involves the misuse of taxpayer funds and the violation of Texas laws by a public entity.

39.    Plaintiff Munoz also noted that the title paperwork was being stamped "sold for export".

40.    Because of his escalating concern over illegalities occurring within the Cameron

County Tax Assessor-Collector's office regarding the processing of vehicle registration paperwork, in the Spring of 2002 Plaintiff Munoz spoke with Plaintiff Cantu, who was serving as the Titles and Registration Examiner. During Plaintiff Munoz' conversation with Plaintiff Cantu, Plaintiff Cantu told Plaintiff Munoz that she observed fraudulent vehicle registration paperwork being processed by Defendant Yzaguirre and that she had spoken out in opposition to such conduct to Defendant Yzaguirre. Plaintiff Cantu's and Plaintiff Munoz' speech in discussing fraudulent vehicle registration paperwork being processed by Defendant Yzaguirre is protected by the First Amendment to the United States Constitution. Further, Plaintiff Cantu and Plaintiff Munoz had the right to associate as guaranteed by the First Amendment to the United States Constitution with each other to discuss the fraudulent vehicle registration paperwork being processed by Defendant Yzaguirre because that is a matter of public concern.

41.    During Plaintiff Munoz' service as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force, Defendant Yzaguirre communicated to Mark Yates, the County Auditor, alleging that Plaintiff Munoz was "leaking" information to Plaintiff Cantu. This statement was made by Defendant Yzaguirre against Plaintiff Munoz in retaliation for Plaintiff Munoz' First Amendment rights to free speech and right to free association.

42.    Plaintiff Munoz was removed from his position as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force on or about May 23, 2002 – just days after Plaintiff Cantu was terminated. Plaintiff Munoz was removed from his office and placed in the Harlingen Branch Tax Office. Plaintiff Munoz lost a $3,000.00/year stipend which he received for his work as Project Coordinator. Plaintiff Munoz was demoted and transferred to the Harlingen Branch Tax Office in retaliation for his protected speech against Defendant Yzaguirre and by

13

Plaintiff Munoz' close association with Plaintiff Cantu in speaking out against and taking actions to see that Defendant Yzaguirre's unlawful conduct within the public entity stop.

43.    Plaintiff Munoz was demoted and suffered other adverse employment actions in retaliation for his protected speech and protected association as stated in paragraphs 30-38 herein when he spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.  Further, Plaintiff Munoz was retaliated against for his association with Plaintiff Cantu in discussing their concerns about Defendant Yzaguirre's unlawful actions as stated specifically in paragraphs 34-42 herein.

44.    Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant.  The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations

## D.

### Plaintiff Weaver's Protected Speech and Protected
### Association Regarding Matters of Public Concern

45.    During October 2001, Plaintiff Weaver told Defendant Yzaguirre that the "word out on the street is that certain people can get their automobile titles fixed through you [Yzaguirre] and that Esthela Guerra, a notary public, has privileges with you [Yzaguirre] to fix anything that is crooked."  In response to Plaintiff Weaver's speech, Defendant Yzaguirre did not comment, but

made a frown and walked away. Plaintiff Weaver's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

46.    During Plaintiff Weaver's employment with Defendants, Defendant Yzaguirre's friends told Plaintiff Weaver that they received special favors, which were in violation of Texas law, from Defendant Yzaguirre in the processing of their vehicle title registrations.

47.    After October 2001, Plaintiff saw Esthela Guerra walk into Defendant Yzaguirre's office and close the door behind her. This was on or about Ms. Guerra's birthday. Plaintiff Weaver heard Defendant Yzaguirre yelling, through the closed door, at Ms. Guerra and demanding to know why she was telling the public that "she could get things fixed through him." Defendant Yzaguirre continued to yell at Ms. Guerra and told her "Don't you ever expect my help in the future. Never come to my office again. Let's see what you are going to do now!" Plaintiff Weaver heard all of this through the closed door as Defendant Yzaguirre was screaming very loud. Ms. Guerra left Defendant Yzaguirre's office in tears.

48.    From October 2001 until approximately May 2002, Plaintiff Weaver asked Defendant, on more than one occasion, why vehicle title registration transactions were being processed through administration rather than through the auto division – as was the practice and policy. Plaintiff Weaver's act of questioning Defendant Yzaguirre why some vehicle title registrations were going through his office (administration) and not through the auto division as was

required by policy is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in questioning Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

49.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. Plaintiff Cantu and Plaintiff Weaver went to lunch together almost every day and worked closely together in the office. From 2001 to approximately May 2002, Plaintiff Cantu and Plaintiff Weaver discussed their concerns about Defendant Yzaguirre's unlawful actions in processing vehicle title registrations. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

50.     In or about May, June or July 2002, following Plaintiff Cantu's termination on or about May 17, 2002 and Plaintiff Munoz' demotion and transfer on or about May 23, 2002, Defendant Yzaguirre ordered Plaintiff Weaver to take all of her accrued vacation — which was approximately three months. At the conclusion of the forced vacation leave, when Plaintiff Weaver returned to work, she was informed by Defendant Yzaguirre that she was terminated. Plaintiff Weaver was informed of her unlawful termination on or about September 27, 2002.

51.     Plaintiff Weaver was terminated and suffered other adverse employment actions in retaliation for her protected speech and protected association as stated in paragraphs 45-50 herein when she spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was

16

violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws. Further, Plaintiff Weaver was retaliated against for her association with Plaintiff Cantu in discussing their concerns about Defendant Yzaguirre's unlawful actions as stated specifically in paragraphs 21-31 and paragraphs 45-50 herein.

52.     Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations

**E.**

**Plaintiff Alvarado's Protected Speech and Protected
Association Regarding Matters of Public Concern**

53.     Plaintiff Weaver and Plaintiff Alvarado are sisters.

54.     Starting in May of 1997, Plaintiff Alvarado witnessed vehicle registration and title transfers being processed with fraudulent documentation by ~~Lomita~~ Lupita De Leon, Plaintiff's Supervisor. Further, Plaintiff Alvarado was ordered by Ms. De Leon to perform vehicle title transfers and registrations without proof of insurance.

55.     The Cameron County Tax Assessor-Collector is required by State law to collect a Special Inventory Tax which are taxes collected by car dealers when a vehicle is purchased. The Tax Assessor-Collector obtain the sales information to keep records and collect fees required by State law. Defendant Yzaguirre allowed his friends to file late reports and, at times, he waived the

17

$500.00 fee for his friends. Further, Defendant Yzaguirre allowed car dealers who failed to meet the reporting requirements to continue to do transfer of titles. Mr. Jesse Garcia also participated in waiving the $500.00 fee and allowing car dealers to continue transactions even though they failed to meet the reporting requirements.

56.     On or about May 2002, Defendant Yzaguirre ordered Plaintiff Weaver to take all of her accrued vacation leave. While Plaintiff Weaver, who is also Plaintiff Alvarado's sister, was on leave, Plaintiff Alvarado's co-workers began giving her the "cold shoulder" and she was watched more closely.

57.     On or about September 27, 2002, Plaintiff Alvarado's sister, Plaintiff Weaver, was terminated from her position with Defendants. The hostility in Plaintiff Alvarado's working environment continued to increase.

58.     On or about February 26, 2003, Plaintiff Alvarado was working at her part-time job at Dillards Department Store located in Brownsville, Texas. During the hours of 7:30 p.m. to 8:00 p.m., Plaintiff Cantu stopped by the counter where Plaintiff Alvarado was working and asked if she could make a payment on her Dillards account. While Plaintiff Cantu was speaking with Plaintiff Alvarado, Defendant Yzaguirre's wife, Diana Yzaguirre, came around the counter and ~~greeted~~ STARED AT JZ& Plaintiffs Cantu and Alvarado.

59.     On or about February 28, 2003, Plaintiff Alvarado was involuntarily transferred to the San Benito Branch office. The transfer is an adverse action against Plaintiff Alvarado. Plaintiff Alvarado's act of associating with Plaintiff Cantu on February 26, 2003 at Dillards Department Store is protected by the First Amendment to the United States Constitution. Plaintiff Alvarado's suffered retaliation by being involuntarily transferred because of her association with Plaintiff Cantu – and

18

Plaintiff Cantu's speech as set-out specifically herein was imputed to Plaintiff Alvarado.  One reason that the transfer was an adverse action is that San Benito is located farther from Plaintiff Alvarado's home and second job at Dillards Department Store.  Defendants knew that by transferring her to the San Benito office it would be more difficult for her to get to and from work and to continue her part-time job at Dillards Department Store.

60.     Plaintiff Garcia, Plaintiff Alvarado's supervisor, told Plaintiff Alvarado that Defendant Yzaguirre wanted to terminate Plaintiff Alvarado when he terminated her sister, Plaintiff Weaver, but that he needed her assistance through the "tax rush" season.

61.     On March 5, 2003, Plaintiff Alvarado called Jesse Garcia about a course necessary for Plaintiff Alvarado's work with Defendants.  Mr. Garcia told Plaintiff Alvarado that she would have to take care of the course on her own, which previously had been paid for by Cameron County.  The actions taken by Defendants were meant to force Plaintiff Alvarado out of her job with Defendants.  The escalation in the hostile environment created by Defendants for Plaintiff Alvarado because of her constitutionally protected speech and association with Plaintiff Weaver and Plaintiff Cantu caused Plaintiff Alvarado extreme emotional and physical distress. The escalation of Plaintiff Alvarado's hostile work environment is a direct result of Plaintiff Alvarado's act of associating with Plaintiff Cantu on February 26, 2003 at Dillards Department Store and the fact that Plaintiff Alvarado is Plaintiff Weaver's sister.  This association is protected by the First Amendment to the United States Constitution.  Plaintiff Alvarado's suffered retaliation by being subject to an extremely adverse and hostile working environment because of her activity protected by the First Amendment of the United States Constitution.

62.     On March 21, 2003, Jesse Garcia ordered Plaintiff Alvarado to pick up her plants and

personal belongings from the main office.  Defendants gave Plaintiff Alvarado this order in a continued effort to push her out of her job.  Defendants' actions continued to cause extreme emotional distress, humiliation and grief on the part of Plaintiff Alvarado which were manifesting itself by Plaintiff Alvarado's frequent crying, headaches and depression.

63.    On March 24, 2003, Plaintiff Alvarado suffered a constructive discharge as a direct result of Defendant's retaliation for Plaintiff Alvarado's protected First Amendment activity.

64.    Plaintiff Alvarado was terminated and suffered other adverse employment actions in retaliation for her protected speech and protected association as stated in paragraphs 53-63 herein when she associated with Plaintiff Cantu and Plaintiff Weaver and when their speech, which is detailed in this Complaint, in opposition of Defendant Yzaguirre's unlawful actions was imputed to her.

**F.**

**Plaintiff Garcia's Protected Speech and Protected**
**Association Regarding Matters of Public Concern**

65.    On May 23, 2003, Plaintiff Garcia delivered a written reprimand to Eniel Barreda, Auto/Tax Clerk.  Plaintiff Garcia supervised Mr. Barreda.  A copy of the reprimand was sent to Defendant Yzaguirre and to Jesse Garcia, Jr.  The reprimand discussed the fact that Mr. Barreda processed a registration for John A. Busby from Orange, Texas.  The reprimand further discussed that on May 19, 2003, when Plaintiff Garcia brought this matter to the attention of Mr. Barreda, that a supervisor override code is required for processing an out of county transaction and proof of residence is also required, which may be a light bill, telephone bill, etc.  Despite the fact that Mr. Barreda is not a supervisor and did not have the proof of residence for the transaction in question,

20

he proceeded to process the transaction. Further, Mr. Barreda sold the renewal sticker to his cousin, Hector, who is not the actual owner of the 1995 Ford. Plaintiff Garcia warned Mr. Barreda that he may be subject to disciplinary action if a situation like this were to occur again. Plaintiff Garcia's reprimand of May 23, 2003 is protected speech under the First Amendment to the United States Constitution as it is about a matter of public concern. Specifically, unlawful processing of vehicle registrations within Cameron County, Texas.

66.     Eniel Barreda is a family member of the one of the "business associates and friends" of Defendant Yzaguirre. Mr. Barreda has been working for Defendant for a relatively short period of time, yet Mr. Barreda received a noticeably higher salary compared to similarly situated co-workers. Plaintiffs allege that Mr. Barreda receives special treatment because of his relative's special relationship with Defendant Yzaguirre.

67.     After approximately ten years of employment with Defendants, Plaintiff Garcia was terminated on May 23, 2003 without any given reason. The true reason Plaintiff Garcia was terminated from her employment with Defendants is in retaliation for her free speech about Mr. Barreda's unlawful actions.

## G.

### Defendant Yzaguirre is Final Policymaking Official in
### Regard to Adverse Actions Taken Against Plaintiffs

68.     Defendant Tony Yzaguirre, Jr. serves as the Tax Assessor-Collector and Director of the Cameron County Automobile Crimes Enforcement Task Force. Mr. Yzaguirre is a high policy making official for Cameron County and the highest policy making official in regard to the Cameron County Automobile Crimes Enforcement Task Force and the office of the Cameron County Tax

Assessor-Collector. Further, Defendant Yzaguirre is the final policymaking authority in regard to hiring, firing and reassignment of the Plaintiffs.

69.    Pursuant to 13.06 of the Personnel Policies Manual of Cameron County, the Cameron County Commissioners have given Department Heads, such as Defendant Yzaguirre, the final authority to dismiss employees.

**V.**

**CLAIMS**

**A.**

**Section 1983 – Infringement of First Amendment Rights of Free Speech**

70.    The preceding allegations in paragraphs 1 to 69 are incorporated herein as if each was restated and realleged in its entirety.

71.    Plaintiffs allege infringement of their constitutional right of free speech under the First Amendment to the United States Constitution against Cameron County and Defendant Yzaguirre in his Individual Capacity.

72.    The First Amendment to the United States Constitution states that Congress shall make no laws that abridge the right of free speech. Therefore, at all times that Plaintiffs were employed with Cameron County, they had a clearly established federal constitutional right of free speech. U.S. Const., Amend. I

73.    Section 1983 of the Civil Rights of 1871, 42 U.S.C. § 1983, prohibits any person acting under color of state law from depriving any citizen or person of the rights, privileges and immunities secured by the Constitution.

74.    Plaintiffs allege that in the exercise of their right to free speech, they spoke out

22

against unlawful vehicle registration practices by Defendant Yzaguirre and others under Defendant Yzaguirre's direction. Plaintiffs' statements concerned matters of public concern in that there may be no greater issue of public concern than an elected official's violation of laws. Plaintiff Cantu, Plaintiff Munoz, Plaintiff Weaver, Plaintiff Alvarado and Plaintiff Garcia each made their statements known to Defendant Yzaguirre as specifically set-out in paragraphs 1-70 herein.

75.    Plaintiffs allege that Defendant Cameron County and Defendant Yzaguirre, in his Individual capacity, acting under the color of state law, took reprisals and retaliation against Plaintiffs by firing Plaintiff Cantu, Plaintiff Weaver, Plaintiff Garcia, and constructively discharging Plaintiff Alvarado, from their positions with the Cameron County Tax Assessor-Collector's office and by removing Plaintiff Munoz from his duties as Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; by stripping Plaintiff Munoz of a $3,000.00 stipend related to Plaintiff Munoz' Task Force Duties being taken away from him and by reassigning Plaintiff Munoz to another office in order to deprive Plaintiffs of their clearly established federal constitutional right of free speech under the First Amendment and their federal civil rights under Section 1983. Plaintiffs' public and private statements and expressions against Defendant Yzaguirre's unlawful actions regarding the processing of vehicle registrations in Cameron County were the motivating and substantial factor in Defendants' decision to terminate Plaintiff Cantu's , Plaintiff Weaver's, Plaintiff Alvarado's and Plaintiff Garcia's employment with Cameron County and to take adverse employment actions against Plaintiff Munoz.

76.    Plaintiffs further alleges that Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity, were acting pursuant to custom and policy established by Cameron County. Defendant Yzaguirre, who as Tax Assessor-Collector of Cameron County, has the final

authority to make county policy regarding hiring and firing of department employees and taking other employment actions regarding department employees, made the decision to terminate Plaintiff Cantu, Plaintiff Weaver, Plaintiff Alvarado and Plaintiff Garcia and remove Plaintiff Munoz from his duties as Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; strip Plaintiff Munoz of a $3,000.00 stipend as a result of his Task Force Duties being taken away from him and by reassigning Plaintiff Munoz to another office. Defendant Yzaguirre has the authority to establish personnel policies, customs and practices for Cameron County in regard to the operation of the office of the Tax Assessor-Collector and the hiring, firing and management of its employees. Plaintiffs further allege that Cameron County ratified the retaliatory actions taken against all Plaintiffs. Moreover, the County failed to properly train and supervise Defendant Yzaguirre in implementing personnel termination decisions and other employee decisions and was deliberately indifferent to previous occasions when similarly situated employees who complained were also retaliated against by adverse employment actions.

77.    Plaintiffs' First Amendment right of free speech and their civil rights under Section 1983 were deprived as a direct and proximate result of the following Defendant's conduct: Cameron County and Tony Yzaguirre, Jr., Individually.

78.    Defendant Cameron County and Defendant Yzaguirre, in his individual capacity, actions were the direct and proximate cause of harm suffered by Plaintiffs. Plaintiffs are therefore entitled to compensatory damages for the harm caused by Defendants in violating their clearly established federal constitutional right of free speech and their civil rights under Section 1983. Plaintiffs are also entitled to punitive damages against Defendant Yzaguirre in his individual capacity.

24

**B.**

**Section 1983 – Infringement of First Amendment Rights of Free Association**

79.    The preceding allegations in paragraphs 1 to 69 are incorporated herein as if each was restated and realleged in its entirety.

80.    Plaintiffs allege infringement of their constitutional right of freedom of association under the First Amendment to the United States Constitution against Cameron County and Defendant Yzaguirre in his Individual Capacity.

81.    Discussion of public issues are integral to the operation of the system of government established by the United States Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Buckley v. Valeo, Secretary of the United States Senate, 424 U.S. 1, 96 S.Ct. 612 citing Roth v. United States*, 354 U.S. 476, 484 (1957). Although First Amendment protections are not confined to "the exposition of ideas," *Buckley citing Winters v. New York*, 333 U.S. 507, 510 (1948), "there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs,... of course includ[ing] discussions of candidates...." *Buckley citing Mills v. Alabama*, 384 U.S. 214, 218 (1966). This no more than reflects our "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *Buckley citing New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

82.    Section 1983 of the Civil Rights of 1871, 42 U.S.C. § 1983, prohibits any person acting under color of state law from depriving any citizen or person of the rights, privileges and immunities secured by the Constitution.

25

83.        Plaintiffs allege that in the exercise of their right to free association, they organized to discuss unlawful vehicle registration practices by Defendant Yzaguirre. Plaintiffs' association concerned matters of public concern in that there may be no greater issue of public concern than an elected official's violation of laws. Plaintiff Cantu, Plaintiff Munoz, Plaintiff Weaver and Plaintiff Alvarado each associated together to discuss unusual and unlawful practices occurring with the Cameron County Tax Assessor-Collector's office and to discuss ways to correct Defendant Yzaguirre's unlawful acts. Plaintiff Weaver and Plaintiff Alvarado are sisters and Plaintiff Alvarado has a right to be protected because of her familial association with Plaintiff Weaver pursuant to the First Amendment of the United States Constitution  Further, the free speech outlined in this Complaint made by Plaintiff Cantu, Plaintiff Munoz and Plaintiff Weaver were imputed to Plaintiff Alvarado by Defendants and Plaintiff Alvarado was unlawfully retaliated against for their protected speech.

84.        Plaintiffs allege that Defendant Cameron County and Defendant Yzaguirre, in his Individual capacity, acting under the color of state law, took reprisals and retaliation against Plaintiffs by firing Plaintiff Cantu, Plaintiff Weaver and Plaintiff Alvarado from their positions with the Cameron County Tax Assessor-Collector's office and by removing Plaintiff Munoz from his duties as Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; by stripping Plaintiff Munoz of a $3,000.00 stipend related to Plaintiff Munoz' Task Force Duties being taken away from him and by reassigning Plaintiff Munoz to another office in order to deprive Plaintiffs of their clearly established federal constitutional right of free association under the First Amendment and their federal civil rights under Section 1983. Plaintiffs' association and statements and expressions about Defendant Yzaguirre's unlawful actions regarding the processing of vehicle

26

registrations in Cameron County were the motivating and substantial factor in Defendants' decision to terminate Plaintiff Cantu's, Plaintiff Weaver's and Plaintiff Alvarado's employment with Cameron County and to take adverse employment actions against Plaintiff Munoz.

85.    Plaintiffs further alleges that Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity, were acting pursuant to custom and policy established by Cameron County. Defendant Yzaguirre, who as Tax Assessor-Collector of Cameron County, has the final authority to make county policy regarding hiring and firing of department employees and taking other employment actions regarding department employees, made the decision to terminate Plaintiff Cantu, Plaintiff Weaver and Plaintiff Alvarado and remove Plaintiff Munoz from his duties as Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force; strip Plaintiff Munoz of a $3,000.00 stipend as a result of his Task Force Duties being taken away from him and by reassigning Plaintiff Munoz to another office. Defendant Yzaguirre has the authority to establish personnel policies, customs and practices for Cameron County in regard to the operation of the office of the Tax Assessor-Collector and the hiring, firing and management of its employees. Plaintiffs further allege that Cameron County ratified the retaliatory actions taken against all Plaintiffs. Moreover, the County failed to properly train and supervise Defendant Yzaguirre in implementing personnel termination decisions and other employee decisions and was deliberately indifferent to previous occasions when similarly situated employees who complained were also retaliated against by adverse employment actions.

86.    Plaintiffs' First Amendment right of free association and their civil rights under Section 1983 were deprived as a direct and proximate result of the following Defendant's conduct: Cameron County and Tony Yzaguirre, Jr., individually.

27

87.      Defendant Cameron County and Defendant Yzaguirre, in his individual capacity, actions were the direct and proximate cause of harm suffered by Plaintiffs. Plaintiffs are therefore entitled to compensatory damages for the harm caused by Defendants in violating their clearly established federal constitutional right of free association and their civil rights under Section 1983. Further, Plaintiffs are entitled to punitive damages against Defendant Yzaguirre in his individual capacity.

## C.

### Section 1988 - Attorney's Fees

88.      The preceding allegations in paragraphs 1 to 87 are incorporated herein as if each was restated and realleged in its entirety.

89.      Plaintiff Cantu, Plaintiff Munoz, Plaintiff Weaver, Plaintiff Alvarado and Plaintiff Garcia allege this court against Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity.

90.      Because Defendants Cameron County and Defendant Yzaguirre's actions were taken under color of state law to deprive Plaintiff Cantu, Plaintiff Munoz, Plaintiff Weaver, Plaintiff Alvarado and Plaintiff Garcia of their right of free speech and free association under the First Amendment and their civil rights under Section 1983, Plaintiffs had to obtain the services of the Law Office of David Lee McGee and the Law Office of Gay E. Gilson to protect and secure their constitutional and civil rights and has therefore incurred attorneys' fees.

91.      Pursuant to 42 U.S.C. § 1988, Plaintiff Cantu, Plaintiff Munoz, Plaintiff Weaver, Plaintiff Alvarado and Plaintiff Garcia assert their claim for attorneys' fees against Defendant Cameron County and Defendant Yzaguirre in his Individual Capacity if they prevail in

28

their claims under Section 1983.

**D.**

**INDIVIDUAL DEFENDANT YZAGUIRRE**
**NOT ENTITLED TO QUALIFIED IMMUNITY**

92.     Whether and to what extent a §1983 defendant is protected by an

immunity from liability is a question of federal law because the immunity question involves the

construction of federal statute. *See Howlett v. Rose*, 110 S. Ct. 2430, 2442-44 (1990); *Wood v.*

*Strickland*, U.S. 308, 314 (1975).

93.     Whether an official protected by qualified immunity may be held

personally liable for an allegedly unlawful official action generally turns on the "objective legal

reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at

the time the action was taken. *See Anderson v. Creighton*, 107 S.Ct. 3014 (1987); *Harlow v.*

*Fitzgerald*, 457 U.S. 800 (1982).

94.     The speech and association which Plaintiff Cantu, Plaintiff Munoz, Plaintiff

Weaver, Plaintiff Alvarado and Plaintiff Garcia exercised, and which is the basis of this lawsuit, was

clearly established as being protected speech. The details of Plaintiffs' speech is contained in

paragraphs 1-69 herein.

95.     The following Fifth Circuit cases establish that the Plaintiff's speech had

been clearly established as protected speech:

>          A.     "There is perhaps no subset of matters of public concern more important than
>
>                 bringing official misconduct to light." *Davis v. Ector County, Texas*, 40
>
>                 F.3d 777,782 (5th Cir. 1994).

29

B.  In *Benningfield v. The City of Houston*, 157 F.3d 369 (5th Cir. 1998), the Plaintiffs complained about sexual discrimination and a hostile working environment in the police department where they worked. They alleged that as a result of these complaints the police department waged a campaign of retaliation against them which resulted in their constructive retaliation. The Court, given these facts, held that their speech did constitute a matter of public concern. The Court specifically held that the fact that the employee chooses to communicate privately with his employer rather than spread his views before the public does not automatically exclude the speech from being public. *Benningfield v. The City of Houston* 157 F3d 369 (5th Cir.1998), *citing Thompson v. City of Starkville, Miss.*, 901 F.2d 463-65 (5th Cir. 1990).

C.  Protesting improper promotions by filing grievances and aiding others in filing grievances is protected speech. *Thompson v. City of Starksville, Miss.*, 901 F.2d 456, 464 (5th Cir.1990).

D.  Complaints about tampering with criminal histories in a police department through internal grievance procedures is protected speech. *Benningfield v. The City of Houston* 157 F3d 369, 375 (5th Cir.1998).

E.  Complaints to the school board by faculty representatives about the school principal are protected speech. *Harris v. Victoria I.S.D.*, 168 F.3d 216 (5th Cir.1999).

F.  Reporting sexual harassment of supervisors is protected speech. *Wilson v. U.T. Health Center*, 973 F.2d 1263, 1269 (5th Cir.1992).

30

G.   Reporting suspected criminal activity of city council members is protected speech. ***Schultea v. Woods***, 27 F.3d 112, 1120 (5th Cir. 1994); *superceded on other grounds* 47 F.3d 1427 (1994) (en banc).

96.   The matters which Plaintiff Cantu, Plaintiff Munoz, Plaintiff Weaver, Plaintiff Alvarado and Plaintiff Garcia spoke out about, the unlawful processing of vehicle title registrations by Defendant Yzaguirre was clearly recognized as protected speech by the First Amendment to the United States Constitution at the time of the speech. Therefore, Defendant Yzaguirre is not protected by qualified immunity in taking adverse actions the Plaintiffs.

## **PRAYER FOR RELIEF**

97.   WHEREFORE, PREMISES CONSIDERED, Plaintiffs request that after trial, the Court grant Plaintiffs all legal and equitable relief to which they show themselves justly entitled and which has been set-out in herein, including, but not limited to:

1. Compensatory damages;
2. Actual damages;
3. Exemplary and/or Puntive damages as allowed by law;
4. Front pay;
5. Back pay;
6. Pre-judgment interest;
7. Post-judgment interest;
8. Loss of past earnings;
9. Loss of future earnings;
10. Loss of retirement/other benefits;
11. Future mental anguish;
12. Past mental anguish;
13. Attorneys' fees and court costs as allowed by law;
14. Injunctive and equitable relief;
15. That Defendants be ordered to refrain from any retaliatory actions against Plaintiffs; and
16. Such other relief as Plaintiffs may show themselves justly entitled to by law or equity.

31

Charles Willette
Willette & Guerra, L.L.P.
International Boulevard, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78520
Attorney for Cameron County

Tony Yzaguirre, Jr.
Cameron County Tax Assessor-Collector
964 East Harrison, 1st Floor
Brownsville, Texas 78520
and
Roger Hughes
Adams & Graham, L.L.P.
222 E. Van Buren St., West Tower
P.O. Drawer 1429
Harlingen, Texas 78551-1429
Attorney for Tony Yzaguirre, Jr.

On this June 17, 2003.

David Lee McGee

33

Respectfully Submitted,

By: _David Lee McGee_

DAVID LEE MCGEE
Law Office of David Lee McGee, P.C.
3827 North 10th Street, Suite 302 A
Plaza 10 Building
McAllen, Texas 78501
SBN 13612550/Fed. I.D. 5932
Telephone: (956) 687-2010
Facsimile: (956) 687-2937
ATTORNEY IN CHARGE FOR
PLAINTIFFS

Gay E. Gilson
Law Office of Gay E. Gilson
719 South Shoreline, Suite 301 A
Corpus Christi, Texas 78401
(361) 887-0552
Facsimile (361) 887-0554
SBN 00783141/Fed.I.D. 16385
CO-COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

The Defendants in this case have not filed a responsive pleading. Therefore, Plaintiffs are not in a position to confer about this Motion. Plaintiffs will confer with Defendants after a responsive pleading is filed and notify the Court of the result.

_David Lee McGee_

David Lee McGee

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document is being served on the following pursuant to the Federal Rules of Civil Procedure:

Gilberto Hinojosa, Cameron County Judge
Cameron County Courthouse Administrative Building 4th Floor
964 E. Harrison St.
Brownsville, Texas 78520
and