\3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL  1 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**TABLE OF CONTENTS**

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**Index of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**Statement of Nature and Stage of Proceeding** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

**DEFENDANT COUNTY'S MOTION TO DISMISS JOINDER OF PLAINTIFFS
ALVARADO AND GARCIA, AND MOTION TO DISMISS CLAIMS OF PLAINTIFFS
ALVARADO AND GARCIA UNDER RULE 12(b)(6).**

**I. Status of Case** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**II. Issues Presented** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**III. Nature of Allegations by Plaintiffs Alvarado and Garcia** . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    The Joinder of Plaintiffs Alvarado and Garcia without leave of Court . . . . . . . . 3
      B.    Plaintiff Alvarado Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.    Plaintiff Garcia's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**IV. Argument and Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.  Alvarado and Garcia Must Obtain Leave Before They Can Join in First Amended
    Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
B.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
C.  Whether Defendant Yzaguirre is a Final Policy Maker for Defendant County . . . 6
D.  Elements of First Amendment Retaliation Claim . . . . . . . . . . . . . . . . . . . . . . . 11
E.  Alvarado Fails to Allege Protected Speech on Matters of Public Concern . . . . . 12
F.  Alvarado Fails to Allege any Association Right Protected by First Amendment  13
G.  Alvarado Does not Allege any Adverse Employment Action . . . . . . . . . . . . . . . 15
H.  Garcia Fails to Allege Protected Speech on Matter of Public Concern . . . . . . . . 17
I.  Garcia Fails to Allege any Association Right Protected by First Amendment  . . 20

**V. Conclusion** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

INDEX OF AUTHORITIES

CASES

*Anderson v. Pasadena I.S.D.*
   184 F. 3d 439, 444 (5th Cir. 1999) .......................................... 12

*Baker v. Putnal*
   75 F. 3d 190 (5th Cir. 1996) ................................................. 6

*Bell v. City of Milwaukee*
   746 F. 2d 1205, 1245-48 (7th Cir. 1984) ..................................... 14

*Bennett v. Pippin*
   74 F. 3d 578, 586 (5th Cir. 1996) ........................................... 7

*Benningfield v. City of Houston*
   157 F. 3d 369,378 (5th Cir. 1998) ......................................... 16,19

*Beraux v. City of Garland*
   205 F. 3d 150, 156 (5th Cir. 2000) .......................................... 12

*Bradshaw v. Pittsburg I.S.D.*
   207 F. 3d 814, 816 (5th Cir. 2000) ........................................ 17,18

*Brady v. Fortbend County*
   145 F. 3d 691 (5th Cir. 1998) ............................................... 9

*Carey v. Population Serv. Int'l*
   431 U.S. 678, 684-86 (1977) ............................................... 14

*City of Dallas v. Stanglin*
   490 U.S. 19, 23-24 (1989) ................................................. 12

*Collins v. Morgan Stanley Dean Witter*
   *224 F. 3d 496, 498-499 (5th Cir. 2000)* ...................................... 4

*Connick v. Myers*
   461 U.S. 138, 149 (1983) .................................................. 18

*Davis v. Ector County, texas*
   40 F. 3d 777 (5th Cir. 1995) ................................................ 9

*Fiesel v. Cherry*
    294 F. 3d 664, 608 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Finch v. Ft. Bend I.S.D.*
    ___ F. 3d___, 2003 WL 21290879 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*Foley v. Univ. Houston System*
    324 F. 3d 310, 318 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

*Fyfe v. Curlee*
    92 F. 2d 401, 403 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*

*Griswald v. Conneticut*
    81 U.S. 479, 482 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Guidry v. Bank of LaPlace*
    954 F. 2d 278, 281 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ibarra v. Houston I.S.D.*
    84 F. 2d 825, 837 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,20

*Jones v. Collins*
    132 F. 3d 1048 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Keenan v. Tejeda*
    290 F. 3d 252 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Meadowbriar Home for Children, Inc. v. Gunn*
    81 F. 3d 521,529 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*McCab v. Sharrett*
    12 F. 3d 1558, 1562 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

McCelland v. Miss Power & Light Co.
    526 F. 2d, 870, 873 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Monell v. New York City Dept. of Social Services*
    436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed. 2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Noyola v. Texas Dept. of Human Resources*
    846 F.2d 1021, 1024 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ortiz v. Burgos*
    807 F. 2d 6,9 (1st. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pembaur v. City of Cincinatti*
    475 U.S. 469, 471, 106 S. Ct. 1292, 1294,89 L. Ed. 2d . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pritchard & Abbott v. McKenna*
    350 S. W. 2d 333 (Tex. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rhode V. Denson*
    776 F. 2d 107 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Roe v. Wade*
    410 U.S. 113, 129, 152 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Serna v. City of San Antonio*
    244 F. 3d 479, 482 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12,15,16

*Smith v. Organization of Foster Families*
    *431 U.S. 816, 844 (1997)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

*Summit Office Park v. U. S. Steel Corp.*
    639 F. 2d 1278, 1282-84 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

*Thompson v. Ashe*
    250 F. 3d 399,407 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Van Ooteghem v. Gray*
    774 F. 2d 1332 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vanderhurst v. Colorado Mt. Dist.*
    16 F. 2d 1297, 1305 (D. Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wallace v. Texas Tech Unv.*
    80 F. 3d 1042, 1051 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12,14,20

*Wilson v. UT Health Center*
    973 F. 2d 1263, 1267 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES

Tex. Loc. Gov't. Code Ann. § 85.003 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Gov't. Code Ann. § 41.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex.  Gov't. Code Ann. § 41.105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Tex. Loc. Gov't. Code Ann. Chapter 83 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tex. Tax Code § 6.21- 6.3 and § 501.137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Tax Code § 501.137 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tex. Transp. Code § 502.002(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,11

F.R.C.P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2,4,6,8,20

F.R.C.P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

F.R.C.P. 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5

F.R.C.P. 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

STATEMENT OF NATURE AND STAGE OF PROCEEDING

Plaintiffs Diamantina Alvarado and Linda Garcia appeared by joining in Plaintiffs' First Amended Complaint filed on June 17, 2003. Plaintiffs filed suit under 42 U.S.C. § 1983 claiming employment retaliation for exercise of First Amendment rights to freedom of speech and freedom of association. Defendant County moves to dismiss the "joinder" of Alvarado and Garcia because they did not obtain leave of court as required by Federal Rules of Civil Procedure 21, 24. Alternatively, Defendant County moves to dismiss Plaintiffs' complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL 0 1 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**DEFENDANT COUNTY'S MOTION TO DISMISS JOINDER OF PLAINTIFFS ALVARADO AND GARCIA, AND MOTION TO DISMISS CLAIMS OF PLAINTIFFS ALVARADO AND GARCIA UNDER RULE 12(B)(6).**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant County**, and files this Motion to Dismiss Joinder of Plaintiffs Alvarado and Garcia and Motion to Dismiss Claims of Plaintiffs' Alvarado and Garcia Under Rule 12(b)(6) and would respectfully show the Court as follows:

## I. Status of Case

Plaintiffs Diamantina Alvarado and Linda Garcia appeared by joining in Plaintiffs' First Amended Complaint filed on June 17, 2003. Plaintiffs filed suit under 42 U.S.C. § 1983 claiming employment retaliation for exercise of First Amendment rights to freedom of speech and freedom of association. Defendant County moves to dismiss the "joinder" of Alvarado and Garcia because they did not obtain leave of court as required by Federal Rules

of Civil Procedure 21, 24. Alternatively, Defendant County moves to dismiss Plaintiffs' complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. Issues Presented

1.      Whether Plaintiffs Alvarado and Garcia needed leave of court before they could join in the First Amended Complaint.

2.      Whether Defendant Yzaguirre is a final policy maker for Defendant County.

3.      Whether Plaintiff Alvarado has alleged she engaged in protected speech if she does not allege she made any statements.

4.      Whether Plaintiff Alvarado has alleged a violation of any right of association protected by the First Amendment if:

      a.      Her only alleged "association" with Plaintiff Weaver is that they are adult sisters; and

      b.      Her only alleged "association" with Plaintiff Cantu was social.

5.      Whether Plaintiff Alvarado has alleged an "adverse employment" action if:

      a.      Her alleged transfer was merely a personal inconvenience, or

      b.      She has failed to allege behavior deliberately directed by Defendant Yzaguirre towards her that would amount to "constructive discharge."

6.      Whether Plaintiff Garcia has alleged facts showing that her alleged speech was on a matter of concern to the general public.

7.      Whether Plaintiff Garcia has alleged a violation of any right of association protected

by the First Amendment.

### III.  Nature of Allegations by Plaintiffs Alvarado and Garcia

**A.      The "joinder" of Plaintiffs Alvarado and Garcia without leave of Court.**

Plaintiffs Cantu, Munoz and Weaver filed their original complaint on May 28, 2003.

Dkt # 1.  On June 17, 2003 they filed their First Amended Complaint, in which Plaintiffs

Alvarado and Garcia joined as Plaintiffs.  Dkt #8.  The new Plaintiffs did not seek leave of

court nor did the court grant it.

**B.      Plaintiff Alvarado's Allegations.**

Alvarado is Plaintiff Weaver's sister.  First Amended Complaint ("Am. Comp."), ¶

53.  After her sister began a vacation in May, 2002, Alvarado claims she began to encounter

the "cold shoulder" and hostility from her co-workers. Am. Comp., ¶¶ 56, 57. Her sister was

fired in November, 2002. Am. Comp. ¶ 52.

Alvarado claims she worked part time at the Dillard's store in Brownsville, Texas.

Am. Comp. ¶ 58.  She alleges that on February 26, 2003, Plaintiff Cantu came by the store

to inquire about making a payment. Am. Comp. ¶ 58.  Alvarado alleges that, while she and

Cantu were talking, Defendant Yzaguirre's wife saw them talking.   Am. Comp. ¶ 58.

Alvarado alleges two days later she was transferred to Defendant Yzaguirre's San Benito

office. Am. Comp. ¶ 59.  Alvarado alleges her transfer was retaliation for speaking to Cantu

at Dillards; she also alleges her transfer was "adverse" because it was further for her to drive from her home and from her part time job at Dillard's. Am. Comp. ¶ 59.

Alvarodo claims that she was "constructively discharged" on March 24, 2003. Am. Comp. ¶ 63. She claims this resulted from the hostility from co-workers. Am. Comp. ¶¶ 56, 57 and 62. The "hostile" acts were that a co-worker told her Defendant Yzaguirre would not pay for continuing education and that she must move her plants from the office in which she no longer worked. Am. Comp. ¶¶ 59, 61, 64. She alleges Plaintiff Garcia told her that Defendant Yzaguirre wanted to fire her when Plaintiff Weaver was fired but he needed her for the "tax rush" season Am. Compl. ¶ 60.

Plaintiff Alvarado claimed this occurred in retaliation for (1) Plaintiff Cantu's speech which should be "imputed to her," and (2) her "association" with Cantu at Dillard's and with Weaver by being her sister. Am. Comp. ¶ 64.

## C.    Plaintiff Garcia's Allegations

Plaintiff Garcia alleges only that she engaged in protected speech under the First Amendment. Am. Comp. ¶ 65. Her "speech" was a written reprimand she gave to Mr. Barreda, an employee she supervised. Am. Comp.¶ 65. A copy of the reprimand is attached as Exhibit "A."[1]  Plaintiff Garcia urges that her "speech" was about Barrera's "unlawful

---

[1]  The attachment of this writing does not convert this into a motion for summary judgment under Federal Rule of Civil Procedure 56. When a complaint refers to a writing, but does not attach it, the court may consider the document for the purpose of determining the sufficiency complaint under Rule 12(b)(6). *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). This will not convert it into a Rule 56 motion and Defendant does not wish such conversion.

actions." Am. Comp.¶ 67.  However, Exhibit "A" shows that she only reprimanded him for "improper procedures."   The complaint was only that he could not accept a vehicle registration renewal without some proof the owner resided in Cameron County and his supervisor's approval.  Exhibit "A".  Exhibit "A" shows that the writing is a reprimand that went only to the employee and Plaintiff Garcia's superiors.

### IV.  Argument and Authorities

**A.     Alvarado and Garcia Must Obtain Leave Before They Can Join in First Amended Complaint**

Alvarado and Garcia were not plaintiffs in Original Complaint, filed May 28, 2003. They 'joined' when the other plaintiffs filed their First Amended Complaint on June 17, 2003.  No leave of court was obtained.

Federal Rule of Civil Procedure 15(a) provides that a party may amend that party's pleading without leave before a responsive pleading is served.  Federal Rule of Civil Procedure 21 requires a motion and order to add or drop parties; Federal Rule of Civil Procedure 24 requires an application from anyone desiring to intervene.

The Fifth Circuit has held that, if no responsive pleading has been filed, Rule 15(a) permits the plaintiff to add or drop defendants without leave of court. *McClelland v. Miss. Power & Light Co.,* 526 F.2d 870, 873 (5th Cir. 1976).  However, the Fifth Circuit has said that rule does not apply when the amended complaint adds new plaintiffs with different causes of action.  *Summit Office Park v. U. S. Steel Corp.,* 639 F.2d 1278, 1282-84 (5th Cir.

1981)(distinguishing *McClelland).*  Thus an amended complaint adding new plaintiffs still requires leave of court.  *Summit Office Park,* 629 F.2d at 1284.

**B.     Standard of Review**

Defendant County moves to dismiss the federal claims based on failure to state a claim.  Under Rule 12(b)(6), the Court must accept the allegations as true and must review them in the light most favorable to the Plaintiff, drawing all reasonable inferences in favor of the pleader.  *Baker v. Putnal,* 75 F.3d 190 (5th Cir. 1996).  Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that can be proven consistent with the allegations.  *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 529 (5th Cir. 1996).  However, the complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge.  *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992).

**C.     Whether Defendant Yzaguirre is a Final Policy Maker for Defendant County.**

Plaintiffs assert a cause of action against Defendant County for alleged violations of protected speech and freedom of association under the First Amendment pursuant to Title 42 U.S.C. § 1983.  In *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Court concluded that municipal liability under 42 U.S.C. § 1983 is limited to deprivations of federally protected rights caused by action taken "pursuant to official municipal policy of some nature...."  See also *Pembaur v. City of Cincinnati,* 475 U.S. 469, 471, 106 S.Ct. 1292, 1294, 89 L.Ed.2d 452 (1986).  While a single

act of a final policy making authority could constitute official policy, liability would attach *only* where the official is responsible for establishing final government policy. (emphasis mine). *Id.* at 480-83. In this case, Plaintiffs wrongly assert Defendant Yzaguirre is a final policy making official of Cameron County and that Defendant Yzaguirre's decision to terminate and/or demote Plaintiffs constituted official and final policy of Defendant County.

Defendant County is its own final policy maker; the issue before the Court is whether Defendant Yzaguirre as an elected officer of Cameron County can make personnel decisions which constitute official and final policy of Cameron County. The authority to make official and final policy may be granted directly by a legislative enactment or may be delegated by an official or municipal body which possesses such authority, and of course, whether an official ultimately has final policymaking authority is determined by state law. *Id.* at 483; *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). Plaintiffs have not cited any case law or legislative enactment to support their contention that Defendant Yzaguirre is a final policy making official for Cameron County. Plaintiffs rely on the Personnel Policies Manual of Cameron County to suggest that Defendant County, the official body which possess final authority, has delegated such final authority to department heads, such as Defendant Yzaguirre. See Plaintiff's First Amended Complaint, Paragraphs 68 and 69.

The Personnel Policy Manual of Cameron County does not grant final policy making authority to any department head or elected official. The policy specifically states as follows: "This Personnel Policies Manual is not intended to create any contractual or other legal

rights, but is intended solely as a guide" and confirms that the "Commissioners Court is the policy making Body for the County." See Exhibit "B" attached hereto and incorporated herein by reference, the Personnel Policies Manual of Cameron County; specifically see the front page and page 1, paragraph 1.01.[2] According to the policy, department heads and/or elected officials implement the County policy to operate their respective office, and nowhere in the policy does Defendant County explicitly or impliedly grant final policy making authority to its elected officials or department heads. In section 13.06, the section Plaintiffs cite, the policy allows for a department head to dismiss an employee for various reasons consistent with the Cameron County personnel policy manual, however, this provision should not be construed to constitute a waiver of Defendant County's final policy making authority. The personnel policies manual clearly demonstrates Defendant County's intent to keep its status as the final policy making body. As such, Plaintiffs' reliance upon one section of Defendant County's personnel policy manual to suggest Defendant Yzaguirre is a final policy maker of Defendant County is misplaced and taken out of context when considering the policy as a whole.

Even though the Fifth Circuit has held that a District Attorney and County Sheriff are considered final policy makers for a county government, there are no cases holding that a

---

[2] The attachment of this writing does not convert this into a motion for summary judgment under Federal Rule of Civil Procedure 56. When a complaint refers to a writing, but does not attach it, the court may consider the document for the purpose of determining the sufficiency complaint under Rule 12(b)(6). *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). This will not convert it into a Rule 56 motion and Defendant does not wish such conversion.

County Tax Assessor-Collector is final policy making authority. See *Brady v. Fortbend County*, 145 F.3d 691 (5th Cir. 1998) and *Davis v. Ector County, Texas*, 40 F.3d 777 (5th Cir. 1995) These decisions are supported by the respective official's duties which are codified by legislative enactments. In *Brady*, the Court emphasized that "Texas law unequivocally vests the sheriff with final policymaking authority" pursuant to section 85.003(c) of the Texas Local Government Code. *Brady* at 699 - 700. The Local Government Code provides that deputies "serve at the will of the sheriff." *Tex. Loc. Gov't Code Ann.* § 85.003(c). In *Davis*, the Court concluded that the District Attorney was acting as a policy maker for the county and was exercising official policy when he fired Davis. *Davis* at 784. The Texas Government Code specifies that a District Attorney may employ his or her assistants and office personnel which are required for the proper and efficient operation and administration of the office. *Tex. Gov't Code* § 41.102. Moreover, the Government Code provides that "all personnel of the prosecuting attorney's office are subject to removal at the will of the prosecuting attorney." *Tex. Gov't Code* § 41.105. In considering the position of District Attorney and Sheriff, it is clear that legislative enactments created specific duties making their actions, including personnel decisions, official and final policy for a county.

Defendant County is not aware of any case law or statute which provides a County Tax Assessor-Collector with final policy making authority on behalf of a county. Defendant County is aware of only one case wherein a department head or elected official, other than District Attorney or Sheriff, was determined to have final policy making authority for a

county. *Van Ooteghem v. Gray*, 774 F.2d 1332 (5th Cir. 1985).  In *Gray*, the Fifth Circuit

concluded, based on the circumstances in Harris County, that the County Treasurer possessed

final decision making authority to bind the county.  However, it is apparent from reading the

*Gray* opinion that Harris County must have delegated final authority to the Treasurer because

the opinion discusses prior policies and personnel decisions made by the Treasurer

constituting final policy.  It is the opposite for Defendant County, because Defendant County

has never delegated or granted its official final policy making authority to any officials, save

and except the Sheriff and District Attorney, as per state law.  A County Treasurer is

governed by Chapter 83 of the Texas Local Government Code.  See *Tex. Loc. Gov't Code*,

Chapter 83.  Nowhere in Chapter 83 does the legislature express an intent to provide a

County Treasurer with final authority to terminate an employee at will, like a District

Attorney or Sheriff.  Since state law does not afford a County Treasurer with final policy

making authority, the logical conclusion is that Harris County delegated official authority to

its Treasurer.

The Fifth Circuit has rejected the argument that simply because an official is elected

by the people, he is an official policy maker for the county.  *Rhode v. Denson*, 776 F.2d 107,

(5th Cir. 1985); *Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002).  In both *Rhode* and *Keenan*,

the courts held that an elected constable did not possess a final policy making position so as

to expose the county to civil rights liability.  It is Defendant County's position that Defendant

Yzaguirre does not constitute a final policy maker simply because he is a department head

and an elected official. No legislative enactment imposes final policy making authority on a County Tax Assessor-Collector with regard to personnel matters and Defendant County has not delegated its official policy making power to Defendant Yzaguirre.

Applicable statutes to the County Tax Assessor-Collector include the *Texas Tax Code* Sections 6.21 through 6.30 and Section 501.137 of the *Texas Transportation Code*. Also, in *Pritchard & Abbott v. McKenna*, 350 S.W.2d 333 (Tex. 1961), the Texas Supreme Court held that a county could usurp the functions and duties of a County Tax Assessor-Collector finding it was within the county's authority to contract with a firm to conduct the appraisals of all properties in the county.

Assuming Plaintiffs' non-conclusory facts are true in their amended complaint, they still do not establish that Defendant Yzaguirre is a final policy maker for Defendant County in order to state a claim pursuant to section 1983. Accordingly, Defendant County cannot be held liable for the claims asserted by Plaintiffs and Plaintiffs' claims against Defendant County should be dismissed in their entirety.

**D.      Elements of First Amendment Retaliation Claim**

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The party must (1) suffer an adverse employment action, (2) show that the speech in question was a matter of public concern, (3) show that their interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action. *Serna v. City*

*of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001); *Beraux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000). The same analysis applies when plaintiff claims retaliation for exercise of association rights protected by the First Amendment. *Anderson v. Pasadena I.S.D.,* 184 F.3d 439, 444 (5th Cir. 1999); *McCab v. Sharrett*, 12 F.3d 1558, 1562 (11th Cir. 1994); see also *Fyfe v. Curlee*, 902 F.2d 401, 403 (5th Cir. 1990).

Strictly speaking, the First Amendment does not protect a "right of association". *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). Rather, the First Amendment embraces the right to associate only in two circumstances: (1) the choice to enter into certain intimate human relationships ("familial association"), or (2) an association for the purpose of engaging in activities protected by the First Amendment, i.e. speech, exercise of religion, etc. ("expressive association'). *Stanglin*, 490 U.S. at 24; *Wallace v. Texas Tech Unv.*, 80 F.3d 1042, 1051 (5th Cir. 1996). The right of "expressive association" extends to groups organized to engage in speech. *Stanglin*, 490 U.S. at 25. The "familial association" right recognized under the First Amendment has only been recognized in the area of marriage, procreation and child rearing. *Stanglin*, 490 U.S. at 24-25; *Fyfe. v. Curlee*, 902 F.2d at 403. There is no recognized right of "social association" protected under the constitution. *Stanglin*, 490 U.S. at 25; *Wallace*, 80 F.3d at 1051; *Ibarra v. Houston I.S.D.*, 84 F.Supp.2d 825, 837 (S.D. Tex. 1999).

**E.    Alvarado Fails to Allege Protected Speech on Matters of Public Concern**

Alvarado does not allege that she spoke or made any statements; rather, she alleges the speech of Plaintiffs Cantu and Weaver are "imputed to her." Am. Comp.¶¶ 59, 64. Alvarado does not claim she was present when Cantu or Weaver spoke or that she expressly adopted their statements. There is no protection from retaliation against silence or for other people's statements. See *Jones v. Collins*, 132 F.3d 1048, 1053 (5th Cir. 1998); *Vanderhurst v. Colorado Mt. College Dist.*, 16 F. Supp.2d 1297, 1305 (D. Colo. 1998). In *Jones*, a school principal was demoted because her superiors mistakenly believed that she had made statements critical of school policy to the public. 132 F.3d at 1050. The Fifth Circuit upheld summary judgment on qualified immunity; a claim of retaliation based on a mis-perception in the absence of any actual statements was not a constitutional violation. *Id.* at 1053. Her silence was not "speech" because it was not intended and could not be construed to be expressive conduct. *Id.* at 1054.

In *Vanderhurst*, a teacher claimed retaliation under First Amendment, because he allowed members of his sophomore class to criticize freshmen students during class hours. 16 F. Supp.2d at 1299. The District Court determined there could be no First Amendment claim because it could not impute the speech of the sophomore class to him, particularly when he was not in the classroom when they spoke. *Id.* at 1305.

**F.    Alvarado Fails to Allege any Association Right Protected by First Amendment**

The only "association" Alvarado alleges she had with Plaintiff Cantu was a conversation at Dillard's about paying a bill. At best, this alleges nothing more than social

contact which is not protected under the First Amendment. See, e.g., *Stanglin*, 490 U.S. at 25 (teenagers had no "association right" to meet with older teenagers and young adults at dance hall); *Wallace*, 80 F.3d at 1050 (college basketball coach had no "associational right" with student team players); *Ibarra*, 84 F. Supp.2d at 837 (school superintendent had no "association right"to socialize publicly with state politicians).

Alvarado claims that her right to "familial association" was injured because she is Plaintiff Weaver's sister. Am. Comp. ¶ 83. Alvarado has limited her association claim to association rights protected by the First Amendment. Am. Comp.¶ 8, 83. However, the First Amendment has been extended only to "privacy" rights concerning marriage, procreation, and child rearing. *Griswald v. Connecticut*, 81 U.S. 479, 482 (1965); *Smith v. Organization of Foster Families*, 431 U.S. 816, 844 (1997); *Carey v. Population Serv. Int'l.*, 431 U.S. 678, 684-86 (1977); *Roe v. Wade*, 410 U.S. 113, 129, 152 (1973). As *Griswald*, *Roe*, and *Carey* make clear, the First Amendment "familial association" involves either the husband-wife relation, procreation, the parent-child relation, or child rearing. It does not appear that the First Amendment privacy right extends to the "association" of being adult siblings. See, e.g., *Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (upholding summary judgment that siblings could not bring could not bring interference with "association rights" against prison authorities who caused the death of his brother); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984) (specifically rejecting rights of siblings); see also *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)(adult brother had no liberty interest protected by Due

Process to visit brother at public housing; housing authority could properly exclude him from premises on suspicion of prior drug use).[3]

## G.    Alvarado Does Not Allege Any Adverse Employment Action

Although some employment actions may have the effect of chilling speech or protective liberties, they are not be actionable. *Pierce v. Texas Dept. of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994). "Adverse employment actions" are discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Pierce*, 37 F.3d at 1149; *Breaux*, 205 F.3d at 157. The Fifth Circuit has declined to expand the list of actionable actions, even if such actions might chill the exercise of speech. *Breaux*, 205 F.3d at 157.

Alvarado alleges her transfer to San Benito was "adverse" because it was further away from home and her part time job. Am. Comp.¶ 59. However, a transfer is an "adverse employment action" only if it is equivalent to one of the recognized injuries, e.g., a demotion, a refusal to promote, a reprimand, etc. *Serna*, 244 F.3d at 479; *Breaux*, 205 F.3d at 157. Plaintiff's personal preferences or subjective perceptions are insufficient to transmute a

---

[3] Plaintiff Alvarado does not assert a Due Process claim for being deprived of any "liberty" interest to associate with her sister, Weaver. However, if Alvarado were to assert a right to association as a "liberty interest" protected by Due Process, her claim would also fail. First, such a claim could be reviewed only under the principles of Substantive Due Process. *Thompson*, 250 F.3d at 406; *Harbury v. Deutch*, 233 F.3d 596, 605 (D.C. Cir. 2000) *aff'd, sub. nom. Christopher v. Harbury*, 122 S.Ct. 2179 (2002); see also *Roe v. Texas Dept. of Protective and Reg. Serv.*, 299 F.3d 395, 411 (5th Cir. 2002)(liberty interest to familial association analyzed under Substantive Due Process). Substantive Due Process requires that the public official act with the intent to injure or with deliberate indifference. *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1999). This requires pleading and proof that the official intended the act cause of loss of familial association. *Harbury*, 233 F.3d at 605. Second, it does not appear that any liberty interest protected by Due Process extends to protecting the relationship between adult siblings. See *Thompson*, 250 F.3d at 406-7; *Ortiz*, 807 F.2d at 8; *Bell*, 746 F.2d at 1242-48.

transfer into a constitutional injury. *Serna*, 244 F.3d at 483. Consequently, Alvarado's mere inconvenience to drive from Brownsville to San Benito does not make her transfer a constitutional injury.

Plaintiff also alleges she was given the cold shoulder or received hostility from co-workers. First, Plaintiff does not claim Defendant Yzaguirre was personally rude or critical of her; she does not claim that he encouraged co-workers to give her the cold shoulder or was deliberately indifferent to their actions. Second, accusations, criticism, ostracism do not constitute "adverse employment actions." *Roe*, 205 F.3d at 157.

Finally, Alvarado claims "constructive termination." Am. Comp.¶ 63. A voluntary resignation is not an "adverse employment action." *Upshaw v. Alvin I.S.D.*, 31 F. Supp.2d 553 557 (S.D. Tex. 1999). To establish constructive discharge, Plaintiff must prove that Defendant Yzaguirre deliberately made her working conditions so difficult and unpleasant that a reasonable person would have felt compelled to quit. *Roe*, 205 F.3d at 160; *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998); *Upshaw*, 31 F. Supp.2d at 557. This requires a greater severity and pervasiveness of harassment than that required to prove a hostile work environment. *Benningfield*, 157 F.3d at 378.

Here, the alleged actions failed to meet with standard. First, Plaintiff alleges only that she was given the cold shoulder, was told the department would not pay for a course, and was asked her to move her plants from an office she had left three weeks earlier. This hardly amounts to a campaign of harassment and humiliation. Second, the allegations do not

attribute this to Defendant Yzaguirre, but rather to co-workers. Alvarado must allege facts showing Defendant Yzaguirre's personal involvement. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

## H.  Garcia Fails to Allege Protected Speech on Matters of Public Concern

Plaintiff Garcia alleges retaliation only for one act of speech, namely her written reprimand to her subordinate, Mr. Barreda. Am. Comp.¶ 67. The memo itself does not accuse him of a crime or illegal behavior, but only an "improper method." Exhibit "A." Her allegations in Exhibit "A" show that reprimand was communicated only to Mr. Barrera and Plaintiff Garcia's supervisors.

This communication does not involve allegations of criminal misconduct or official corruption. State law requires that the vehicle owner submit his application for registration in the owner's county of residence. TEX. TRANSP. CODE § 502.002(b) (Vernon 1999). Submitting a registration application in another county is not a crime. Moreover, Garcia's reprimand did not state that the applicant was not a Cameron County resident or that Berreda committed a crime; rather, her reprimand stated Barreda acted without obtaining proper documentation or her authorization. Exhibit. A.

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). Determination of whether a statement constitutes a matter of public concern is a legal question to be determined by the court from the content, form and context of the statement

that is revealed by the record. *Bradshaw*, 207 F.3d at 816-17; *Ibarra*, 84 F. Supp.2d at 835. A matter is not a public concern because it could, in different circumstances be, of general interest to the public. *Id.* The rationale behind the "public concern" requirement is to prevent public employees from relying on the Constitution to redress their personal grievances. *Connick v. Myers*, 461 U.S. 138, 149 (1983). The First Amendment does not require the public office be run as a round table for employee complaints over internal office affairs. *Connick*, 461 U.S. at 149.

Employee speech motivated primarily to defend their own personal philosophies on office policy and management are insufficient. See, e.g. *Finch v. Fort Bend I.S.D.*, __ F.3d ___, 2003 WL 21290879, *6 (5th Cir. 2003) (school principal's speech about proposal for new classes for advanced students, held speech dealing only internal administrative affairs); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (conversation between welfare case worker and supervisor criticizing procedures for handling case load and realignment of his own case load was only an internal grievance); *Ibarra*, 84 F. Supp.2d at 835-836 (Superintendent's remarks concerning his management philosophy and the role of the teacher's union was only defense of personal beliefs). Although the choice to make an internal grievance privately rather than publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public. *Bradshaw*, 207 F.3d at 817.

The Fifth Circuit has recognized the reporting of corruption or serious official misconduct is a matter of public concern. See, e.g., *Benningfield*, 157 F.3d at 375; *Wilson v. UT Health Center*, 973 F.2d 1263, 1267 (5th Cir. 1992). However, vague assertions that the speech pertained to official misconduct are insufficient to defeat qualified immunity; the plaintiff must be specific about the content of the statement, when and where they were made, and to whom. *Foley v. Univ. of Houston System*, 324 F.3d 310, 318 (5th Cir. 2003)(professor's bare assertion she complained about racism and hostile work environment was insufficient to defeat qualified immunity). Speech in the context of an investigation into misconduct is not always a matter of public concern. See *Fiesel v. Cherry*, 294 F.3d 664, 668 (5th Cir. 2002)(during interview into inmate's claim that guards were selling him drugs, plaintiff told co-worker guard that he did not need to speak and could consult counsel; held, speech was not a matter of public concern).

Garcia's reprimand did not meet this standard. Her memo did not claim Barreda committed crime, took a bribe, misappropriated money, etc. Rather, it accused him only of failing to follow office procedures.

First, the form shows that she spoke strictly as an employee, and not in her capacity as a citizen. She could only write a reprimand as a supervisor. The purpose of the memo was to reprimand him concerning failure to follow office methodology. Second, the matter was communicated privately to the employee and her supervisor. She does not allege nor is there any indication that the statement was revealed to anyone necessarily for a reason other

than to discipline a particular employee.  There is no claim that there was a general office wide problem or that the public perceived some great problem concerning inadequate documentation of residency when seeking to renew vehicle registrations.

## I.     Garcia Fails to Allege any Association Right Protected by First Amendment

In paragraphs 65 through 67, Garcia did not even allege facts to support an association claim.  Notwithstanding, mere social contact with other co-workers is not protected under the First Amendment.  See, e.g., *Stanglin*, 490 U.S. at 25 (teenagers had no "association right" to meet with older teenagers and young adults at dance hall); *Wallace*, 80 F.3d at 1050 (college basketball coach had no "associational right" with student team players); *Ibarra*, 84 F. Supp.2d  at 837 (school superintendent had no "association right"to  socialize publicly with state politicians).

## V. Conclusion

Defendant Yzaguirre is not a final policy making official for Defendant County and therefore, Defendant County cannot be held accountable for his actions.  With regard to the associational claims, Plaintiffs have failed to allege facts showing any association protected by the First Amendment.  Further, Plaintiffs alleged protected speech does not constitute a matter of public concern necessary to prove violation of a First Amendment right.  As such, Plaintiffs' First Amended Complaint should be dismissed in its entirety based on Plaintiffs' failure to state a claim pursuant to Rule 12(b)(6).

WHEREFORE, PREMISES CONSIDERED, Defendant County prays that upon submission of this motion, the Court dismiss the complaints of Plaintiffs Alvarado and Garcia, and for such other and further relief to which Defendant County may show himself entitled.

Respectfully submitted,

**WILLETTE & GUERRA, L.L.P.**
International Boulevard, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78520
(956) 541-1846
(956) 541-1893 (Fax)

By_____    For

**Charles Willette**
State Bar No. 21509700
Federal ID 1937
**Dino Esparza**
State Bar No. 00795337
Federal ID 22703

Attorneys for Defendant CAMERON COUNTY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the ___1st___ day of July, 2003.

Craig Vittitoe
Roger Hughes
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas 78551-1429

Mr. David Lee McGee
LAW OFFICES OF DAVID LEE McGEE, P.C.
201 S. 15th, Ste. 204, McAllen (78501)
701 Park Avenue
Corpus Christi, TX 78401

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401


_____
Roman "Dino" Esparza

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

## ORDER GRANTING DEFENDANT COUNTY'S MOTION TO DISMISS JOINDER OF PLAINTIFFS ALVARADO AND GARCIA, and MOTION TO DISMISS CLAIMS OF PLAINTIFFS ALVARADO AND GARCIA UNDER RULE 12(b)(6)

BE IT REMEMBERED on this _____ day of _____, 2003, came to be considered *Defendant County's Motion to Dismiss Joinder of Plaintiffs Alvarado and Garcia, and Motion to Dismiss Claims of Plaintiffs Alvarado and Garcia under Rule 12(b)(6)*. The Court is of the opinion same should be granted.

It is THEREFORE ORDERED, ADJUDGED AND DECREED that Defendant County's Motion to Dismiss Joinder of Plaintiffs Alvarado and Garcia, and Motion to Dismiss Claims of Plaintiffs' Alvarado and Garcia under Rule 12(b)(6), and is hereby GRANTED.

Signed this _____ day of _____, 2003, at Brownsville, Texas.

_____
Judge Presiding

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

VICENTA CANTU, et al.                          :
                                               :
        Plaintiffs                             :
                                               :
vs.                                            :          CIVIL ACTION NO. B-03-096
                                               :
CAMERON COUNTY, et al.                         :
                                               :
        Defendants

---

**ORDER SETTING HEARING ON DEFENDANT COUNTY'S MOTION TO DISMISS
JOINDER OF PLAINTIFFS ALVARADO AND GARCIA, AND MOTION TO DISMISS
CLAIMS OF PLAINTIFFS ALVARADO AND GARCIA UNDER RULE 12(B)(6).**

On this the ___ day of July, 2003, came on to be considered, *Defendant County's Motion to*

*Dismiss Joinder of Plaintiffs Alvarado and Garcia, and Motion to Dismiss Claims of Plaintiffs*

*Alvarado and Garcia under Rule 12(b)(6).*  The parties appeared and requested that this matter be

set for hearing.  After considering same, the Court is of the opinion that a hearing should be set.  IT

IS THEREFORE,

ORDERED, ADJUDGED and DECREED that Defendant County's Motion to Dismiss

Joinder of Plaintiffs Alvarado and Garcia, and Motion to Dismiss Claims of Plaintiffs Alvarado and

Garcia under Rule 12(b)(6) be and is hereby set for hearing on the ____day of _____ 2003 at ___

_ a.m. o'clock in the Southern District Court of Cameron County, Texas.

SIGNED ON this _____ day of _____, 2003.


_____
PRESIDING JUDGE

Exhibit "A"

JUN 26 '03  09:48AM

# OFFICE OF THE
# TAX ASSESSOR-COLLECTOR
### P. O. BOX 952   BROWNSVILLE, TEXAS 78522-0952

**TONY YZAGUIRRE, JR.**
TAX ASSESSOR-COLLECTOR
RPA,RTA,CTA,CSTA



**FELIX R. MUNOZ**
CHIEF DEPUTY - OPERATIONS

**JESSE GARCIA, JR.**
CHIEF DEPUTY - ADMINISTRATION

**TO:** ENIEL BARREDA
AUTO / TAX CLERK

**FROM:** NINFA P. FONSECA - OFFICE MANAGER
SAN BENITO / RIO HONDO BRANCH OFFICE

**SUBJ:** WRITTEN REPRIMAND
IMPROPER PROCEDURES ON REGISTRATION

**DATE:** JUNE 16, 2003

ATTACHED IS THE COPY OF THE WRITTEN REPRIMAND THAT WAS
GIVEN TO YOU BY OFFICE MANAGER LINDA C. GARCIA.

I HAVE REVIEWED THE WRITTEN REPRIMAND AND I AM NOT
GOING TO TOLERATE THIS IN THE OFFICE.

THIS LETTER IS INTENDED TO REMIND YOU THAT IS A SITUATION
LIKE THIS OCCURS AGAIN, YOU MAY BE SUBJECT TO SUSPENSION
FROM DUTY WITHOUT PAY, OR RESULT IN MORE SEVERE DISCIPLINARY
ACTION.

C.C:  TONY YZAGUIRRE, JR.
TAX ASSESSOR - COLLECTOR

JESSE GARCIA, JR.
CHIEF DEPUTY - ADMINISTRATION

FILE

MAIN OFFICE
BROWNSVILLE
964 E. HARRISON
(956) 544-0800
FAX: 544-0806

SOUTHMOST BRANCH
BROWNSVILLE
3900 SOUTHMOST RD
(956) 988-6228
FAX: 988-6228

BRANCH OFFICE
HARLINGEN
802 E. HARRISON
(956) 427-8013
FAX: 427-8017

BRANCH OFFICE
SAN BENITO
650 E. HIGHWAY 77
(956) 399-3194
FAX: 399-4171

BRANCH OFFICE
LOS FRESNOS
105 OCEAN BLVD
(956) 233-4494
FAX: 233-3804

BRANCH OFFICE
PORT ISABEL
313 QUEEN ISABELLA
(956) 943-8101
FAX: 943-8101

BRANCH OFFICE
LA FERIA
126 WEST 1ST
(956) 797-3075
FAX: 797-3075

BRANCH OFFICE
RIO HONDO
130 COLORADO
(956) 748-2383
FAX: 748-3502

# OFFICE OF THE
# TAX ASSESSOR-COLLECTOR

### P. O. BOX 952    BROWNSVILLE, TEXAS 78522-0952

**TONY YZAGUIRRE, JR.**
TAX ASSESSOR-COLLECTOR
RP.RTA.CTA.CSTA

**FELIX R. MUNOZ**
CHIEF DEPUTY - OPERATIONS

**JESSE GARCIA, JR.**
CHIEF DEPUTY - ADMINISTRATION

**To:**   Eniel Barreda
          Auto/Tax Clerk

**From:** Linda C Garcia
          San Benito / Rio Hondo Branch Manager

**Subj:** Written Reprimand
          Improper procedures on registration

**Date:** May 23, 2003

This is to inform you that I am issuing you a formal reprimand. A random audit of your work conduct on May 15, 2003, is where I noticed that you processed a registration for John A Busby from Orange, TX. (see attached copy).

On May 19, 2003 when I brought this matter to your attention, you being aware that a supervisor-override code is required for a registration from any other county plus proof of residence (light bill, telephone bill etc.) for Cameron County, you proceeded to register the vehicle by the use you mentioned( Alt-O - add an extra character to the address shown to complete the renewal. You also mentioned that you sold the renewal sticker to your cousin Hector, who in fact is not the actual owner of this 1995 Ford. Also, on May 22, 2003 another person came in on a registration you did back in March 28, 2003- Mrs. Elsie W Cheate from Uvalde, Tx., no change of address was made. (See attached copy).

This letter is intended to remind you that if a situation like this occurs again, you may be subject to suspension from duty without pay, or result in more severe disciplinary action.

**Cc:** Tony Yzaguirre, Jr. Tax Assessor-Collector
        Jesse Garcia, Jr. CDA

MAIN OFFICE
BROWNSVILLE
964 E. HARRISON
(956)544-0800
FAX: 544-0808

SOUTHMOST BRANCH
BROWNSVILLE
2900 SOUTHMOST RD
(956) 986-6228
FAX: 986-6228

BRANCH OFFICE
HARLINGEN
602 E. HARRISON
(956) 427-8013
FAX: 427-8017

BRANCH OFFICE
SAN BENITO
650 E. HIGHWAY 77
(956) 399-3194
FAX: 399-4171

BRANCH OFFICE
LOS FRESNOS
105 OCEAN BLVD
(956) 233-4494
FAX: 233-5804

BRANCH OFFICE
PORT ISABEL
313 QUEEN ISABELLA
(956) 943-8101
FAX: 943-8101

BRANCH OFFICE
LA FERIA
126 WEST 1ST
(956) 797-3075
FAX: 797-3075

BRANCH OFFICE
RIO HONDO
130 COLORADO
(956) 748-2343
FAX: 748-3562

Department of Transportation

# REGISTRATION RENEWAL RECEIPT

COUNTY: CAMERON
STICKER NO: 2795349WE
PLATE NO: T92TLY
DOCUMENT NO: 00033300013593214

TAC NAME: TONY YZAGUIRRE, JR.
DATE: 03/28/2003          EFFECTIVE DATE: 03/28/2003
TIME: 04:32PM             EXPIRATION DATE: 2/2004
EMPLOYEE ID: CAMC323      TRANSACTION ID: 03100137706163241

OWNER NAME AND ADDRESS
MRS ELSIE W CHOATE
827 S GETTY
UVALDE, TX 78801-6143

REGISTRATION CLASS: PASSENGER-LESS/EQL 6000
PLATE TYPE: PASSENGER PLT
STICKER TYPE: WS

PREVIOUS PLATE NO: BXX30N                    VEHICLE CLASSIFICATION: PASS
VEHICLE IDENTIFICATION NO: P8ZH9358
YR/MAKE: 1954/PONT  MODEL:        BODY STYLE: 4D    UNIT NO:
EMPTY WT: 3600    CARRYING CAPACITY: 0      GROSS WT: 3600    TONNAGE: 0.00
BODY VEHICLE IDENTIFICATION NO:                      TRAVEL TRLR LENGTH: 0

| INVENTORY ITEM(S) | YR | FEES ASSESSED | | |
|---|---|---|---|---|
| WINDSHIELD STICKER | 2004 | WINDSHIELD STICKER | $ | 40.50 |
| PASSENGER PLT | | REFLECTORIZATION FEE | $ | 0.30 |
| | | CNTY ROAD BRIDGE ADD-ON FEE | $ | 10.00 |
| | | AUTOMATION FEE (LARGE CNTY) | $ | 1.00 |
| | | TOTAL | $ | 51.80 |

VEHICLE RECORD NOTATIONS
RELEASE OF PERSONAL INFO RESTRICTED

METHOD OF PAYMENT AND PAYMENT AMOUNT:
CHECK #1252    $    51.80

TOTAL AMOUNT PAID $    51.80

THIS RECEIPT TO BE CARRIED IN ALL COMMERCIAL VEHICLES.
Current law requires an additional $1.00 fee (already
included) in counties with 50,000 or more vehicles.

ORIGINAL
14-500-MFTS (REV. 3/2001) (OHT 157490)

Texas Department of Transportation

## REGISTRATION RENEWAL RECEIPT

COUNTY: CAMERON                    TAC NAME: TONY YZAGUIRRE, JR.
STICKER NO: 2798393WS             DATE: 05/15/2003        EFFECTIVE DATE: 05/15/2003
PLATE NO: G70YZT                  TIME: 02:13PM           EXPIRATION DATE: 1/2004
DOCUMENT NO: 190000355571095035   EMPLOYEE ID: CAMC323    TRANSACTION ID: 03100137754141329

RENEWAL RECIPIENT NAME AND ADDRESS            OWNER NAME AND ADDRESS
JOHN A BUSBY                                  JOHN A BUSBY
17223 HIGHWAY 62 S.                           560 GARDENIA
ORANGE, TX 77630-4388                         ORANGE, TX 77630

                              REGISTRATION CLASS: PASSENGER-LESS/EQL 6000
                              PLATE TYPE: PASSENGER PLT
                              STICKER TYPE: WS

PREVIOUS PLATE NO: G70YZT                     VEHICLE CLASSIFICATION: PASS
VEHICLE IDENTIFICATION NO: 1FALP62W8SH126453
YR/MAKE: 1995/FORD   MODEL:        BODY STYLE: 2D    UNIT NO:
EMPTY WT: 3600    CARRYING CAPACITY: 0        GROSS WT: 3600    TONNAGE: 0.00
BODY VEHICLE IDENTIFICATION NO:                       TRAVEL TRLR LENGTH: 0

INVENTORY ITEM(S)              YR          FEES ASSESSED
WINDSHIELD STICKER             2004        WINDSHIELD STICKER              $    40.50
                                           REFLECTORIZATION FEE                0.30
                                           CNTY ROAD BRIDGE ADD-ON FEE        10.00
                                           AUTOMATION FEE (LARGE CNTY)         1.00
                                                              TOTAL           51.80

VEHICLE RECORD NOTATION:
RELEASE OF PERSONAL INFO RESTRICTED
ACTUAL MILEAGE

DUPLICATE

THIS RECEIPT TO BE CARRIED IN ALL COMMERCIAL VEHICLES.
Current law requires an additional $1.00 fee (already
included) in counties with 50,000 or more vehicles.

ORIGINAL
VTR-68-847G (Rev 3/2001) (DMT 157490)

Exhibit "B"



# PERSONNEL POLICIES MANUEL

## OF

## CAMERON COUNTY, TEXAS

**The Personnel Policies Manuel is not intended to create any contractual or other legal rights, but is designed solely as a guide. Periodically, this Manual may be revised and updated.**

### Adopted by the Cameron County Commissioners Court

### October 1, 1984

### Revisions approved on the following dates:

October 1, 1986
April 17, 1989
March 5, 1990
May 28, 1991
December 9, 1991
February 10, 1992
August 10, 1992
August 10, 1993
November 2, 1999
May 21, 2002

# TABLE OF CONTENTS

## 1.00 INTRODUCTION

1.01 CAMERON COUNTY ............................................................ PAGE 1
1.02 AUTHORITY ....... ............................. ............................ 1
1.03 RESPONSIBILITY ......................................................... 1
1.04 PURPOSE ...................................... .............................. 2
1.05 APPLICABILITY OF POLICIES ........................................... 2
1.06 DISSEMINATION OF POLICIES . ...................................... 2
1.07 COMMUNICATION ........................................................... 2

## 2.00 EMPLOYEE RESPONSIBILITIES

2.01 GENERAL ....................................................................... 3
2.02 TIMELINESS .................................................................. 3
2.03 OUTSIDE EMPLOYMENT ................................................ 3
2.04 CONFLICT OF INTEREST ................................................ 3
2.05 POLITICAL ACTIVITY ..................................................... 4
2.06 NATURAL DISASTERS AND EMERGENCIES.................... 5
2.07 USE OF COUNTY-OWNED VEHICLES ............................. 5
2.08 USE OF PERSONAL VEHICLES ....................................... 5

## 3.00 EMPLOYMENT STANDARDS

3.01 EQUAL EMPLOYMENT OPPORTUNITY ........................... 7
3.02 SEXUAL HARASSMENT ................................................. 7
3.03 PHYSICAL STANDARD .................................................. 8
3.04 DRESS CODE ............................................................... 8
3.05 EMPLOYMENT OF RELATIVES ....................................... 8

## 4.00 RECRUITMENT AND SELECTION

4.01 GENERAL POLICY ........................................................ 10
4.02 VACANCIES ................................................................. 10
4.03 QUALIFICATIONS ......................................................... 10
4.04 RECRUITMENT AND SELECTION ................................... 10
4.05 PUBLIC ANNOUNCEMENT .......................................... 11
4.06 APPLICATION FOR EMPLOYMENT ................................ 11
4.07 CONSIDERATION OF CURRENT EMPLOYEES ................. 11
4.08 DISQUALIFICATION ..................................................... 11

## 5.00 TYPES OF EMPLOYMENT

5.01 CATEGORIES ........................................................................................ 12
5.02 EVALUATION PERIOD ......................................................................... 12
5.03 ASSIGNED STAFF ............................................................................... 12

## 6.00 WORK SCHEDULE AND TIME REPORTING

6.01 ADMINISTRATIVE WORK ..................................................................... 14
6.02 SCHEDULE ADJUSTMENTS ................................................................. 14
6.03 OFFICIAL CLOSING ............................................................................. 14
6.04 NUMBER OF HOURS WORKED ........................................................... 15
6.05 OVERTIME AND COMPENSATORY TIME ............................................. 15

## 7.00 EMPLOYEE COMPENSATION AND ADVANCEMENT

7.01 PAY PERIOD ........................................................................................ 17
7.02 PAYROLL DEDUCTIONS ...................................................................... 17
7.03 PAY PLAN ............................................................................................ 17
7.04 PROMOTIONS ..................................................................................... 18
7.05 LATERAL TRANSFERS ........................................................................ 18
7.06 DEMOTIONS ........................................................................................ 18
7.07 APPROVING AUTHORITY .................................................................... 18
7.08 PRIOR SERVICE WITH COUNTY ......................................................... 19
7.09 CALCULATION OF TERMINATION PAY ............................................... 19

## 8.00 SUMMARY OF EMPLOYEE BENEFITS

8.01 MEDICAL .............................................................................................. 20
8.02 SOCIAL SECURITY .............................................................................. 20
8.03 RETIREMENT PLAN ............................................................................. 20
8.04 WORKER'S COMPENSATION ............................................................... 22
8.05 UNEMPLOYMENT INSURANCE ........................................................... 22
8.06 VACATION TIME ................................................................................... 22

## 9.00 LEAVE AND HOLIDAYS

9.01 DEFINITIONS ........................................................................................ 23
9.02 APPROVAL OF LEAVE .......................................................................... 23
9.03 VACATION LEAVE ................................................................................ 23
9.04 SICK LEAVE ......................................................................................... 25
9.05 MILITARY LEAVE .................................................................................. 26
9.06 CITIZENSHIP LEAVE ............................................................................ 26
9.07 LEAVE OF ABSENCE FOR NON-MEDICAL REASONS ........................ 27

9.08 FAMILY MEDICAL LEAVE ............................................... 27
9.09 REASONS FOR LEAVE OF ABSENCE ....................... 28
9.10 USING LEAVE IN COMBINATION ............................... 30
9.11 HOLIDAYS ................................................................... 31
9.12 LEAVE AND HOLIDAY RECORDS ............................... 32
9.13 FUNERAL LEAVE ........................................................ 32
9.14 OTHER TIME ................................................................ 32

## 10.00 HEALTH AND SAFE

10.01 SAFETY POLICY ........................................................ 33
10.02 EMPLOYEE RESPONSIBILITIES ............................. 33
10.03 EMPLOYEE SUGGESTIONS ..................................... 33
10.04 ON-THE-JOB INJURIES ............................................ 33
10.05 DRUG AND CHEMICAL DEPENDANCY POLICY ....... 35

## 11.00 PERFORMANCE EVALUATIONS

11.01 PURPOSE ................................................................... 39
11.02 PERFORMANCE EVALUATION REPORT .................. 39

## 12.00 DISCIPLINE

12.01 REASONS FOR DISCIPLINARY ACTION ................... 40
12.02 PROGRESSIVE DISCIPLINE ..................................... 41
12.03 SUSPENSION FOLLOWING INDICTMENT ................ 41

## 13.00 SEPARATIONS

13.01 TYPES OF SEPARATION ........................................... 43
13.02 RESIGNATION ............................................................ 43
13.03 RETIREMENT .............................................................. 43
13.04 REEDUCATION IN FORCE ......................................... 44
13.05 ELIMINATION OF POSITION ...................................... 44
13.06 DISMISSAL ................................................................. 44
13.07 DISABILITY ................................................................ 45
13.08 DEATH ........................................................................ 45
13.09 EXITY INTERVIEW AND RECORDS ........................... 45

## 14.00 GRIEVANCES

14.01 POLICY ...................................................................... 46
14.02 GROUNDS FOR A GRIEVANCE ................................. 46
14.03 INFORMAL GRIEVANCES ......................................... 46
14.04 FORMAL GRIEVANCES .............................................. 46

14 05 ADVISORY GRIEVANCE COMMITTEE PROCEDURES .......... ... .......... ... ....    47

## 15.00 PERSONNEL FILES

15 01 GENERAL .. ..................................    .. ......... ....  ...........................    49
15.02 PERSONNEL ACTION FORM ........................................................    49
15.03 CONTENTS OF PERSONNEL FILES ...............................................    50
15.04 LEAVE RECORDS .................................... .... ...................................... .....................    50

## 16.00 COUNTY BUSINESS TRAVEL

16.01 REIMBURSEMENT .......................................................................    51
16.02 TRAVEL ADVANCES .................................................................    51
16.03 AVAILABLE FUNDS .......:.............................................................    51
16.04 HOTEL ALLOWANCES ...............................................................    51
16.05 ASSOCIATION SEMINARS .........................................................    52
16.06 EXPENSE VERIFICATION ..........................................................    52
16.07 RESPONSIBILITY ....................................................................    53

## 17.00 EXEMPT POSITIONS

DRAFT

# CAMERON COUNTY PERSONNEL POLICIES


## 1.00 INTRODUCTION


### 1.01 CAMERON COUNTY

Cameron County's governmental organization is established by
The Constitution of the State of Texas and by the State
Statutes.  State and federal govern its operations Law and by
actions of the Commissioners Court.

The Commissioners Court consists of Four County Commissioners,
each elected by the voters of a Commissioner's Precinct, and the
County Judge, elected by all of the voters of the County.  The
Commissioners Court is the policy making Body of the County.

County operations are conducted through departments each
Administered by an elected official or appointed Department
Head.


### 1.02 AUTHORITY

These policies are established by the Commissioners Court of
Cameron County.  They replace all previously approved
Policies to the extent of any conflict.  Amended, revised, or
New policies must be approved by the Commissioners Court.

Any benefits herein offered to the employees are contingent upon
Available funds in each County department's budget and in the
General Cameron County operating budget.


### 1.03 RESPONSIBILITY FOR IMPLEMENTATION
###      OF PERSONNEL POLICIES

Each Department Head, elected or appointed, is responsible
For the administration of the personnel policies within their
department and may issue detailed departmental operating
procedures to implement these adopted policies as long as
they are consistent with these policies.

1.04 PURPOSE

These policies set forth the primary rules governing
employment with Cameron County. The policies contained here
inform employees of the benefits and obligations of
employment with the County. They have been prepared and
adopted in order to promote consistent, equitable, and
effective practices which will result in high quality public
service by both employees and supervisors.

Receipt of the Personnel Policies Handbook by the employee
does not constitute any type of employment agreement or
contract with the County. Cameron County is an At-Will employer.


1.05 APPLICABILITY OF PERSONNEL POLICIES

The personnel policies apply equally to all employees and
officials of the County unless a class of employees is
specifically exempted. In cases where federal law or
regulation supercedes local policy for specific groups of
employees, such laws or regulations will substitute for these
personnel policies only insofar as necessary to comply.
Elected officials are personally exempt from the personnel
policies but must abide by the personnel policies in the
administration of their Departments.


1.06 DISSEMINATION OF PERSONNEL POLICIES

The County Personnel Administrator shall maintain complete
sets of the Personnel Policies with all revisions for
reference purposes. The County Personnel Administrator or a
designee shall provide each employee with a copy of the
Employee Handbook and information about any revisions, and
shall provide each department head with a copy of the
Personnel Policies Manual.

Each department head, elected or appointed, and each employee
shall acknowledge receipt in writing of a copy of the
Personnel Policies Manual or Handbook.

1.07 COMMUNICATION

Employees are encouraged to make constructive suggestions for
improvements in these policies or in work procedures or
conditions to their immediate supervisors or department heads.

## 2.00 EMPLOYEE RESPONSIBILITIES

### 2.01  GENERAL

Cameron County is a public tax-supported organization.
Exceptions include the Cameron County Park System and the
International Bridge Department, which are operated as
enterprise funds, and are self-sustaining departments.
Cameron County employees must adhere to high standards of
public service that emphasize professionalism, courtesy, and
avoidance of even the appearance of illegal or unethical
conduct.  Employees are expected to carry out efficiently the
work items assigned as their responsibility, to maintain good
moral conduct, and to do their part in maintaining good
relationships with the public, with other governmental
employees and officials, with their supervisors, and with
fellow employees.

### 2.02  TIMELINESS

Employees are to be punctual in maintaining work hours,
keeping appointments and meeting schedules for completion of
work.

### 2.03 OUTSIDE EMPLOYMENT

An employee wishing to engage in outside employment must
request approval to do so from his or her Department Head.
The Department Head may deny the request if it is determined
that the outside employment would:

1.  be inconsistent or incompatible with employment with
    the County, or

2.  adversely affect the employee's job performance.

### 2.04 CONFLICT OF INTEREST

An employee may not:

1.  solicit, accept, or agree to accept a financial benefit,
    directly or indirectly, other than from the   County,
    that might reasonably  tend to influence  his or   her

performance of duties for the County. or that he or she
knows or should know is offered with intent to influence
the employee's performance.

2.  accept employment or compensation that might reasonably
    induce him or her to disclose confidential information
    acquired in the performance of job duties;

3.  accept outside employment or compensation that might
    reasonably tend to impair independence of judgment in
    performance of duties for the County.

4.  make any personal investment that might reasonably be
    expected to create a substantial conflict between the
    employee's private interest and duties for the County; or

5.  Solicit, accept, or agree to accept a financial benefit
    from another person in exchange for having performed
    duties as a County employee in favor of that person.

## 2.05 POLITICAL ACTIVITY

Employees of Cameron County are encouraged to vote and to
exercise other prerogatives of Citizenship consistent with
state and federal law and these policies.

1.  A county employee may not use his or her official authority
    or influence to interfere with or affect the result of
    an election or nomination for office. The wearing of buttons
    or display of other advertising on the employee during working
    hours is prohibited when the employee is dealing with the
    public, and when in the course of dealing with the public
    it unreasonably disrupts the smooth operation of the
    department.

2.  A county employee may not directly or indirectly coerce,
    attempt
    to coerce, command, or advise a state or county official or
    employee to pay, lend, or contribute anything of value to a
    party, committee, organization, agency or person for political
    purpose.

4

3.  A county employee who chooses to run for the office of the
Department in he/she works must resign at the time of filing

## 2.06  NATURAL DISASTERS AND EMERGENCIES

Employees of Cameron County may be required to work during
any natural disaster or emergency.  These emergencies may
require separation from family members for extended periods
and each employee is encouraged to provide for his or her
family accordingly.  Refusal to work during such emergencies
may result in disciplinary action,  up to and including
termination.  This is a formal condition of employment with
Cameron County. The determination to which positions or
natural disaster and the designation of personnel  who shall
be required to work during such emergencies shall be made by
each department heads and is incorporated in Cameron County's
Emergency Operation's Plan.

## 2.07 USE OF COUNTY-OWNED VEHICLES

Cameron County employees who are authorized to drive
County-owned vehicles must observe the following rules:

*  County-owned vehicles may not be used for any purpose
   other than official County business.

*  County-owned vehicles may not be used to transport
   non-County employees except in the course of official
   business.

*  County-owned vehicles are not to be driven by anyone other
   than the Cameron County employee who is authorized to do
   so.

Cameron County employees who are authorized to drive
County-owned vehicles are required to maintain clean driving
records to assure insurability under the County's Auto
Liability Coverage, Should a county driver become uninsurable
He/she must be removed from all driving activities and possible
termination if unable to perform primary job functions.

## 2.08 USE OF PERSONAL VEHICLE TO CONDUCT COUNTY BUSSINESS

Employees who are authorized to operate their personal vehicle to
conduct county business must observe the following.

*  Must show proof of current liability insurance.

- The vehicle must have current registration and inspection. A copy of insurance verification must be provided to the county auditor's office.

- Employee must posses a clean driving record as per county liability insurance check.

VIOLATION OF THIS SUBSECTION OF THE COUNTY PERSONNEL POLICIES MAY RESULT IN DISCIPLINARY ACTION, UP TO AND INCLUDING TERMINATION.

6

3.00 EMPLOYMENT STANDARDS AND PRACTICES

3.01 EQUAL EMPLOYMENT OPPORTUNITY

Cameron County is committed to providing equal employment opportunity without regard to race, color, religion, national origin, sex, age, handicap or veteran's status, as required by state and federal laws. The County's commitment extends to all employment-related decisions and terms and conditions of employment.

3.02   SEXUAL HARASSMENT

Cameron County strictly prohibits any conduct which constitutes sexual harassment.  Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and any other conduct of a sexual nature (including sexually explicit language, jokes, etc.) when:

1.   The employee must submit to the offensive conduct as an explicit or implicit condition of employment.

2.   The employee rejects advances and risks losing a job, promotion, privileges, or benefits; whereas, the employee who submits gains favors and advantages.

3.   The employee's job performance is interfered with as a result of the offensive behavior, or the work atmosphere becomes hostile or intimidating.

It is the responsibility of Cameron County management staff to create an atmosphere free of sexual harassment.  It is the responsibility of each employee to respect the rights of fellow employees.  For purposes of interpretation and application of this policy, the following forms of sexual harassment are set forth:

1.   overt physical:  the employee is subjected to actual touching or objectionable conduct.

2.   overt non-physical:  the employee is approached with the suggestion of sexual relations,  along with stated or suggested adverse job consequences that would result from rejection of the advances.

7

3.   subtle:  the employee is approached in a more subtle
     manner, with the suggestion that "friendly" employees
     will have more opportunities for advancement.

An employee who believes he or she is a victim of sexual
harassment on the job should immediately report the matter to
his or her immediate supervisor or to the Personnel
Administrator.  The choice of whom to report the harassment
is the employee's alone to make.  Any employee found to be
sexually harassing another employee or applicant for
employment shall be dealt with under the disciplinary
policies and procedures contained in this Manual.

## 3.03 PHYSICAL STANDARDS

Cameron County is committed to equal employment opportunity
and will reasonably accommodate job applicants and employees
with disabilities.   All Cameron County employees are
expected to be able to perform their job duties as required
by their job description.

Employees whose positions pose some special risk of injury or
public safety risk is required to have a post-offer physical
examination.  This requirement will be specified in the
Employees job description.  Examples of these positions
include but are not limited to the following positions:
deputy sheriff, park ranger, heavy equipment operators, and
positions with lifting or driving requirements.

The post-offer physical examinations will be conducted by a
physician of the County's choice and at the County's expense.

## 3.04 DRESS CODE

A dress code may be implemented by department directors/heads for
professional standards (uniforms, coat, tie, etc.) as required.

## 3.05  EMPLOYMENT OF RELATIVES

Nepotism is the showing of favoritism toward a relative.  The
practice of nepotism in hiring personnel or awarding
contracts are forbidden by the County.  No person may be hired
who is related within the second degree by affinity
(marriage) or within the third degree by consanguinity

blood to any member of the Commissioners Court, to a county official who appoints him or her to the position, or to any employee who would directly supervise his or her job performance.  Prohibited degrees of relationship are defined in the following Figures 1 and 2.*

In the event that two current county employees become related in a manner prohibited by this section, the two parties will

be given a reasonable time for one or the other to secure another position, either within the County in another department, or outside County government.  For purposes of this policy, a reasonable time will not normally exceed two months.  If the two parties cannot decide which of them will forfeit his or her job, the party with the least seniority will be terminated.

**(SEE NEPOTISM CHARTS)**

9

4.00 RECRUITMENT AND SELECTION

4.01 GENERAL POLICY

Each department head, elected or appointed, is responsible
for the selection and tenure of his or her employees within
budget and numerical limits set by the Commissioners Court.
Personnel budgets and authorized numbers of positions are
established by the county budget and salary schedules, and
amendments thereto, as approved by the Commissioners Court.

4.02 VACANCIES

Employee vacancies in county departments are filled on the
basis of merit, whether by promotion from within or by
initial appointment. Selections of the persons best matched
to fill the vacancies are made only on the basis of
occupational qualifications and job related factors such as
skill, knowledge, education, experience, and ability to
perform the specific job.

4.03 QUALIFICATIONS

Cameron County maintains a job description, which establishes
for each staff position the required knowledge, skills, and
abilities and the acceptable levels of experience and
training for the position.  The job description sets forth
the minimum acceptable qualifications to fill the position.

Cameron County will make a reasonable effort to accommodate
job applicants and employees who have disabilities.

4.04 METHODS OF RECRUITMENT AND SELECTION

Cameron County has four methods of recruiting and selecting
persons to fill vacancies.  They are as follows:

1.  promotion from within;

2.  lateral transfer from within;

3.  public announcements and competitive  consideration of
    applications for employment, and

4. selection from a valid current eligibility list.
Each department head determines the method of selection to be
used in filling a vacancy.

## 4.05 PUBLIC ANNOUNCEMENTS

Cameron County is an "At Will" equal employment opportunity
employer and Public announcements of position openings with the
County are disseminated by the Personnel Administrator or the
respective department head, in the manner most appropriate to the
particular position being held.

## 4.06 APPLICATION FOR EMPLOYMENT

Each applicant for county employment  must submit a written
application and other pertinent information regarding
training and experience.  The department head shall make
appropriate inquiries to verify experience, character, and
suitability of any applicant.

## 4.07 CONSIDERATION OF CURRENT EMPLOYEES

Employees of the County will be notified by the Personnel
Administrator of known vacancies in the organization for
which applications will be accepted.  Employees will be
permitted to apply for positions for which they believe
themselves to be qualified.

## 4.08 DISQUALIFICATION

An applicant is disqualified from employment by the County if
he or she does not meet the minimum qualifications for
performance of the duties of the position involved; knowingly
has made a false statement on the application form; has
committed fraud during the selection process; or is not
legally permitted to hold the position.

An employee may be terminated if it is later discovered that
he or she knowingly falsified information on the application
form.

## 5.00 TYPES OF EMPLOYMENT

### 5.01 CATEGORIES

There are three categories of employment with Cameron County:

Regular Full-time.  A regular full-time employee is employed to hold an authorized position that involves, on the average, at least forty (40) hours per week.

Regular Part-time.  A regular part-time employee is employed to hold an  authorized position that involves, on the average, fewer than forty (40) hours per week, but no less than eighteen (18) hours per week.

Temporary.  A temporary employee is an employee hired to complete a specific project within a specified period of time.  Temporary employees may be full time or part time.

There is no tenure or permanent lifetime employment or appointment for Cameron County employees.  All employees are subject to periodic performance review and evaluation at least once a year in accordance with the Personnel Policies.

### 5.02 EVALUATION PERIOD

In order to become a regular employee, each employee must complete a probationary period of six months following initial employment or reemployment in a regular budgeted position.  The evaluation period may be extended by the Department Head for a period of up to an additional six months.

The Department head may immediately terminate an employee at Anytime during the evaluation period.  After completing The evaluation period, the employee will be subject to periodic performance evaluations at least once a year.

Cameron County is "At Will" employer and there is no tenure or permanent lifetime employment or appointment.

### 5.03 ASSIGNED STAFF

Staff who are assigned to the County for supervision but who
are directly paid by another government or private
organization is not County employees.  Benefits are as
specified in the individual's contract for services.  As a
condition of their assignment, they are governed by all terms
of these policies not in conflict with their contract for
services.

6.00 WORK SCHEDULE AND TIME REPORTING

6.01 ADMINISTRATIVE WORKWEEK

The normal work schedule for County employees is from 8:00
a.m. to 5:00 p.m., Monday through Friday, with a one (1) one
hour unpaid lunch period, for a total of forty (40) hours per
work period, excluding Law Enforcement Personnel.  The normal
work schedule for Law Enforcement Personnel shall be
determined in accordance with designated schedules totaling
171  hours per 28 day work period.

Employees must report punctually for duty at their place of
work;  work their established work schedule as determined by
their Department;  take a one (1) hour unpaid meal period,
and may take two (2) fifteen (15) minute paid rest breaks, one
in the morning and one in the afternoon. Should the employee
duties or workload not permit him/her to take a break, this
time cannot be accumulated.

Department Heads or Supervisors have the right to set the
times for meals and rest breaks taken by  employees in their
Departments.

6.02 SCHEDULE ADJUSTMENTS BY DEPARTMENT HEADS

Adjustments to the regular hours of operation may be made by
a Department Head in order to better serve the public or to
meet requirements for continuous services related to the
protection of public health and safety.

Offices may remain open during the noon hour, and lunch
periods may be staggered according to the requirements of the
office and the decisions of the Department Head.

6.03 OFFICIAL CLOSINGS OF COUNTY OFFICES

County offices may be closed at any time during the regular
work week only by order of the Commissioners Court or the
County Judge  for reasons such as bad weather or funeral
services for county officials.  Work time lost by employees
due to official closings of county offices  will be charged
to "other time", unless the employee was already on some
other type of leave, e.g.,  vacation, sick leave, etc., in
which case that particular leave status remains in effect.

6.04 NUMBER OF HOURS WORKED

Department heads may determine the number of hours worked by
an employee for the compensation to be received subject to
laws governing working hours and subject to the provisions of
the County budget and approved salary schedules.

6.05 OVERTIME AND COMPENSATORY TIME

General.  Cameron County employees will receive compensatory
time off for overtime hours worked, but may receive cash
payment if money is available for this purpose in their
department budget.  Requests to work overtime must be
submitted to the Department Head before the overtime is
worked on the Agreement to Work Overtime Form, on which the
Department Head will specify if the request is approved or
denied, the number of overtime hours to be worked, and the
method of compensation that will apply.

For the purpose of computing overtime, time away from the job
during the workweek, such as vacation, holidays, illness, or
approved absences, will not be included in a workweek.

Non-Law Enforcement Personnel.  Employees covered by the Fair
Labor Standards Act will receive compensatory time off for
time worked beyond the forty-(40) hour workweek, which runs
from Friday to the following  Thursday, but may receive cash
payment if there is money in the department budget for this
purpose, and the Department Head has approved the cash
payment.  The maximum accumulation of compensatory time is
twenty-four (24) hours, and it is accumulated at one and one
half (1 1/2) times the overtime hours worked.  Payment for
overtime is calculated at one and one half (1 1/2) times the
regular hourly rate.

Law Enforcement Personnel. Deputies and jailers Personnel will
receive compensatory time for time worked beyond the one
hundred seventy-one hours(171) per twenty-eight (28) day pay
period, but may receive cash payment if there is money in the
department budget, and the Department Head has approved the
cash payment.  The maximum accumulation of compensatory time
is forty (40) hours, and it is accumulated at one and one
half (1 1/2) times the overtime hours worked.  Payment for
overtime is calculated at one-half (1/2) the regular hourly
rate.

Transfer Employees.  An employee who is transferred from one department will be allowed to transfer his or her compensatory time if the new Department head is in agreement, or will be permitted to use all accumulated compensatory time prior to the transfer.

## 7.00 EMPLOYEE COMPENSATION AND ADVANCEMENT

### 7.01 PAY PERIOD

Cameron County will pay its salaried full-time and part-time
employees once every twenty-eight (28) days with an advance
every fourteen (14) days.  Hourly part-time employees will
only be paid every twenty-eight (28) day pay period without
interim advances.  In the event that a payday falls on a
County holiday, checks are distributed on the previous
working day.

### 7.02 PAYROLL DEDUCTIONS

Deductions will be made from each employee's pay for the
following:

. Federal Income Taxes;

. Social Security; and

. Employee's contribution to the County and District Retire-
  ment System

In accordance with policies and general procedures approved
by the Commissioners Court, deductions from an employee's pay
may be authorized by the employee for:

. Deferred Compensation;

. Group Health/Medical Insurance for dependents;

. Credit Union Deposits;

. United Way Contributions; or

. Supplemental policies as authorized by the Commissioners
  Court

### 7.03 PAY PLAN

Each year the Commissioners Court, under statutory budgetary
procedures, decides the number of regular  and temporary
positions allowed to each department and the salary range of

each. Requests for additional positions or changes in
position salary not granted at budget time must be submitted
to and approved by the Commissioners Court.

## 7.04 PROMOTIONS

Promotions are changes in the duty assignment of an employee
from a position in one classification to a position in
another classification in a higher pay group.  A promotion
recognizes advancement to a higher position requiring higher
qualifications and involving greater responsibility.

A promoted employee will receive a salary increase.

Promotions are approved by the department head within the
staffing pattern and budget limits approved by the
Commissioners Court.

Upon promotion, an employee is probationary in the new
position for a period of six months from the date of the
written approval of the promotion, unless extended by the
department head for an additional period of up to six months.

## 7.05 LATERAL TRANSFERS

Lateral transfers are movements of an employee between
positions in the same pay group.  Lateral transfers may be
made within the same department or among other departments of
the County with the approval of the Department Heads.

## 7.06 DEMOTIONS

A demotion is a change of duty assignment of an employee from
a position in one classification to a position in another
classification in a lower pay group.  Demotions may be made
for the purpose of voluntary assumption of a less responsible
position, as a disciplinary measure because of unsatisfactory
performance in a higher position, or as a result of
elimination of the higher positions.

## 7.07 APPROVING AUTHORITY

The Department Head is the final authority for all
departmental payrolls and for any pay increases, decreases,
or payroll transfers granted under the terms of these

policies, or the ann  l budget and salary schedules

## 7.08    PRIOR SERVICE WITH COUNTY

New hires with prior service with Cameron County may be considered for appointment above customary entry level and allowed to retain years of service if:

1. Rehire is same or similar position.
2. Slot being filled is at required pay level.
3. Was laid-off or separated due to reduction in work force and/or separated in good standing with previous department.
4. The break in service with the county must be within same fiscal year and retirement funds not withdrawn.
5. All adjustments must be executed at time of rehire and authorized by the Elected Official or Department Head.
6. Effective date of policy concurrent with fiscal year as of October 1, not retroactive.

Note:  A previous hire returning to work in the County may buy back pension credits in accordance with retirements system rules.  (Texas County and District Retirement System handbook or Personnel, Safety Risk Department for more-details.)

**Approved:  Commissioners Court 5-21-02**

## 7.09    CALCULATION OF TERMINATION PAY

Upon termination from county employment, employees who have completed the initial six-month probationary employment period will be paid for earned and unused vacation leave up to the limit of their maximum allowable accumulation based upon length of employment, and for earned and unused compensatory time up to the maximum allowable accumulation based upon job classification – law enforcement or non- law enforcement.  Payment for vacation time and compensatory time will be included in the employee's final paycheck and will be calculated in the following manner:

The total work time, allowable vacation leave time (as if worked), and compensatory time will be laid out on the calendar.  If the result covers a full pay period(s) amount.  If the result requires payment for less than a full pay period, the employee will be paid a prorated share of the full pay for the period.  Partial pay periods will be paid on an hourly basis based on the number of work hours in the year.

## 8.00 SUMMARY OF EMPLOYEE BENEFITS

### 8.01 MEDICAL

Cameron County provides group health and life insurance coverage for regular  employees who work more than Nine hundred (900) hours a year.  Premiums for employees are paid in full by the County.  Group coverage will commence the 1st of the month following a thirty (30) day grace period after the date of employment.  An eligible employee may add dependent coverage for his or her family members to any such plan at his or her expense.  This coverage will become effective in accordance with the group policy provisions. All premiums for dependent coverage shall be deducted and remitted to the insurance company on a prepaid basis.

HIPAA, Health Insurance Portability and Accountability Act of 1996, puts a limit on pre-existing condition exclusions in-group health plans and gives new enrollees credit for prior coverage. In addition to these "portability" requirements, the law also makes it illegal to use health status a reason for denying coverage, guarantees group coverage for employers with 50 or fewer employees, and guarantees renewability of group health plans.

COBRA, Consolidated Omnibus Budget Reconciliation Act, was enacted to ensure that employees and their dependents do not lose their health insurance when workers lose their jobs. COBRA requires group health insurance policies to permit group members to continue their insurance when they leave the group for anyone of a number of reasons.  COBRA's protections are temporary and are intended as a stopgap until insurance can be obtained from another source, such as a new employer.  Under both state and federal laws, continuation requires the insured to pay the full premium (including former employers share), but the insured does get the advantage of the cheaper rate. (HIPAA and COBRA complement each other)

### 8.02 SOCIAL SECURITY

All employees of Cameron County are covered by Social Security.  The County matches each employee's contribution to the Social Security System dollar for dollar.

### 8.03 RETIREMENT PLAN

Cameron County participates in the Texas County and District Retirement System.  The County contributes an amount equal to

seven percent of the employee's pay to the retirement fund to
match a seven- percent contribution that the employee makes.
Mandatory participation in the Retirement plan is required by
state law for regular employees who work more than
Nine hundred (900) hours a year. Regular retirement benefits
and disability retirement benefits are available to
retirement system members.

Terminated Employees.  A member who ceases to be employed by
Cameron County except by death or retirement, shall upon
application,  be paid in full the amount  plus interest that
he or she has contributed to the system.

A terminated employee who has less than four (4) years of
service with the County may leave his or her deposits in the
System for a period of five (5) years from the date of last
deposit, thus retaining membership and all related credited
service on deposits at the end of each year during the
period.  However, if at the end of the five (5) year period
of inactivity the inactive member  has not resumed
participation with the system, membership will terminate and
all previously earned credited service will be forfeited.  No
further interest will be earned on deposits.

A terminated employee who  has earned at least four (4) years
(but less than ten years) of credited service may leave his
or her deposits in the System for as long as desired, thereby
retaining membership and all related credited service as well
as the right to receive interest on the balance of deposits
at the end of each year.  However, additional credited
service with the System, or one of the other statewide
systems must be earned to satisfy the length of service
requirement for service retirement.

Withdrawal of Deposits in the Event of Death.  Every employee
who becomes a member of the Retirement System should
designate a beneficiary at the time of application for
membership.  The member should  review the designation from
time to time and change the designation if necessary.  In the
event of the member's death, the beneficiary  will receive
all of the member's deposits with interest provided the
member was not eligible for deferred service retirement
benefits, in which case the beneficiary may receive a monthly
income for a specific number of years, or for life.  If the
deceased member was not eligible for deferred service
retirement and had not designated a beneficiary, the member's
deposits and interest earnings are payable to the member's

estate.

## 8.04 WORKER'S COMPENSATION

All employees of Cameron County and its elected officials and appointed Department Heads are covered under a worker's compensation policy purchased by the County. The County pays the premium for this insurance. The purpose of the insurance is to provide all benefits (e.g., medical costs and lost wage benefits) afforded under the Texas Worker's Compensation Law to any County employee injured on the job who is protected by such law.

## 8.05 UNEMPLOYMENT INSURANCE

All employees of the County are covered under the Texas Unemployment Compensation Insurance Program and the County pays this tax.

## 8.06 VACATION TIME

Cameron County employees are eligible for vacation leave as set forth in Section 9.03.

9.00 LEAVE AND HOLIDAYS

9.01 DEFINITIONS

Leave time is time during regular working hours in which an employee does not engage in the performance of job duties. Leave time may be either paid or unpaid. Holidays are days designated by the Commissioners Court when County offices are closed on what would otherwise be regular business days.

9.02 APPROVAL OF LEAVE

All leave taken by County employees must be approved in writing by the employee's department head.

Department heads are responsible for determining that employees are eligible for leave and that leave time is available for use in the amounts requested by an employee.

9.03 VACATION LEAVE

Regular full-time employees earn vacation leave according to the following schedule:

| No. of Years Employed | Vacation Leave Per Year |
|---|---|
| 0 through 5th year anniversary | 10 days |
| After 5 years through 15th year anniversary | 15 days |
| After 15th year | 20 days |

The amount of vacation leave which a full-time employee is entitled is calculated by determining the number of years of continuous, uninterrupted service with the County that the employee has as of the beginning of the fiscal year.

Regular part-time employees are eligible for vacation leave in proportion to the number of hours worked in a forty (40) hour workweek.

Temporary employees are not eligible for vacation leave. With the exception of first year employees who's probationary

23

period extends beyond the fiscal year of hire, employees are
required to use their full vacation allowance before the end
of the fiscal year, or the vacation time is lost.

Employees are not eligible to take vacation leave during the
six (6) month probationary period.

Upon completion of the six (6) month probationary period, a
regular, full-time employee may take vacation leave in
accordance with the table on the preceding page at any time
during the fiscal year, subject to the Department Head's
approval.

An employee whose six (6) month probationary period extends
beyond the fiscal year of hire may take vacation leave the
subsequent fiscal year, prorated according to the number of
months worked in the fiscal year of hire. The vacation time
for said previous fiscal year must be taken within three
months after the end of the probationary period.

In the event that an employee is unable to take vacation
leave prior to the end of the fiscal year because the request
for vacation leave is denied by the Department Head due to
scheduling problems or other needs of the Department, the
employee is entitled to a grace period during the first three
(3) months of the next fiscal year. The vacation leave
will be reflected in the records for the previous fiscal
year, and must be taken by the end of the calendar year, i.e.
December 31st.

Regular part-time employees are eligible for vacation leave
according to the table on the preceding page in proportion to
the number of hours worked in a forty-(40) hour week.

Employees who are transferred from one department to another
will be transferred with accumulated vacation time, provided
the new department is in agreement, or will be permitted to
take all vacation time prior to the transfer.

Vacation leave to be taken by an employee shall be in the
amounts and at the times approved by the Department Head.
Department Heads shall schedule vacation leaves in the manner
least disruptive to the operations of the department.
Seniority will be used as the basis for resolving any
conflict among vacation dates requested by employees within a
department.

In the event that a regular employee leaves employment with
the County and has taken all vacation time prior to
completing employment for that particular fiscal year, the
County reserves the right to deduct any unearned vacation
leave salary from a final warrant (paycheck) or to make claim
for such unearned amount, but only after providing such
employee with notice and an opportunity to be heard.

## 9.04 SICK LEAVE

Regular employees are eligible for sick leave with pay not to
exceed ten (10) days per year.

Earned sick leave may be utilized by employees who are absent
from work due to:

1.  Personal illness or physical or mental incapacity;

2.  Illness or physical or mental incapacity of member of the
    immediate household;

3.  Medical, dental, or optical examinations or treatments;
    or

4.  Medical quarantine resulting from exposure to a
    contagious disease.

Medical Statement. The Department Head may request, and
employees must provide, a physician's written verification
of medical disability precluding availability for duty at
any time that sick leave benefits are requested for a period
of more than three days. The physician's written statement
should identify the nature and extent of the disability and
when the employee can be expected to work on a full-time
basis. The Department Head may also require proof of illness
in cases where the employee has compiled a poor attendance
record or has exhibited a pattern of absences.

Notification. To receive paid sick leave, an employee shall
personally communicate with his/her immediate supervisor,
Department Head, no later than one hour after the time set
for beginning work on a daily basis, except in cases where
the employee is physically unable to communicate.

Accrual of Sick Leave. Regular full-time employees accrue
sick leave benefits at the rate of eight hours per month

beginning at the date of employment, but not to exceed more than ten (10) days per year. Regular part-time employees accrue sick leave benefits based upon the proportion of the time worked to a forty-(40) hour workweek.

Accumulation of Sick Leave. Sick leave not used during the year in which it accrues, accumulates and is available for use in succeeding years. The maximum allowable accumulation of sick leave is sixty (60) days.

Exhaustion of Sick Leave. An employee who has exhausted earned sick leave benefits may request a leave of absence without pay for a period not to exceed sixty (60) days.

No advance of unearned sick leave benefits will be made except in the case of absence due to bona fide on-the-job injuries that are covered by worker's compensation benefits.

Cancellation upon Termination. Unused sick leave is cancelled upon termination of employment without compensation to the employee.

## 9.05  MILITARY LEAVE

Regular employees of the County who are members of the State Military Forces or members of any of the Reserve Components of the Armed Forces of the United States are entitled to leave of absence from their duties, without loss of time or efficiency rating or vacation time or salary, on all days during which they are engaged in authorized training or duty ordered by proper authority, for a period not to exceed fifteen (15) days in any one calendar year. Requests for approval for military leave must have copies of the relevant military orders attached. Military leave in excess of fifteen (15) days will be charged to vacation leave or leave without pay.

Regular employees of the County who enter active duty with the State Military Forces or with the Armed Forces of the United States is entitled to be restored to employment subject to the provisions of the law upon honorable release from active duty.

## 9.06 CITIZENSHIP LEAVE

Employees will be granted citizenship leave with pay for jury duty, for serving as a subpoenaed witness in an official

proceeding, and for the purpose of voting. Citizenship leave cannot be used by an employee who is absent from work for a personal case in which he or she serves in a capacity as a party to the proceeding.

9.07 LEAVE OF ABSENCE FOR NON-MEDICAL REASONS

Leave of absence for non-medical reasons is an approved absence from duty in a non-pay status. Upon approval of the Department Head, an employee may be granted up to sixty days unpaid leave of absence. Employees on leave of absence for non-medical reasons receive no compensation and accrue no benefits such as vacation or sick leave. However, previously accrued benefits are exhausted or utilized during leave of absence unless otherwise prohibited by the terms or provisions of the benefit programs. An unpaid leave of absence for non-medical reasons can be extended beyond sixty days by action of the Commissioners Court, provided the employee has worked no less than 1250 hours in the previous twelve months at time of request.

A leave of absence for non-medical reasons is appropriate for one or more of the following reasons:

1.   Educational purposes when successful completion will Contribute to the work of the County.

2.   The undertaking of a public service assignment; or

3.   Attending to important personal business.

9.08 LEAVE OF ABSENCE FOR FAMILY AND MEDICAL REASONS

Upon approval of the Department Head, an employee may be granted up to sixty (60) work days leave of absence, during any 12-month period, for family and medical reasons. The 12-month period in which the 60-work day's leave of absence occurs shall be based on a rolling 12-month period and must have worked no less than 1250 hours measured backward, from the date an employee uses any leave for family and medical reasons.

Leave of Absence for family and medical reasons is an absence from duty in a paid or unpaid status or combination thereof. Employees on leave of absence for family and medical reasons receive no compensation and accrue no benefits, such as vacation, sick leave or County contribution on retirement plan, unless said leave is in a paid status. However, employees on

27

leave of absence for family and medical reasons, whether in a paid or unpaid status, shall retain coverage under the County's group health insurance plan, assuming said coverage would have been provided if the employee had continued working. If the employee wishes to retain existing dependent coverage while on leave arrangements for direct payment of dependent health benefit premiums must be requested during non-pay leave.

Leave of absence for family and medical reasons may be extended beyond 60 work days if the employee has worked no less than 1250 hour in the previous twelve months and must be approved by the Commissioner's Court and provided there is a reasonable expectation that the employee will return to work.

**9.09 A leave of absence for family and medical reasons is**
**Appropriate for one or more of the following reasons:**

1. Family, because of the birth of a son or daughter of the employee and in order to bond with son or daughter;

2. Family, because of the placement of a son or daughter with the employee for adoption or foster care;

4. Medical, in order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition; and

5. Medical, because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

Entitlement to leave under Reasons 1. and 2. above, for a birth or placement of a son or daughter, shall expire at the end of the 12-month period beginning on the date of such birth or placement.

In the event a husband and wife are both entitled to leave, under the Reasons 1. and 2. above, and both are employed by the County, the aggregate number of work days of leave to which both are entitled shall be limited to 60 workdays, during any 12-month period. This limitation shall also apply to leave for the care of a parent with a serious health condition, as stated in Reason 3.

## EMPLOYEE ELIGIBILITY

To be eligible for an absence of leave for family and medical reasons an employee must have worked for the County for at least twelve (12) months and not fewer than 1,250 hours over the immediate twelve (12) months preceding the leave request.

## REQUIRED NOTICE AND CERTIFICATION

To be granted an absence of leave for family and medical reasons an employee must provide thirty (30) days advance notice when the leave is foreseeable based on expected medical treatment.  If the date of such treatment requires leave to begin in less than thirty (30) days, the employee shall provide such notice as soon as practical.

The Department Head may require medical certification to support a leave request.  A copy of the required certification form shall be made available by the County and shall be completed by the employee's health care provider.

## INTERMITTENT LEAVE

An employee may take leave of absence for family and medical reasons intermittently or by working a reduced leave schedule to reduce the number of work hours per day or workweek. Intermittent or reduced leave schedules are subject to approval by the Department Head, unless medically necessary and medically certified.

In the case of a planned or foreseeable intermittent leave request, the Department Head may allow an employee to temporarily transfer to an alternate position, for which the employee is qualified, if such a position is available.  In general, intermittent leave shall not be applicable to Reasons 1. and 2.  above unless both the employee and Department Head otherwise agree.

## RETURN FROM LEAVE

Upon return from leave of absence for family and medical reasons, an employee shall be restored to his or her original or equivalent position with equal pay, benefits, and applicable employment terms.  However, upon return from leave for the employee's own serious health condition, the Department Head may require a "fitness-for-duty"

certification from the employee.    The required

"fitness-for-duty" certification form shall be made available
by the County and shall be completed by the employee's health
care provider.

DENIAL OF RESTORATION

A Department Head may deny an otherwise eligible employee
restoration of equivalent position with equal pay, benefits,
and applicable employment terms, if:

1.    Such denial is necessary to prevent substantial and
      grievous economic injury to the operations of the County.

2.    The Department Head notifies the employee of the intent
      of the County to deny restoration on such basis at the
      time the County determines such injury would occur; and

3.    In any case in which the leave has commenced, the
      employee elects not to return to employment after
      receiving such notice.

An eligible employee as described in this paragraph is a
salaried eligible employee who is among the highest paid ten
(10) percent of the employees employed by the County.

REVOCATION OF LEAVE

Failure to provide the required medical certification or
medical status reports or to contact the employee's
supervisor, as may be agreed to by the employee and the
supervisor prior to commencement of leave, shall be grounds
for revoking an employee's leave of absence and for taking
disciplinary action.

9.10 USING LEAVE IN COMBINATION

Unless an employee who is absent on sick leave requests leave
without pay, upon exhaustion of sick leave, he or she will
automatically be placed on annual vacation leave status until
annual leave is exhausted.

Sick leave cannot be used for vacation purposes when vacation
leave is exhausted.
With the approval of an employee's supervisor and the
department head, other types of leave and holidays can be

used in any combination if it is determined to be in the best interest of the County and the employee.

## 9.11 HOLIDAYS

Prior to the start of the fiscal year, the Commissioners Court will adopt the Holiday Schedule for that year. Holidays can be changed from year to year by vote of the Commissioners Court.

The following days are generally observed as paid holidays for regular County employees:

| | |
|---|---|
| . New Year's Day | January 1 |
| . Washington's Birthday | February, on date according to National Observance |
| . Good Friday | Friday before Easter |
| . Memorial Day | may, on date according to National Observance |
| . Independence Day | July 4 |
| . Labor Day | 1st Monday in September |
| . Veteran's Day | November 11 |
| . Thanksgiving | 4th Thursday and Friday in November |
| . Christmas | December 24 and 25 |

**In the event that a holiday falls on Saturday, County offices will be closed the preceding Friday. When a holiday falls on Sunday, County offices will be closed the following Monday.**

**Employees whose regular day off falls on a holiday or who are required to work on a holiday will be provided an alternate day off.**
Official County holidays occurring during an employee's vacation leave or sick leave shall not be counted against leave use. A County employee who is paid out of a

combination of State and County funds is entitled to take the above mentioned holidays only, and is not entitled to take state holidays, which are not offered by the County.

All regular part-time employees (900 hours or more per year) will also observe All County holidays, but will be compensated only for the number of hours they normally or regularly would have worked on that holiday.

## 9.12 LEAVE AND HOLIDAY RECORDS

In order to be given credit for leave, an employee must have leave time available as evidenced by attendance and leave reports in his or her file.

## 9.13 FUNERAL LEAVE

Funerals. Up to three (3) consecutive calendar days absence with pay, chargeable against sick leave, shall be granted to a County employee following a death within the "immediate family," as defined below, provided that it shall be the duty of the Department Head or the designated department representative to determine that application for such leaves is justified. Furthermore, it shall be within the discretion of the Department Head or the designated department representative to limit such leave to any amount less than three (3) days.

"Immediate family," for the purpose of this section, shall include only the following relations of the County employee: father, mother, sister, brother, wife, husband, mother-in-law, father-in-law, son, daughter, son-in-law, daughter-in-law, grandchildren, or grandparents, (of either the employee or the employee's spouse).

## 9.14 OTHER TIME

Work time lost by County employees due to official closings of County Offices, for reasons such as bad weather or funeral services for county officials, will be paid and charged to "Other Time."

32

9.12  FUNERAL LEAVE



**IMMEDIATE FAMILY**
FIGURE 1.

10.00 HEALTH AND SAFE

10.01 SAFETY POLICY

It is the policy of Cameron County to make every effort to provide healthful and safe working conditions for all of its employees.

## 10.02 EMPLOYEE RESPONSIBILITIES

Employees are responsible for conducting their work activities in a manner that is protective of their own health and safety, as well as that of other employees. An accident, no matter how minor, must be reported immediately to an employee's supervisor, who must complete a first report of injury or illness TWCC-1 Form and submit it to the Personnel/Worker's Comp Clerk no later than a week after the accident.

## 10.03 EMPLOYEE SUGGESTIONS

Employees shall report immediately to their supervisors any conditions that, in their judgment, threaten the health and safety of employees or visitors. Employees are encouraged to make suggestions to their supervisors of improvements that would make the County work place safer or more healthful.

## 10.04 ON-THE-JOB INJURIES

Insurance. The County provides Worker's Compensation insurance coverage, which provides for certain benefits (e.g., medical costs and lost wage benefits) if an employee is absent from work because of a bona fide on-the-job injury for more than seven (7) days. A bona fide on-the-job injury is defined as an injury arising out of or resulting from the performance of job duties by an officer or employee of the County, which takes place during an activity which normally would be compensated by the County.

Compensation. If a County employee sustains a bona fide on-the-job injury which renders him or her unfit and unable to perform the duties of the said employee's job, then the said employee will be compensated as follows:

1.   For up to seven days the County employee receives his or her regular pay for that period with time charged against

accrued sick leave or against future sick leave benefits
to be earned.

2.  Beginning on the eighth day and for any days thereafter
    that the said employee receives payments from the
    insurance carrier in accordance with the Texas Worker's
    Compensation Law,  the said employee may use up to twenty
    (20) days earned sick leave or whatever vacation leave
    has been earned to provide compensation above the
    insurance payment (i.e. two-thirds of employee salary),
    but not to exceed an amount equal to the employee's
    regular salary, or he or she may request unpaid leave of
    absence.  For every day that an employee elects to use
    compensable leave (sick leave, vacation leave and
    compensatory time), the Department Head will deduct the
    appropriate leave category by one-third day.

3.  Since said employee is unable and unfit to perform the
    duties of his or her job, and thus, are not working for
    the County, the said employee, to the extent and for the
    time said employee is unfit and unable to work, will be
    compensated by those benefits required by law and
    provided by the County's insurance carrier. The  said
    employee will not be  paid any type of supplement in
    addition to such benefits, including payments which, when
    added to such benefits, would exceed the employee's
    regular salary.  However, during the period of disability
    (i.e., the period that said employee is unfit for duty
    and unable to perform such duties), the employee shall
    receive all other  employee benefits, including insurance
    coverage, to which he or she would be entitled had there
    been no on-the-job injury.

**Medical Attention.**  A County employee who sustains a bona
fide on-the-job injury may seek medical attention from the
medical facility or professional of his or her choice.  The
County requires periodic statements of medical condition,
which may include completion of the Work Capacity Form and a
copy of a release to return to work (from the attending
physician).

**Discharge.**  No County employee shall be discharged or
otherwise discriminated against because said employee has in
good faith filed a claim under the Texas Worker's
Compensation Law.  However, this provision in no way
precludes a discharge or disciplinary action for another
legitimate reason.
Reporting.  The Department Head (i.e., the relevant elected

official or appointed departmental supervisor) may require
that County employees on leave due to an on-the-job injury
periodically contact a supervisor to report on his or her
condition, the frequency of such reports to be determined by
the Department Head.  The failure to provide the required
medical status reports or to contact the supervisor on the
required schedule is grounds for revoking the leave and for
taking disciplinary action.

## 10.05 DRUG AND CHEMICAL DEPENDANCY POLICY

It is the intent of the County to eliminate the use, exchange
or presence of illegal drugs and to prevent the misuse of
legal drugs or chemicals, of any kind, in County offices,
facilities, and work sites.  The purpose of this policy is to
prevent harm to individuals, damage to County property, and
disruption of the work environment.

Illegal drugs are defined as any prescription drug obtained
other than through a valid prescription, as well as, the
commonly known illegal drugs such as, but not limited to
marijuana, cocaine, amphetamines and heroin.  Chemicals can be
defined but not limited to alcoholic beverages, non-prescribed
inhalants and any other chemical that disrupts the ability of the
employee to perform his/her work safely to avoid personal injury
or to others.

**Drug Free Workplace**

1.  Employees are required to refrain from the unlawful use,
    manufacture, procurement, distribution, sale, dispensing
    or possession of illegal drugs.

2.  Employees are required to refrain from the use of alcohol
    while on duty and for a sufficient time prior to the
    performance of duty so that none of the effects of the
    use of alcohol remains during job performance.

3.  Employees are required to refrain from the misuse of
    legal drugs while on duty and for a sufficient time prior
    to the performance of duty so that none of the effects of
    the misuse of legal drugs remains during job performance.

4.  Employees are required to refrain from the misuse of chemical
    Substances and materials in the work place which may result in
physical or mental impairment.

35

Personnel Actions

1.  Within thirty (30) days after receiving notice from an
    employee of a conviction of a drug or alcohol related
    criminal statute, supervisors and department heads shall
    either takes appropriate personnel
    action up to and including termination of that employee
    or require that employee to participate and
    satisfactorily complete a drug or alcohol abuse
    assistance or rehabilitation program approved by the
    County Health Department or the Texas Department of
    Health and Mental Retardation.  Once an employee is
    enrolled in a substance abuse rehabilitation program, he
    or she is protected from termination because of substance
    abuse, as long as the employee remains substance free.

2.  Supervisors and department heads shall initiate
    appropriate personnel action after review by the County
    Attorney's Office, up to and including termination for a
    first criminal offense of any employee who is found to
    use, procure,  manufacture, distribute, sell, dispense or
    possess illegal drugs, or to use chemicals such as alcohol
    or when its effects remain during job performance.

    Disciplinary action is not required for an employee who
    voluntarily identifies himself/herself as a user of
    illegal drugs prior to being identified through other
    means and who obtains counseling and/or rehabilitation
    and thereafter refrains from using illegal drugs in
    accordance with the provisions of this policy.

3.  Supervisors and department heads shall not allow any
    employee to remain on duty in a sensitive position such
    as law enforcement, medical, or safety related position,
    if that employee is found to use, manufacture,
    distribute, procure, sell, dispense or possess illegal
    drugs or is found to use alcohol when its effects will
    remain during job performance, unless that employee has
    successfully completed a rehabilitation or counseling
    program.  An employee that successfully completes a
    rehabilitation or counseling program may be allowed to
    return to duty in a sensitive position, if it is
    determined that this action would not pose a danger to
    public health or safety.

4.  Supervisors and department heads shall initiate personnel
    action to remove from employment any employee who is

36

known to use illegal drugs, or use alcohol when its effects remain during job performance, and that employee:

- Refuses to obtain counseling or rehabilitation through a program approved by the County; or

- Does not refrain from using illegal drugs or using alcohol when its effects remain during job performance after having obtained counseling or rehabilitation.

5. All medical evaluations and treatments shall remain confidential unless otherwise specifically authorized in writing by the employee.

6. The determination that an employee is using illegal drugs or using alcohol when its effects will remain during job performance may be made on the basis of direct observation, or the results of a drug test. If drug test results are positive, the employee may rebut the results with other evidence that he/she has not used illegal drugs or that the employee was not using alcohol when its effects would remain during job performance.

**County Programs and Department Responsibilities**

1. The Personnel/Safty Risk Department will develop and implement a drug-free awareness program to inform All County employees about:

   * the dangers of drug abuse in the workplace;

   * the County's drug and alcohol abuse policy;

   * drug and alcohol counseling and rehabilitation programs approved by the County or that may be available through the County's group health insurance; and

   * the range of personnel actions that may be imposed on employees for violations of the County's drug and alcohol abuse policy.

2. Any elected official or department heads whose department or office receives a grant or administers a contract financed directly by federal funds shall give a copy of the County's drug and alcohol abuse policy to each employee involved in the performance of that grant or contract.

3.  Any elected official or department heads whose department or office receives a grant or administers a contract financed directly by federal funds shall notify the appropriate federal government agency responsible for those funds of any employee who is convicted of a criminal statute relating to illegal drugs for a violation occurring in the workplace no later than ten (10) days after a conviction.

## Drug Testing

1.  Any employee who is subjected to disciplinary action because that employee is found to be in noncompliance with the County's drug and alcohol abuse policy may voluntarily request that an appropriate drug test be performed.  If that employee requests a drug test, the County shall pay for the test.  If alcohol use is suspected, the test may be a Breathalyzer, urinalysis, or blood test.  If illegal drug use is suspected, the test must be done by a certified laboratory and may be an immunoassay or a gas chromatograph-mass spectrometer test, both of which are based on a urine sample.

2.  The County shall comply with all constitutional federal and state laws that require employees to submit to drug tests, but will not extend mandatory drug testing of County employees beyond the requirements of these laws.

## Adoption and Dissemination of Policy

This policy was adopted by the Cameron County Commissioners Court on May 28, 1991.  The policy shall be incorporated in to Section 10.00 of the County's current Personnel Policies Manual, dealing with "Health and Safety," and shall be given and explained to all County employees.  Each County employee shall be required to execute a statement of receipt, acknowledgment and understanding of the policy.

11.00 PERFORMANCE EVALUATIONS

11.01 PURPOSE

The performance evaluation is designed to help the supervisor and employee measure how well the employee is doing his or her job; to provide a tool for management decisions regarding assignment, promotion and retention of employees; and to identify performance problems that need to be addressed.

11.02   PERFORMANCE EVALUATION REPORT

Each Regular County employee's work performance should be evaluated at lease once a year prior to the anniversary date of his or her employment or last promotion.  An employee may be evaluated more than once a year at the discretion of the department head.  The evaluation will be done on a form provided  by the Personnel Office.  New employees shall be evaluated at the completion of the six months of employment.

The employee's supervisor will complete the performance evaluation reports and meets with the employee in a setting that is private and free of distractions to explain and discuss the evaluation.  The supervisor will discuss with the employee any improvements in performance which appear desirable or necessary.

Employees are expected to sign the performance evaluation report to acknowledge their participation in the evaluation process, and will receive  a copy of the completed form.

Employees who are dissatisfied with their evaluation should put their objections in writing and submit copies of this statement to their supervisor and their supervisor's immediate superior, who will review the employee's complaint and determine whether remedial action is warranted.

A copy of the performance evaluation report, including any statements by the employee, will be placed in the employee's personnel file.

## 12.00 DISCIPLINE

### 12.01 REASONS FOR DISCIPLINARY ACTION

Disciplinary action may be taken against an employee for various reasons, which include but are not limited to the following examples:

- Insubordination, i.e., willful disregard of a job assignment;

- Absence without leave, including failure to notify a supervisor of sick leave and repeated tardiness or early departure;

- Endangering the safety of other persons through negligent or willful acts, e.g., horseplay, reckless use of County vehicles or equipment, etc.;



i.e., theft; misuse of vehicles, equipment, etc.;

- Conviction of a felony;

- Conviction of official misconduct or oppression;

- Falsification of documents or records;

- Unauthorized use of official information or unauthorized disclosure of confidential information;

- Unauthorized or abusive use of official authority;

- Violation of on the job safety rules;

- Violation of the The County's Sexual Harassment Policy;

- Violation of the County's Drug and Alcohol Abuse Policy;

. Other misconduct which may render an employee liable for
  disciplinary action.

12.02 PROGRESSIVE DISCIPLINE

To the greatest extent practical, the County uses the
following progressive discipline system.  The County,
however, is not obligated to use all of the steps defined
below.  Additionally, the County may begin the disciplinary
process at any level, up to and including discharge, based
upon the severity of the infraction.

. Verbal Warnings with records of each warning maintained by
  the supervisor and filed in the employee's personnel file;

. Written Reprimands to the employee which the supervisor
  must, in all cases, transmit through the department head
  to the employee's personnel file;

. Demotion;

. Suspension from duty without pay for up to thirty (30)
  days; or

. Separation by involuntary dismissal.

Except in the case of verbal warning, disciplinary action is
accomplished or preceded by written notice to the employee
involved.  A notice to an employee would include a
description of the reason for the action, and except in the
case of dismissal states the likely consequences of further
unsatisfactory performance or conduct.  Written notice of
disciplinary action is always included in the employee's
personnel file.

Disciplinary action does not automatically or permanently
disqualify an employee from consideration for future
promotion, pay increases, commendations, or other beneficial
personnel action.

12.03 SUSPENSION FOLLOWING INDICTMENT

If an employee is arrested for a felony, prior to indictment,
Or if some other conduct or behavior of an employee is brought
to the attention of a Department Head, the Department Head
may suspend the employee with pay pending investigation (external
or internal) of such alleged conduct or behavior, until indictment

41

or until other disciplinary action.  Provided that any suspension
with pay must be reviewed and approved by the Civil Division of
the Commissioner's Court and may not be extended beyond two weeks
without the consent of the Commissioner's Court.  Further provided
that the "other conduct or behavior of the employee" must be of a
nature that would, if true, impact such employee's ability to
perform their job.

A suspended employee is entitled to reinstatement to the
position held before such suspension, without loss of pay or
benefits for the period the employee did not work due to such
suspension if the indictment or information is dismissed, the
employee acquitted, or the conviction reversed on appeal.
However, in the case where an employee is a deputy or
appointee of an elected official no longer in office and the
succeeding official does not wish to hire or appoint such
deputy or appointee, the reimbursement of pay or benefits
will be only for that period in which said employee could
have worked for the original elected official.  The
suspension of an employee subsequently reinstated or
reimbursed under this subsection is not to be interpreted as
a disciplinary suspension.

## 13.00 SEPARATIONS

### 13.01 TYPES OF SEPERATION

All separations of employees are designed as one of the following types:

. Resignation;

. Retirement;

. Reduction in Force;

. Elimination of Position;

. Dismissal;

. Disability; or

. Death.

### 13.02 RESIGNATION

An employee who intends to resign must notify his or her department head in writing at least ten working days prior to the last day of work.

An employee who resigns without sufficient notice is subject to having a written reprimand placed in his or her file documenting this violation of personnel policies unless there is a valid reason approved by the Department Head for not being able to give sufficient notice.

### 13.03 RETIREMENT

Employees who retire must submit their written retirement notice to the Department Head and County Auditor in time for an application to retire to be received by the Office of the Texas County and District Retirement System at least thirty (30) days but not more than ninety (90) days prior to the date on which the retirement is to become effective.  The effective date specified in the application must be the last day of the calendar month and shall not be a date preceding the termination of the member's employment with the County.

There is no mandatory retirement age for employees of Cameron County, and employees are encouraged to remain in their

respective positions, subject to the requirements of
pertinent policies for the performance of their respective
duties.

## 13.04 REDUCTION IN FORCE

An employee may be separated for lack of work or funds.

In deciding who will be separated from their employment as a
result of a reduction in force, the County will consider, but
is not limited to, the following factors:

1.  the employee's length of service with the County,

2.  the performance record of each employee,

3.  a qualification of the employee for remaining positions.


## 13.05 ELIMINATION OF POSITION

An employee may be separated because of changes in duties or
reorganization.  The relative necessity of each position  to
the organization is considered  when  positions are
considered for elimination.

## 13.06 DISMISSAL

A new employee may be dismissed at any time during the
initial six (6) month or the extended probationary period
when, in the judgment of the Department Head, the quality and
performance of his or her work does not merit continuation as
a County employee.



An employee who has completed his or her initial probationary
period may be dismissed by the Department Head for various
reasons, which include but are not limited to those listed in
Section 12.01.  All employees remain subject to performance
evaluations to be conducted at least once a year.

There is no tenure or permanent lifetime employment or
appointment with Cameron County.

13.07 DISABILITY

If it is determined that an employee has a disability as
defined by law, and that employee can no longer perform the
duties of his or her job, the County will make a reasonable
effort to accommodate such employee to the extent such an
accommodation will not cause an undue hardship on the County.
If reasonable accommodation is not possible, the employee may
be dismissed or reassigned, as is allowed by state and
federal law       .

13.08 DEATH

If a County employee dies, his or her estate receives all
earned pay and any earned and payable benefits.

13.09 EXIT INTERVIEWS AND RECORDS

Employee Separation forms.  An Employee Separation Form must
be filled out by the supervisor or Department Head for each
employee who is separated, noting the reason for the
separation.  The Department Head shall keep a copy of the
form and submit the original to the Payroll Clerk and a copy to
the Personnel Department for further processing.

Payroll Attendance Worksheet.  Information regarding employee
separations must also be reported to the Payroll Clerk on the
Payroll Attendance Worksheet and must reflect any vacation and/or
comp-time pending.

Exit Interview Form.  Each supervisor separating an employee will
fill out an employee exit interview form to be submitted to the
Personnel Office.  Whenever possible, the Personnel Administrator
will discuss the separation in an interview with the employee.

45

14.00 GRIEVANCES

14.01 POLICY

It is the policy of Cameron County, insofar as possible, too
prevent the need for employee grievances and to deal promptly
with those which occur.

14.02 GROUNDS FOR A GRIEVANCE

Any difference or disagreement between the County and any
employee who has completed his or her initial evaluation
period involving the interpretation, application, or
enforcement of any of the provisions of this Handbook, except
those involving involuntary dismissal, shall constitute a
grievance and must be taken up by the employee in the manner
set forth in the following sections.  The grievance procedure
provided in the following sections is not available to the
employee who has been involuntarily  dismissed from
employment by the County or to the employee who has not
completed his or her initial evaluation period.

14.03  INFORMAL GRIEVANCE

The first step in the grievance procedure is for the employee
to resolve the grievance by an informal conference with his
or her immediate supervisor within ten (10) working days
after the events upon which the grievance is based.   If
informal conference with the supervisor does not result in a
resolution of the problem(s) that is satisfactory to the
employee, he or she may file a formal grievance.

14.04 FORMAL GRIEVANCES

Formal grievances should be in writing, signed by the
employee, and presented to the employee's Department Head
within ten working days after the informal conference is
held.   The employee should state what action he or she would
like to see taken to resolve the grievance.

Within five (5) working days after being presented with a
formal grievance, the Department Head shall elect to either:

1.   request a recommendation from the Advisory Grievance
     Committee appointed by the Commissioners Court, in
     accordance with the procedures set forth in Section
     14.05; or

2.  make a determination of the grievance without requesting
    a recommendation from the Advisory Grievance Committee
    appointed by the Commissioners Court.

If the Department Head elects to make a determination of the
grievance without requesting a recommendation from the
Advisory Grievance Committee appointed by the Commissioners
Court, he shall:

1.  investigate and make a decision on the grievance within
    five (5) working days from the date of his initial
    election; and

2.  Communicate his decision in writing to the employee
    within two (2) working days after it is made.

The manner of investigating the grievance shall be left to
the discretion of the Department Head, but shall involve, at
a minimum, a review of the employee's personnel file and any
other documents relevant to the grievance, and a discussion
with the employee and a discussion with the employee's
immediate supervisor concerning the events upon which the
grievance is based.

In the case of elected Department Heads, the decision of the
Department Head is final.  In the case of Department Heads
appointed by the County Judge and/or the Commissioners Court,
appeals may be made to the Commissioners Court (in executive
session).  Department Heads appointed by a board may choose
to recommend a method of appeal to that board.

## 14.05 ADVISORY GRIEVANCE COMMITTEE PROCEDURES

If a Department head presented with a formal grievance elects
to request a recommendation from the Advisory Grievance
Committee appointed by the Commissioners Court, the Advisory
Grievance Committee shall convene a meeting within ten (10)
working days after the Department Head requests a
recommendation.  The purpose of the meeting shall be to
uncover sufficient facts to allow the Advisory Grievance
Committee to determine whether the actions upon which the
grievance is based are in violation of the County Personnel
Policies as set forth in this Manual.  It is not an
adversarial proceeding.

Within five (5) working days after the meeting is adjourned,

47

the Advisory Grievance Committee shall transmit a written
letter to the Department Head stating one of the following
conclusions:

1.  "After completion of an investigation of this matter in
    accordance with the provisions of Section 14.05 of the
    Cameron County Personnel Policies Manual, it is the
    opinion of the Advisory Grievance Committee appointed by
    the Commissioners Court that the County Personnel
    Policies as set forth in the Cameron County Personnel
    Policies Manual have been followed.  It is therefore our
    recommendation that the formal grievance be denied"; or

2.  "After completion of an investigation of this matter in
    accordance with the provisions of Section 14.05 of the
    Cameron County Personnel Policies Manual, the Advisory
    Grievance Committee is not satisfied that the County
    Personnel Policies as set forth in the Cameron County
    Personnel Policies Manual has been followed.  It is
    therefore our recommendation that the action requested
    by the employee in the formal grievance be [granted]
    [modified as follows:  {recommended action to be
    taken}]."

After receipt of the recommendation from the Advisory
Grievance Committee, the Department Head shall:

(1)  investigate and make a decision on the grievance within
     five (5) working days; and

(2)  communicate his decision to the employee in writing
     within the two-(2)  working days after it is made.

The manner of investigating the grievance shall be left to
the discretion of the Department Head, but shall involve, at
a minimum, a review of the employee's personnel file and any
other documents relevant to the grievance.

In the case of elected Department Heads, the decision of the
Department Head is final.  In the case of Department Heads
appointed by the County Judge and/or the Commissioners Court,
Appeals may be made to the Commissioners Court (in executive
session).  Department Heads appointed by a board may choose to
recommend a method of appeal to that board.

15.00 PERSONNEL FILES

15.01 GENERAL

Personnel files are maintained by each Department Head or elected official. The record copy of all personnel information related to an employee shall be filed in the employee's personnel file.

Most information in an employee's personnel file is open to the public unless disclosure of specific items is prohibited or not required by law. New employees will be asked to sign a Disclosure of Home Address and Telephone Number Form, indicating whether or not they wish to allow public access to their home address and telephone number. No information from any record placed in an employee's file will be communicated to any person or organization except by a Department Head, the County Auditor, the Personnel Administrator, or by an employee authorized to do so by one of these persons.

An employee or his or her representative designated in writing, may examine the employee's personnel file upon request during normal working hours at the County offices. Exceptions to this policy may be made when the records are related to pending or reasonably expected litigation .

Employees are expected to inform their supervisors of any changes in or corrections to information recorded in their individual personnel file such as home address, telephone number, person to be notified in case of emergency, or other pertinent information.

15.02 PERSONNEL ACTION FORM

The Personnel Action Form is the official document for recording and transmitting to the personnel file each personnel action. This form is used to promote uniformity in matters affecting:

. Position Title and Classification (i.e., Demotion or Promotion),

. Annual Salary (i.e., Pay increase or decrease), and

. Other actions affecting the employee's status  (i.e.,
  Separation).

Each Personnel Action Form becomes a permanent part of the
employee's personnel file, and a copy is given to the
employee.

## 15.03 CONTENTS OF PERSONNEL FILES

An employee's personnel file contains;  a copy of the
employee's application for employment, a signed copy of the
employee's acknowledgment of receiving the Personnel Policies
Handbook, Insurance Handbook, and Retirement System Handbook,
the class (job) description for the position he or she
currently occupies, personnel action forms, performance
evaluation records, records of any citations for excellence
or awards for good performance, records of leave accrued and
taken, and any other pertinent information having a bearing
on the employee's status.

## 15.04 LEAVE RECORDS

Official records of annual leave and sick leave accrual and
of leave the Department will keep usage for each employee
Head.  Leave records are updated at the end of each month. Leave
balances are shown on the official record to reflect any remaining
Leave the employee is entitled.

16.00 COUNTY BUSINESS TRAVEL

## 16.01 Reimbursement

The Commissioner's Court will reimburse county employees traveling out of the county on county business, for such travel only upon submitting the appropriate travel expense forms and prior approval.

## 16.02 Travel Advances

Travel advances will be issued only if Commissioner's Court has approved travel before date of travel.

## 16.03 Available Funds

All travel expenditures requisitioned must be encumbered on official encumbrance form prior to actual travel to insure that actual funds are available.  If travel is for a seminar, conference, etc. a copy of the pamphlet or brochure must be attached.

## 16.04 Hotel Allowances

The maximum daily allowance for hotel stay is $100/nightinclusive of all applicable taxes. Exception to this rule must have prior approval by Commissioner's Court. Except in the following cities.

| City | Per Diem |
|------|----------|
| Washington D.C. | $200.00 |
| New York City | $200.00 |
| Mexico City | $200.00 |

The per diem is per person per night. If a room is shared, than accommodations costing more than $100.00 per night can fall within the policy guideline. For example:

| | |
|------|----------|
| Hotel Room/night | $125.00 |
| State Hotel Tax | $ 9.00 |
| City Hotel Tax | $ 10.00 |
| Total | $144.00 |

Allowable for 2 Occupants @ $100.00 pre diem each is $200.00.

16.05 Association Seminars

Travel for an association's annual seminar and hotel rates have been negotiated and a block of rooms reserved; than, the negotiated room rate plus tax will be the allowed rate. A copy of the association seminar announcement will be required with request.

If no more blocked rooms are available due to late enrollment the normal per diem of $100.00 applies.

**Exceptions**
Overnight lodging will not be allowed for travel within four county areas, which includes Cameron, Willacy, Hidalgo and Starr Counties.

Seminars or conventions held at South Padre Island may be excluded from the four county policies. Officials with offices in Port Isabel or South Padre Island will not be reimbursed for overnight stay.

16.06 **Expense Verification**

Receipts for all expenses incurred while on travel for county business with the exception of meals. (hotel/motel, taxi/car rental, handbooks or resource material, etc.)

Expenses for daily travel (not overnight) will be reimbursed only total time exceeds six (6) hours. Receipts are required for all expenditures including meals. Meals must not exceed the allowable amount as per meal schedule.

**Meal Expenses**

Expenses for meals when travel time is less then six (6) will not be refunded.

The employee will be reimbursed per meal based on travel time from 7:00 A.M. to 7:00 P.M.  departure if before 7:00 A.M.. Evening meal if return at 7:00 P.M. or after.

| | |
|---|---|
| Morning Meal | $ 7.00 |
| Noon Meal | $ 8.00 |
| Evening Meal | $10.00 |

Transportation Expenses

The County will reimburse for actual expenses on travel by Air,
Bus, Train or Personal Vehicle At the lowest possible cost to
Cameron County.

Employees traveling outside the county for 500 or more miles round
trip will be reimbursed at the rate not to exceed the cost of
round trip airfare coach class. Amounts in excess of that cost
must be submitted to the Commissioners Court for approval one-
month in advance. Extradition of prisoners is exempt.

Authorized use of personal vehicle is differentiated by two
classifications. Those that are awarded a car allowance for travel
expenses incurred while performing job functions within Cameron
County. Those who receive mileage reimbursement for travel on
county business in or out of Cameron County as needed.

Mileage reimbursement Guide:

|  |  |
|---|---|
| In County Travel | $0.25 |
| Out of County | $0.20 |

(Employees receiving car allowance may receive mileage for travel
outside Cameron County.)

On regular workday mileage is calculated from employees place of
work. The employees required to travel on a non-working day will
initiate travel mileage from their home.

It is recommended that Cameron County employees traveling to the
same conference/seminar in county or personal vehicle share
transportation. When more than one employee travel in the same
personal vehicle only one may claim mileage reimbursement. They
are allowed other travel reimbursements for eligible expenses.

## 16.07 Responsibility

It shall be the responsibility of the Official or Department Head
to use out-of-county travel funds for official county business
only. These funds are budgeted for the purpose of allowing
Officials, Department Heads and their employees to attend various
association meetings, training seminars, education seminars, and
required law enforcement travel relating to prisoner and
probationers.

Officials and Department Heads are responsible for the strict
enforcement of these policies

## 17.00 EXEMPT POSITIONS

Except as otherwise provided, only elected County officials
are exempt from these personnel policies.