IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL   1 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | : | |

**DEFENDANT TONY YZAGUIRRE'S MOTION TO DISMISS JOINDER
OF PLAINTIFFS ALVARADO AND GARCIA,
MOTION TO DISMISS CLAIMS OF PLAINTIFFS'
ALVARADO AND GARCIA UNDER RULE 12(b)(6), and
UNDER QUALIFIED IMMUNITY**

**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756
**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile:  (956) 428-2954

ATTORNEYS FOR DEFENDANT TONY
YZAGUIRRE, Assessor-Collector of Cameron
County and Director of Cameron County
Automobile Crimes Enforcement Task Force in
his Individual Capacity

i

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I. Nature of the Cases Status of Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The "joinder" of Plaintiffs Alvarado and Garcia without
           leave of Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Plaintiff Alvarado's Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.    Plaintiff Garcia's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    Alvarado and Garcia Must Obtain Leave Before They Can
           Join in First Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    Standard of Review for Rule 12(b)(6) Dismissal . . . . . . . . . . . . . . . . . . . 7

    C.    Individual Defendant Is Entitled to Qualified
           Immunity Unless Clearly Established Law Would Have
           Informed Him That His Alleged Actions Were Unconstitutional . . . . . . . . 8

    D.    Elements of First Amendment Retaliation Claim . . . . . . . . . . . . . . . . . . . 10

    E.    Alvarado Fails to Allege She Exercised Right of Speech . . . . . . . . . . . . . 11

F.   Alvarado fails to allege any association right protected by
the First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

G.   Alvarado does not allege any adverse employment action . . . . . . . . . . . . 13

H.   Garcia fails to allege protected speech on matter of public concern . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page

Cites:

*Alton v. Hopgood*, 994 F.Supp. 827 (S.D.Tex. 1998)
    *aff'd* 168 F.3d 197 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Anderson v. Creighton,* 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Pasadena I.S.D.,* 184 F.3d 439
    (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Benningfield v. City of Houston,* 157 F.3d 369
    (5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999) . . . . . . . . . . . . . . . . . . . 15, 17

*Bradshaw v. Pittsburg I.S.D.,* 207 F.3d 814
    (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Brady v. Ft. Bend County*, 58 F.3d 173 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Breaux v. City of Garland*, 205 F.3d 150
    (5th Cir. 2000), cert. denied, 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . 10, 14

*Campbell v. City of San Antonio*, 43 F.3d 973
    (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Carey v. Population Serv. Int'l.*, 431 U.S. 678 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*County of Sacramento v. Lewis*, 523 U.S. 833 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fiesel v. Cherry*, 294 F.3d 664 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Finch v. Fort Bend I.S.D.,* __ F.3d ___, 2003
    WL 21290879 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Foley v. Univ. of Houston,* 324 F.3d 310 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . 5, 18

*Fyfe v. Curlee,* 902 F.2d 401 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Gillum v. City of Kerrville,* 3 F.3d 117 (5th Cir. 1993),
    *cert. denied,* 510 U.S. 1072 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Graham v. Connor,* 490 U.S. 396 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Griswald v. Connecticut,* 81 U.S. 479 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Guidry v. Bank of LaPlace,* 954 F.2d 278
    (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gutierrez v. City of San Antonio,* 139 F.3d 441
    (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harbury v. Deutch,* 233 F.3d 596 (D.C. Cir. 2000)
    *rev'd on other grounds, sub. nom.*
    *Christopher v. Harbury,* 536 U.S. 403,
    122 S.Ct. 2179 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Henrise v. Horvath,* 174 F. Supp.2d 493
    (N.D. Tex. 2001), *aff'd in part, rev'd in part,*
    45 Fed. Appx. 323 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ibarra v. Houston I.S.D.,* 84 F.Supp.2d 825
    (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 16, 17

*Jones v. Collins,* 132 F.3d 1048 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kaiser v. Garrett,* 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McClelland v. Miss. Power & Light Co.,* 526 F.2d 870
(5ᵗʰ Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McClendon v. City of Columbia,* 305 F.3d 314
(5th Cir. 2002)(en banc),
*cert. denied,* 123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Meadowbriar Home for Children, Inc. v. Gunn,*
81 F.3d 521 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Noyola v. Texas Dept. of Human Resources,*
846 F.2d 1021 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Ortiz v. Burgos,* 807 F.2d 6 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Petta v. Rivera,* 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pierce v. Texas Dept. of Criminal Justice,* 37 F.3d 1146
(5th Cir. 1994), *cert. denied,* 514 U.S. 1107 (1995) . . . . . . . . . . . . . . . . . . . . 13, 14

*Roe v. Texas Dept. of Protective and Reg. Serv.,*
299 F.3d 395 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Roe v. Wade,* 410 U.S. 113 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*Schultea v. Wood,* 47 F.3d 1427
(5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Serna v. City of San Antonio,* 244 F.3d 479
(5th Cir. 2001), cert. denied, 534 U.S. 951 (2001) . . . . . . . . . . . . . . . . . . . . . 10, 14

*Siegert v. Gilley,* 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Organization of Foster Families,*
431 U.S. 816 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Summit Office Park v. U. S. Steel Corp.,* 639 F.2d 1278
(5ᵗʰ Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Teague v. City of Flower Mound,* 179 F.3d 377
    (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

*Thompson v. Ashe,* 250 F.3d 399 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Upshaw v. Alvin I.S.D.,* 31 F. Supp.2d 553
    (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Vanderhurst v. Colorado Mt. College Dist.,*
    16 F. Supp.2d 1297 (D. Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Wallace v. Texas Tech Unv.,* 80 F.3d 1042
    (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Wilson v. UT Health Center,* 973 F.2d 1263
    (5th Cir. 1992), cert. denied, 507 U.S. 1009 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 17

*Woods v. Edwards,* 51 F.3d 577 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15


Texas Transportation Code:

§ 502.002(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


Federal Rules of Civil Procedure:

Rule 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Rule 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rule 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Statutes:

42 USC § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10


Texas Administrative Code:

§ 17.22(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 17.22(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**DEFENDANT TONY YZAGUIRRE'S MOTION TO DISMISS JOINDER
OF PLAINTIFFS ALVARADO AND GARCIA,
MOTION TO DISMISS CLAIMS OF PLAINTIFFS'
ALVARADO AND GARCIA UNDER RULE 12(b)(6), and
UNDER QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant Tony Yzaguirre, Jr.**, and files this his Motion to Dismiss

Joinder of Plaintiffs Alvarado and Garcia, Motion to Dismiss Claims of Plaintiffs' Alvarado

and Garcia Under Rule 12(b)(6), and Under Qualified Immunity, and would respectfully

show the Court as follows:

I. <u>Nature of the Cases Status of Proceeding</u>

Plaintiffs Diamantina Alvarado and Linda Garcia appeared by joining in First

Amended Complaint filed on June 17, 2003 (Dkt. #8). They have sued Defendant Yzaguirre

individually under 42 U.S.C. § 1983 for depriving them of rights under the First Amendment,

U.S. Constitution, i.e., for freedom of speech and freedom of "association."

Defendant Yzaguirre moves to dismiss the "joinder" of Alvarado and Garcia because

they did not obtain leave of court as required by Federal Rules of Civil Procedure 21, 24.

Alternatively, he moves to dismiss their complaints for failure to state a claim under Federal

Rule of Civil Procedure 12(b)(6); and, upon qualified immunity. Alternatively, Defendant

requests the Court order they file a Rule 7 Reply on Qualified Immunity.

## II. Issues Presented

1.     Whether Plaintiffs Alvarado and Garcia required leave of court before they could join in the First Amended Complaint.

2.     Whether Plaintiff Alvardo has alleged protected speech if she does not allege she made any statements.

3.     Whether Alvarado has alleged a violation of any right of association protected by the First Amendment if:

     a.     Her only alleged "association" with Plaintiff Weaver is that they are adult sisters; and

     b.     Her only alleged "association" with Plaintiff Cantu was social.

4.     Whether Plaintiff Alvarado has alleged an "adverse employment" action if:

     a.     Her alleged transfer was merely a personal inconvenience, or

     b.     She has failed to allege behavior deliberately directed by Defendant Yzaguirre towards her that would amount to a "constructive discharge."

5.     Whether Defendant Yzaguirre is entitled to qualified immunity against Alvarado's alleged claims of retaliation for association or imputed speech.

6.     Whether Plaintiff Garcia has alleged facts showing that her alleged speech was on a matter of concern to the general public.

7.     Whether Defendant Yzaguirre is entitled to qualified immunity as to Garcia's alleged retaliation against protected speech.

### III.  Factual Background

**A.    The "joinder" of Plaintiffs Alvarado and Garcia without leave of Court.**

Plaintiffs Cantu, Munoz and Weaver filed their original complaint on May 28, 2003. (Dkt # 1).  On June 17, 2003 they filed their First Amended Complaint, in which Plaintiffs Alvarado and Weaver were joined as Plaintiffs.  Dkt #8.  The new Plaintiffs did not seek leave of court nor did the court grant it.

**B.    Plaintiff Alvarado's Allegations.**

Alvarado is Plaintiff Weaver's sister.  First Amended Complaint ("Am. Comp."), ¶ 53.  After her sister began a vacation in May 2002, Alvarado claims she begin to encounter the "cold shoulder" and hostility from her co-workers.  Am. Comp., ¶¶ 56, 57.  Her sister was fired in November, 2002.  Am. Comp. ¶ 52.

Alvarado claims she worked part time at the Dillards Department store in Brownsville, Texas.  Am. Comp. ¶ 58.  She alleges that on February 26, 2003, Plaintiff Cantu came by the store to inquire about making a payment.  Am. Comp. ¶ 58.  Alvarado alleges that, while she and Cantu were talking, Defendant's wife saw them talking.  Am. Comp. ¶ 58.  Alvarado alleges two days later was transferred to Defendant Yzaguirre's San Benito office.  Am. Comp. ¶ 59.  Alvarado alleges her transfer was in retaliation for speaking to Cantu at Dillard's; she alleges that her transfer was "adverse" because it a further drive for her to drive from her home and from her part time job at Dillard's.  Am. Comp. ¶ 59.

Plaintiff claims that she was "constructively discharged" on March 24, 2003. Am. Comp. ¶ 63. She claims this resulted from the hostility from co-workers. Am. Comp. ¶¶ 56, 57 and 62. The "hostile" acts were that a co-worker told her that Yzaguirre would not pay for continuing education and that she must move her house plants from the office in which she no longer worked. Am. Comp. ¶¶ 59, 61, 64. She alleges Plaintiff Garcia told her that Defendant wanted to fire her when Plaintiff Weaver was fired but he needed her for the "tax rush" season. Am. Compl. ¶ 60.

Plaintiff Alvarado claimed this occurred in retaliation for (1) Plaintiffs' Cantu's speech was "imputed to her," and (2) her "association" with Cantu at Dillard's and with Weaver by being her sister. Am. Comp. ¶ 64. The Amended Complaint, ¶ 83, alleges a general conclusion that Plaintiffs Cantu, Munoz, Weaver and Alvarado "each associated together" to discuss Defendant's unlawful practices. However, Alvarado's only specific alleged "association" is the retaliation for talking to Cantu at Dillard's and being Weaver's sister. Am. Comp. ¶64. She does not specifically allege any other "association."

## C.    Plaintiff Garcia's Allegations

Plaintiff Garcia alleges only that she engaged in protected speech under the First Amendment. Am. Comp. ¶ 65.[1] Her "speech" was a written reprimand she gave to Mr. Barreda, an employee she supervised. Am. Comp.¶ 65. A copy of the reprimand is attached

---

[1] Although the Section IV. F. Heading in the Amended Complaint may indicate Garcia makes a First Amended "association" claim, it appears no where. She alleges retaliation only for speech. Am. Comp. ¶ 67. There is no allegation she associated with the other Plaintiffs. Am. Comp. ¶¶ 79-87.

as Exh. A.[2] Plaintiff Garcia urges that her "speech" was about Barreda's "unlawful actions." Am. Comp.¶ 67. However, Exh. A shows that she only reprimanded him for "improper procedures." The complaint was only that he could not accept a vehicle registration renewal without some proof the owner resided in Cameron County and upon his supervisor's approval. Exh. A. Exhibit A shows that the writing is a reprimand and it went only to the employee and Plaintiff Garcia's superiors.

## IV. Summary of the Argument

To defeat qualified immunity, Plaintiff must identify *specific* facts concerning the speech or association involved and the alleged retaliation (i.e., the adverse employment action). *Foley v. Univ. of Houston,* 324 F.3d 310, 318 (5th Cir. 2003); *Henrise v. Horvath,* 174 F. Supp.2d 493 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part,* 45 Fed. Appx. 323 (5th Cir. 2002) (unpublished).[3] Here, Plaintiffs have wholly failed to allege specifics on any of the issues; either their vague allegations raise no violation at all or fail to show clearly established rights were violated.

With respect to Alvarado, she alleges no facts that show she engaged in speech or had any association rights protect by the First Amendment. It is dubious that "imputed" speech

---

[2] The attachment of this writing does not convert this into a motion for summary judgment under Federal Rule of Civil Procedure 56. When a complaint refers to a writing, but does not attach it, the court may consider the document for the purpose of determining the sufficiency complaint under Rule 12(b)(6). *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000). This will not convert it into a Rule 56 motion and Defendant does not wish such a conversion.

[3] A copy of the 5th Circuit's unpublished opinion is attached to the companion motion to dismiss the claims of the remaining plaintiffs.

is protected when the First Amendment does not usually protect silence; even if it did, it was not clearly established law in 2002 that merely talking to Plaintiff Cantu at Dillards and being Weaver's sister "imputes" their speech to Alvarado. The First Amendment does not protect the "association" of simply being adult siblings; even if did, the law in 2002 did not clearly establish such a right. Finally, she does not allege facts establishing an adverse employment action or that these actions are attributable to Defendant personally.

With respect to Garcia, to show her speech was a matter of public concern she must state facts that her speech actually pertained to *serious* official misconduct or corruption. The written reprimand falls far short of this standard. Moreover, the form and context show it was made solely within the context of an employment matter.

### V.  Argument and Authorities

**A.    Alvarado and Garcia Must Obtain Leave Before They Can Join in First Amended Complaint**

Alvarado and Garcia were not plaintiffs in Original Complaint, filed May 28, 2003. They 'joined' when the other plaintiffs filed their First Amended Complaint on June 17, 2003. No leave of court was obtained.

Federal Rule of Civil Procedure 15(a) provides that a party may amend that party's pleading without leave before a responsive pleading is served. Federal Rule of Civil Procedure 21 requires a motion and order to add or drop parties; Federal Rule of Civil Procedure 24 requires an application from anyone desiring to intervene.

The Fifth Circuit has held that, if no responsive pleading has been file, Rule 15(a) permits the plaintiff to add or drop defendants without leave of court. *McClelland v. Miss. Power & Light Co.,* 526 F.2d 870, 873 (5th Cir. 1976). However, the Fifth Circuit has said that rule does not apply when the amended complaint adds new plaintiffs with different causes of action. *Summit Office Park v. U. S. Steel Corp.,* 639 F.2d 1278, 1282-84 (5th Cir. 1981)(distinguishing *McClelland).* Thus an amended complaint adding new plaintiffs still requires leave of court. *Summit Office Park,* 629 F.2d at 1284.

## B.    Standard of Review for Rule 12(b)(6) Dismissal

Defendant Yzaguirre moves to dismiss the federal claims based on (1) failure to state a claim, and (2) qualified immunity.

Under Rule 12(b)(6), the Court must accept the allegations as true and must review them in the light most favorable to the Plaintiff, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal,* 75 F.3d 190 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that can be proven consistent with the allegations. *Meadowbriar Home for Children, Inc. v. Gunn,* 81 F.3d 521, 529 (5th Cir. 1996). However, the complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992).

Plaintiff has a heightened burden to plead specific facts defeating Defendants' qualified immunity from § 1983 claims. *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.

1995) (en banc). The complaint must state facts defeating qualified immunity, not mere legal

conclusions. *Schultea*, 47 F.3d at 1433.

The court may order Plaintiff to file a reply under FED.R.CIV.PR. 7 that states specific

facts that defeat the qualified immunity defense raised by Defendants' answer. *Schultea*, 47

F.3d at 1434.

**C.     Individual Defendant Is Entitled to Qualified
        Immunity Unless Clearly Established Law Would Have
        Informed Him That His Alleged Actions Were Unconstitutional**

Qualified immunity protects a public official from claims under 42 USC § 1983 if a

reasonably prudent official would not know the actions violated clearly established

constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The public official

will have qualified immunity if the conduct was objectively reasonable under the existing

federal law. *McClendon v. City of Columbia*, 305 F.3d 314, 327 (5th Cir. 2002)(en banc),

*cert. denied*, 123 S.Ct. 1335 (2003).

The U.S. Supreme Court has set out a clear, two step process to determine whether

the complaint can defeat qualified immunity. Once the defense of qualified immunity is

alleged, the trial judge must first determine whether the plaintiff has alleged a constitutional

violation at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895,

899 (5th Cir. 1998). The court must then determine whether defendant's actions violated

"clearly established" constitutional law at the time of the conduct and whether the defendant's

actions were objectively reasonable. *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900.

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 396, 393 (1989). The first inquiry is to isolate the precise provision of the federal Constitution that is allegedly infringed. *Graham*, 490 U.S. at 394. Here, Plaintiffs allege only one constitutional provision: the First Amendment.

For constitutional law to be "clearly established," plaintiff must prove more than the broad contours of established rights or broad legal truisms. *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995). The contours of the constitutional right must be defined well enough so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law. *McClendon,* 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515-16, (2002); *McClendon,* 305 F.3d at 329.

To determine what law was "clearly established," the Court should consult U.S. Supreme Court and Fifth Circuit precedent. *Brady v. Ft. Bend County*, 58 F.3d 173, 175-76 (5th Cir. 1995); *Alton v. Hopgood*, 994 F.Supp. 827, 835, n. 5 (S.D.Tex. 1998) *aff'd* 168 F.3d 197 (5th Cir. 1999). In some cases, the court may then look to whether a consensus exists in sister circuits. *McClendon,* 305 F.3d at 329. If reasonable officials could disagree, the officer has qualified immunity. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Even if some consensus exists that a right exists, its application must be identified

with obvious clarity to the conduct involved in the case at hand. *McClendon,* 305 F.3d at 332-33.

**D.    Elements of First Amendment Retaliation Claim**

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The employee must (1) suffer an adverse employment action, (2) show that his/her speech in question was a matter of public concern, (3) show that his/her interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio,* 244 F.3d 479, 482 (5th Cir. 2001), *cert. denied,* 534 U.S. 951 (2001); *Breaux v. City of Garland,* 205 F.3d 150, 156 (5th Cir. 2000), *cert. denied,* 531 U.S. 816 (2000). A similar analysis applies when plaintiff claims retaliation for exercise of association rights protected by the First Amendment. *Breaux,* 205 F.3d at 157, n. 12; *Anderson v. Pasadena I.S.D.,* 184 F.3d 439, 444 (5th Cir. 1999); *see also Fyfe v. Curlee,* 902 F.2d 401, 403 (5th Cir. 1990).

Strictly speaking, the First Amendment does not protect a "right of association". *City of Dallas v. Stanglin,* 490 U.S. 19, 23-24 (1989). Rather, the First Amendment embraces the right to associate only in two circumstances: (1) the choice to enter into certain intimate human relationships ("familial association"), or (2) an association for the purpose of engaging in activities protected by the First Amendment, as such speech, exercise of religion, etc. ("expressive association"). *Stanglin,* 490 U.S. at 24; *Wallace v. Texas Tech Unv.,* 80

F.3d 1042, 1051 (5th Cir. 1996). The right of "expressive association" extends to groups organized to engage in speech. *Stanglin*, 490 U.S. at 25. The "familial association" right recognized under the First Amendment has only been recognized in the area of marriage, procreation and child rearing. *Stanglin*, 490 U.S. at 24-25; *Fyfe*, 902 F.2d at 403. There is no recognized right of "social association" protected under the constitution. *Stanglin*, 490 U.S. at 25; *Wallace*, 80 F.3d at 1051; *Ibarra v. Houston I.S.D.*, 84 F.Supp.2d 825, 837 (S.D. Tex. 1999).

## E.    Alvarado Fails to Allege She Exercised Right of Speech

Alvarado does not allege that she spoke or made any statements; rather, she alleges the speech of Plaintiffs Cantu and Weaver are "imputed to her." Am. Comp.¶¶ 59, 64. Alvarado does not claim she was present when Cantu or Weaver spoke or that she expressly adopted their statements. There is no protection from retaliation against silence or for other people's statements. See *Jones v. Collins*, 132 F.3d 1048, 1053 (5th Cir. 1998); *Vanderhurst v. Colorado Mt. College Dist.*, 16 F. Supp.2d 1297, 1305 (D. Colo. 1998). In *Jones*, a school principal was demoted because her superiors mistakenly believed that she had made statements critical of school policy to the public. 132 F.3d at 1050. The Fifth Circuit upheld summary judgment on qualified immunity; a claim of retaliation based on a mis-perception in the absence of any actual statements was not a constitutional violation. *Id.* at 1053. Her silence was not "speech" because it was not intended and could not be construed to be expressive conduct. *Id.* at 1054.

In *Vanderhurst*, a teacher claimed retaliation under First Amendment because (among other things) he allowed members of his sophomore class to criticize freshmen students during class hours. 16 F. Supp.2d at 1299. The district court determined it could not impute the speech of the sophomore class to him, particularly when he was not in the classroom when they spoke, and dismissed that claim. *Id.* at 1305.

**F.    Alvarado fails to allege any association right protected by the First Amendment**

The only "association" Alvarado alleges she had with Plaintiff Cantu was a conversation at Dillard's about paying a bill. At best, this alleges nothing more than social contact which is not protected under the First Amendment. See, e.g., *Stanglin*, 490 U.S. at 25 (teenagers had no "association right" to meet with older teenagers and young adults at dance hall); *Wallace*, 80 F.3d at 1050 (college basketball coach had no "associational right" with student team players); *Ibarra*, 84 F. Supp.2d at 837 (school superintendent had no "association right" to socialize publicly with state politicians).

Alvarado claims that her right to "familial association" was injured because she is Plaintiff Weaver's sister. Am. Comp. ¶ 83. Alvarado has limited her association claim to association rights protected by the First Amendment. Am. Comp.¶ 8, 83. However, the First Amendment has been extended only to "privacy" rights concerning marriage, procreation, and child rearing. *Griswald v. Connecticut*, 81 U.S. 479, 482 (1965); *Smith v. Organization of Foster Families*, 431 U.S. 816, 844 (1997); *Carey v. Population Serv. Int'l.*, 431 U.S. 678, 684-86 (1977); *Roe v. Wade*, 410 U.S. 113, 129, 152 (1973). As *Griswald, Roe*, and *Carey*

make clear, the First Amendment "familial association" involves either the husband-wife relation, procreation, the parent-child relation, or child rearing. It does not appear that the First Amendment privacy right extends to the "association" of adult siblings. *See, e.g., Ortiz v. Burgos*, 807 F.2d 6, 9 (1st Cir. 1986) (upholding summary judgment that siblings could not bring could not bring interference with "association rights" against prison authorities who caused the death of his brother); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1245-48 (7th Cir. 1984) (specifically rejecting rights of siblings); see also *Thompson v. Ashe*, 250 F.3d 399, 407 (6th Cir. 2001)(adult brother had no liberty interest protected by Due Process to visit brother at public housing; housing authority could properly exclude him from premises on suspicion of prior drug use).[4]

## G.   Alvarado does not allege any adverse employment action

Although some employment actions may have the effect of chilling speech or protective liberties, they are not be actionable. *Pierce v. Texas Dept. of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995). "Adverse employment

---

[4] Plaintiff Alvarado does not assert a Due Process claim for being deprived of any "liberty" interest to associate with her sister, Weaver. However, if Alvarado were to assert a right to association as a "liberty interest" protected by Due Process, her claim would also fail. First, such a claim could be reviewed only under the principles of Substantive Due Process. *Thompson*, 250 F.3d at 406; *Harbury v. Deutch*, 233 F.3d 596, 605 (D.C. Cir. 2000) *rev'd on other grounds, sub. nom. Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179 (2002); see also *Roe v. Texas Dept. of Protective and Reg. Serv.*, 299 F.3d 395, 411 (5th Cir. 2002)(liberty interest to familial association analyzed under Substantive Due Process). Substantive Due Process requires that the public official act with the intent to injure or with deliberate indifference. *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1999). This requires pleading and proof that the official intended the act cause of loss of familial association. *Harbury*, 233 F.3d at 605. Second, it does not appear that any liberty interest protected by Due Process extends to protecting the relationship between adult siblings. See *Thompson*, 250 F.3d at 406-7; *Ortiz*, 807 F.2d at 8; *Bell*, 746 F.2d at 1242-48.

actions" are discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Pierce*, 37 F.3d at 1149; *Breaux*, 205 F.3d at 157. The Fifth Circuit has declined to expand the list of actionable actions, even if such actions might chill the exercise of speech. *Breaux*, 205 F.3d at 157.

Alvarado alleges her transfer to San Benito was "adverse" because it was further away from home and her part time job. Am. Comp.¶ 59. However, a transfer is an "adverse employment action" only if it is equivalent to one of the recognized injuries, e.g., a demotion, a refusal to promote, a reprimand, etc. *Serna*, 244 F.3d at 479; *Breaux*, 205 F.3d at 157. Plaintiff's subjective preferences or perceptions are insufficient to transmute a transfer into a constitutional injury. *Serna*, 244 F.3d at 483. Consequently, Alvarado's mere inconvenience to drive from Brownsville to San Benito does not make her transfer a constitutional injury.

Plaintiff also alleges she was given the cold shoulder or received hostility from co-workers. First, Plaintiff does not claim Defendant was personally rude or critical of her; she does not claim that he encourage co-workers to give her the cold shoulder or was deliberately indifferent to their actions. Second, accusations, criticism, ostracism do not constitute "adverse employment actions." *Roe*, 205 F.3d at 157.

Finally, Alvarado claims "constructive termination." Am. Comp.¶ 63. A voluntary resignation is not an "adverse employment action." *Upshaw v. Alvin I.S.D.*, 31 F. Supp.2d 553, 557 (S.D. Tex. 1999). To establish constructive discharge, Plaintiff must prove that

Defendant Yzaguirre deliberately made her working conditions so difficult and unpleasant that a reasonable person would have felt compelled to quit. *Roe*, 205 F.3d at 160; *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999); *Upshaw*, 31 F. Supp.2d at 557. This requires a greater severity and pervasiveness of harassment than that required to prove a hostile work environment. *Benningfield*, 157 F.3d at 378.

Here, the alleged actions failed to meet that standard. First, Plaintiff alleges only that she was given the cold shoulder, was told the department would not pay for a course, and was to move her plants from an office she had left three weeks earlier. This hardly amounts to a campaign of harassment and humiliation. Second, the allegations do not attribute this to Defendant, but rather to co-workers. Alvarado must allege facts showing Defendant Yzaguirre's personal involvement. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

**H.    Garcia fails to allege protected speech on matter of public concern**

Plaintiff Garcia alleges retaliation only for one act of speech, namely her written reprimand to her subordinate, Mr. Barreda. Am. Comp.¶ 67. The memo itself does not accuse him of a crime or illegal behavior, but only an "improper method." Exh. A. Her allegations in Exhibit A show that reprimand was communicated only to Mr. Barreda and Plaintiff Garcia's supervisors.

This communication does not involved allegations of criminal misconduct or official corruption. State law requires that vehicle owner submit his application for registration in

the owner's county of residence. TEX. TRANSP. CODE ANN. § 502.002(b) (Vernon 1999). State law does not dictate the kind of proof needed to prove residency. *Id.*; 43 TEX. ADMIN. CODE, § 17.22(b), (d). This is left up to local officials. Submitting a registration application in another county is not a crime. Moreover, Garcia's reprimand did not state that the applicant was not a Cameron County resident or that Berreda committed a crime; rather, her reprimand stated Barreda acted without obtaining proper documentation or proper authorization. Exh. A.

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). However, speech may involve both matters of public concern and private matters. *Teague v. City of Flower Mound,* 179 F.3d 377, 381 (5th Cir. 1999). In such "mixed speech" instances, the court looks then to a balance of content, context, and form to determine if the speech is public or private. *Teague,* 179 F.3d at 382. In "mixed speech" cases, context and form weigh the most heavily. *Id.* at 383. Put another way, the focus is on the hat worn by the employee when speaking rather than the importance of the issue. *Id.* at 382, citing *Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir. 1993), *cert. denied,* 510 U.S. 1072 (1994).

Determination of whether a statement is primarily a matter of public concern is a legal question to be determined by the court from the content, form and context of the statement. *Bradshaw,* 207 F.3d at 816-17; *Ibarra,* 84 F. Supp.2d at 835. A matter is not a public

concern because it could be, in different circumstances, of general interest to the public. *Id.* The rationale behind the "public concern" requirement is to prevent public employees from relying on the Constitution to redress their personal grievances. *Connick v. Myers*, 461 U.S. 138, 149 (1983). The First Amendment does not require a public office be operated as a round table for employee complaints over internal office affairs. *Connick*, 461 U.S. at 149.

Employee speech motivated primarily to defend one's own personal philosophies on office policy and management is insufficient. *See, e.g. Finch v. Fort Bend I.S.D.*, __ F.3d ___, 2003 WL 21290879, *6 (5th Cir. 2003) (school principal's speech about proposal for new classes for advanced students, held speech dealing only internal administrative affairs); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988) (conversation between welfare case worker and supervisor criticizing procedures for handling case load and realignment of his own case load was only an internal grievance); *Ibarra*, 84 F. Supp.2d at 835-836 (Superintendent's remarks concerning his management philosophy and the role of the teacher's union was only defense of personal beliefs). Although the choice to make an internal grievance privately rather than publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public. *Bradshaw*, 207 F.3d at 817; *Teague*, 179 F.3d at 383.

The Fifth Circuit has recognized the reporting of corruption or serious official misconduct is a matter of public concern. See, e.g., *Benningfield*, 157 F.3d at 375; *Wilson v. UT Health Center*, 973 F.2d 1263, 1267 (5th Cir. 1992), cert. denied, 507 U.S. 1009

(1993). However, vague assertions that the speech pertained to official misconduct are insufficient to defeat qualified immunity; the plaintiff must be specific about the content of the statement, when and where it was made, and to whom. *Foley,* 324 F.3d at 318 (professor's bare assertion she complained about racism and hostile work environment insufficient to defeat qualified immunity). Speech in the context of an investigation into misconduct is not always a matter of public concern. See *Fiesel v. Cherry,* 294 F.3d 664, 668 (5th Cir. 2002)(during interview into inmate's claim that guards were selling him drugs, plaintiff told co-worker guard that he did not need to speak and could consult counsel; held, speech was not a matter of public concern). If the form and setting of the statement show it is an internal grievance, this may control over content that refers to official misconduct. *Teague,* 179 F.3d at 383 (officers filed grievance claiming the police chief was covering up another officer's perjury; grievance letter and related speech held to be primarily a matter of private concern).

Garcia's reprimand did not meet this standard. Her memo did not claim Barreda committed a crime, took a bribe, misappropriated money, etc. Rather, it accused him only of failing to follow office procedures.

First, the form shows that she spoke strictly as an employee, and not in her capacity as a citizen. She could only write a reprimand as a supervisor. The purpose of the memo was to reprimand an employee concerning his failure to follow office methodology. Second, the matter was communicated privately to the employee and her direct supervisor. She does

not allege nor is there any indication that the statement was revealed to anyone else.  There is no claim that there was a general office-wide problem or that the public perceived some great problem concerning inadequate documentation of residency when seeking to renew vehicle registrations.

WHEREFORE, PREMISES CONSIDERED, Defendant Yzaguirre prays that upon submission of this motion, the Court dismiss the complaints of Plaintiffs Alvarado and Garcia, or require that they make further reply under Federal Rule of Civil Procedure 7, for such other and further relief to which he may show himself entitled.

Respectfully submitted,

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile (956) 428-2954

By _____
Craig H. Vittitoe
State Bar No. 20593900
Federal ID NO. 18756
**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950

ATTORNEYS FOR DEFENDANT TONY YZAGUIRRE, Assessor-Collector of Cameron County and Director of Cameron County Automobile Crimes Enforcement Task Force in his Individual Capacity

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the 1st day of July, 2003.

Mr. David Lee McGee                                    *CM/RRR 7002 2410 0002 3598 546*
LAW OFFICES OF DAVID LEE McGEE, P.C.
201 S. 15th, Ste. 204, McAllen (78501)
701 Park Avenue
Corpus Christi, TX 78401

Gay E. Gilson                                          *CM/RRR7002 2410 0002 3598 0539*
LAW OFFICE OF GAY E. GILSON
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Roman "Dino" Esparza                                   Via Ordinary Mail
WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

_____
Roger W. Hughes

# OFFICE OF THE
# TAX ASSESSOR-COLLECTOR

P. O. BOX 952    BROWNSVILLE, TEXAS 78522-0952

**TONY YZAGUIRRE, JR.**
TAX ASSESSOR-COLLECTOR
RPA.RTA.CTA.CSTA

**FELIX R. MUNOZ**
CHIEF DEPUTY - OPERATIONS

**JESSE GARCIA, JR.**
CHIEF DEPUTY - ADMINISTRATION

To:   Eniel Barreda
      Auto/Tax Clerk

From: Linda C Garcia
      San Benito / Rio Hondo Branch Manager

Subj: Written Reprimand
      Improper procedures on registration

Date: May 23, 2003

This is to inform you that I am issuing you a formal reprimand. A random audit of your work conduct on May 15, 2003, in where I noticed that you processed a registration for John A Busby from Orange, TX. (see attached copy).

On May 19, 2003 when I brought this matter to your attention, you being aware that a supervisor-override code is required for a registration from any other county plus proof of residence (light bill, telephone bill etc.) for Cameron County, you proceeded to register the vehicle by the use you mentioned( Alt-O - add an extra character to the address shown to complete the renewal. You also mentioned that you sold the renewal sticker to your cousin Hector, who in fact is not the actual owner of this 1995 Ford. Also, on May 22, 2003 another person came in on a registration you did back in March 28, 2003- Mrs. Elsie W Choate from Uvalde, Tx., no change of address was made. (See attached copy).

This letter is intended to remind you that if a situation like this occurs again, you may be subject to suspension from duty without pay, or result in more severe disciplinary action.

Cc: Tony Yzaguirre, Jr. Tax Assessor-Collector
    Jesse Garcia, Jr. CDA

| MAIN OFFICE | SOUTHMOST BRANCH | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE |
|---|---|---|---|---|---|---|---|
| BROWNSVILLE | BROWNSVILLE | HARLINGEN | SAN BENITO | LOS FRESNOS | PORT ISABEL | LA FERIA | RIO HONDO |
| 964 E. HARRISON | 2900 SOUTHMOST RD | 602 E. HARRISON | 650 E. HIGHWAY 77 | 105 OCEAN BLVD | 313 QUEEN ISABELLA | 126 WEST 1ST | 130 COLORADO |
| (956)544-0800 | (956) 986-6228 | (956) 427-8013 | (956) 399-3194 | (956) 233-4494 | (956) 943-8101 | (956) 797-3075 | (956) 748-2345 |
| FAX: 544-0808 | FAX: 986-8228 | FAX: 427-8017 | FAX: 399- 4171 | FAX: 233-5804 | FAX: 943-8101 | FAX: 797-3075 | FAX: 748-8382 |



Department of Transportation

**REGISTRATION RENEWAL RECEIPT**

COUNTY: CAMERON
STICKER NO: 2795349WE
PLATE NO: T92TLY
DOCUMENT NO: 00033300013593214

TAC NAME: TONY YZAGUIRRE, JR.
DATE: 03/28/2003           EFFECTIVE DATE: 03/28/2003
TIME: 04:32PM              EXPIRATION DATE: 2/2004
EMPLOYEE ID: CAMC323       TRANSACTION ID: 03100137706163241

OWNER NAME AND ADDRESS
MRS ELSIE W CHOATE
827 S GETTY
UVALDE, TX 78801-6143

REGISTRATION CLASS: PASSENGER-LESS/EQL 6000
PLATE TYPE: PASSENGER PLT
STICKER TYPE: WS

PREVIOUS PLATE NO: BXX30N                    VEHICLE CLASSIFICATION: PASS
VEHICLE IDENTIFICATION NO: P8ZH9358
YR/MAKE: 1954/PONT  MODEL:        BODY STYLE: 4D    UNIT NO:
EMPTY WT: 3600    CARRYING CAPACITY: 0      GROSS WT: 3600    TONNAGE: 0.00
BODY VEHICLE IDENTIFICATION NO:                   TRAVEL TRLR LENGTH: 0

| INVENTORY ITEM(S) | YR | FEES ASSESSED | | |
|---|---|---|---|---|
| WINDSHIELD STICKER | 2004 | WINDSHIELD STICKER | $ | 40.50 |
| PASSENGER PLT | | REFLECTORIZATION FEE | $ | 0.30 |
| | | CNTY ROAD BRIDGE ADD-ON FEE | $ | 10.00 |
| | | AUTOMATION FEE (LARGE CNTY) | $ | 1.00 |
| | | TOTAL | $ | 51.80 |

VEHICLE RECORD NOTATIONS
RELEASE OF PERSONAL INFO RESTRICTED

METHOD OF PAYMENT AND PAYMENT AMOUNT:
      CHECK #1252   $      51.80

      TOTAL AMOUNT PAID $      51.80

THIS RECEIPT TO BE CARRIED IN ALL COMMERCIAL VEHICLES.
Current law requires an additional $1.00 fee (already
included) in counties with 50,000 or more vehicles.

HAL
VTS (REV. 3/2001) (DHT 157490)



...xas **Department of Transportation**

# REGISTRATION RENEWAL RECEIPT

COUNTY: CAMERON
STICKER NO: 2798393WE
PLATE NO: G7OYZT
DOCUMENT NO: 1000035557105035

TAC NAME: TONY YZAGUIRRE, JR.
DATE: 05/15/2003          EFFECTIVE DATE: 05/15/2003
TIME: 02:13PM             EXPIRATION DATE: 1/2004
EMPLOYEE ID: CAMC323      TRANSACTION ID: 03100137754141329

RENEWAL RECIPIENT NAME AND ADDRESS
JOHN A BUSBY
17223 HIGHWAY 62 S
ORANGE, TX 77630-4353

OWNER NAME AND ADDRESS
JOHN A BUSBY
560 GARDENIA
ORANGE, TX 77630

REGISTRATION CLASS: PASSENGER-LESS/EQL 6000
PLATE TYPE: PASSENGER PLT
STICKER TYPE: WS

PREVIOUS PLATE NO: G7OYZT
VEHICLE IDENTIFICATION NO: 1FALP62W8SH126453
YR/MAKE: 1995/FORD   MODEL:           BODY STYLE: 2D     UNIT NO:
EMPTY WT: 3600    CARRYING CAPACITY: 0        GROSS WT: 3600    TONNAGE: 0.00
BODY VEHICLE IDENTIFICATION NO:                            TRAVEL TRLR LENGTH: 0

VEHICLE CLASSIFICATION: PASS

| INVENTORY ITEM(S) | YR | FEES ASSESSED | |
|---|---|---|---|
| WINDSHIELD STICKER | 2004 | WINDSHIELD STICKER | $ 40.50 |
| | | REFLECTORIZATION FEE | $ 0.30 |
| | | CNTY ROAD BRIDGE ADD-ON FEE | $ 10.00 |
| | | AUTOMATION FEE (LARGE CNTY) | $ 1.00 |
| | | TOTAL | 51.80 |

VEHICLE RECORD NOTATIONS:
RELEASE OF PERSONAL INFO RESTRICTED
ACTUAL MILEAGE

DUPLICATE

THIS RECEIPT TO BE CARRIED IN ALL COMMERCIAL VEHICLES.
Current law requires an additional $1.00 fee (already
included) in counties with 50,000 or more vehicles.

ORIGINAL
VTR-500-RTS (REV 3/2001) (DHT 157490)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

VICENTA CANTU, et al.                    :
                                         :
        Plaintiffs                       :
                                         :
vs.                                      :          CIVIL ACTION NO. B-03-096
                                         :
CAMERON COUNTY, et al.                   :
                                         :
        Defendants

## ORDER ON  DEFENDANT YZAGUIRRE'S MOTION TO DISMISS CLAIMS OF PLAINTIFFS ALVARADO AND GARCIA

BE IT REMEMBERED that on this ___ day of _____, 2003, came under submission Defendant Tony Yzaguirre's Motion to Dismiss Joinder of Plaintiffs Alvarado and Garcia, Motion to Dismiss Claims of Plaintiffs' Alvarado and Garcia Under Rule 12(b)(6), and Under Qualified Immunity and the Court upon considering said motion, the response, and pleadings, is of the opinion that it should be granted.

IT IS THEREFORE ORDERED that the claims of Plaintiffs Diamantina Alvarado and Linda Garcia against Defendant Tony Yzaguirre, Tax Assessor-Collector of Cameron County and Director of Cameron County Automobile Crimes Enforcement Task Force in his Individually Capacity are hereby dismissed.

SIGNED FOR ENTRY on this ___ day of _____, 2003 in Brownsville, Texas.


_____
JUDGE PRESIDING