ıɬ

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUL   1 2003

Michael N. Milby
Clerk of Court

VICENTA CANTU, et al.                    :
                                         :
        Plaintiffs                       :
                                         :
vs.                                      :          CIVIL ACTION NO. B-03-096
                                         :
CAMERON COUNTY, et al.                   :
                                         :
        Defendants                       :


**MOTION TO DISMISS FIRST AMENDED COMPLAINT
OF PLAINTIFFS CANTU, WEAVER AND MUNOZ
BASED ON (1) FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6), or
(2) QUALIFIED IMMUNITY**

                         **Craig H. Vittitoe**
                         State Bar No. 20593900
                         Federal ID NO. 18756
                         **Roger W. Hughes**
                         State Bar No. 10229500
                         Federal ID No. 5950
                         **ADAMS & GRAHAM, L.L.P.**
                         P. O. Drawer 1429
                         Harlingen, Texas 78551-1429
                         Telephone: (956) 428-7495
                         Facsimile:  (956) 428-2954

                         ATTORNEYS FOR DEFENDANT TONY
                         YZAGUIRRE, Assessor-Collector of Cameron
                         County and Director of Cameron County
                         Automobile Crimes Enforcement Task Force in
                         his Individual Capacity

i

# TABLE OF CONTENTS

Page:

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.  Status of Case  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Issues Presented  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  Nature of Allegations by Cantu, Munoz and Weaver . . . . . . . . . . . . . . . . . . . 2

    A.    Plaintiff Cantu's Alleged Protected Speech  . . . . . . . . . . . . . . . . . . . . . 2

    B.    Plaintiff Munoz' Alleged Protected Speech  . . . . . . . . . . . . . . . . . . . . 4

    C.    Plaintiff Weaver's Alleged Protected Speech . . . . . . . . . . . . . . . . . . . . 4

    D.    Cantu, Munoz and Weaver's alleged associational right . . . . . . . . . . . . . . 5

IV.  Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.  Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    Standard of Review for Rule 12(b)(6) Dismissal  . . . . . . . . . . . . . . . . . 7

    B.    Individual Defendant Is Entitled to Qualified
            Immunity Unless Clearly Established Law Would Have
            Informed Him That his Alleged Actions Were Unconstitutional  . . . . . . . . 8

    C.    Elements of First Amendment Retaliation Claim . . . . . . . . . . . . . . . . . . 10

    D.    Plaintiffs Failed to Allege Any Violation of Rights to Association . . . . . 11

    E.    Cantu fails to allege protected speech on matters of public concern  . . . . 13

F.    Munoz Fails to Allege Facts Showing Speech on Matter of
      Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

G.    Weaver Fails to Allege Facts Showing Speech on a
      Matter of Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF AUTHORITIES

Page:

Cites:

*Alton v. Hopgood*, 994 F.Supp. 827 (S.D.Tex. 1998) *aff'd*
168 F.3d 197 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Pasadena I.S.D.*, 184 F.3d 439 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . 10

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Benningfield v. City of Houston*, 157 F.3d 369
(5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999) . . . . . . . . . . . . . . . . . . . . . . 15

*Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814 (5th Cir. 2000) . . . . . . . . . . . . . 13-15, 18, 20

*Brady v. Ft. Bend County*, 58 F.3d 173 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . 9

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000),
cert. denied, 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

*Campbell v. City of San Antonio*, 43 F.3d 973 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . 9

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Fiesel v. Cherry,* 294 F.3d 664 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Finch v. Ft. Bend I.S.D.*, __ F.3d __, 2003 WL 21290879, *6 . . . . . . . . . . . . . . 12, 14, 19

*Foley v. Univ. of Houston System,* 324 F.3d 310
(5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 15

*Fyfe v. Curlee*, 92 F.2d 401 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993),
    *cert. denied*, 510 U.S. 1072 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Graham v. Connor*, 490 U.S. 396 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Guidry v. Bank of LaPlace*, 954 F.2d 278 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 7

*Gutierrez v. City of San Antonio*, 139 F.3d 441
    (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Henrise v. Horvath*, 174 F. Supp.2d 493 (N.D. Tex. 2001),
    *aff'd in part, rev'd in part*,
    45 Fed. Appx. 323 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Hope v. Pelzer*, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ibarra v. Houston I.S.D.*, 84 F. Supp.2d 825
    (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 11, 14, 17

*Jones v. Collins*, 132 F.3d 1048 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kaiser v. Garrett*, 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McClendon v. City of Columbia*, 305 F.3d 314

    (5th Cir. 2002)(en banc),
    *cert. denied*, 123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Meadowbriar Home for Children, Inc. v. Gunn*,
    81 F.3d 521 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moore v. Miss. Valley State Univ.*, 871 F.2d 545
    (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Noyala v. Texas Dept. of Human Resources*, 846 F.2d 1021
    (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) (en banc) . . . . . . . . . . . . . . . . . . . . . . . 7

*Serna v. City of San Antonio*, 244 F.3d 479
 (5th Cir. 2001), cert. denied, 534 U.S. 951 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Teague v. City of Flower Mound*, 179 F.3d 377
 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

*Tharling v. City of Port Lavaca*, 329 F.3d 422
 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Vanderhurst v. Colorado Mt. Dist.*, 16 F. Supp.2d 1297
 (D. Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Wallace v. Texas Tech Unv.*, 80 F.3d 1042 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . 10, 11

*Wilson v. UT Health Center*, 973 F.2d 1263 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . 15, 19


Federal Rules of Civil Procedure:

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13


Texas Transp. Code Annotated:

§ 501.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§ 502.151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


Texas Administrative Code:

§ 17.22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Texas Constitution Annotated:

Art. 8, § 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Statutes:

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**MOTION TO DISMISS FIRST AMENDED COMPLAINT
OF PLAINTIFFS CANTU, WEAVER AND MUNOZ
BASED ON (1) FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6), or
(2) QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant Tony Yzaguirre, Jr.**, and files this his Motion to Dismiss

First Amended Complaint of Plaintiffs Cantu, Weaver and Munoz Based on (1) Failure to

State a Claim Under Rule 12(b)(6), or (2) Qualified Immunity, and would respectfully show

the Court as follows:

## I. Status of Case

Plaintiffs Cantu, Munoz, and Weaver filed suit under 42 U.S.C. § 1983 claiming

employment retaliation for exercise of First Amendment rights, to freedom of speech and

"association." (Dkt # 8).

Defendant Yzaguirre moves to dismiss their complaints for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6) or for qualified immunity. Alternatively,

Defendant asks the Court that Plaintiffs file a reply to the defense of qualified immunity

under Rule 7.

## II. Issues Presented

1.     Whether Plaintiffs Cantu, Munoz and Weaver have alleged a claim for retaliation

against the exercise of the right of association protected by the First Amendment.

2.    Whether Plaintiff Cantu has alleged that her disagreements with Defendant over her individual decisions concerning vehicle titles was a matter of public concern. Specifically, whether she has adequately alleged that she complained to Defendant that he was engaged in corruption or serious official misconduct.

3.    Whether Munoz and Weaver's criticism of where some customers paid for their vehicle registration was comment on a matter of public concern.

4.    Whether Weaver's report to Yzaguirre of what other people were saying was speech on a matter of public concern.

### III.  Nature of Allegations by Cantu, Munoz and Weaver

**A.    Plaintiff Cantu's Alleged Protected Speech**

Plaintiff Cantu was a title registration examiner for the Auto Crimes Enforcement Task Force within Defendant's office. Amended Complaint (Am. Comp.) ¶ 22

The basic thrust of her First Amendment speech claims is that Defendant Yzaguirre frequently "overrode" her decisions not to process or approve title registrations she claims were "fraudulent." Am. Comp.¶¶ 23. However, she alleges only four instances of speech. Am. Comp.¶¶ 24, 25, 26, 27, 30.

The first instance occurred on January 9, 2001. Am. Comp.¶ 24. Cantu alleges she had denied several title registrations as not complying with the law; Defendant Yzaguirre told her that she should only be concerned with whether the vehicles were stolen and to release the transactions. Am. Comp.¶ 24. Cantu alleges that she was telling him he was

"violating the law." Am. Comp. ¶ 24. Cantu does not allege in what respect the registrations were deficient or how they misused tax-payer money.

The second instance occurred on July 30, 2001 Defendant Yzaguirre allegedly told her to stop faxing to Texas Department of Transportation (TexDOT) "complaints" about "fraudulent" vehicle registration paperwork submitted mostly by Defendant's "friends and business associates." Am. Comp. ¶ 26. Plaintiff does not allege that the complaints were hers or that the TexDOT would be the proper investigative agency. Plaintiff does not state in what respect the registration paperwork was "fraudulent", violated Texas law, or involved tax payer money. She alleges Yzaguirre told her not to fax complaints to the TexDOT without his approval. Am. Comp. ¶ 26.

The third instance occurred on November 27, 2001. Plaintiff claims that she rejected a vehicle registration submitted by Mr. Angeles because it "did not meet the legal requirements." Am. Comp. ¶ 27. She alleges Yzaguirre told her to process the paperwork anyway and she told him his actions were "unlawful." Am. Comp. ¶ 27. Plaintiff does not specify in what manner the paperwork was "fraudulent" or involve a "misuse of tax-payer money."

Finally, Plaintiff alleges that she continually told Yzaguirre that he was not following the law regarding the process of "fraudulent vehicle registrations." Am. Comp. ¶ 30. She does not give the specifics for any of these communications; she does not specify any

transaction, explain how it violated Texas law, or how it involved the misuse of tax payer money.

**B.    Plaintiff Munoz' Alleged Protected Speech**

Munoz was the Auto Crimes Enforcement Task Force Project Coordinator. Am. Comp.¶ 34. He alleges only two instances of speech. Am. Comp.¶¶ 36, 38.

First, sometime after October, 2001, Munoz became suspicious of the demeanor of Defendant Yzaguirre's friends and associates who came to the administrative office to process their vehicle registrations. When he saw a co-worker counting the sums of money they left, he hold her that it "looked bad" to be counting large sums of money in the open. Am. Comp.¶ 36. Munoz does not allege that the money was misappropriated or that any of these individuals paid less (or more) than they owed. Rather, he alleges this was of public concern only because it "involved business transactions." Am. Comp.¶ 36.

The second instance occurred in Spring 2002 in which Munoz told Defendant that he was concerned that Defendant was giving "special treatment" by processing vehicle registrations at the administrative office. Am. Comp.¶ 38. Munoz does not explain why it would be unlawful or a misuse of tax-payer funds to accept payment for vehicle registration at the administration office rather than some other office.

**C.    Plaintiff Weaver's Alleged Protected Speech**

Weaver was Defendant's Executive Secretary. Am. Comp.¶ 3. She alleges only two instances of speech. First, on October 2001, she told Yzaguirre that the "word out on the

street" was that people could get their auto titles "fixed" through Yzaguirre. Am. Comp.¶ 45.

The next instance occurred between October 2001 and May 2002; Weaver alleges that on more than one occasion she asked why a title registration actions were being processed in the administration office rather than the auto division office, as was the office policy and practice. Am. Comp.¶ 48. Although she alleges this violated the law and involved a "misuse of tax payer money," she does not explain those conclusions.

## D.    Cantu, Munoz and Weaver's alleged associational right

Plaintiffs allege in a conclusory manner that they "organized" to discuss unlawful vehicle registration practices by Defendant Yzaguirre. Am. Comp.¶ 83. They specifically alleged that they were "closely associated" with each other in the performance of their duties for Yzaguirre. Am. Comp.¶¶33, 44, and 49. They often went to lunch together. Am. Comp.¶ 49. Cantu told Munoz and Weaver that she had seen fraudulent vehicle registration work being processed by Yzaguirre. Am. Comp.¶¶ 40, 49.

### IV.    Summary of Argument

To defeat qualified immunity, Plaintiff must identify *specific* facts concerning the speech or association involved and the alleged retaliation (i.e., the adverse employment action). Here, Plaintiffs have wholly failed to allege specifics on any of the issues; either their vague allegations raise no violation at all or fail to show clearly established rights were violated.

The lack of specificity can be particularly misleading given that Defendant is an elected official. TEX. CONST. ANN. art. 8, § 14 (Vernons 1993). Given the nature of democratic elections, officials must seek support from all citizens, not just those who meet their employees' approval. Campaign contributions are a hard fact of seeking and holding elective office. Plaintiffs use a lot of vague euphemisms about "paid favors," but the only *facts* they allege are that Defendant overrode Cantu's decisions on some title registrations and allowed some people to pay the taxes they owed in the administration office rather than wait in line at another office. The allegations that people left money at a Tax Assessor's office hardly raises a suspicion; virtually no one comes to the Tax Assessor's office to collect money. The goal of qualified immunity is to pierce such vagueness to determine whether plaintiffs have a claim rather than burden public servants with defending transparently bad claims.

With regard to the associational claims, Plaintiffs have failed to allege facts showing any association protected by the First Amendment; alternatively, any such right to associate as they have alleged was not clearly established in 2001-2002.

With respect to their alleged instances of speech, they make only vague allegations they spoke of serious misconduct. Without specifics as to the exact speech, its context, etc., their claims do not survive qualified immunity. Cantu's allegations concerning faxing complaints to TexDOT may not even involve speech or the restriction may be objectively reasonable.

## V. Argument and Authorities

**A.    Standard of Review for Rule 12(b)(6) Dismissal**

Defendant Yzaguirre moves to dismiss the federal claims based on (1) failure to state a claim, and (2) qualified immunity.

Under Rule 12(b)(6), the Court must accept the allegations as true and must review them in the light most favorable to the Plaintiff, drawing all reasonable inferences in favor of the pleader. *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996). Dismissal under Rule 12(b)(6) is correct when it appears that no relief can be granted under any set of facts that can be proven consistent with the allegations. *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 529 (5th Cir. 1996). However, the complaint must state facts, not conclusions, to survive a Rule 12(b)(6) challenge. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).

Plaintiff has a heightened burden to plead specific facts defeating Defendants' qualified immunity from § 1983 claims. *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc). The complaint must state facts defeating qualified immunity, not mere legal conclusions. *Schultea*, 47 F.3d at 1433.

The court may order Plaintiff to file a reply under FED.R.CIV.PR. 7 that states specific facts that defeat the qualified immunity defense raised by Defendants' answer. *Schultea*, 47 F.3d at 1434.

**B.**   **Individual Defendant Is Entitled to Qualified
Immunity Unless Clearly Established Law Would Have
Informed Him That his Alleged Actions Were Unconstitutional**

Qualified immunity protects a public official from claims under 42 USC § 1983 if a reasonably prudent official would not know the actions violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The official will have qualified immunity if the conduct was objectively reasonable under the existing federal law. *McClendon v. City of Columbia,* 305 F.3d 314, 327 (5th Cir. 2002)(en banc), *cert. denied,* 123 S.Ct. 1335 (2003).

The U.S. Supreme Court has set out a clear, two step process to determine whether the complaint can defeat qualified immunity. Once the defense of qualified immunity is alleged, the trial judge must first determine whether the plaintiff has alleged a constitutional violation at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998). The court must then determine whether defendant's actions violated "clearly established" constitutional law at the time of the conduct and whether the defendant's actions were objectively reasonable. *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900.

42 USC § 1983 is not itself a source of substantive rights. *Graham v. Connor*, 490 U.S. 396, 393 (1989). The first inquiry is to isolate the precise provision of the federal Constitution that is allegedly infringed. *Graham*, 490 U.S. at 394. Here, Plaintiffs allege only one provision: the 1st Amendment.

For constitutional law to be "clearly established," plaintiff must prove more than the broad contours of established rights or broad legal truisms. *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995). The contours of the constitutional right must be defined well enough so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law. *McClendon*, 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515-16, (2002); *McClendon*, 305 F.3d at 329.

To determine what law was "clearly established," the Court should consult U.S. Supreme Court and Fifth Circuit precedent. *Brady v. Ft. Bend County*, 58 F.3d 173, 175-76 (5th Cir. 1995); *Alton v. Hopgood*, 994 F.Supp. 827, 835, n. 5 (S.D.Tex. 1998) *aff'd* 168 F.3d 197 (5th Cir. 1999). In some cases, the court may then look to whether a consensus exists in sister circuits. *McClendon*, 305 F.3d at 329. If reasonable officials could disagree, the officer has qualified immunity. *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995). Even if some consensus exists that a right exists, its application must be identified with obvious clarity to the conduct involved the case at hand. *McClendon*, 305 F.3d at 332-33.

## C.    Elements of First Amendment Retaliation Claim

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The party must (1) suffer an adverse employment action, (2) show that the speech in question was a matter of public concern, (3) show that their interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001), *cert denied,* 534 U.S. 951 (2001); *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000), *cert. denied,* 531 U.S. 816 (2000). A similar analysis applies when Plaintiff claims retaliation for exercise of association rights protected by the First Amendment. *Breaux,* 205 F.3d at 157, n. 12; *Anderson v. Pasadena I.S.D.,* 184 F.3d 439, 444 (5th Cir. 1999).

Strictly speaking, the First Amendment does not protect a "right of association". *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). Rather, the First Amendment embraces the right to associate only in two circumstances: (1) the choice to enter into certain intimate human relationships (aka "familial association"), or (2) an association for the purpose of engaging in activities protected by the First Amendment, such as speech, exercise of religion, etc. *Stanglin*, 490 U.S. at 24; *Wallace v. Texas Tech Unv.*, 80 F.3d 1042, 1051 (5th Cir. 1996). The right of "expressive association" extends to groups organized to engage in speech. *Stanglin*, 490 U.S. at 25. The "familial association" right recognized under the First Amendment has only been recognized in the area of marriage, procreation and child rearing.

*Stanglin*, 490 U.S. at 24-25; *Fyfe v. Curlee*, 92 F.2d 401, 403 (5th Cir. 1990). There is no recognized right of "socialist association protected under the constitution. *Stanglin*, 490 U.S. at 25; *Wallace*, 80 F.3d at 1051; *Ibarra v. Houston I.S.D.*, 84 F. Supp.2d 825, 837 (S.D. Tex. 1999).                   .

**D.     Plaintiffs Failed to Allege Any Violation of Rights to Association**

The only alleged facts for their claim of "association" are that Cantu, Munoz and Weaver worked together, they would go to lunch together, and Cantu spoke to them about her complaints.  These facts at best allege nothing more than social contact which is not protected by the First Amendment.  See, e.g., *Stanglin*, 490 U.S. at 25 (teenagers had no "association right" to meet with older teenagers and young adults at dance hall); *Wallace,* 80 F.3d at 1050 (college basketball coach had no "association right" to speak with student team players concerning whether they were eligible for scholarships); *Ibarra*, 84 F. Supp.2d at 827(superintendent had no "association right" to socialize publically with state politicians).

The right of "expressive association" extends only groups organized to engage in speech, religious activities, etc.  *Stanglin*, 490 U.S. at 25.  Plaintiffs do not allege facts showing that they organized or met primarily or exclusively for the purpose of discussing the office practices they found objectionable.  The First Amendment does not require that a public office be run as a round table for employee complaints over internal office affairs. *Connick v. Myers*, 461 U.S. 138, 149 (1983).  If simply working together and discussing their

jobs without more creates a "expressive association" among employees, every public office will become exactly the kind of "protected" round table *Connick* says was never intended.

The Fifth Circuit has rejected expressive claims of "expressive association" rights in similar circumstances. See *Finch v. Ft. Bend I.S.D.*, __ F.3d __, 2003 WL 21290879, *6; *Henrise v. Horvath*, 174 F. Supp.2d 493, 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part*, 45 Fed. Appx. 323 (5th Cir. 2002) (unpublished).[1] In *Finch*, a school superintendent claimed she was forced to resign over an unsuccessful program to create special courses for gifted children. 2000 WL 21290879 (*1). Apparently Finch met with members of the school board and students' parents in the course of developing and advocating her proposal. The Fifth Circuit concluded that restraining her interactions with the students' parents and the school board members did not implicate rights of expressive association. *Id.* at *6.

In *Henrise*, a police officer claimed he was harassed and demoted as a result of his association with his partner who was terminated. 174 F.Supp. 493, 495. Henrise and his supervisor Pothen came to the conclusion that the Police Chief Horvath was involved in significant public corruption; both made these allegations to superiors and Pothen was terminated. *Id.* at 496. Pothen then sued and Henrise was expected to be a witness. *Id.* During this time, Henrise claimed he developed a strong association with Pothen, both as a fellow officer and a close personal "police friend." *Id.* Henrise claimed that he was then demoted and harassed as a result of his close personal relationship with Pothen. *Id.* at 497.

---

[1] The Fifth Circuit's unpublished opinion in *Henrise* is attached as Exh. 1.

The District Court granted a Rule 12(b)(6) motion on Henrise's First Amended association claim. *Id.* at 500. It concluded that his personal and professional affinity with Pothen did not give rise to an expressive or familial association right. *Id.* at 500.

On that point, the Fifth Circuit affirmed. See Exh. 1, pp. 13-15. The unpublished opinion concluded there was no indication the complaint alleged expressive association rights. Exh. 1 p. 14.

**E.    Cantu fails to allege protected speech on matters of public concern**

Carefully considered, Cantu's allegations focus only on claims that she and Mr. Yzaguirre disagree over how she processed vehicle titles and registration. All of her allegations focus on his decisions about *her* work, not the work of the office generally. Moreover, she simply applies conclusory labels of "fraud" and "illegal" not describing in what manner the approving these applications constituted crimes or serious official misconduct.

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). However, speech may involve both matters of public concern and private matters. *Teague v. City of Flower Mound*, 179 F.3d 377, 381 (5th Cir. 1999). In such "mixed speech" instances, the court looks then to a balance of content, context, and form to determine if the speech is public or private. *Teague*, 179 F.3d at 382. In "mixed speech" cases, context and form weigh the most heavily. *Id.* at 383. Put another way, the focus is on the hat worn by

the employee when speaking rather than the importance of the issue. *Id*. at 382, citing

*Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993), *cert. denied*, 510 U.S. 1072

(1994).

Determination of whether a statement constitutes a matter of public concern is a legal

question to be determined by the court from the content, form and context of the statement

that is revealed by the record. *Bradshaw*, 207 F.3d at 816-17; *Ibarra*, 84 F. Supp.2d at 835.

A matter is not a public concern because it could be, in different circumstances, give general

interest to the public. The rationale behind the "public concern" requirement is to prevent

public employees from relying on the Constitution to redress their personal grievances.

*Connick*, 461 U.S. at 149. The First Amendment does not require the public office be run

as a round table for employee complaints over internal office affairs. *Connick*, 461 U.S. at

149.

Employee speech motivated primarily to defend one's own personal philosophies on

office policy and management is insufficient. *See, e.g. Finch v. Ft. Bend I.S.D.*, __ F.3d __

2003 WL 21290879, *6 (5th Cir. 2003); *Noyola v. Texas Dept. of Human Resources*, 846

F.2d 1021, 1024 (5th Cir. 1988) (conversation between welfare case worker and supervisor

criticizing procedures for handling case load and realignment of his own case load was only

an internal grievance); *Ibarra*, 84 F. Supp.2d at 835-836 (Superintendent's remarks

concerning his management philosophy and the role of the teacher's union was only defense

of personal beliefs). Although the choice to make an internal grievance privately rather than

publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public. *Bradshaw*, 207 F.3d at 817; *Teague*, 179 F.3d at 383.

The Fifth Circuit has recognized that reporting of corruption or serious official misconduct is a matter of public concern. See, e.g. *Benningfield v. City of Houston*, 157 F.3d 369, 375 (5th Cir. 1998), cert. denied, 526 U.S. 1065 (1999); *Wilson v. UT Health Center*, 973 F.2d 1263, 1267 (5th Cir. 1992). However, vague assertions that the speech pertained to official misconduct are insufficient to defeat qualified immunity; the plaintiff must be specific about the content of the statement, when and where they were made, and to whom. *Foley v. Univ. of Houston System*, 324 F.3d 310, 318 (5th Cir. 2003)(professor's bare assertion she complained about racism and hostile work environment insufficient to defeat qualified immunity). Speech in the context of an investigation into misconduct is not always a matter of public concern. See *Fiesel v. Cherry*, 294 F.3d 664, 668 (5th Cir. 2002)(during interview into inmate's claim that guards were selling him drugs, plaintiff told co-worker guard that he did not need to speak and could consult counsel; held, speech was not a matter of public concern). If the form and setting of the statement show it is an internal grievance, this may control over content that refers to official misconduct. *Teague*, 179 F.3d at 383 (officers filed grievance claiming the police chief was covering up another officer's perjury; grievance letter and related speech held to be primarily a matter of private concern).

Without specific allegations, it cannot be determined that Cantu complained that Yzaguirre was responsible for committing a crime, doing "paid favors," misusing money, etc.

Texas law has considerable administrative laws and regulations concerning vehicle registration procedures, title transfers, and fees, etc. See TEX. TRANSP. CODE ANN. §§ 501.021 et. seq., 502.151, et. seq. (Vernon 1999); 43 TEX. ADMIN. CODE, § 17.22. Most are merely administrative pre-requisites; a failure to comply may make the application for a title or vehicle registration technically deficient, but hardly makes them fraudulent or criminal.

Cantu's first alleged instance of speech occurred when she rejected several registrations because they "did not comply" with Texas law. Am. Comp. ¶ 24. Yzaguirre told her to concern herself only with whether the vehicles were stolen and to release the titles. Am. Comp. ¶ 24. This shows that Cantu rejected the titles for technical deficiencies, rather than because the applicants had stolen the vehicle or were not entitled to own or possessed them. In short, the alleged facts disclose nothing more than a dispute about whether Cantu was correctly construing administrative requirements for registration and the scope of her duties.

The next alleged instance occurred when she faxed "complaints" to the TexDOT. Am. Comp. ¶ 26. Cantu does not say these were *her complaints*. Moreover, she does not state in what sense the vehicle registrations were "fraudulent" or why TexDOT was an appropriate agency to which to fax these complaints. Moreover, she admits that Yzaguirre did not forbid her sending complaints, only that they should be done with his approval. Am. Comp. ¶ 26.

Unless Cantu claims these complaints were *her* complaints, she has no First Amendment claim for other people's statements or any mis-perception the other persons'

statements were hers. See *Jones v. Collins*, 132 F.3d 1048, 1053 (5th Cir. 1998); *Vanderhurst v. Colorado Mt. Dist.*, 16 F. Supp.2d 1297, 1305 (D. Colo. 1998). Cantu's self-appointed role as investigator or her desire to pursue any investigation are not "speech." *See e.g., Gillum*, 3 F.3d at 121 (where police officer's "speech" was in complaint to IAD that he wished to continue investigating allegation police chief "smoked dope" after officer was told to cease investigation, held "private" in that focus of statement was desire to continue investigation); *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003)(plaintiff police officer's investigation into offenses allegedly committed by city commissioners was not itself speech; knowledge by commissioners of investigation was not notice that officer was making allegations of misconduct).

Moreover, the limitation that Plaintiff not fax complaints without Yzaguirre's approval is a reasonable limitation. *Compare Gillum*, 3 F.3d at 121 (telling police officer to cease his investigation and turn it over to IAD did not violate First Amendment); *Ibarra*, 84 F. Supp.2d at 837 (limitation placed on school superintendent to avoid discussing school related issues with local politicians without the presence of school's representative did not violate First Amendment right). Here, the requirement was entirely reasonable so that Yzaguirre (as a local elected official) could coordinate and centralize communications with a state agency.

Plaintiff's third instance of speech occurred after she rejected Mr. Angeles's title registration application because it did not meet "legal requirements." Am. Comp. ¶ 27.

Defendant Yzaguirre told her to process it anyway.  Am. Comp. ¶ 27.  Plaintiff does not

explain how any technical deficiencies in Mr. Angeles's application could be considered a

matter of public concern.  Again, this is simply a disagreement over how she did her work.

The last instances of speech are conclusory allegations that on unknown occasions

between December 2001 and May 2002, she told Yzaguirre that certain applications were

"fraudulent."  Again, Cantu does not explain how these applications were "fraudulent" or a

misapplication of public monies, rather than merely technically deficient applications.

Given that Cantu's opinions were expressed privately and concern matters concerning

her work product, the facts alleged did not arise to speech on a public matter.  The mere fact

that Plaintiff may have made incidental references to protecting public moneys or criticism

of her supervisors does not convert an employment dispute over her job performance into a

public concern. See, e.g., *Bradshaw*, 207 F.3d at 817; *Moore v. Miss. Valley State Univ.*, 871

F.2d 545, 551 (5th Cir. 1989) (employee's complaints about favoritism and toleration of

misconduct by their employees was not a matter of public concern).

**F.    Munoz Fails to Allege Facts Showing Speech on Matter of Public Concern**

Munoz's speech concerned his statements  (1) that it "looked bad" to count money in

the open and (2) criticizing an informal practice of processing vehicle registrations in the

administrative office rather than another office.  Am. Comp. ¶¶ 36, 38.  He claims the latter

practice was "unlawful" but does not explain how it violated any state law.  He does not

claim any money was misappropriated or that people paid more or less in taxes and fees than

they owed. In short, both statements bear only on office or administrative practices. This is insufficient. *Compare Finch*, 2003 WL 211209879, *6 (school principals speech to administrators on internal administrative approach to running a school was not on a matter of public concern).

**G.     Weaver Fails to Allege Facts Showing Speech on a Matter of Public Concern**

Weaver's primary speech fact was a complain that on various unspecified occasions between October 2001 and May 2002 she complained to Yzaguirre about the same informal registration process; she alleges that it was violating the law and "fraudulent transaction." Am. Comp. ¶ 48. Her conclusory allegations suffers from the same deficiency as Mr. Munoz's claim.

Her second speech act was to advise Yzaguirre that the "word was on the street" that he was "fixing" titles for people. Am. Comp. ¶ 45. As such, it appears that Weaver stated only that a rumor existed; her statement does not show she told Yzaguirre he was "fixing titles." First, Plaintiff did not alleges that the rumor was true or she believed them, i.e., that Yzaguirre was in fact "fixing" titles for anyone. Any First Amendment right to speak on matters of public concern does not permit making false statements. Defendant urges that only truthful allegations of misconduct are eligible to be matter of public concern. *See Breaux*, 205 F.3d at 156-57 (assumes without deciding that allegations must be truthful); *Wilson*, 973 F.2d at 1270 (indicating that only "good faith" statements of misconduct can outweigh government interests).

Moreover, if Weaver was simply advising Yzaguirre of the existence of a rumor without expressing a believe in it, this is not a matter of public concern. First, that she communicated it privately why is in favor of it not being of public concern. *Bradshaw*, 207 F.3d at 817. Moreover, Weaver was his Executive Secretary and therefore had a confidential position within Yzaguirre's office. Circumstances plus her position show that probably she did not intend the statement to be made public or that it be publicized.

WHEREFORE, PREMISES CONSIDERED, Defendant Yzaguirre prays that upon submission of this motion, the Court dismiss the complaints of Plaintiffs Cantu, Munoz and Weaver, or require that they make further reply under Federal Rule of Civil Procedure 7, for such other and further relief to which he may show himself entitled.

Respectfully submitted,

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile (956) 428-2954

By _____

**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756
**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950

ATTORNEYS FOR DEFENDANT TONY YZAGUIRRE, Assessor-Collector of Cameron

County and Director of Cameron County
Automobile Crimes Enforcement Task Force in
his Individual Capacity

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was

forwarded to the following counsel of record on this the 1st day of July, 2003.

Mr. David Lee McGee                      *CM/RRR 7002 2410 0002 3598 546*
LAW OFFICES OF DAVID LEE McGEE, P.C.
201 S. 15th, Ste. 204, McAllen (78501)
701 Park Avenue
Corpus Christi, TX 78401

Gay E. Gilson                            *CM/RRR7002 2410 0002 3598 0539*
LAW OFFICE OF GAY E. GILSON
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Roman "Dino" Esparza                     Via Ordinary Mail
WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

_____
Roger W. Hughes

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
FILED

JUN 28 2002

CHARLES R. FULBRUGE III
CLERK

No. 01-10649

JAMES T. HENRISE,

Plaintiff-Appellant,

versus

JOHN D. HORVATH; CLARENCE V. JOHNS; WARREN BOX; ROBIN FLORES; CITY OF DESOTO, TEXAS

Defendants-Appellees.

---

Appeal from the United States District Court
for the Northern District of Texas
(3:97-CV-2472-L)

---

Before WIENER and DENNIS, Circuit Judges, and LITTLE*, District Judge:

WIENER, Circuit Judge**:

The district court dismissed the action of Plaintiff-Appellant James Henrise pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") for failure to state a claim on which relief could be granted. Henrise appeals the district

---

\* Chief Judge of the Western District of Louisiana, sitting by designation.

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

court's dismissal of his action, which asserted claims under 42 U.S.C. § 1983 and § 1985(2) against Defendants-Appellees John Horvath, Clarence Johns, Warren Box, Robin Flores (collectively, the "individual defendants"), and the City of DeSoto, Texas ("the City"). We affirm the district court's dismissal of Henrise's § 1983 claims against all the defendants, but reverse the court's dismissal of his § 1985(2) claim against the individual defendants only.

## I. Facts and Proceedings

We set forth the operative facts as they appear in Henrise's Second Amended Complaint, which is the version of the facts that the district court considered when it granted the defendants' Rule 12(b)(6) motion to dismiss the action. For purposes of ruling on such a motion, the district court properly accepted as true — as do we — the facts as they were set forth in the complaint. We neither recite nor consider, however, arguments and conclusional allegations in the complaint.

Henrise was hired as a police officer by the City of DeSoto, Texas, in January 1985. He received training and gained experience by serving for substantial periods in both the Criminal Investigations Division ("CID") and Special Investigation Unit ("SIU"). Henrise eventually received the "Top Cop" award from the DeSoto Citizens Police Academy Alumni. He holds a Master Peace Officer Certification from the Texas Commission on Law Enforcement

2

Officer Standards and Education, and retains his departmental seniority in the rank of sergeant.  While working in the SIU, Henrise was under the command of Lt. P. Paul Pothen.  As part of its official function, the SIU undertook investigations into public corruption, vice, narcotics, and organized crime.

In August 1994, Defendant Horvath was confirmed as the Chief of Police of the City of DeSoto.  Based on their work in the SIU during the early part of 1995, Henrise and Pothen formed the good faith belief that Horvath was involved in serious misconduct which had criminal implications.  This included, but was not limited to, the release of confidential police murder investigation files to a civilian investigator, the removal of and failure to return material physical evidence related to a murder investigation, and the acceptance of both public and private funds to finance a family vacation to Europe, purportedly on "police business."  In addition, the SIU uncovered what appeared to it to be significant public corruption, including bribery, surrounding high ranking DeSoto public officials and their cohorts.

In the spring of the following year, Horvath, acting as Chief of Police, had a private meeting with Henrise.  In that meeting, Chief Horvath demanded that Henrise provide him with any known information that was adverse to Pothen, and to observe Pothen and report back any newly discovered adverse information.  Henrise expressly refused Horvath's demand then and there.  Henrise alleges

3

in his complaint that it was during this meeting that he first became aware that Horvath was searching for a way to terminate Pothen, and that Horvath was first put on notice, by Henrise himself, that he would not assist the chief in that scheme, but instead would oppose it.

Henrise and Pothen furnished detailed information to the DeSoto City Manager, Ron Holifield, about the misconduct in which they believed Chief Horvath had engaged, but Holifield did not act on those complaints. At or around the same time, a city employee, Linda Bertoni, filed a 19-page sworn statement with the City Manager, the City Mayor, and City Council members in which Police Chief Horvath's misconduct was set out in detail. The City did not investigate Horvath's activities in response to Bertoni's notification, either.

According to Henrise, the "end result" of his and Pothen's complaint about Horvath was that both officers were placed on administrative leave by Horvath, and were charged in a complaint regarding an unrelated search conducted by the SIU. On the advice of counsel, Henrise agreed to accept a one-day suspension to resolve the matter, and then return to duty with the same rank and seniority. Henrise has consistently maintained that he did absolutely nothing wrong regarding the search in question, and only accepted the suspension so that he could return to police work. Pothen, on the other hand, was fired, then pursued his appellate

4

remedies under state civil service laws and later sought other remedies in federal court. During this time, Henrise maintained a strong association with Pothen, both as a fellow officer and close police friend. Henrise stresses that police officers rely on each other for emotional and physical support both on duty (including in life-threatening situations) and off.

After Pothen was fired, he placed the City and the individual defendants on notice that he would challenge his termination. Henrise contends that all the individual defendants were aware that Henrise maintained a close personal relationship with Pothen and knew that he would testify favorably on Pothen's behalf and adversely to the City and Horvath.

When Henrise returned to work after his one-day suspension, he reported to defendant Warren Box, Captain of Police for the DeSoto Police Department. Even though Henrise's status was for regular duty, Box assigned him to such demeaning tasks as enforcing handicapped parking, serving as municipal court bailiff, filing citations, and moving boxes. Henrise emphasizes that he was a highly trained investigator with seniority in his position, characterizing as "menial" all of the tasks to which he was assigned by Box.

Henrise maintains that the assignments of degrading tasks by Box were only the first in a long series of retaliatory and harassing acts against him. Henrise alleges that these acts were

done in an effort to punish him for his association with Pothen, to intimidate him into not testifying on Pothen's behalf, and to retaliate against him for continuing to associate with Pothen and vowing to provide truthful testimony on Pothen's behalf in federal court. Other alleged harassing and retaliatory instances cited by Henrise include the initiation by Box of a "baseless internal affairs investigation" against Henrise for allegedly violating departmental regulations regarding the security of records (access to which Henrise, a senior sergeant in the department, was entitled), and Box's denial of Henrise's right to bid on normal patrol shift assignments.

In an effort to confirm his beliefs about why he was being singled out and punished, Henrise met with Horvath to discuss the matter.   Henrise asserts that Horvath became angry during this meeting, and "tersely berated" Henrise "in unmistakable terms" for not severing his relationship with Pothen.   In the same meeting, Horvath characterized Pothen in vulgar language and referred to a meeting between Pothen and Henrise that had taken place a week earlier in a local hotel.   That reference made Henrise realize that Horvath was tracking Henrise's off-duty time spent with Pothen, and convinced Henrise that the actions taken against him were based directly on his association with Pothen.

Henrise asserts that after this meeting with Horvath, the following events took place, which Henrise maintains were either

retaliatory or designed to discourage him from testifying on Pothen's behalf or destroy his credibility if he did testify: (1) Horvath rescheduled Henrise's shift, assigning a sergeant with less seniority than Henrise to supervise him; (2) Henrise was again denied the opportunity to bid for a supervisory position on a patrol shift; (3) a "false" complaint was filed against Henrise with the Civil Service Commission; (4) an intimidating conversation with defendant Clarence V. Johns, a Captain with the DeSoto Police Department, took place on the same day that Pothen filed his federal lawsuit, the thrust of which conversation was disapproval of Henrise's continued association with Pothen; (5) an article was approved by Captain Johns and then published in the Dallas Morning News, containing "false information" about an "unnamed officer," whom anyone familiar with the DeSoto police department would recognize as Henrise; and (6) Box commenced yet another internal affairs investigation of Henrise concerning a class "C" ticket that Henrise was "superficially involved with." (Contrary to customary policy, avers Henrise, defendant Robin Flores, the Records Division Supervisor for the DeSoto Police Department, elected to assert a formal internal affairs complaint instead of contacting Henrise to resolve the "trivial matter.") The investigator of this complaint concluded that Henrise should be cleared of the allegations, but Box and Horvath re-opened the investigation, forced a second interview with the investigator that included defendant Johns, with

7

the objective, according to Henrise, of sustaining the "baseless" complaint against Henrise.

Henrise filed a formal grievance with City Manager Holifield, against defendant Johns (presumably for his approval of the <u>Dallas Morning News</u> article, although the complaint does not say). As with the complaint filed against Horvath, however, Henrise received no response from the City.

Horvath left the position of Police Chief, and was replaced by acting police chief W.M. Broadnax. When Henrise went to Broadnax to inquire about the status of "a complaint Henrise had filed against Horvath,"[1] Broadnax reportedly "exploded" at Henrise, swearing at him and referring to Pothen's attorney by name in his anger, thereby evidencing, Henrise asserts, Broadnax's negative opinion of Pothen, Henrise, and Pothen's federal lawsuit in which Henrise was to be a material witness.

Henrise filed "several" complaints with the City against Horvath, Johns, and later Broadnax. Henrise alleges that each such complaint constituted actual notice to the City that Henrise was being subjected to harassment that amounted to retaliation and punishment. None of the complaints were investigated or acted on by the City.

In the fall of 1997, Henrise filed his complaint in the

---

[1] Henrise's petition neither clarifies which "complaint against Horvath" Henrise was inquiring about, nor specifies to whom that complaint was made.

district court, invoking 42 U.S.C. §§ 1983 and 1985, and naming as defendants Horvath, Johns, Box, and Flores in their individual capacities, and the City of DeSoto.  Henrise sued the individual defendants under § 1983 "pursuant to the First and Fourteenth Amendments" "for retaliating against him and punishing him for his continued association with Pothen, and for their conspiracy which was carried out and designed for that purpose."  He also sued the individual defendants under § 1985(2) "for their conspiratorial attempts to prevent him from testifying in the litigation brought in federal court by Pothen, and for punishing [Henrise] regarding the same."  Last, under § 1983, he sued the City pursuant to the First and Fourteenth Amendments for "the actions of its policymaker — the police chief — and for knowingly permitting the individual Defendants to retaliate against, threaten, punish, and intimidate [him]."

After the filing of a series of amended complaints, answers, counter-claims, motions to dismiss, a motion for summary judgment, and responses thereto, the district court ruled for the first time on the dismissal motions of the individual defendants and the City. With respect to the City, the district court denied the motion to dismiss without prejudice, and required Henrise to file an amended complaint that would "meet the basic requirements for pleading municipal liability under Section 1983."  With respect to the individual defendants, the court required Henrise to file a reply

to their defense of qualified immunity, "enumerating the specific conduct of each Defendant on which Plaintiff predicates his claims for which each Defendant should be held personally liable."

Henrise filed a Second Amended Complaint, which was his third attempt to detail his case against the defendants, the district court having highlighted the deficiencies of his earlier attempts. In response, all defendants submitted motions to dismiss, to which Henrise had an opportunity to respond. Having before it (1) the defendants' motions to dismiss, (2) the defendants' motion for summary judgment (which remained pending from earlier in the proceedings), (3) Henrise's motion for a continuance, and (4) the individual defendants' alternative motion to strike the Second Amended Complaint, the court ruled for the second time, rendering a memorandum opinion and order.

In that opinion, the district court granted the individual defendants' and City's motions to dismiss. The individual defendants' dismissal motion was granted because the district court concluded that Henrise failed to allege the violation of a constitutionally protected right, and that he therefore could not prove any set of facts that would entitle him to relief. In the alternative, the court held that even if Henrise had alleged the violation of a constitutional right, it was by no means a right that was clearly established at the time, so that the individual defendants were, in any event, entitled to qualified immunity. As

10

for the § 1985(2) conspiracy claims against the individual defendants, the district court concluded that Henrise failed to show the requisite agreement among the defendants to deter Henrise from testifying in the federal litigation. Last, with respect to Henrise's claims against the City, the district court found the complaint "lacking in that it does not contain basic and fundamental allegations to put DeSoto on notice as to the bases for its claims regarding municipal policy or custom." The court went on to state that even if Henrise <u>had</u> adequately shown that the City had an unconstitutional policy, he failed to state a constitutional claim for which relief could be granted. The court concluded that Henrise's claim must fail as a matter of law, because the court could find no underlying constitutional violation.

Having ruled on these motions to dismiss, the district court then denied the individual defendants' alternative motion to strike the Second Amended Complaint, and dismissed as moot the defendants' summary judgment motion and Henrise's motion for a continuance. Henrise timely filed a notice of appeal from the district court's order.

## II. Analysis

### A. Standard of Review

We review <u>de novo</u> a district court's dismissal for failure to state a claim under Rule 12(b)(6). In considering a motion to dismiss, the complaint should be construed in favor of the plaintiff, and all facts

11

pleaded should be taken as true.  Motions "to dismiss for
failure to state a claim [are] 'viewed with disfavor, and
[are] rarely granted.'"  A Rule 12(b)(6) dismissal will
not be affirmed "unless it appears beyond doubt that the
plaintiff can prove no set of facts in support of his
claim which would entitle him to relief."  However,
"conclusory allegations or legal conclusions masquerading
as factual conclusions will not suffice to prevent a
motion to dismiss."  In the context of a 12(b)(6) motion
in a section 1983 suit, the focus should be "whether the
complaint properly sets forth a claim of a deprivation of
rights, privileges, or immunities secured by the
Constitution or laws of the United States caused by
persons acting under color of state law."  If there is no
deprivation of any protected right the claim is properly
dismissed.[1]

## B. Discussion

Henrise contends that the district court erred in three

fundamental ways:  (1) by concluding that he failed to allege the

violation of a constitutional right;  (2) by determining that he did

not sufficiently allege a conspiracy; and (3) by finding that his

complaint did not afford the City sufficient notice of his claims.

Our painstaking review of the record satisfies us that the district

court dealt generously with Henrise throughout the course of the

proceedings, and did not err as to contentions (1) and (3).  We

differ with the court, however, on contention (2), convinced that

Henrise did allege facts sufficient, if proved, to show a

conspiracy and thus survive a Rule 12(b)(6) motion to dismiss.  We

therefore affirm the district court's ruling as to Henrise's § 1983

---

[1] <u>Southern Christian Leadership Conference v. Supreme Court
of Louisiana</u>, 252 F.3d 781, 786 (5th Cir. 2001) (internal
citations omitted).

claims against the City and the individual defendants for violation of a constitutional right. We reverse the district court's ruling as to Henrise's § 1985(2) conspiracy claims against the individual defendants, however, and remand for further proceedings.

### 1. Failure to allege the violation of a constitutional right

Two subsidiary arguments are subsumed within Henrise's contention that the district court erred when it determined that he failed to allege the violation of a constitutional right. The first subsidiary argument is that the district court erred in determining that Henrise's complaint failed to allege an actionable violation of his right to freedom of association. The second is that the district court unfairly characterized Henrise's complaint as alleging only freedom of association claims under the First Amendment despite allegations in his complaint that, according to Henrise, state two separate free speech claims. The first argument is wholly without merit; the second, although facially troubling, also proves meritless on closer examination.

### a. Freedom of association

Henrise insists that the district court erred in dismissing his freedom of association claim. Quoting extensively from <u>Roberts v. United States Jaycees</u>,[2] the district court noted correctly that there are two categories of freedom of association claims. As the district court explained,

---

[2] 468 U.S. 609, 617-18 (1984).

13

> The first category is epitomized by "highly personal relationships" such as marriage and family, and the personal affiliations that necessarily "attend the creation and sustenance of these highly personal relationships." [Roberts, 468 U.S. at 618-20]; Hobbs v. Hawkins, 968 F.2d 471, 482 (5th Cir.1992). The second category recognizes "associational rights derivative of the First Amendment rights of speech, assembly, petition for redress of grievances, and exercise of religion." Hobbs. v. Hawkins, 968 F.2d at 482.

After "closely examin[ing]" Henrise's complaint, the district court concluded that he was asserting the first type of freedom of association claim — those "epitomized 'by highly personal relationships' such as marriage and family." As the district court noted,

> Nowhere in the Plaintiff's Complaint does he allege that he joined with or associated himself with Pothen for the express purpose of speaking out on mismanagement, corruption or illegal activity that may have been occurring in the DeSoto Police Department. ... Plaintiff's claim is based not on his desire to exercise any right secured by the First Amendment but on his personal friendship with Pothen — nothing more.

We agree with the district court. There is no indication in the complaint that Henrise was alleging the second type of freedom of association claim. Restricted to consideration of only the first type, therefore, the district court did not err when it refused to classify Henrise's close personal and professional friendship with Pothen as the type of highly personal relationship that earns First Amendment protection. Despite Henrise's attempt to cast police officers' friendships as special and unique, those friendships still are not the type of intimate human relationship

14

that demand protection as a "fundamental element of human liberty."[3]  Henrise's insistence on appeal that, "[a]t the time of the filing of the Plaintiff's Complaint and at the time he was retaliated against and punished by the individual Defendants, the First Amendment right of freedom of association was clearly established," is to no avail.  Albeit true that this right was clearly established, Henrise's association with Pothen simply was not the kind of familial or intimately close personal relationship that is protected by that right.  The district court did not err in this determination.

### b. Free speech

Henrise also insists that he alleged two distinct free speech claims as well, and that the district court erred in characterizing his complaint as alleging only freedom of association claims under the First Amendment.  In particular, Henrise asserts in his appellate brief that his complaint "contains claims of retaliation for his speech [in reporting Horvath's suspected criminal activity to the City Manager] as well as the Plaintiff's anticipated testimony in support of Pothen's federal lawsuit coupled with his association with Pothen."  (Emphasis ours.)  As such, Henrise appears to be classifying both his report of Horvath's suspected criminal activity and his intended future testimony on Pothen's behalf as protected speech, asserting that the allegations of his

---

[3] Roberts, 468 U.S. at 618.

15

complaint validly state a claim for retaliation for those two instances of speech.

As an initial matter, we note that Henrise's Second Amended Complaint alleges only the following three causes of action:

> 39. Pursuant to the <u>First and Fourteenth Amendments</u>, and procedurally pursuant to <u>42 U.S.C. § 1983</u>, Plaintiff sues the <u>individual Defendants</u> for <u>retaliating</u> against him and punishing him <u>for his continued association with Pothen</u>, and for their <u>conspiracy</u> which was carried out and designed <u>for that purpose</u>.

> 40. Pursuant to the first clause of <u>42 U.S.C. § 1985(2)</u>, Plaintiff sues the <u>individual Defendants</u> for their <u>conspiratorial attempts to prevent him from testifying in the litigation brought in federal court</u> by Pothen, and for <u>punishing Plaintiff regarding the same</u>.

> 41. Pursuant to the <u>First and Fourteenth Amendments</u>, and procedurally pursuant to <u>42 U.S.C. § 1983</u>, Plaintiff sues the <u>City of DeSoto</u> for <u>the actions of its policymaker — the police chief</u> — and for knowingly permitting the individual Defendants to <u>retaliate against, threaten, punish, and intimidate Plaintiff</u>. <u>The City was on actual notice of this conduct, and failed to prevent it from occurring and recurring and by [sic] ratifying such conduct.</u>
> [Emphasis added.]

Taking Henrise's own expression of his causes of action at face value, he fails to allege a constitutional free speech claim at all in ¶ 39, the only paragraph in which any constitutional (as distinguished from statutory) causes of action are proffered against the individual defendants. The only constitutional claim asserted in ¶ 39 involves freedom of association, which, as we have noted, is not applicable on these facts.

Moving to ¶ 40, and setting aside for the moment the fact that

this  paragraph  expresses  a  <u>statutory</u>  cause  of  action  for
<u>conspiracy</u>, we note that it does pertain to prospective testimony.
Construing  the  complaint  extremely  liberally,  therefore,  we
possibly could glean a free speech claim from ¶ 40 premised on the
fact that Henrise intended to provide testimony at Pothen's trial
and so informed the defendants.  Last, regardless of which of the
three cause-of-action paragraphs is liberally construed, the causes
of action as Henrise chose to express them offer no indication that
he  means  to  cast  his  report  of  Horvath's  suspected  criminal
activity  as  an  exercise  of  free  speech  for  which  he  suffered
retaliation.

        Out of an abundance of caution, however, we have reviewed the
entire  record  on  appeal  to  see  whether  Henrise  can  legitimately
claim  to  have  alerted  the  court  and  the  defendants  through  other
pleadings to the fact that he meant to rely, at least in part, on
a  freedom  of  speech  claim  premised  on  his  and  Pothen's  report  of
Horvath's  suspected  criminal  activity.   For  the  most  part,  our
record search has uncovered only repeated assertions similar to the
following, taken from Henrise's reply to the defendants' motion to
dismiss his Second Amended Complaint:

>           Plaintiff alleges that after Pothen was terminated and
>           Henrise  was  returned  to  work,  Horvath  engaged  in  a
>           systematic  pattern  of  retaliation  against  Henrise.   This
>           <u>retaliation was because Henrise refused to sever his
>           association</u> with Pothen, and <u>because Henrise was to
>           testify favorably in Pothen's federal lawsuit</u>.
>           [Emphasis added.]

17

In fairness, we must note that there is one instance in the record when Henrise equates his report of Horvath's suspected criminal conduct with an exercise of free speech. In his reply to the defendants' motion for summary judgment,[4] Henrise stated:

> Although the primary thrust of plaintiff's claims center on the retaliation he suffered as a result of his relationship with Pothen and the favorable testimony he rendered to Pothen against defendants, plaintiff has alleged that it was initially his speech against Horvath which resulted in his suspension from the police department.

We note, however, that this reply was filed before the district court ruled on the first motions to dismiss. In that writing, the district court explained that it had

> reviewed Plaintiff's First Amended Complaint and finds that the Complaint is lacking in specificity and particularity as to the conduct, acts, or omissions of each Individual Defendant. The Complaint must allege what each Defendant did to cause Plaintiff to be deprived of a constitutionally protected right and therefore be liable to Plaintiff personally. In other words, Plaintiff must state specifically how each Defendant retaliated against him and conspired to deprive him of a constitutionally or statutorily protected right. This is really not that difficult of a task if the facts for a

---

[4] The district court did not err by not considering Henrise's summary judgment response brief, however. "In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, [the district] court's review is limited to the allegations contained in the pleadings themselves. ... [D]ocuments incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes." Harris v. Castle Motor Sales, Inc., 2001 WL 477241, at *1 (N.D. Ill. 2001) (emphasis added). We discuss Henrise's summary judgment response only to show that he made the free speech legal argument prior to submitting his Second Amended Complaint; yet he failed to state any free speech cause of action in that amended complaint.

cause of action exist.  If the facts exist, <u>all Plaintiff</u>
<u>has to do is allege the elements of a First Amendment</u>
<u>retaliation claim,  state facts which would establish</u>
<u>those elements,</u> and <u>state the conduct of each Defendant</u>
<u>that caused him to be subjected to unlawful retaliation</u>.
[Emphasis added.]

Despite these generous and detailed instructions by the court,

when Henrise submitted his Second Amended Complaint (his "third

bite at the apple," as the district court later characterized it),

Henrise <u>once again</u> failed to state clearly that he was alleging a

claim against the defendants based on their retaliation for his

exercise of free speech (in the form of reporting Horvath's

conduct).  Given the numerous opportunities afforded to Henrise to

"get it right," therefore, and his continued insistence in every

document (other than the excerpt quoted above) that his retaliation

claims rested <u>only</u> on his freedom of association and his

prospective testimony, we conclude that the district court did not

err by refusing to consider any free speech claim based on the

report by Henrise and Pothen of Horvath's conduct.

There remains, however, the possibility, alluded to above,

that Henrise's Second Amended Complaint might, by very liberal

construction, be read to include a retaliation claim based on

Henrise's prospective testimony in Pothen's federal lawsuit.  In

the end, though, we must reject this possibility.  His Second

Amended Complaint simply does not allege such a cause of action

against the individual defendants.  As noted, the only related

cause of action to be found is stated in ¶ 40.  That cause of

19

action, however, is expressly based on 42 U.S.C. § 1985(2).  It is
neither a constitutional claim nor a claim against the individual
defendants except insofar as it alleges their <u>participation</u> in a
<u>conspiracy</u>.  As observed in connection with Henrise's free speech
claim premised on the report of Horvath's criminal activity, this
was Henrise's third attempt to articulate the causes of action he
wished to assert against the defendants, and he  simply failed —
despite  coaching  by  the  district  court  —  to  allege  any
constitutional free speech claim whatsoever against the individual
defendants.

It is hornbook law that a Rule 12(b)(6) dismissal motion
should not be granted unless it appears to the district court
"beyond doubt that the plaintiff can prove <u>no set of facts in
support of his claim</u> which would entitle him to relief."[5]  It is
also well-settled that the court must take all well-pleaded facts
and allegations within the complaint as true when ruling on a Rule
12(b)(6) motion.[6]  The question that usually confronts a district
court  in  this  context  is  whether  the  plaintiff  has  alleged
sufficient <u>facts</u> to demonstrate an ability to prove all the
elements of the stated cause of action.  Here, however, the
district  court  was  faced  with  precisely  the  inverse  problem:

---

[5] <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (emphasis added).

[6] <u>Brown v. Nationsbank Corp.</u>, 188 F.3d 579, 585 (5th Cir. 1999).

Perhaps the court could cobble together Henrise's alleged facts to constitute a free speech cause of action against the individual defendants, particularly Horvath; but Henrise himself, in three attempts, never identified such a cause of action. However plaintiff-friendly the 12(b)(6) standard may be, it does not require (or even permit) a court to "lawyer" a plaintiff's case, especially a plaintiff who is already represented by counsel. We therefore agree with the district court that Henrise failed to state a constitutional free speech claim, and we affirm the district court's ruling that Henrise failed to allege the violation of a constitutional right by the individual defendants.

### 2. Conspiracy

Paragraph 40 of Henrise's Second Amended Complaint expressly alleges a cause of action against the individual defendants under the "first clause of 42 U.S.C. § 1985(2)." That statute provides a cause of action when

> two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully ....[7]

In considering this claim, the district court stated:

> The court is aware that Plaintiff contends that Defendants engaged in a conspiracy to prevent or intimidate him from providing testimony favorable to Pothen and adverse to the City of DeSoto; however, the court does not understand the basis of this conclusory

---

[7] 42 U.S.C. § 1985(2).

21

Perhaps the court could cobble together Henrise's alleged facts to constitute a free speech cause of action against the individual defendants, particularly Horvath; but Henrise himself, in three attempts, never identified such a cause of action. However plaintiff-friendly the 12(b)(6) standard may be, it does not require (or even permit) a court to "lawyer" a plaintiff's case, especially a plaintiff who is already represented by counsel. We therefore agree with the district court that Henrise failed to state a constitutional free speech claim, and we affirm the district court's ruling that Henrise failed to allege the violation of a constitutional right by the individual defendants.

### 2. Conspiracy

Paragraph 40 of Henrise's Second Amended Complaint expressly alleges a cause of action against the individual defendants under the "first clause of 42 U.S.C. § 1985(2)." That statute provides a cause of action when

> two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully ....[7]

In considering this claim, the district court stated:

> The court is aware that Plaintiff contends that Defendants engaged in a conspiracy to prevent or intimidate him from providing testimony favorable to Pothen and adverse to the City of DeSoto; however, the court does not understand the basis of this conclusory

---

[7] 42 U.S.C. § 1985(2).

21

allegation because <u>Henrise has not pleaded specific facts</u>
<u>supporting a conspiracy</u>. He has not stated what each
individual Defendant did to promote or further the
alleged conspiracy. <u>As the essence of a conspiracy is an</u>
<u>agreement or meeting of the minds of the participants, no</u>
<u>facts are alleged that an agreement existed</u> or which
state the nature of each individual Defendant's acts. <u>A</u>
<u>hodgepodge of unrelated acts does not a conspiracy make,</u>
<u>which is all Plaintiff sets forth</u>. Other than
Plaintiff's conclusions, there are <u>no specific facts</u>
<u>which would indicate that Defendants conspired</u> to prevent
or intimidate Henrise from testifying on behalf of
Pothen. ... The conclusory allegations set forth in
Plaintiff's Complaint are simply too slender of a reed to
support a claim under § 1985(2). [Emphasis added.]

We have reviewed the Second Amended Complaint and must disagree

with the district court's conclusions on this point.

In ¶ 29, Henrise alleges that:

> [o]n May 4, 1996 plaintiff's immediate supervisor, Lt.
> William R. Ransom, stated that defendants Box and Johns
> were actively compiling a dossier on Henrise to use to
> try and terminate Henrise.

This allegation is not merely conclusional. The suggestion that

Henrise will call an independent witness to state that two police

officials were working together to "actively compil[e] a dossier on

Henrise" contradicts the district court's finding that "no facts

are alleged that an agreement existed." Admittedly, the alleged

purpose of the "dossier" was to "terminate" Henrise, not to prevent

him from testifying, as § 1985(2) requires. It demands no great

inferential leap, however, for a court to surmise that the same

parties conspiring to "terminate" Henrise just might be doing so

for the ultimate purpose of "intimidat[ing] or threat[ening] [him]

... from testifying to any matter pending [in federal court],

22

freely, fully, and truthfully," as the statute requires.  We are
therefore satisfied that Henrise pleaded facts in support of his §
1985(2) conspiracy claim sufficient to survive the pro-plaintiff
requisites of a Rule 12(b)(6) motion.  We therefore reverse the
district court's dismissal of that claim.

### 3. Insufficient notice of claims against the City

To reiterate, Henrise alleged the following cause of action
against the City as defendant:

> 41.  Pursuant to the First and Fourteenth Amendments, and
> procedurally pursuant to 42 U.S.C. § 1983, Plaintiff sues
> the City of DeSoto for the actions of its policymaker —
> the police chief — and for knowingly permitting the
> individual Defendants to retaliate against, threaten,
> punish, and intimidate Plaintiff.  The City was on actual
> notice of this conduct, and failed to prevent it from
> occurring and recurring and by [sic] ratifying such
> conduct.

As we have seen, the district court denied the City's first motion
to dismiss Henrise's claims.  In doing so, the court observed that

> [r]equiring a plaintiff to identify the specific policy
> or custom and allege that the policy or custom adopted by
> the municipality or policymaking official was the 'moving
> force' behind the constitutional violation is in no way
> inconsistent with notice pleading or the mandate of
> [Leatherman v. Tarrant County Intelligence & Coordination
> Unit[8]]. .... [T]he allegations of a complaint must not be
> conclusory; otherwise, a defendant is not placed on
> notice of the grounds for the claim.  Conclusory
> allegations cannot survive a motion to dismiss. See
> [Guidry v. Bank of LaPlace[9]]. [Emphasis added.]

The district court then reviewed the elements that a plaintiff

---

[8] 507 U.S. 163 (1993).

[9] 954 F.2d 278, 281 (5th Cir. 1992).

must allege if he wishes to impose liability on a municipality:

> To support a claim based upon the existence of an official custom or policy, the Plaintiff must plead facts which show that: 1) a policy or custom existed; 2) the governmental policy makers actually or constructively knew of its existence; 3) a constitutional violation occurred; and 4) the custom or policy served as the moving force behind the violation.[10]

Comparing Henrise's First Amended to this standard, the district court stated:

> The court has reviewed Plaintiff's Complaint in detail and finds that it does not contain these basic and fundamental allegations to put DeSoto on notice as to the bases for its claims regarding municipal policy or custom.
>
> . . .
>
> Plaintiff's Complaint does not meet the basic requirements for pleading municipal liability under Section 1983 as set forth in [Spiller v. City of Texas City[11]] and Meadowbriar. The Court concludes that the allegations in Plaintiff's Complaint are conclusory, including the reference to Defendant Horvath as a policymaker, and as such fail to state a claim upon which relief can be granted.
>
> Plaintiff states that he has not pleaded "his best case with respect to DeSoto." . . . Plaintiff will get his chance to do so because, rather than dismiss his Complaint, the court will permit Plaintiff to amend his Complaint in accordance with this order. In this regard, Plaintiff is strongly admonished to ride his best pony in the race, as he will not get another chance to race against De Soto.

When it reviewed the Second Amended Complaint, the district court found that, despite its earlier admonishment, "little, if

---

[10] Meadowbriar Home for Children, Inc. v. Gunn, 81 F.3d 521, 532-33 (5th Cir. 1996) (citing Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987)).

[11] 130 F.3d 162 (5th Cir. 1997).

24

anything, of substance has been added to it that is different from the Plaintiff's First Amended Complaint." As the "Complaint [was] still lacking in that it [did] not contain basic and fundamental allegations to put De Soto on notice as to the bases for its claims regarding municipal liability," the district court dismissed Henrise's claims against the City for failure to state a claim.

Our close reading of the Second Amended Complaint confirms the district court's conclusions. The Second Amended Complaint contains a conclusional insistence, without support, that "[i]f Horvath was not the 'official' policymaker, by custom the DeSoto Chief of Police is deemed the de facto policymaker in his capacity as the highest ranking law enforcement and police administrator within the City of De Soto," and an allegation that, "[b]y failing to act or investigate Henrise's complaints regarding retaliation by its Chief of Police, the City engaged in a deliberate and unmistakable course of conduct among various alternatives." These allegations fall far short of meeting the requirements for the imposition of municipal liability. Merely insisting that the police chief is the "de facto policymaker" will not make it so,[12]

_____

[12] We have, in any event, previously noted the Supreme Court's reservations concerning the theory of a "de factor" policymaker. See Gros v. City of Grand Prairie, Tex., 181 F.3d 613, 616 n.2 (5th Cir. 1999) ("The Supreme Court has rejected the principle of a 'de facto policymaker.' See [City of St. Louis v. Praprotnik, 485 U.S. 112, 131 (1988)].").
In addition, we note in passing the presence of a logical inconsistency in Henrise's allegations that the chief of police is the policymaker, and that the objectionable "policy" is the

and the failure of the City to investigate Henrise's complaints of retaliation does not constitute a pervasive and widespread practice sufficient to show a municipal "custom" warranting the same attention as a written policy.[13]  We therefore affirm the district court's dismissal of Henrise's claims against the City.

### III. Conclusion

Our <u>de novo</u> review confirms that the district court determined correctly that Henrise failed to allege a constitutional violation against the individual defendants under 42 U.S.C. § 1983, and that his complaint also lacked the "basic and fundamental allegations to put De Soto on notice as to the bases for its claims regarding municipal liability."  We therefore affirm the district court's dismissal of Henrise's § 1983 claims against the individual

-------------------------------------------------

City's failure to investigate Henrise's complaints of retaliation.  If the policy is not to investigate the police chief's retaliatory conduct, then the police chief is not the policymaker that Henrise needs; he needs to identify a policymaker who promoted the policy of not investigating the complaints of retaliation.  On the other hand, if he prefers to cast the police chief as the policymaker, then he needs to identify a course of conduct engaged in <u>by</u> that individual — e.g., the retaliatory conduct itself — to serve as the "policy."

[13] If the plaintiff cannot point to a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers," as Henrise cannot, then the plaintiff must instead show a "<u>persistent, widespread practice</u> of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is <u>so common and well settled as to constitute a custom</u> that fairly represents municipal policy." <u>Johnson v. Moore</u>, 958 F.2d 92, 94 (5th Cir. 1992) (quoting <u>Bennett v. City of Slidell</u>, 735 F.2d 861, 862 (5th Cir. 1984) (en banc)) (emphasis added).

defendants and the City.  We disagree with the district court's conclusion, however, that Henrise failed to plead facts showing the requisite agreement for a conspiracy, so we reverse the district court's dismissal of Henrise's conspiracy claims against the individual defendants under 42 U.S.C. § 1985(2), and remand the case for further proceedings.

AFFIRMED IN PART; and REVERSED AND REMANDED IN PART.

27