25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 9 2003

Michael N. Milby
Clerk of Court

VICENTA CANTU, et al.                    :
                                         :
        Plaintiffs                       :
                                         :
vs.                                      :        CIVIL ACTION NO. B-03-096
                                         :
CAMERON COUNTY, et al.                   :
                                         :
        Defendants                       :

**DEFENDANT YZAGUIRRE'S REPLY IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS CANTU, MUNOZ, AND
WEAVER'S FIRST AMENDED COMPLAINT
UNDER RULE 12(b)(6) AND QUALIFIED IMMUNITY**

**Craig H. Vittitoe**
State Bar No. 20593900
Admissions ID No. 18756
**Roger W. Hughes**
State Bar No. 10229500
Admissions ID No. 5950
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile:  (956) 428-2954

ATTORNEYS FOR DEFENDANT TONY
YZAGUIRRE, Assessor-Collector of Cameron
County and Director of Cameron County
Automobile Crimes Enforcement Task Force in
his Individual Capacity

Defendant Yzaguirre's Reply in Support of Motion to Dismiss Plaintiffs Cantu, Munoz and Weaver's 1st Amended Complaint Under Rule
12(b)(6) and Qualified Immunity
[10-fmg] C:\Files\Y\Y80\Motions\REPLY IN SUPPT M2D Canty-Munoz & Weaver                                      Page    i

# TABLE OF CONTENTS

Page:

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I.  Status and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   A.     Objections To Plaintiffs' Rule 7 Reply "Evidence" . . . . . . . . . . . . . . . . . . 3

   B.     Individual Defendant Not Required to File Formal Answer
          to Use Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   C.     Plaintiffs' Fail to Plead to a Denial of First Amendment
          Association Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   D.     Cantu Fails to Allege Facts Showing Speech on A Matter of
          Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          1.     Yzaguirre Entitled to Regulate Cantu's
                 Contacts with TexDOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          2.     Yzaguirre Entitled to Investigate Why Cantu
                 Held Up Valid Title Transfers . . . . . . . . . . . . . . . . . . . . . . . . . 8

          3.     Cantu Fails to Alleged Facts Showing Speech
                 About Violations of Transportation Code . . . . . . . . . . . . . . . . . . 15

   E.     Munoz Fails to Allege Facts Showing His Speech Was
          on A Matter of Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Defendant Yzaguirre's Reply in Support of Motion to Dismiss Plaintiffs Cantu, Munoz and Weaver's 1st Amended Complaint Under Rule
12(b)(6) and Qualified Immunity
[10-fmg] C:\Files\Y\Y80\Motions\REPLY IN SUPPT M2D Canty-Munoz & Weaver                                    Page    ii

F.    Weaver Fails to Allege Facts That She Spoke A Matter of
      Public Concern . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III. Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Defendant Yzaguirre's Reply in Support of Motion to Dismiss Plaintiffs Cantu, Munoz and Weaver's 1st Amended Complaint Under Rule
12(b)(6) and Qualified Immunity
[10-fmg] C:\Files\Y\Y80\Motions\REPLY IN SUPPT M2D Canty-Munoz & Weaver                    Page    iii

# TABLE OF AUTHORITIES

**Page:**

Cites:

*Buckley v. Valeo*, 424 U.S. 1 (1976) ........................................ 5, 6

*Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985) ................................. 5

*Finch v. Ft. Bend I.S.D.*, 333 F.3d 555 (5th Cir. 2003) ........................... 7

*Foley v. Univ. of Houston System*, 324 F.3d 310
        (5th Cir. 2003) ...................................... 18

*Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993),
        *cert. denied*, 510 U.S. 1072 (1994) .................................. 8

*Henrise v. Horvath*, 174 F.Supp.2d 492 (N.D. Tex. 2001),
        *aff'd in part, rev'd in part,*
        45 Fed. Appx. 323 (5th Cir. 2002) ..................................... 7

*Ibarra v. Houston I.S.D.*, 84 F.Supp.2d 825
        (S.D.Tex. 1999) ...................................................... 8

*Jones v. Collins*, 132 F.3d 1048 (5th Cir. 1998) ................................. 8

*McAvey v. Lee*, 260 F.3d 359 (5th Cir. 2001) .................................... 5

*Murray v. Achambo*, 132 F.3d 609 (10th Cir. 1998) ............................. 5

*Puckett v. U.S.*, 82 F.Supp.2d 660 (S.D.Tex. 1999) ............................. 5

*Scanlon v. Texas A&M Univ.*, ___ F.3d ___,
        2003 WL 21961422, *2 (5th Cir. August 19, 2003) ...................... 3, 4

*Tharling v. City of Port Lavaca*, 329 F.3d 422
        (5th Cir.2003) ...................................................... 8

Defendant Yzaguirre's Reply in Support of Motion to Dismiss Plaintiffs Cantu, Munoz and Weaver's 1st Amended Complaint Under Rule
12(b)(6) and Qualified Immunity
[10-fmg] C:\Files\Y\Y80\Motions\REPLY IN SUPPT M2D Canty-Munoz & Weaver                                    Page    iv

*Vanderhurst v. Colorado Mt. Dist.,* 15 F.Supp.2d 1297
(D.Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


<u>Federal Rules of Civil Procedure:</u>
Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


<u>Treatises:</u>
§ 1357 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


<u>Texas Transportation Code Annotated:</u>
§ 730.004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§501.023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§501.0234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

§501.051 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§501.052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

§502.002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§502.002(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§502.004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§502.005 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§502.410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

§502.411(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

§503.004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§503.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

§730.003(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§730.003(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§730.003(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

§730.003(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


Texas Administrative Code:
16 TEX. ADMIN. CODE §111.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16 TEX. ADMIN. CODE §111.18(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

16 TEX. ADMIN. CODE §111.18(c)(1-5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

27 TEX. REGISTER 1476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

43 TEX. ADMIN. CODE §57.37 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

43 TEX. ADMIN. CODE §57.40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

43 TEX. ADMIN. CODE §57.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


Texas Tax Code Annotated:
§152.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§152.0411 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§152.044 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§152.092 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 23.123(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

### DEFENDANT YZAGUIRRE'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS CANTU, MUNOZ, AND WEAVER'S FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6) AND QUALIFIED IMMUNITY

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant Tony Yzaguirre, Jr.**, Individually and files this his Reply in Support of Motion to Dismiss Plaintiffs Cantu, Munoz, and Weaver's First Amended Complaint Under Rule 12(b)(6) and Qualified Immunity, and would respectfully show the Court as follows:

### I. Status and Procedural History

Defendant Yzaguirre moved to dismiss the Plaintiffs Cantu, Munoz, and Weaver's First Amended Complaint.  Dkt # 16.  Plaintiffs filed a response.  Dkt# 18.  Plaintiffs filed a Rule 7(a) Reply on August 20, 2003.  Dkt # 23.

Defendant Yzaguirre renews his motion to dismiss as to Cantu, Munoz, and Weaver because neither their Amended Complaint nor their Rule 7 Reply cures the defects noted in his motion.

### II. Summary of the Argument

The basic problem of Plaintiffs' Rule 7 Reply is that it substitutes bulk for specific statements. They allege numerous conclusions that Yzaguirre committed misconduct. Yet the issue is what they said and whether they spoke on a matter of public concern.  Little of

the new allegations bear directly on that subject and none meet their burden. Voluminous allegations cannot alone provide specific facts to defeat qualified immunity.

Plaintiff Cantu and Munoz's Rule 7 Reply exhibits are not a proper basis to resolve a Rule 12(b)(6) motion. They are not the speech at issue; Yzaguirre disputes their accuracy. Moreover, Plaintiffs' disclosure of Exhs. 1-24 violates Transportation Code Chapter 730. This blatant violation of the very laws they claim to vindicate strongly suggests their misuse of these documents is intended to make inflammatory claims rather than prove their case.

Plaintiffs simply fail to allege an expressive association protected by the First Amendment. At best, it amounts to social associations that are not protected.

Cantu alleges twenty-four title transfer applications she questioned. Carefully examined none of them involved fraud or dishonesty by the applicants; in none of them did Cantu accuse Yzaguirre of misconduct. The circumstances show that Yzaguirre was performing his legal duties to investigate why title transfers were not approved after they had sat on Cantu's desk for six months to a year. In each case, her speech was an explanation of her actions rather than a criticism of Yzaguirre's actions.

Cantu then claims Yzaguirre violated other provisions of the Transportation Code. However, she does not allege she accused him of these violations nor does he allege facts showing he violated them.

Weaver wholly fails to allege any new facts to support her claim that her speech was

on a matter of public concern.  Munoz adds new allegations, but none of the alleged statements clearly show he accused Yzaguirre of anything or that his speech was on a matter of public concern.

### III.  Argument and Authorities

**A.    Objections To Plaintiffs' Rule 7 Reply "Evidence"**

To support the Rule 7 Reply, Plaintiffs Cantu and Munoz submit Exhs. 1-27.  These exhibits are not proper "evidence" that can be submitted to support their claims to defeat a Rule 12(b)(6) motion to dismiss; Defendant Yzaguirre objects to them.

The motion must be decided on the allegations; the court may consider documents submitted on the motion when the documents are central to the allegations, referred to in the complaint, and are undisputed.  *Scanlon v. Texas A&M Univ.,* ___ F.3d ___, 2003 WL 21961422, *2 (5th Cir. August 19, 2003).  If the opposing party objects to their reliability, the court should not consider them.  *Id.* at *2-3.

First, they are not central to Plaintiffs' allegations even if they are incorporated or attached.  Carefully reviewed, none of them contain the speech acts upon they rely to make their First Amendment claims.  Exhs. 1-24 are documents received or generated to apply to transfer title after a sale.  Exhs 26-27 are not even speech acts.

Second, Defendant does dispute their reliability of exhs. 1-25.  In most cases, the only part of the exhibits 1-24 that show the reason Plaintiff Cantu rejected the applications are her

own statements. Compare, *Scanlon,* at \*3. In several cases, the files is incomplete.

Third, Plaintiffs' use of Exhs. 1-24 by publishing them in public document violates the title applicants' rights of privacy. TEX. TRANS. CODE ANN. Chap. 730 (Vernon Supp. 2003). It is prohibited for an agency to disclose personal information in the motor vehicle records. TEX. TRANS. CODE ANN. § 730.004 (Vernon Supp. 2003). "Motor vehicle records' includes a record that pertains to a motor vehicle registration or title. TEX. TRANS. CODE ANN. §730.003(4)(Vernon Supp. 2003). "Personal information" means information that identifies a person, including their image, social security number, driver's license number, name, or address. TEX. TRANS. CODE ANN. §730.003(6) (Vernon Supp. 2003). "Agency" any political subdivision that compiles or maintains motor vehicle records. TEX. TRANS. CODE ANN. §730.003(1) (Vernon Supp. 2003). "Disclose" means to make known personal information by any means of communication. TEX. TRANS. CODE ANN. §730.003(2) (Vernon Supp. 2003).

Exhibits 1-24 contain personal information and Plaintiffs have improperly disclosed them to the public by attaching them to their Rule 7 Reply. They do not claim they received the applicants' permission or have properly obtained the records from any agency. Also, Exh. 3 contains a dealer Motor Vehicle Inventory Tax Statement marked "confidential." Such reports are confidential and not available for public inspection. TEX. TAX CODE §23.123(b) (Vernon 2002).

**B.    Individual Defendant Not Required to File Formal Answer to Use Rule 12(b)(6)**

Plaintiffs appear to argue that they have no burden to plead specifically to defeat qualified immunity because Defendant Yzaguirre has failed to plead the defense. Dkt # 18 ¶¶ 18-20.   No such requirement exists.

Defendant can raise qualified immunity under Rule 12(b)(6) without first filing an answer. *Elliott v. Perez*, 751 F.2d 1472, 1479-82 (5th Cir. 1985).  Rule 12(b) provides that motions to dismiss under Rule 12(b)(6) must be made before any responsive pleading.  The defendant need not file a formal answer if it has filed a Rule 12(b)(6) motion to dismiss. *Murray v. Achambo*, 132 F.3d 609, 611 (10th Cir. 1998).  A Rule 12(b)(6) motion must be filed before filing an answer.  *Puckett v. U.S.*, 82 F.Supp.2d 660, 663 (S.D.Tex. 1999); Wright and Miller, FED. PRAC. & PROC. § 1357, pp. 229-300 (1990).  If it is filed after the answer, then it is either waived or treated as a Rule 12(c) motion for judgment on the pleadings. *McAvey v. Lee*, 260 F.3d 359, 371 (5th Cir. 2001); *Puckett,* 82 F.Supp.2d at 663. All the cases Plaintiffs cite are cases dealing with motions for summary judgment or trial motions.

In short, Plaintiffs' waiver argument is simply contrary to Rule 12(b).

**C.    Plaintiffs' Fail to Plead to a Denial of First Amendment Association Rights**

Plaintiffs' Responses simply do not join issue regarding the defects Defendant cites. Plaintiffs quote *Buckley v. Valeo,* 424 U.S. 1 (1976) at length about the importance of

expressive associations. However, most of their quotes are beside the point because they do not explain how they have an "association" at the outset. *Buckley* is no guidance; it involved a challenge to 1971 Federal Election Campaign Act limits on contributions to political candidates. The plaintiffs were the Mississippi Republican Party, the McCarthy Presidential committee, the New York Civil Liberties Union, etc. 424 U.S. at 14. These are obviously groups that formally organize to engage in political speech. No one challenged whether they were expressive or familial associations entitled to protection.

Cantu, Munoz, and Weaver have not identified how they have or could plead facts showing they had an "association" for First Amendment purposes. The only facts they allege are:

a.    they closely "associate" with each other in the performance of their duty; Dkt # 23, ¶¶ 26, 43, 50, 53;

b.    Cantu told Munoz her suspicions about Yzaguirre's actions; Dkt #23, ¶ 35;

c.    Cantu lunched daily with Weaver; Dkt #23, ¶ 50; and

d.    Weaver and Cantu discussed their concerns about Yzaguirre at those lunches; Dkt #23, ¶ 50.

This wholly fails to allege facts of an "association" between Munoz and Weaver. The "association" is that (1) during work Cantu and Weaver discussed office matters, and (2) at lunch Cantu and Weaver discussed office matters. Cantu and Weaver do not explain their

lunch discussion create anything more than a social association, which has no protected status. They do not cite a single case that this qualifies as an "association" for First Amendment purposes.

Employees "associate" on the job simply because they work together; not surprisingly, many will find others at work who share their viewpoints on a wide variety of subjects. If simply working together and sharing opinions about the job creates an expressive association for First Amendment analysis, then the workplace itself become an "expressive association" *per se*. However, the Fifth Circuit has rejected "expressive association" claims in similar circumstances. *Finch v. Ft. Bend I.S.D.,* 333 F.3d 555, 564 (5th Cir. 2003); *Henrise v. Horvath,* 174 F.Supp.2d 492, 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part,* 45 Fed. Appx. 323 (5th Cir. 2002)[unpublished].

**D.     Cantu Fails to Allege Facts Showing Speech on A Matter of Public Concern**

Carefully considered, Cantu's new allegations about specific title transfer applications (Rule 7 Reply, ¶ 17A-X; Exhs. 1-24) do not involve speech on a matter of public concern. They do not show she specifically accused Yzaguirre of a crime or an act of dishonesty; rather they show that her speech was a defense of her length delays in processing title certificate transfers after the applicants made legitimate complaints.

1.     <u>Yzaguirre Entitled to Regulate Cantu's Contacts with TexDOT</u>

Cantu claims she was required to report "fraudulent vehicle registration" to TexDOT

---

pursuant to 43 Texas Administrative Code section 57.41. Dkt # 23, Rule 7 Reply ¶ 20. This section applies to the auditors of TexDOT grant moneys, not Cantu. 43 TEX. ADMIN. CODE §§ 57.37-.40 require audits of grant money received by certain grantees. 43 TEX. ADMIN. CODE § 57.41 requires that fraud, theft, embezzlement, forgery, etc., found during the audits be reported to local prosecutors or the Auto Theft Prevention Authority. Cantu was not an auditor and none of her allegations were encountered during an audit of grant moneys.

Moreover, Cantu does not claim that the "complaints" she sent to TexDOT were her complaints. First Amended Complaint, ¶ 26; Rule 7 Reply, ¶ 20; Dkt # 23. She has no First Amendment claim for other people's statements. *Jones v. Collins*, 132 F.3d 1048, 1053 (5th Cir. 1998); *Vanderhurst v. Colorado Mt. Dist.*, 15 F.Supp.2d 1297, 1305 (D.Colo. 1998). Her self-appointed role as investigator or desire to purse an investigation gives her no First Amendment rights. *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir.2003). Yzaguirre was within his rights to insist that he first approve anything sent to TexDOT. *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993), *cert. denied*, 510 U.S. 1072 (1994); *Ibarra v. Houston I.S.D.*, 84 F.Supp.2d 825, 837 (S.D.Tex. 1999).

2.    <u>Yzaguirre Entitled to Investigate Why Cantu Held Up Valid Title Transfers</u>

Each of the twenty-four title transfer transactions (Rule 7 Reply ¶ 17; Exhs. 1-24) do not involve "fraudulent vehicle registrations."[1] The deficiencies noted do not go to whether

---

[1] In discussing Cantu's allegations about Exhs. 1-24, Yzaguirre does not waive his objections to the exhibits or his request the court strike them.

there was a valid sale or whether the applicant was the new legal owner. They show that her "speech" took place in the context of Yzaguirre investigating valid complaints over her lengthy delays in transferring title certificates. She was not accusing him of anything, but rather defending her own actions.

Some basic information about title transfers for sales of used motor vehicles is necessary. The buyer of a vehicle ordinarily must apply to transfer the title in the county in which either the vehicle was bought or the new owner resides. TEX. TRANS. CODE ANN. §501.023 (Vernon Supp. 2003). However, if the seller is a licensed motor vehicle dealer, it must submit the application for the buyer and remit any required sales tax. TEX. TRANS. CODE ANN. §501.0234 (Vernon Supp. 2003). A person who engages in the business of selling motor vehicles must obtain a license number for each location. TEX. TRANS. CODE ANN. §503.021 (Vernon 1999). However, this does not prohibit anyone from selling vehicles. TEX. TRANS. CODE ANN. §503.004 (Vernon 1999).

TexDOT may refuse to issue a title for various reasons, including providing false information, fraud on the real owner, and the failure to provide information required by TexDOT. TEX. TRANS. CODE ANN. §501.051 (Vernon 1999). Consequently, it was up to TexDOT (not Cantu) whether to reject an application. However, the applicant can then apply for a hearing before the county tax assessor-collector; his decision is binding on TexDOT and the applicant, subject to appeal to state district court. TEX. TRANS. CODE ANN. §501.052

(Vernon 1999).

Texas has a sales tax on retail sales of vehicles, which ordinarily is paid by the buyer. TEX. TAX CODE ANN. §152.021 (Vernon 2002). However, a licensed dealer is required to collect the retail sales tax and remit it to the county tax assessor-collector. TEX. TAX CODE ANN. §152.0411 (Vernon 2002); TEX. TRANS. CODE ANN. §501.0234 (Vernon Supp. 2003). If the dealer does not remit tax, it and the buyer are jointly liable for the tax. TEX. TAX CODE ANN. §152.044 (Vernon 2002).

However, no tax is due if the vehicle is sold to be transported out of the state. TEX. TAX CODE ANN. §152.092 (Vernon 2002). If a Texas licensed dealer sells to Mexican licensed car dealer, the Texas dealer must stamp the title "for export only." 16 TEX. ADMIN. CODE §111.18(b). That law requires the Texas dealer verify the Mexican dealer has a valid Mexican dealer's license and has completed the sales tax exemption forms. 16 TEX. ADMIN. CODE §111.18(c)(1-5). The purpose of the "for export only" rule is to prevent "curbstoning." 27 TEX. REGISTER 1476 (March 7, 2002), adopting 16 TEX. ADMIN. CODE §111.18. "Curbstoning" was a practice whereby the Mexican dealer, instead of exporting the vehicle, re-sells it in Texas through informal ("curbstone") sales to local consumers. 27 TEX. REGISTER 1476 (March 7, 2002). The rule seeks to increase sales tax revenues, to prevent unfair competition against licensed Texas dealers, and to support Mexico's regulation of its imports and dealers. *Id.* The purpose of the "for export only" stamp was to alert

consumers. *Id.*

This reveals the basic problem with Cantu's allegations. First, whether the buyer has purchased the vehicle and is entitled to a title certificate does not turn on whether the dealer is licensed, has remitted the sales tax, etc. Second, many of the technicalities are aimed at collecting the sales tax, not determining who owns the vehicle. Third, ultimately the tax-assessor collector's decision is binding.

Cantu claims she rejected three title transfer applications because the dealer number was incorrect. Dkt # 23, Rule 7 Reply, ¶¶ 17L, 17Q, 17V; Exhs. 12 (typographical error on license number), 17 (dealer allegedly not licensed), 22 (license allegedly expired). She does not allege the sales tax was not paid. There is no law voiding the sale because the seller is an unlicensed dealer.

Cantu claims that she rejected six title transfer applications because she questioned whether the seller's signature on one document was genuine because it did not resemble signatures on other documents. Dkt # 23, Rule 7 Reply, ¶¶ 17E, 17F, 17J, 17T, 17W; Exhs. 5, 6, 10, 20, 23. She does not claim she has experience determining forgeries or that in any case the applicant admitted or was proven to forged a signature. In Exhs. 5, 6, 10, and 20 the signatures appear to match on every document. On Exh. 23 the dealer signed the bill of sale and the title transfer application was signed by the dealer himself; the only questioned signature was that the salesman on the back of the title.

Cantu claims she rejected two title transfer applications because the dealer gave the transfer paperwork to the buyer to submit. Dkt # 23, Rule 7 Reply, ¶¶ 17L, 17N, 17U; Exhs. 12, 14, 21. Again, she does not claim the buyer did not pay the required sales tax. While the dealer may have committed an infraction, this does not void the sale or mean that title did not pass to the buyer.

Cantu claims she questioned two title transfer application because it appeared another person had sought to transfer the same title. Dkt # 23, Rule 7 Reply, ¶¶ 17A, 17X; Exhs. 1, 24. On Exh. 1, the first person's application was not processed, i.e., title was not transferred; the second applicant appeared with the appropriate title transfer documents. On Exh. 24, the first applicant could not prove he paid the dealer the purchase price and his application was not approved.

Cantu claims she rejected one title transfer application because the vehicle description did not match. Dkt # 23, Rule 7 Reply, ¶ 17B; Exh. 2. On Exh. 2, it shows that the discrepancy was whether the vehicle was a four door Cougar or a two door Cougar. This does not prove the vehicle was stolen or the papers were a fraud.

Cantu alleges that she rejected five title transfer applications because the vehicles were sold "for export only." Dkt # 23, Rule 7 Reply, ¶¶ 17B, 17C, 17H, 17K, 17P; Exhs. 2, 3, 8, 11, 16. The regulation involved does not void the sale; the purpose is collect the tax and protect Texas dealers, not penalize the unsuspecting consumer who buys the car in the

"curbstone" sale. None of the titles in these exhibits were stamped "for export only." Exh. 2 says Cantu held up the title because a *former* owner (a Texas dealer) had given a Mexican dealer a bill of sale "for export only;" there was no proof the Mexican dealer completed the purchase. The file shows the Texas dealer then assigned the title certificate to another Texas dealer who sold it to the applicant, who paid the proper taxes. Exhs. 3 and 8 show the vehicles were sold to Cameron County residents and the sales tax was paid. Exh. 11 contains no proof the vehicle was sold "for export only;" it appears the vehicle was sold to a person with a Cameron County residence who paid the sales tax. Exh. 16 shows that the applicant apparently was the victim of a "curbstone" sale, e.g., bought the car from the Mexican dealer in Texas. Exh. 16 shows she tendered the proper taxes. Cantu cites no law that the sale was void and could not pass title. Apparently Cantu would leave the victims of such sales with no way to get title to the car.

Cantu alleges she rejected one title transfer application because the applicant had traded in a truck to buy the vehicle for which he submitted the application and he allegedly did not own. Dkt # 23, Rule 7 Reply, ¶ 17D; Exh. 4. Exh. 4 shows the title for the trade-in vehicle was registered in the applicant's name and assigned to the dealer. Exh. 4 shows Cantu actually held up the transfer because the dealer had not paid the sales tax on the trade-in truck. There is no law prohibiting the buyer from getting to his new vehicle until the dealer pays a tax on the vehicle given as trade-in. There is no claim that the sales tax on the

applicant's new vehicle was not paid.

Cantu claims she rejected four title transfer applications because she questioned the bill of sale. Dkt # 23, Rule 7 Reply, ¶¶ 17I, 17M, 17N, 17O; Exhs. 9, 13, 14, 15. Exh. 9 has a bill of sale, but she questioned whether the sales price was correct, i.e., the amount on which the tax was figured. Cantu does not claim she knew the sales price was falsely stated; there was no question that the applicant had lawfully purchased the vehicle. On Exh. 13, the applicant finally produced a bill of sale. On Exh. 14, her problems was the bill of sale was undated; there was no question the sale occurred or that the proper sales tax was not remitted. On Exh. 15, she questioned the bill of sale because the Louisiana dealer signed it before a Texas notary. The file contains nothing to show the signatures were forgeries. Again, none of these show title applications were fraudulent.

Cantu alleges she rejected two title transfer applications because the seller was an out-of-county dealer and the dealer should have processed the title transfer in the dealer's county. Dkt # 23, Rule 7 Reply, ¶¶ 17E, 17H; exh. 5, 13. Again, the buyer is permitted to submit the application in his county of residence. TEX. TRANS. CODE ANN. §501.023 (Vernon Supp. 2003).

Most important, Cantu fails to allege facts showing how any speech was on a matter of public concern. The speech acts alleged in paragraphs 17A-17X respond to inquiries why she was holding up title transfers. In many instances, careful examination will show that

these conversations occurred after she held up titles for six months to a year and the applicants had complained. Yzaguirre was the individual ultimately responsible for resolving their complaints. TEX. TRANSP. CODE ANN. §501.052 (Vernon 1999). Given the nature, timing, and content of these discussions, they were not on a matter of public concern. See Motion to Dismiss, pp. 17-17; Dkt # 16.

3.    Cantu Fails to Alleged Facts Showing Speech About Violations of Transportation Code

Cantu alleges she noted violations of Transportation Code sections 502.002(b) and 502.410, but alleges no facts to support this or that she ever said so. Dkt #23, Rule 7 Reply, ¶ 15. Section 502.002 requires that the owner renew his vehicle *registration* yearly in the county of his residence; section 502.410 prohibits knowingly providing false statements on applications required by *Chap. 502*. However, Chapter 502 pertains to vehicle *registration*; it has nothing to do with *certificates of titles* which are covered by Chap. 501. Vehicle registration has to do with collecting property taxes on the vehicles and ensuring the vehicle remains in safe condition. TEX. TRANS. CODE ANN. §502.004, -.005 (Vernon 1999). Cantu does not allege she had anything to do with vehicle registration. Even so, she does not claim any of the applicants at Exhs. 1-24 did not reside in Cameron County, nor does she state they knowingly made false statements on applications required by Chapter 502. Most important, she does not allege she ever spoke out that sections 502.002, -.410 were being violated.

Cantu alleges she noted violations of Transportation Code section 502.411(a)(2), but

alleges no facts to support this or that she ever said so. Dkt # 23, Rule 7 Reply, ¶ 15. Section

502.411(a)(2) prohibits an agreement between a person and a county official to register or

cause to be registered a vehicle in that county in return for an act to be performed by the

county or that official. TEX. TRANS. CODE ANN. §502.411(a)(2) (Vernon 1999). The gist

is that the person must conspire with the office to register the vehicle in return for the official

performing some other action or service.

Cantu does not specifically allege Yzaguirre made any agreement with the applicants

in Exhs. 1-24 or that she ever said he did. Cantu alleges Defendant Yzaguirre did favors for

the Barredas and Mr. Moises Torres, however nowhere alleges (1) they agreed to register

vehicles in Cameron County in return for services from Defendant Yzaguirre, or (2) that she

ever said this occurred.

### E.    Munoz Fails to Allege Facts Showing His Speech Was on A Matter of Public Concern

Munoz' speech retaliation claims now rest on three speech activities:

1.    telling Lupita DeLeon on various occasions during January 2002 to May 2002

    that counting money in the main office "looked bad"; Dkt #23, ¶¶ 31-23;

2.    In Spring 2002 telling Yzaguirre to be careful in his association with Moises

    Torres and "words to the effect" that he was concerned Yzaguirre was giving

    Torres special treatment; Dkt #23, ¶ 44; and

3.    On August 3, 2002, he gave a written statement to the County Sheriff's office;

Dkt #23, ¶ 40, Exh. 25.

Munoz claims that his statements to DeLeon inferred the transactions were unlawful but he does not say he told her that or that in fact they were unlawful.  He alleges that Mr. Torres, Ms. Guerra, and the Barredas brought their vehicle registrations to the main office. He does not claim that any of the registrations were false in any respect or that they paid any amount other than the amounts properly due as fees or taxes.  His August 2002 statement to the Sheriff said they always came with documents he assumed were title registration papers; it further said that "only recently" had Plaintiff Cantu told him what processing was done on the title.  Dkt #23, Exh. 25.  Therefore, he could not have "inferred" to Ms. DeLeon in October 2001 to May 2002 that the transactions were unlawful because he told the Sheriff in August 2002 that he was just informed by Cantu.  Therefore, he has failed to show how this speech pertained to anything more than office administrative practices.

Munoz's citation to Cameron County Personnel Policies, § 2.01, adds nothing.  It sets the aspirational goal of professionalism and avoiding the appearance of impropriety.  First, failing to adhere to section 2.01 is not a crime or public corruption.  Second, it suffers from the same problem.  Munoz does not allege facts showing that allowing individuals to process vehicle registration in one office rather than another is a crime or immoral.

His Spring 2002 statement to Yzaguirre suffers from vagueness.  The qualified immunity defense requires specificity so that the public official will know if the suit pertains

to matters that are not fairly debatable. To defeat qualified immunity, Munoz' must allege

specific statements that are clearly protected speech on matters of public concern. *Foley v.*

*Univ. of Houston System,* 324 F.3d 310, 318 (5th Cir. 2003). "Words to the effect" could

mean almost anything.

His statement to the Sheriff on August 2002 fails to show it was a matter of public

concern. First, Exh. 25 does not state that Defendant Yzaguirre committed a crime or was

involved in a dishonest or corrupt act. Second, it does not appear it was made primarily as

a citizen. It was communicated privately and the context shows it was intended to remain

private.[2]

**F.    Weaver Fails to Allege Facts That She Spoke A Matter of Public Concern**

Weaver still alleges only two acts of speech: (1) informing Yzaguirre in October 2001

that the "word was on the street" that Esthela Guerra could get him to fix anything for her,

and (2) asking questions about why he allowed some people to process their registration in

the main office. Dkt # 23, ¶¶ 46, 49.

She claims the first statement was telling him he was violating the law. Dkt #23, ¶46.

However, the fact is that her statement merely reported what someone else said; she does not

allege that she said anything that accused him of specific misconduct or that she expressed

---

[2]  Also it does not appear that he suffered any adverse employment action as a result of this. He made this statement after he allegedly transferred so as to lose his $3000.00 a year stipend. The adverse action he alleges Exh. 25 caused was a "demotion" to become the assistant to the Harlingen branch office manager. Rule 7 Reply, ¶ 41, citing Exh. 26. However, exhibit 26 simply says he is to assist her. Exh. 26 does not state that he has lost his former position, title or pay.

to him a belief he had done anything wrong. She does not say he actually performed an illegal act for Ms. Guerra or what it was.

The second series of statements are couched in innuendo; she nowhere explains how processing vehicle registrations in one office rather than another is "fraudulent." She implies something was illegal, but she states no facts showing illegality or explains what crime was being committed. She does not actually state that the money was anything other than the proper amount of fees for vehicle registration. This is particularly glaring because (1) she claims she was Yzaguirres's *Executive Secretary*, and (2) Munoz told the Sheriff that Plaintiff Weaver was one of the persons who handled the registration moneys at issue. Dkt #23, ¶ 44, Exh. 25. One would think that as someone involved in the transactions and as Yzaguirre's Executive Secretary she would know if the money was not for taxes or was not in the correct amount.

### III. Conclusion

Both the Amended Complaint and the Rule 7 Reply fail to allege facts sufficient to defeat qualified immunity. The court should sustain Yzaguirre's objections to the Rule 7 Reply exhibits, and grant Yzaguirre's motion to dismiss as to Plaintiffs Cantu, Munoz, and Weaver.

Respectfully submitted,

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile: (956) 428-2954

By _____
**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950
**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756

ATTORNEYS FOR DEFENDANT TONY YZAGUIRRE, Assessor-Collector of Cameron County and Director of Cameron County Automobile Crimes Enforcement Task Force in his Individual Capacity

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the 9th day of September, 2003.

Mr. David Lee McGee                          *CM/RRR 7002 2410 0002 3608 9830*
**LAW OFFICES OF DAVID LEE McGEE, P.C.**
201 S. 15th, Ste. 204, McAllen (78501)
701 Park Avenue
Corpus Christi, TX 78401

---

Gay E. Gilson
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

*CM/RRR 7002 2410 0002 3608 9847*

Roman "Dino" Esparza
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

Via Ordinary Mail

Roger W. Hughes

---