## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 2 4 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| VICENTA CANTU; FELIX R. MUNOZ; RUTH WEAVER; DIAMANTINA ALVARADO; AND LINDA GARCIA | § § § § § | |
| Plaintiffs | § § | |
| vs. | § § | Civil Action No. 03-CV-96 |
| CAMERON COUNTY and TONY YZAGUIRE, JR., Tax Assessor- Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task Force, in his individual capacity | § § § § § § | **JURY TRIAL REQUESTED**<br><br>**OPPOSED MOTION** |

## <u>PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFFS' 7(a) REPLY</u>

COME NOW, Vicenta Cantu, Felix R. Munoz, Ruth Weaver, Diamantina Alvarado and Linda Garcia, Plaintiffs, and files this their Plaintiffs' Motion For Leave to Supplement Plaintiffs' 7(a) Reply and in support thereof show as follows:

I.

1.      In this action, Plaintiffs allege that Defendants, acting under color of state law, violated their right to freedom of speech and right to freedom of association as guaranteed by the First Amendment to the United States Constitution when each Plaintiff spoke out about matters of public concern and associated with Tax Assessor-Collector employees to speak out about illegalities occurring within the Cameron County Tax Assessor-Collector's Office – specifically, the fact that Defendant Yzaguirre violated Texas laws regarding the processing of vehicle registration papers to allow fraudulent documents to be accepted by the Cameron County Tax Assessor-Collector's office as a paid "favor" to Defendant Yzaguirre's friends and business associates.

2.      A hearing was held on October 21, 2003 and the Court heard argument regarding the Defendants' Motions to Dismiss.

3.      For the record to be accurate as to the Plaintiffs' claims, Plaintiffs need the opportunity to supplement their 7(a) Reply to supplement the argument of Counsel of October 21, 2003.

**PRAYER**

4.      Therefore, Plaintiffs pray that they be granted leave to file the attached Plaintiffs' Supplemental FRCP 7(a) Reply to Defendants' Motions to Dismiss for Failure to State a Claim and on Immunity so that justice may be done.

Respectfully submitted,

By: _____
GAY E. GILSON
Law Office of Gay E. Gilson
719 South Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Facsimile (361) 887-0554
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE FOR PLAINTIFFS

DAVID LEE MCGEE
Law Office of David Lee McGee, P.C.
3827 North 10th Street, Suite 302 A
Plaza 10 Building
McAllen, Texas 78501
SBN 13612550/Fed I.D.5932
Telephone: (956) 687-2010
Facsimile: (956) 687-2937
CO-COUNSEL FOR PLAINTIFFS



## CERTIFICATE OF CONFERENCE

The undersigned certifies that I have spoken with Roger Hughes, attorney for Tony Yzaguirre, Jr., and Dino Esparza, attorney for Cameron County, and they are both opposed to this motion. .

_____
Gay E. Gilson

## CERTIFICATE OF SERVICE

I certify that a copy of this instrument was served on the following attorney's of record according to the Federal Rules of Civil Procedure:

Craig Vittitoe/Roger Hughes
Adams & Graham, L.L.P.
P.O. Drawer 1429
Harlingen, Texas 78551-1429
ATTORNEYS FOR TONY YZAGUIRRE, JR.

Roman "Dino" Esparza
Willette & Guerra, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78520
ATTORNEYS FOR CAMERON COUNTY

on this October 24, 2003

_____
Gay E. Gilson

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU; FELIX R. MUNOZ;<br>RUTH WEAVER;<br>DIAMANTINA ALVARADO; AND<br>LINDA GARCIA<br><br>    Plaintiffs<br><br>vs.<br><br>CAMERON COUNTY and<br>TONY YZAGUIRE, JR., Tax Assessor-<br>Collector of Cameron County and Director,<br>Cameron County Automobile Crimes<br>Enforcement Task Force, in his<br>individual capacity | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br><br><br><br>Civil Action No. 03-CV-96<br><br>**JURY TRIAL REQUESTED** |

## PLAINTIFFS' SUPPLEMENTAL FRCP 7(a) REPLY TO DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND ON IMMUNITY

COME NOW, Vicenta Cantu, Felix R. Munoz, Ruth Weaver, Diamantina Alvarado and Linda Garcia, Plaintiffs, and respectfully file this Supplemental FRCP 7(a) Reply to Defendants' Motions to Dismiss for Failure to State a Claim and on Immunity and in support thereof would show the following:

### PLAINTIFF FELIX MUNOZ

1.     Plaintiff Munoz was removed from his position as the Project Coordinator for the Cameron County Automobile Crimes Enforcement Task Force on or about May 23, 2002 – just days after Plaintiff Cantu was terminated. Plaintiff Munoz was removed from his office and placed in the Harlingen Branch Tax Office.   Plaintiff Munoz lost a $3,000.00/year stipend which he received for his work as Project Coordinator. Further, Defendant Yzaguirre stripped Plaintiff Munoz of his cell phone which was issued by Defendant; office keys; and his job duties as Chief Deputy of Operations

for the Tax Assessor-Collector's Office. Plaintiff Munoz has currently been assigned the primary duty of cashier at the Harlingen Branch Office which is significantly different from his duties as Chief Deputy of Operations wherein his primary duties consisted of administrative and supervisory work consisting of scheduling; assigning; coordinating and supervising subordinate employees in the collection of taxes and fees; preparing reports; authorizing payment of tax refunds; personnel administration; implement procedures to be in compliance with laws; and assume duties of the Tax Assessor/Collector in his or her absence. Plaintiff Munoz was demoted and transferred to the Harlingen Branch Tax Office in retaliation for his protected speech against Defendant Yzaguirre and by Plaintiff Munoz' close association with Plaintiff Cantu in speaking out against and taking actions to see that Defendant Yzaguirre's unlawful conduct within the public entity stop.

2.      On or about October 20, 2003, Defendant Yzaguirre, without notice to Plaintiff Munoz, ordered that Plaintiff Munoz' office door have a dead bolt installed and the lock changed so that Plaintiff Munoz could not access his personal belongings in the office. Plaintiff Munoz continues to be denied access to his personal belongings. Plaintiff Munoz alleges this was done in retaliation for his protected speech as detailed in Plaintiffs' 7(a) Reply, Plaintiff's First Amended Complaint and this pleading.

### RUTH WEAVER

3.      Plaintiffs Cantu, Munoz, Weaver and Alvarado closely associated with each other in the performance of their duties for Defendant. Plaintiff Cantu, Plaintiff Weaver and Plaintiff Alvarado went to lunch together almost every day and worked closely together in the office. From 2001 to approximately May 2002, Plaintiff Cantu, Plaintiff Weaver, and Plaintiff Alvarado, discussed their concerns about Defendant Yzaguirre's unlawful actions in processing vehicle title

2

registrations. On occasion, Plaintiff Munoz would also go to lunch with Plaintiffs Cantu, Weaver and Alvarado. The adverse actions taken against Plaintiffs Cantu, Munoz, Alvardo and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

4.      At approximately the same time that Plaintiff Munoz's stipend of $3,000.00 was taken away from him by Defendant Yzaguirre, Plaintiff Weaver also suffered a pay cut ordered by Defendant Yzaguirre in the amount of approximately $3,000.00. Plaintiff Weaver alleges that this pay cut was in retaliation for her protected First Amendment Speech as detailed in Plaintiffs' 7(a) Reply, Plaintiff's First Amended Complaint and this pleading.

5.      Plaintiff Weaver was retaliated against for her association with Plaintiff Cantu, Plaintiff Munoz and Plaintiff Alvarado in discussing their concerns about Defendant Yzaguirre's unlawful actions as detailed in Plaintiffs' 7(a) Reply, Plaintiff's First Amended Complaint and this pleading.

6.      Plaintiffs Cantu, Munoz, Alvarado and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz, Alvarado and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

7.      Plaintiff Weaver had the job duty of taking care of all personnel records including transfer and termination paperwork. When Plaintiff Cantu was terminated and when Plaintiff Munoz was transferred and demoted to the Harlingen Branch Office, Plaintiff Weaver was not advised of these personnel actions – despite the fact that it was her job duty to take care of the personnel records

3

for each of these employees.

8.    On or about August 2, 2002, Plaintiff Weaver gave a statement to the Cameron County Sheriff's Department about Defendant Yzaguirre's possible unlawful conduct as the Cameron County Tax Assessor-Collector. The statement is attached hereto as "Exhibit 1" and it is incorporated herein as if fully set-out.  It is alleged that Defendant Yzaguirre became aware of Plaintiff Munoz' statement which is attached hereto as Exhibit 1.  Plaintiff Weaver alleges that her statement to the Cameron County Sheriff's Department is protected speech under the First Amendment to the United States Constitution and that the adverse actions taken against her as alleged specifically in Plaintiffs' 7(a) Reply, Plaintiff's First Amended Complaint and this pleading were taken in retaliation for Plaintiff Weaver's protected speech including the speech attached hereto as "Exhibit 1".

## DIAMANTINA ALVARADO

9.    Plaintiffs Cantu, Munoz, Weaver and Alvarado closely associated with each other in the performance of their duties for Defendant. Plaintiff Cantu, Plaintiff Weaver and Plaintiff Alvarado went to lunch together almost every day and worked closely together in the office.  From 2001 to approximately May 2002, Plaintiff Cantu, Plaintiff Weaver, and  Plaintiff Alvarado, discussed their concerns about Defendant Yzaguirre's unlawful actions in processing vehicle title registrations. The adverse actions taken against Plaintiffs Cantu, Munoz, Alvardo and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

10.    Diamantina Alvarado is a citizen and resident of Cameron County, Texas.  Ms. Alvarado is the former Supervisor of the Property Tax Collection Division for the Office of the Tax

4

Assessor-Collector for Cameron County, Texas.

11.    On or about February 26, 2003, Plaintiff Alvarado was working at her part-time job at Dillards Department Store located in Brownsville, Texas.  During the hours of 7:30 p.m. to 8:00 p.m., Plaintiff Cantu stopped by the counter where Plaintiff Alvarado was working and asked if she could make a payment on her Dillards account.  While Plaintiff Cantu was speaking with Plaintiff Alvarado, Defendant Yzaguirre's wife, Diana Yzaguirre, came around the counter and saw Plaintiffs Cantu and Alvarado.

12.    On or about February 28, 2003, just days within the time that Defendant's wife saw Plaintiff Alvarado and Plaintiff Cantu together at Dillards, Plaintiff Alvarado was involuntarily transferred to the San Benito Branch office. Plaintiff Alvarado worked for Defendants for approximately eleven years and during that entire time Plaintiff Alvarado had not been transferred up until February 28, 2003.

13.    On or about February 28, 2003, Plaintiff Alvarado was involuntarily transferred and demoted from her position as Supervisor Property Tax Division at the Central Office to the position of auto clerk in the San Benito Branch Tax Office. "Exhibit 2" is incorporated herein by reference. Plaintiff Alvarado was ordered to report to Linda Garcia.  Plaintiff Alvarado alleges that her involuntarily transfer and demotion was a direct result of her protected speech and association with Plaintiffs Cantu, Weaver and Munoz. The transfer is an adverse action against Plaintiff Alvarado as it was an undesirable transfer and a substantial change in duties wherein her supervisory duties were taken away; Defendant Yzaguirre ordered that Plaintiff Alvarado not be allowed to use the computer, not be advised of events occurring within the office; not be allowed to use the telephone to make long-distance calls because Plaintiff Alvarado had previously called the Executive Director, David

5

E. Montoya, of the Board of Tax Professional Examiners located in Austin, Texas wherein she left a message attempting to make a complaint against Defendant Yzaguirre stating that he was violating Texas laws in the manner in which he was running the office and that she was being denied required training so that her license may be updated. Mr. Montoya returned Plaintiff Alvarado's call, but the office staff was instructed to not allow the call to go through to Plaintiff Alvarado. Plaintiff Alvarado's act of associating with Plaintiff Cantu on February 26, 2003 at Dillards Department Store is protected by the First Amendment to the United States Constitution. Further, Plaintiff Alvarado's speech of contacting Mr. Montoya and making a complaint is protected speech by the First Amendment to the United States Consitution. Plaintiff Alvarado suffered retaliation by being involuntarily transferred because of her association with Plaintiff Cantu – and Plaintiff Alvarado was retaliated against for Plaintiff Cantu's speech as set-out specifically herein was imputed to Plaintiff Alvarado. One reason that the transfer was an adverse action is that San Benito is located farther from Plaintiff Alvarado's home and second job at Dillards Department Store. Defendants knew that by transferring her to the San Benito office it would be more difficult for her to get to and from work and to continue her part-time job at Dillards Department Store. Further, transfer of that nature was known by employees as a means by which Defendants terminated employees.

14.     During the pendency of the Special Inventory Tax, Plaintiff Alvarado spoke out to Jesse Garcia, Jr., Chief Deputy - Administration, that the tax was not being properly administered. This speech started in approximately 1998 and continued, almost on a monthly basis, until Plaintiff Alvarado was involuntarily transferred to the auto clerk position in the San Benito Branch Office. Plaintiff alleges that her speech to Mr. Garcia is protected speech under the First Amendment to the United States Constitution and that the adverse actions taken against her were also due to this

6

protected speech.

## LINDA GARCIA

### Plaintiff Garcia's Protected Speech and Protected
### Association Regarding Matters of Public Concern

15.     In or about September 2003, Defendant Yzaguirre and others working on his behalf instituted false criminal charges against Plaintiff Garcia in retaliation for her protected speech as detailed in Plaintiffs' 7(a) Reply, Plaintiff's First Amended Complaint and this pleading and in retaliation for her filing this lawsuit. Plaintiff Garcia did not learn of the charges against her until they were published in the local newspaper on or about October 4, 2003. The false criminal charge alleges that Plaintiff Garcia tampered with a government record. Defendants did not complain of Plaintiff Garcia's job performance. Further, Plaintiff Garcia was awarded unemployment because she was not separated from her position with Cameron County for misconduct associated with her work.

### PRAYER

16.     WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that Cameron County and the individual Defendant, Yzaguirre, be held accountable for the clear violations of Plaintiffs' federal rights which have been clearly plead in Plaintiff's live pleading and in Plaintiffs' First Amended Complaint, Plaintiffs' FRCP 7(a) Reply and this Supplemental Pleading. Further, if the Court deems necessary, Plaintiffs pray that the Court allow them to conduct discovery on the issue of immunity before the determination of whether or not the County and the individual defendant will be granted immunity is made. Plaintiffs further request all relief requested in their live Complaint.

Respectfully submitted,

By: _Gay E. Gilson_

GAY E. GILSON
Law Office of Gay E. Gilson
719 South Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Facsimile (361) 887-0554
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE FOR PLAINTIFFS

DAVID LEE MCGEE
Law Office of David Lee McGee, P.C.
3827 North 10th Street, Suite 302 A
Plaza 10 Building
McAllen, Texas 78501
SBN 13612550/Fed I.D.5932
Telephone: (956) 687-2010
Facsimile: (956) 687-2937
CO-COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a copy of this instrument was served on the following attorney's of record according to the Federal Rules of Civil Procedure:

Craig Vittitoe/Roger Hughes
Adams & Graham, L.L.P.
P.O. Drawer 1429
Harlingen, Texas 78551-1429
ATTORNEYS FOR TONY YZAGUIRRE, JR.

Roman "Dino" Esparza
Willette & Guerra, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78520
ATTORNEYS FOR CAMERON COUNTY

on this October 24, 2003.

_Gay E. Gilson_
Gay E. Gilson

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU; FELIX R. MUNOZ; | § | |
| RUTH WEAVER; | § | |
| DIAMANTINA ALVARADO; AND | § | |
| LINDA GARCIA | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | Civil Action No. 03-CV-96 |
| | § | |
| CAMERON COUNTY and | § | **JURY TRIAL REQUESTED** |
| TONY YZAGUIRE, JR., Tax Assessor- | § | |
| Collector of Cameron County and Director, | § | |
| Cameron County Automobile Crimes | § | |
| Enforcement Task Force, in his | § | |
| individual capacity | § | |

## EXHIBIT LIST

Exhibit 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . Statement of Ruth Weaver given to Cameron County

Exhibit 2 . . . . . . . . . . . . . . . . . . . . . . . Memo Demoting Tina Alvarado from Supervisor to Clerk

9

THE STATE OF TEXAS )(
COUNTY OF CAMERON )(

BEFORE ME the undersigned authority on this **02nd** day of _____ **August** _____,

**2002** personally appeared _____ **Ruth Weaver** _____ who after being by me duly sworn did depose and say: My name is Ruth A. Weaver, I am 35 years old and I live at 718 Balboa in Rancho Viejo, Texas. I am currently employed as Executive Secretary for Tax Collector Tony Yzaguirre. I began my employment with Mr. Yzaguirre February 1994 as a Secretary. I believe within a year Mr. Yzaguirre made me his Executive Secretary. My duties were supervise and maintain general office procedures, and I would answer to Mr. Yzaguirre.

About a year ago in 2001 I started receiving title paperwork from Enrique Barrera Sr. and Enrique Barrera Jr., Moise Torres, and his brother whose name I don't know, under the instructions of my boss Tony Yzaguirre. My instruction were to take the title paperwork and deliever them to Lupita DeLeon. If Lupita was not in the office, I was to take the title paperwork to Julio Hernandez, as per Mr. Yzaguirre's instructions. Most of the time Moises Torres or his brother and Enrique Barrera Sr. or Enrique Barrera Jr. would come in carrying paperwork to see Mr. Yzaguirre. Mr. Yzaguirre would then hand me the paperwork to take to Lupita who would take care of the process or what ever needed to be done. Sometimes when I would be given the paperwork I would notice that the paperwork were titles. In some of these title's that I would be handed, I notice that there were some irregularities. A title is not suppose to have any kind of alterations like white-out marks, interlenation on the names which appeared on the title as per employee training. Most of the time I would be handed from 5 to 10 titles a day to hand over to Lupita or Julio. It was rare that I would receive one title to be handed over. On several ocassions I would over hear Lupita tell Julio to process the title paperwork for Mr. Yzaguirre. So I knew that the title paperwork was going to be processed. Moises Torres, Moises' brother, Enrique Barrera Sr, Enrique Barrera Jr. would wait for the title paperwork to be processed. If Mr. Yzaguirre was present, Lupita would hand over the processed title paperwork to him. Then Mr. Yzaguirre would give the processed title paperwork to who ever it was that was waiting for the paperwork. Sometimes Mr. Yzaguirre would call them into his office to give them the paperwork. If Mr. Yzaguirre was in a hurry, he would handed over the paperwork to them outside of his office. If Mr. Yzaguirre was not present then Lupita would hand over the processeed title paperwork to whom ever it was that was waiting. Sometimes Mr. Yzaguirre would tell these men to go and pick up the processed title paperwork at the dealers section, which was with Julio Hernandez. It was very important to Mr. Yzaguirre to know how many titles were brought in by either of these people that I have named. Mr. Yzaguirre would ask to give him a count of each of them.

**THIS IS A TRUE AND CORRECT STATEMENT TO THE BEST OF KNOWLEDGE AND MEMORY.**

SUBSCRIBED AND SWORN to me on this _2_ day of _August_ 2002 A.D.

_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY, TEXAS.

GRACIE L PAREDES
Notary Public
STATE OF TEXAS
My Comm. Exp. 04 - 26 - 2005

# OFFICE OF THE
# TAX ASSESSOR-COLLECTOR
### P. O. BOX 952    BROWNSVILLE, TEXAS 78522-0952

**TONY YZAGUIRRE, JR.**
TAX ASSESSOR-COLLECTOR
RPA,RTA,CTA,CSTA



**FELIX R. MUNOZ**
CHIEF DEPUTY - OPERATIONS

**JESSE GARCIA, JR.**
CHIEF DEPUTY - ADMINISTRATION

# MEMO

**To:**        Tina Alvarado, Supervisor Property Tax Division
             Enrique Rios Jr., San Benito Branch Auto/Tax Clerk
             Richard Fernandez, La Feria Branch Auto/Tax Clerk
             Letty Ortega, Harlingen Branch Auto/Tax Clerk

**From:**      Tony Yzaguirre, Jr.,
             Tax Assessor-Collector

**Subject:**   Cross-Training Program

**Date:**      February 28, 2003

In order to continue our cross-training program, effective **Monday, March 3, 2003**, at 8:00 a.m.,
the following reassignments will be implemented until further notice, these are as follows:

- **Tina Alvarado,** assigned to San Benito Branch Tax Office where your
  immediate Supervisor will be Ms. Linda Garcia.

- **Enrique Rios Jr.,** assigned to the Brownsville Main Office Automobile Division
  where your immediate Supervisor will be Ms. Lupita De Leon.

- **Richard Fernandez,** assigned to La Feria Branch Tax Office where your
  immediate Supervisor will continue being Mrs. Elida Barbosa.

- **Letty Ortega,** assigned to Harlingen Branch Tax Office where your immediate
  Supervisor will continue being Mrs. Elida Barbosa.

At this time I would like to *Thank You* for your continued support and participation in our cross-
training program.

TY/jg

cc:     Jesse Garcia, Jr., Chief Deputy of Administration
        Lupita De Leon, Brownsville Main Office Automobile Supervisor
        Elida Barbosa, Harlingen Branch Manager
        Linda Garcia, San Benito Branch Manager

| AIN OFFICE | SOUTHMOST BRANCH | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE | BRANCH OFFICE |
| OWNSVILLE | BROWNSVILLE | HARLINGEN | SAN BENITO | LOS FRESNOS | PORT ISABEL | LA FERIA | RIO HONDO |
| 4 E. HARRISON | 2900 SOUTHMOST RD | 602 E. HARRISON | 650 E. HIGHWAY 77 | 105 OCEAN BLVD | 313 QUEEN ISABELLA | 126 WEST 1ST | 130 COLORADO |
| 56) 544-0800 | (956) 986-6228 | (956) 427-8013 | (956) 361-8231 | (956) 233-4494 | (956) 943-8101 | (956) 797-3075 | (956) 748-2345 |
| X: 544-0808 | FAX: 986-6228 | FAX: 427-8017 | FAX: 361-8235 | FAX: 233-5804 | FAX943-8101 | FAX: 797-3075 | FAX: 748-3362 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU; FELIX R. MUNOZ; | § | |
| RUTH WEAVER; | § | |
| DIAMANTINA ALVARADO; AND | § | |
| LINDA GARCIA | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | Civil Action No. 03-CV-96 |
| | § | |
| CAMERON COUNTY and | § | **JURY TRIAL REQUESTED** |
| TONY YZAGUIRE, JR., Tax Assessor- | § | |
| Collector of Cameron County and Director, | § | |
| Cameron County Automobile Crimes | § | |
| Enforcement Task Force, in his | § | |
| individual capacity | § | |

## ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO SUPPLEMENT PLAINTIFFS' 7(a) REPLY

On the _____ day of _____, 2003, the Court considered. Plaintiffs'

Motion for Leave to Supplement Plaintiffs' 7(a) Reply. After considering the Motion, the Court

GRANTS the Motion and ORDERS that Plaintiffs' Supplemental 7(a) Reply be filed.

SIGNED this _____ day _____, 2003.


_____
PRESIDING JUDGE

4

40

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

VICENTA CANTU, et al.                    :

    Plaintiffs                               :

                                              :

vs.                                      :       CIVIL ACTION NO. B-03-096

                                              :

CAMERON COUNTY, et al.                   :

    Defendants                               :

United States District Court
Southern District of Texas
FILED

OCT 2 4 2003

Michael N. Milby
Clerk of Court

## DEFENDANT YZAGUIRRE'S POST SUBMISSION BRIEF

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant YZAGUIRRE and files his Post Submission Brief, and would show this Court as follows:

### I.

On October 20, 2003, at the Initial Pretrial Conference, the Court asked certain questions concerning processing titles stamped for "for export only." Defendant Yzaguirre submits the attached legal materials.

They are administrative rules and regulations; they are not evidence. There is no intent to convert this from a Rule 12(b) motion to one for summary judgment under Rule 56.

### II.

In March, 2002, the Texas Motor Vehicle Board adopted 16 Texas Administrative

Code section 111.18. See 26 TEX. REG. 8975 (November 2001); 27 TEX. REG. 1476 (March 2002). [Attached as Exhibits 1 & 2]. The Board noted supporters of section 111.18 measure included Defendant Yzaguirre, Tax Assessor-Collectors from Hidalgo and Webb County, Representative Rene Olivera, the Cameron County Commissioners' Court, and the Brownsville Used Car Dealer Association. 27 TEX. REG. at 1477; Exh. 2.

Thereafter, the Texas Department of Transportation issued Registration and Title Bulletins 035-02 (3/29/2002) and 63-02 (6/18/2002) [attached as exhibits 3 & 4]. They provide county tax assessors direction and guidance in processing titles of vehicles sold to alleged foreign dealers or residents. They also permit title processing if the title is not stamped "for export only." Exh. 4.

If the title transfer application was refused, the applicant could apply for a hearing before the tax assessor-collector. TEX. TRANS. CODE ANN. §501.052(a) (Vernon 1999). As an alternative, the applicant could "bond" the title. See TEX. TRANS. CODE ANN. §501.053(a) (Vernon 1999). Upon filing a bond in an amount equal to one and a half times the value of the vehicle condition on indemnifying prior owners and lien holders against damage, delay, expense, etc., the Department of Transportation may then issue the certificate of title.

### III.

Plaintiffs' Rule 7 Response claims only that five vehicles were sold "for export only."

See Reply, ¶¶ 17B, 17C, 17H, 17K, 17P, exhibits 5, 3, 8, 11, 16. Plaintiffs do not allege that the titles were stamped "for export only." Consequently, under Plaintiffs' allegations, there was a lawful basis to process these applications. See Exh. 3.

Respectfully submitted,

By: _____

Craig H. Vittitoe
State Bar No. 20593900
Federal ID NO. 18756
Roger W. Hughes
State Bar No. 10229500
Federal ID No. 5950

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile: (956) 428-2954

Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECT, CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the 24th day of October, 2003.

Ms. Gay E. Gilson                              *CM/RRR 7002 2410 0002 3603 8802*
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Mr. David Lee McGee                                          *Via Ordinary Mail*
LAW OFFICES OF DAVID LEE McGEE, P.C.
701 Park Avenue
Corpus Christi, TX 78401

Mr. Roman "Dino" Esparza                                     *Via Ordinary Mail*
**WILLETTE & GUERRA, L.L.P.**
International Boulevard, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78520

ROGER W. HUGHES

26 TexReg 8975
2001 WL 1421955 (Tex.Reg.)
**(Cite as: 26 Tex. Reg. 8975)**

TEXAS REGISTER
Volume 26, Number 45
NOVEMBER 9, 2001
PROPOSED RULES
TITLE 16. ECONOMIC
REGULATION
PART 6. TEXAS MOTOR VEHICLE
BOARD
CHAPTER 111. GENERAL
DISTINGUISHING NUMBERS

Additions are indicated by <<+ Text +>>;
deletions by <<- Text ->>

**\*8975 16 TAC §111.2, §111.18**

The Texas Motor Vehicle Board proposes amendments to §111.2, General Distinguishing Numbers, Definitions, and proposes the adoption of new §111.18, Proof of Valid License Required of Foreign Motor Vehicle Dealers, which requires Texas licensees to require proof of licensure from persons claiming to hold a license in a foreign jurisdiction, to identify and keep copies of certain license records pertaining to Mexican motor vehicle dealers with whom they do business, and to affix a "For Export Only" stamp with the General Distinguishing Number on the title of every vehicle sold to a foreign motor vehicle dealer.

A significant number of vehicles in Texas are sold to persons claiming to be foreign licensed dealers and who represent that the vehicles are purchased for export. In fact, the vehicles are not taken out of the country, but are sold in unlicensed and unregulated lots near the border with Mexico. These lots compete unfairly with licensed and regulated dealers, who must make a significant investment in facilities and inventory. Additionally, consumers have no recourse against such dealers, who do not meet license requirements such as maintaining a security bond or a permanent place of business. These rules are designed to eliminate the supply of vehicles to unlicensed dealers by requiring Texas licensees to obtain proof that the international dealer is, in fact, licensed in his or her home nation.

Additionally, the rules will support the efforts of other nations to require licensing of their dealer bodies. By restricting access to a steady supply of American vehicles to those who have obtained \*8976 licenses from their governments to sell vehicles, Texas will provide a strong incentive for would- be dealers to meet the requirements for licensing.

The rules specifically require certain documents from dealers claiming to be licensed by the Republic of Mexico. The Board has learned of Mexico's requirements and supports them by requiring Texas dealers to maintain copies of appropriate documents and to verify

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT

1

that the Mexican dealer's license is active and in good standing. The Board's position is based on the special relationship that exists between Texas and the Republic of Mexico. Texas and Mexico share a long border, where both sides have developed a highly integrated economy. Texas supports the Republic of Mexico in its efforts to limit the trade in motor vehicles to licensed dealers, and to that end the Motor Vehicle Board proposes specific requirements concerning Mexican motor vehicle dealers. The more general requirements are intended for all non-United States dealers.

Brett Bray, Director, Motor Vehicle Board, has determined that for the first five-year period the sections are in effect there will be no fiscal implications for state or local government as a result of enforcing or administering the amendments and new rule.

Mr. Bray has also determined that for each of the first five years the amendments and new rule are in effect, the public benefit anticipated from enforcement of the proposed amendments and new rule will be a reduction of the number of vehicles sold through unlicensed dealers in Texas and in the number of vehicles illegally exported to the Republic of Mexico. The cost to small business associated with complying with the rules is anticipated to be minimal, including only the cost of obtaining an appropriate stamp and in maintaining the records.

Comments on the proposed amendments and new rule may be submitted to Brett Bray, Director, Motor Vehicle Division, P.O. Box 2293, Austin, Texas 78768. The deadline for comments is December 28, 2001. Please submit fifteen copies. The Texas Motor Vehicle Board will consider the adoption of the proposed amendments at its meeting on January 17, 2002.

The amendments and new rule are proposed under the Texas Motor Vehicle Commission Code, §§ 3.01, 3.03, and 3.06, which provide the Board with authority to amend and adopt rules as necessary and convenient to effectuate the provisions of the Motor Vehicle Commission Code and Transportation Code.

Texas Transportation Code Sections 503.021, 503.036, and 503.038 are affected by the proposed amendments and new rule.

111.2. Definitions.

The following words and terms, when used in the sections under this chapter, shall have the following meanings, unless the context clearly indicates otherwise.

<<+ (1) +>> Agent of foreign motor vehicle dealer--a resident of a foreign country who is formally authorized by a foreign motor vehicle dealer to purchase motor vehicles for import and resale by the

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

foreign motor vehicle dealer at the foreign motor vehicle dealer's authorized business in the foreign country.

<<+ (2) +>> <<- (1) ->> Barrier--A material object or set of objects that separates or demarcates.

<<+ (3) +>> <<- (2) ->> Board--The Motor Vehicle Board of the Texas Department of Transportation.

<<+ (4) +>> <<- (3) ->> Charitable Organization--An organization that is established and exists for the purpose of relieving poverty, the advancement of education, religion, or science, the promotion of health, governmental, or municipal purposes, or other purposes beneficial to the community without financial gain.

<<+ (5) +>> <<- (4) ->> Commission--Texas Transportation Commission.

<<+ (6) +>> <<- (5) ->> Consignment Sale--The sale of a vehicle by a person other than the owner, under the terms of a written authorization from the owner.

<<+ (7) +>> <<- (6) ->> Dealer--Any person who is regularly and actively engaged in the business of buying, selling, or exchanging new or used motor vehicles, motorcycles, motor homes, house

trailers, or trailers or semitrailers as defined in the Transportation Code § 501.001 et seq., or the Transportation Code § 502.001, et seq., at either wholesale or retail, either directly, indirectly, or by consignment.

<<+ (8) +>> <<- (7) ->> Department--Texas Department of Transportation.

<<+ (9) +>> <<- (8) ->> Director--Director, Motor Vehicle Division, Texas Department of Transportation.

<<+ (10) +>> Foreign Motor Vehicle Dealer--A person holding a valid license to sell motor vehicles at retail or wholesale issued by a jurisdiction outside of the territorial limits of the United States. For purposes of this section, all states, protectorates, and trust territories administered by the federal government of the United States are considered part of the United States and excluded from the definition of Foreign Motor Vehicle Dealer.

<<+ (11) +>> <<- (9) ->> License--A dealer's general distinguishing number assigned by the Motor Vehicle Board of the Texas Department of Transportation for the location from which the person engages in business.

<<+ (12) +>> Mexican Motor Vehicle

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Dealer--a resident of the Republic of Mexico holding a current and valid license to sell motor vehicles issued by the Secretaria de Economia of the Republic of Mexico.

<<+ (13) +>> <<- (10) ->> Person--Any individual, firm, partnership, corporation, or other legal entity.

<<+ (14) +>> <<- (11) ->> Sale--With regard to a specific vehicle, the transfer of possession of that vehicle to a purchaser for consideration.

<<+ (15) +>> <<- (12) ->> Temporary Cardboard Tag--A buyer tag, supplemental buyer tag, dealer tag, or charitable organization tag.

<<+ (16) +>> <<- (13) ->> Wholesale Dealer--A licensed dealer who only sells or exchanges vehicles with other licensed dealers.

111.18. Proof of Valid License Required of Foreign Motor Vehicle Dealers.

(a) All holders of General Distinguishing Numbers must verify that a foreign motor vehicle dealer holds a valid license from the foreign dealer's country of origin before permitting the foreign motor vehicle dealer to purchase vehicles.

(b) All auctions or dealers who sell a vehicle to a foreign motor vehicle dealer shall stamp in black ink on the back of the title in all unused dealer reassignment spaces the words "For Export Only" and their General Distinguishing Number. The stamp shall also be placed on the front of the title in a manner that does not obscure any names, dates, or mileage statements. The stamp must be at least two inches wide, and all words must be clearly legible.

(c) Where the purchaser is a Mexican motor vehicle dealer or the agent of a Mexican motor vehicle dealer the following documents *8977 must be obtained prior to the sale and maintained in the sales file for each vehicle:

(1) A copy of the Republic of Mexico license issued by the Secretaria de Economia to the Mexican Motor Vehicle Dealer;

(2) A statement indicating telephonic confirmation from Secretaria de Economia that the license is active and valid;

(3) A copy of identification documents issued by the Republic of Mexico indicating that the person claiming to be a Mexican dealer is, in fact, a resident of Mexico. Such documents include but are not limited to Mexican driver's licenses, voter registration documents, or official identification cards, if the card contains a picture of the person and lists a physical

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

address;

(4) A completed Texas Motor Vehicle Sales Tax Resale Certificate for each vehicle sold to a Mexican dealer, indicating that the vehicle has been purchased for export to the Republic of Mexico;

(5) A copy of the front and back of the title to the vehicle, showing the "For Export Only" stamp and the General Distinguishing Number of the auction or dealer; and

(6) In the case of agents of Mexican motor vehicle dealers, the file must contain copies of the listed documents for the dealer and documentation supporting the person's claim to be acting as an agent for an Mexican motor vehicle dealer.

This agency hereby certifies that the proposal has been reviewed by legal counsel and found to be within the agency's legal authority to adopt.

Filed with the Office of the Secretary of State, on October 26, 2001.

TRD-200106594      Brett Bray
Director
Texas Motor Vehicle Board

Proposed date of adoption: January 17,

2002

For further information, please call: (512) 416-4899

**\*8929** Before an agency may permanently adopt a new or amended section or repeal an existing section, a proposal detailing the action must be published in the Texas Register at least 30 days before action is taken. The 30-day time period gives interested persons an opportunity to review and make oral or written comments on the section. Also, in the case of substantive action, a public hearing must be granted if requested by at least 25 persons, a governmental subdivision or agency, or an association having at least 25 members.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

27 TexReg 1476
2002 WL 341704 (Tex.Reg.)
**(Cite as: 27 Tex. Reg. 1476)**

TEXAS REGISTER
Volume 27, Number 9
MARCH 1, 2002
ADOPTED RULES
TITLE 16. ECONOMIC
REGULATION
PART 6. TEXAS MOTOR VEHICLE
BOARD
CHAPTER 111. GENERAL
DISTINGUISHING NUMBERS

**\*1476 16 TAC §111.2, §111.18**

The Texas Motor Vehicle Board adopts amendments to §111.2, General Distinguishing Numbers, Definitions, and new §111.18, Proof of Valid License Required of Foreign Motor Vehicle Dealers, as published in the November 9, 2001 issue of the Texas Register (26 TexReg 8975). Section 111.18 is adopted with changes. Section 111.2 is adopted without changes and will not be republished.

The amendments and new section require Texas licensees to require proof of licensure from persons claiming to hold a license in a foreign jurisdiction, to identify and keep copies of certain license records pertaining to Mexican motor vehicle dealers with whom they do business, and to affix a "For Export Only" stamp with the selling dealer's General Distinguishing Number on the title of every vehicle sold

to a foreign motor vehicle dealer.

A significant number of vehicles in Texas are sold to persons claiming to be foreign licensed dealers and who represent that the vehicles are purchased for export when the vehicles are actually not taken out of the country, but are "curbstoned" or sold in unlicensed and unregulated lots near the border with Mexico. These lots compete unfairly with licensed and regulated dealers, who must make a significant investment in facilities and inventory. Additionally, consumers have no recourse against such dealers, who do not meet license requirements such as maintaining a security bond or a permanent place of business. These rules are designed to reduce or eliminate the supply of vehicles to unlicensed dealers by requiring Texas licensees to obtain proof that the international dealer is, in fact, licensed in his or her home nation. They will also assist local law enforcement by reducing the number of curbstoners in the border communities.

Additionally, the rules support the efforts of other nations to require licensing of their dealer bodies. By restricting access to a steady supply of American vehicles to those who have obtained licenses from their governments to sell vehicles, Texas will provide a strong incentive for would-be dealers to meet the requirements for licensing.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

EXHIBIT
2

The rules specifically require certain documents from dealers claiming to be licensed by the Republic of Mexico. The Board supports Mexico's requirements by requiring Texas dealers to maintain copies of appropriate documents and to verify that the Mexican dealer's license is active and in good standing. The Board's position is based on the special relationship that exists between Texas and the Republic of Mexico. Texas and Mexico share a long border, where both sides have developed a highly integrated economy. Texas supports the Republic of Mexico in its efforts to limit the trade in motor vehicles to licensed dealers, and to that end the Motor Vehicle Board proposes specific requirements concerning Mexican motor vehicle dealers. The more general requirements are intended for all non-United States dealers.

Proponents of the proposal commented that adoption will increase tax revenues and help eliminate curbstoning. Reduction of curbstoning will help eliminate unfair competition by curbstoners, who have no overhead costs, against small businesses in the border communities and help protect consumers against gypsy salespersons who do not transfer titles and cannot be located after the sale. The proposed rule will also greatly reduce unlicensed sales of motor vehicles. Commenters stated that the requirement of stamping titles would reduce illegal sales within the United States and in Mexico because only a licensed dealer would be able to sell the vehicles without titling them in the dealer's name. A consumer would be

alerted by the title stamp that the vehicle was sold for export only. An auto auction commented that they were already following the proposed procedures, and did not find them burdensome.

**\*1477** Small businessmen stated that they are losing money to curbstoners, and noted that there are 120 legitimate businessmen in Brownsville and 1,000 curbstoners who do not pay taxes, have overhead or the expense of permanent facilities.

Opponents argued that the rule would be overly costly and burdensome for dealers, without achieving the purpose of reducing curbstoning. Commenters stated that the burden of requiring dealers to verify the license status from all foreign dealers would outweigh the benefit of a minor reduction in unlicensed sales. Additionally, it was asserted that the rule gave no guidance on how dealers would verify foreign licenses from countries other than Mexico. One commenter suggested it would not be difficult to wash the title in another state, thereby defeating the purpose of the rule. Another argued that the proposal would not accomplish its purpose, but create another layer of bureaucracy and opportunity for innocent mistakes.

Comments in favor of §111.18 were received from Rene O. Oliveira, Chairman of the House Ways and Means Committee, and the Tax Assessor-Collectors of Cameron, El Paso, Hidalgo and Webb Counties, the Cameron County

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Commissioners Court, the Brownsville Used Car Dealer Association, the El Paso Independent Automobile Dealers' Association, the San Antonio Auto Auction, and independent businessmen.

Comments in opposition to the proposal were received from the Texas Automobile Dealers Association, the Texas Independent Automobile Dealers Association, the Texas Wholesale Auto Auction Association, and Copart Salvage Auto Auction.

The Board agreed with comments that §111.18(c)(2), requiring auctions and dealers to telephonically confirm a buyer's license status with the Mexican licensing authorities, would be impractical and overly burdensome, and deleted that section. The Board further agreed that the wording of proposed §111.18(c)(4) was incorrect and should be changed to correctly identify the "Texas Motor Vehicle Sales Tax Exemption Certificate For Vehicles Taken Out of State" instead of "Texas Motor Vehicle Sales Tax Resale Certificate". The Board disagreed that the burden of requiring dealers to otherwise verify the license status of all foreign dealers would outweigh the benefit of a minor reduction in unlicensed sales. It believes that there are ways to verify dealer licenses through international dealer associations, and that the greater good that will be achieved through adoption of the rule cannot be overlooked.

The amendments and new rule are adopted

under the Texas Motor Vehicle Commission Code, §§3.01, 3.03, and 3.06, which provides the Board with authority to amend and adopt rules as necessary and convenient to effectuate the provisions of the Motor Vehicle Commission Code and Transportation Code.

Texas Transportation Code Sections 503.021, 503.036, and 503.038 are affected by the proposed amendments and new rule.

111.18 Proof of valid license required of foreign motor vehicle dealers.

(a) All holders of General Distinguishing Numbers must verify that a foreign motor vehicle dealer holds a valid license from the foreign dealer's country of origin before permitting the foreign motor vehicle dealer to purchase vehicles.

(b) All auctions or dealers who sell a vehicle to a foreign motor vehicle dealer shall stamp in black ink on the back of the title in all unused dealer reassignment spaces the words "For Export Only" and their General Distinguishing Number. The stamp shall also be placed on the front of the title in a manner that does not obscure any names, dates, or mileage statements. The stamp must be at least two inches wide, and all words must be clearly legible.

(c) Where the purchaser is a Mexican

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

motor vehicle dealer or the agent of a Mexican motor vehicle dealer the following documents must be obtained prior to the sale and maintained in the sales file for each vehicle:

(1) A copy of the Republic of Mexico license issued by the Secretaria de Economia to the Mexican Motor Vehicle Dealer;

(2) A copy of identification documents issued by the Republic of Mexico indicating that the person claiming to be a Mexican dealer is, in fact, a resident of Mexico. Such documents include but are not limited to Mexican driver's licenses, voter registration documents, or official identification cards, if the card contains a picture of the person and lists a physical address;

(3) A completed Texas Motor Vehicle Sales Tax Exemption Certificate For Vehicles Taken Out of State for each vehicle sold to a Mexican dealer, indicating that the vehicle has been purchased for export to the Republic of Mexico; and

(4) A copy of the front and back of the title to the vehicle, showing the "For Export Only" stamp and the General Distinguishing Number of the auction or dealer;

(5) In the case of agents of Mexican

motor vehicle dealers, the file must contain copies of the listed documents for the dealer and documentation supporting the person's claim to be acting as an agent for an Mexican motor vehicle dealer.

This agency hereby certifies that the adoption has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority.

Filed with the Office of the Secretary of State on February 15, 2002.

TRD-200200980    Brett Bray
Director
Texas Motor Vehicle Board

Effective date: March 7, 2002

Proposal publication date: November 9, 2001

For further information, please call: (512) 416-4899

*1475 An agency may take final action on a section 30 days after a proposal has been published in the Texas Register. The section becomes effective 20 days after the agency files the correct document with the Texas Register, unless a later date is specified or unless a federal statute or regulation requires implementation of the action on shorter notice.

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

If an agency adopts the section without any changes to the proposed text, only the preamble of the notice and statement of legal authority will be published. If an agency adopts the section with changes to the proposed text, the proposal will be republished with the changes.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works



## TxDOT *Expressway*

**Search:** [_____] Go

**Home** | **Contact Us** | **Tools** | ⊕ **Links** | **What's New** | **Help**

DOT Links©

Select A Link... ▼

Registration & Titling
Flood Damaged Vehicles
Auto Theft Prevention Authority
⊕ Driver's Licenses

*These documents contain text of correspondence sent by TxDOT to the county tax assessor-collectors, statutory agents who provide vehicle registration and titling services for citizens in Texas. This information is provided to apprise the general public of issues affecting the state's vehicle titling and registration process.*

## Registration and Title Bulletin #035-02

Date:      March 29, 2002
To:        All County Tax Assessor-Collectors
Subject: "FOR EXPORT ONLY" Stamp

### PURPOSE
To inform you of new procedures for Texas licensed dealers selling vehicles to foreign dealers for exportation only.

### DETAILS
In an effort to deter foreign dealers from curbstoning in Texas, the Motor Vehicle Division (MVD) has adopted rules requiring Texas licensed dealers to place a "FOR EXPORT ONLY" stamp on the front and over the unused reassignments on the back of titles for vehicles sold to foreign dealers for export. (Refer to attachments.) In the event that all reassignment spaces on the title document are full and a Form VTR-41-A (Dealer's Reassignment of Title for a Motor Vehicle) is used, the dealers will stamp the front and back of the title document and all unused reassignments on the Form VTR-41-A.

Stamping the front and back of titles with "FOR EXPORT ONLY" may increase visibility of illegal sales and help stop further transfer of ownership on the existing title. The "FOR EXPORT ONLY" stamp would require foreign dealers to sell the vehicle using a bill of sale (allowed if the owner is a foreign dealer) or properly register the vehicle in their country and then transfer using a bill of sale. Additionally, foreign residents purchasing such vehicles could not continue to transfer ownership on the existing title.

Although these rules became effective March 7, 2002, dealer compliance begins April 1, 2002. Consequently, on and after April 1, 2002, title transactions supported by title documents indicating sales that occurred on and after April 1, 2002, between Texas licensed dealers and either foreign dealers or foreign residents must be stamped "FOR EXPORT ONLY."

### COUNTY ACTION
If title transactions are supported by title documents indicating sales that occurred on and after April 1, 2002, between Texas licensed dealers and either foreign dealers or foreign residents but the title

**EXHIBIT**
**3**

8/8/2003 10:12 AM

documents are not stamped "FOR EXPORT ONLY," you should process the transactions. However, you are requested to copy the front and back of the associated transfer document and forward to the Title Control Systems Branch (TCS) for further disposition. These copies should be placed in an envelope and labeled "For Export Only" and sent in with the Title Package Report. TCS will then forward that envelope to the Motor Vehicle Division.

NOTE: This requirement does not include the stamping of salvage ownership documents (salvage certificates, salvage certificates of title, and nonrepairable certificates of title).

In the event a title is stamped in error with the "FOR EXPORT ONLY" stamp, the dealer will be required to apply for title in the dealership name. Along with the application filed with the county tax office, the dealer must include a statement of fact explaining why the sale of the vehicle to the foreign dealer, as indicated in the title reassignment, was cancelled. If the application and statement of fact is submitted, the county tax office will process the transaction for title issuance in the dealership name.

**DEPARTMENT ACTION**
Similar title transactions processed by the Vehicle Titles and Registration Division (VTR) must meet the criteria addressed in COUNTY ACTION.

Appropriate revisions will be made to the Vehicle Title Manual and distributed at a later date.

**VTR CONTACT PERSON(S):**
If you have further questions, please contact your local Vehicle Titles and Registration Division Regional Office. Thank you very much for your continued support.

*In some cases the Registration and Title Bulletins (RTB) contain attachments. If you require a copy of the original signed RTB and the attachments, please email your request with the RTB number to VTR Info Request/Open Records. Repeat requests are subject to charges in accordance with Open Record policies. A subscription service is also available for an annual fee of $250. Subscribers will automatically receive all RTB mailings as they are issued.*

© Copyright 2003, TxDOT
All Rights Reserved.

Disclaimer | Content Usage | Privacy Policy | Open Records | Accessibility | TxDOT Contacts

# Texas Department of Transportation

VEHICLE TITLES AND REGISTRATION DIVISION • AUSTIN,TEXAS 78779-0001 • (512) 465-7611

June 18, 2002

## Registration and Title Bulletin #063-02

**TO:**        All County Tax Assessor-Collectors

**SUBJECT:**    "FOR EXPORT ONLY" Stamp

### PURPOSE
To rescind Registration and Title Bulletin #35-02 and to clarify procedures for Texas licensed dealers selling vehicles to foreign dealers for exportation only.

### DETAILS
In an effort to deter foreign dealers from curbstoning in Texas, the Motor Vehicle Division (MVD) adopted rules requiring Texas licensed dealers to place a "FOR EXPORT ONLY" stamp on the front and over the unused reassignments on the back of titles for vehicles sold to foreign dealers for export. (Refer to attachments.) In the event that all reassignment spaces on the title document are full and a Form VTR-41-A (Dealer's Reassignment of Title for a Motor Vehicle) is used, the dealers will stamp the front and back of the title document and all unused reassignments on the Form VTR-41-A.

Stamping the front and back of titles with "FOR EXPORT ONLY" may increase visibility of illegal sales and help stop further transfer of ownership on the existing title. The "FOR EXPORT ONLY" stamp will require foreign dealers to sell the vehicle by properly registering the vehicle in their country and then transfer ownership using a bill of sale. Additionally, foreign residents purchasing such vehicles cannot continue to transfer ownership using the existing title.

Although these rules became effective March 7, 2002, dealer compliance began April 1, 2002. Consequently, title transactions supported by title documents indicating sales that occurred on and after April 1, 2002, between Texas licensed dealers and either foreign dealers or foreign residents must be stamped "FOR EXPORT ONLY."

### COUNTY ACTION
If title transactions are supported by title documents indicating sales that occurred on or after April 1, 2002, between Texas licensed dealers and either foreign dealers or foreign residents but the title documents are not stamped "FOR EXPORT ONLY," you should process the transactions provided the surrendered documentation includes foreign evidence of ownership, which has been properly assigned to the title applicant. Otherwise, the transaction should be rejected for proper evidence of ownership, or the applicant may pursue the options of a tax collector's hearing or bonded title.

You are also requested to copy the front and back of the associated transfer documents that are both stamped and not stamped "FOR EXPORT ONLY" and forward to the

EXHIBIT

County Tax Assessor-Collectors                2                June 18, 2002

Title Control Systems Branch (TCS) for further disposition.  These copies should be placed in an envelope and labeled "For Export Only" and sent in with the Title Package Report. TCS will then forward that envelope to the Motor Vehicle Division.

NOTE:  This requirement does not include the stamping of salvage ownership documents (salvage certificates, salvage certificates of title, and nonrepairable certificates of title).

In the event a title is stamped in error with the "FOR EXPORT ONLY" stamp, the dealer will be required to apply for title in the dealership name.  Along with the application filed with the county tax office, the dealer must include a statement of fact explaining why the sale of the vehicle to the foreign dealer or foreign resident, as indicated in the title reassignment, was cancelled.  Additionally, steps should be taken to validate the Texas dealership as title applicant.  If the application and statement of fact are submitted, and the Texas Dealership is validated as the title applicant, the county tax office shall process the transaction for title issuance in the dealership name.

**DEPARTMENT ACTION**
Similar title transactions processed by the Vehicle Titles and Registration Division (VTR) must meet the criteria addressed in COUNTY ACTION with one exception.  Copies of the front and back of the associated transfer documents should be forwarded to TCS in an envelope labeled "FOR EXPORT ONLY."

Appropriate revisions will be made to the Vehicle Title Manual and distributed at a later date.

**VTR CONTACT PERSON(S):**
If you have any comments or questions, please contact your local Vehicle Titles and Registration Division Regional Office.  Thank you very much for your continued support.

Sincerely,

Jerry L. Dike, Director
Vehicle Titles and Registration Division

Attachments

cc:   VTR Administration
      Motor Vehicle Division, TxDOT
      All Dealer Associations

## Front of Texas Title Indicating "FOR EXPORT ONLY" Stamp
(Assigned to a Texas Dealer, Reassigned to a Foreign Resident after April 1, 2002, and then Transferred to a Texas Resident on an acceptable transfer document.)



Acceptable for processing by the county only if proper foreign evidence of ownership is attached with proper assignment to the Texas Resident. Copy the front and back of the title, place it in an envelope labeled "For Export Only Stamp," and submit with the Title Package Report.

## Back of Texas Title Indicating "FOR EXPORT ONLY" Stamp

(Assigned to a Texas Dealer, Reassigned to a Foreign Resident after April 1, 2002, and then Transferred to a Texas Resident on an acceptable transfer document.)



WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT LICENSE RECEIPT, AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 20 WORKING DAYS TO AVOID $10 PENALTY.

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

**ASSIGNMENT OF TITLE**

Name of Purchaser: Somewhere Dealership   Street: 1000 Main St   City: Austin   State: Texas   Zip: 78779

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.
5279   ☐ 1. The mileage stated is in excess of its mechanical limits.   ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-3-02   Signature of Seller/Agent: John Doe   Printed Name: John Doe

I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent: Ira Dealer   Printed Name: Ira Dealer

**FIRST REASSIGNMENT DEALER ONLY**

Name of Purchaser: Foreign Resident   Street: 500 Calle Blvd   City: Ciudad   State: Mexico   Zip:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.
5279   ☐ 1. The mileage stated is in excess of its mechanical limits.   ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-10-02   Dealer's Name: Somewhere Dealership   Dealer No.: P12345

Agent's Signature: Ira Dealer   Printed Name: Ira Dealer

I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent: Foreign Resident   Printed Name: Foreign Resident

**SECOND REASSIGNMENT DEALER ONLY**

Name of Purchaser:   Street:   City:   State:   Zip:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.
☐ 1. The mileage ... its mechanical limits.   ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

FOR EXPORT ONLY P12345

**THIRD REASSIGNMENT DEALER ONLY**

Name of Purchaser:   Street:   City:   State:   Zip:

I certify to the best of my knowledge that the odometer reading is the actual mileage ... unless one of the following statements is checked.
☐ 1. The mileage ... mechanical limits.   ☐ 2. ... actual mileage. WARNING - ODOMETER DISCREPANCY.

FOR EXPORT ONLY P12345

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Acceptable for processing by the county only if proper foreign evidence of ownership is attached with proper assignment to the Texas Resident. Copy the front and back of the title, place it in an envelope labeled "For Export Only Stamp," and submit with the Title Package Report.

## Front of Texas Title Without "FOR EXPORT ONLY" Stamp
### (Assigned to a Texas Dealer, Reassigned to a Foreign Dealer after April 1, 2002, and then Transferred to a Texas Resident.)



Acceptable for processing by the county only if proper foreign evidence of ownership is attached with proper assignment to the Texas Resident. Copy the front and back of the title, place it in an envelope labeled "For Export Only Stamp," and submit with the Title Package Report.

## Back of Texas Title Without "FOR EXPORT ONLY" Stamp
### (Assigned to a Texas Dealer, Reassigned to a Foreign Dealer after April 1, 2002, and then Transferred to a Texas Resident.)

WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT LICENSE RECEIPT, AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 20 WORKING DAYS TO AVOID $10 PENALTY.

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

**ASSIGNMENT OF TITLE**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address.

Name of Purchaser: Somewhere Dealership   Street: 1000 Main St.   City: Austin   State: Texas   Zip: 78779

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (no tenths): 5278
☒ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-3-02   Signature of Seller/Agent: John Doe   Printed Name (same as signature): John Doe

I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent: Ira Dealer   Printed Name (same as signature): Ira Dealer

**FIRST REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address.

Name of Purchaser: Foreign Dealer   Street: 500 Calle Blvd.   City: Ciudad   State: Mexico   Zip:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (no tenths): 5289
☒ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-10-02   Dealer's Name: Somewhere Dealership   Dealer No.: P12345

Agent's Signature: Ira Dealer   Printed Name (same as signature): Ira Dealer

I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent: Foreign Dealer   Printed Name (same as signature): Foreign Dealer

**SECOND REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address.

Name of Purchaser: Poor Citizen   Street: 123 Some Street   City: Austin   State: Texas   Zip: 78711

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (no tenths): 5297
☒ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-11-02   Dealer's Name: Foreign Dealer   Dealer No.:

Agent's Signature: Foreign Dealer   Printed Name (same as signature): Foreign Dealer

I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent: Poor Citizen   Printed Name (same as signature): Poor Citizen

**THIRD REASSIGNMENT DEALER ONLY**

The undersigned hereby certifies that the vehicle described in this title is free and clear of all liens, except as noted herein, and has been transferred to the following printed name and address.

Name of Purchaser:    Street:    City:    State:    Zip:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING (no tenths):
☐ 1. The mileage stated is in excess of its mechanical limits.
☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale:    Dealer's Name:    Dealer No.:

Agent's Signature:    Printed Name (same as signature):

I am aware of the above odometer certification made by the seller/agent.
Signature of Buyer/Agent:    Printed Name (same as signature):

**LIEN** — LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Acceptable for processing by the county only if proper foreign evidence of ownership is attached with proper assignment to the Texas Resident. Copy the front and back of the title, place it in an envelope labeled "For Export Only Stamp," and submit with the Title Package Report.

## Front of Texas Title Without "FOR EXPORT ONLY" Stamp
### (Assigned to a Texas Dealer, Reassigned to a Foreign Resident after April 1, 2002, and then Transferred to a Texas Resident.)



Acceptable for processing by the county only if proper foreign evidence of ownership is attached with proper assignment to the Texas Resident. Copy the front and back of the title, place it in an envelope labeled "For Export Only Stamp," and submit with the Title Package Report.

## Back of Texas Title Without "FOR EXPORT ONLY" Stamp
(Assigned to a Texas Dealer, Reassigned to a Foreign Resident after
April 1, 2002, and then Transferred to a Texas Resident.)

WHEN VEHICLE IS SOLD, TITLE HOLDER MUST ASSIGN AND FURNISH THIS TITLE, CURRENT LICENSE RECEIPT, AND SALES TAX AFFIDAVIT TO THE PURCHASER WHO MUST FILE APPLICATION WITH COUNTY TAX ASSESSOR-COLLECTOR WITHIN 20 WORKING DAYS TO AVOID $10 PENALTY.

FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

**ASSIGNMENT OF TITLE**

Name of Purchaser: Somewhere Dealership    Street: 1000 Main S.    City: Austin    State: Texas    Zip Code: 78___

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths): 5279    ☒ 1. The mileage stated is in excess of its mechanical limits.    ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-3-02    Signature of Seller/Agent: John Doe    Printed Name (same as signature): John Doe

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent: Ira Dealer    Printed Name (same as signature): Ira Dealer

**FIRST REASSIGNMENT DEALER ONLY**

Name of Purchaser: Foreign Resident    Street: 123 Calle Blvd.    City: Ciudad    State: Mexico    Zip Code:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths): 5279    ☒ 1. The mileage stated is in excess of its mechanical limits.    ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 5-10-02    Dealer's Name: Somewhere Dealership    Dealer No.: P12345

Agent's Signature: Ira Dealer    Printed Name (same as signature): Ira Dealer

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent: Foreign Resident    Printed Name (same as signature): Foreign Resident

**SECOND REASSIGNMENT DEALER ONLY**

Name of Purchaser: Poor Citizen    Street: 123 Some Street    City: Austin    State: Texas    Zip Code: 78779

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths): 5297    ☒ 1. The mileage stated is in excess of its mechanical limits.    ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale: 8-11-02    Dealer's Name: Foreign Dealer    Dealer No.:

Agent's Signature: Foreign Dealer    Printed Name (same as signature): Foreign Dealer

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent: Poor Citizen    Printed Name (same as signature): Poor Citizen

**THIRD REASSIGNMENT DEALER ONLY**

Name of Purchaser:    Street:    City:    State:    Zip Code:

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:

Odometer Reading (No Tenths):    ☐ 1. The mileage stated is in excess of its mechanical limits.    ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

Date of Sale:    Dealer's Name:    Dealer No.:

Agent's Signature:    Printed Name (same as signature):

I am aware of the above odometer certification made by the seller/agent.

Signature of Buyer/Agent:    Printed Name (same as signature):

**LIEN**

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE.
1ST LIEN IN FAVOR OF (NAME & ADDRESS)

Acceptable for processing by the county only if proper foreign evidence of ownership is attached with proper assignment to the Texas Resident. Copy the front and back of the title, place it in an envelope labeled "For Export Only Stamp," and submit with the Title Package Report.