IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

NOV 1 3 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR LEAVE TO SUPPLEMENT PLAINTIFFS' 7(a) REPLY**

NOW COMES Defendants CAMERON COUNTY and YZAGUIRRE and files their Response to Plaintiffs' Motion For Leave to Supplement Plaintiffs 7(a) Reply, and would show this Court as follows:

**I. Summary of the Argument**

Plaintiffs filed original and amended complaints in May and June 2003. Dkt # 1, 8. In August 2003, they filed a Rule 7 Reply to plead specific facts to meet Defendant Yzaguirre's qualified immunity defense. Dkt # 21, 22. On October 20, 2003, the court permitted extensive oral argument on the motions to dismiss filed long ago.

On October 24, 2003, Plaintiffs asked to "supplement" the Rule 7. None of the "supplemental" allegations were mentioned by Plaintiffs four days earlier in oral argument. All of the supplemental allegations occurred before argument; most of them allegedly

occurred before Plaintiffs sued.

After two complaints and a Rule 7 reply, the court should conclude Plaintiffs have already plead their best case. They certainly had every incentive to plead fully and accurately long before now.

Apart from timing, the proposed supplement does not help their case. The supplement on the prior claims does not get them over any hurdles. The attempt to inject new claims fails for many reasons.

## II. Argument and Authorities

A.  <u>Standard of Review</u>

Whether to allow amendments is addressed to the Court's discretion. FED. R. CIV. P. 15(a). The district court at some point may assume that Plaintiffs have had a fair opportunity to plead their best facts. *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir. 1985). The court may consider that Plaintiffs have amended their complaint, filed one lengthy Rule 7 reply, and argued the Defendants' motions to dismiss without asking to replead. *Compare, Jacquez v. Procunier,* 801 F.2d 789, 792-93 (5th Cir. 1986).

Moreover, the court may reject further leave to amend if the new matters do not state a claim or avoid the pending motions to dismiss. Wright, Miller & Kane, FED. PRAC. & PROC. 2D, § 1487 pp. 643-45 (1990). Granting leave will only cause delay. Defendants must then file new Rule 12(b) motions; Yzaguirre must move to stay discovery pending a ruling on qualified immunity as to the new matters.

Moreover, Plaintiffs seek to supplement a Rule 7 Reply on qualified immunity. They were required to make fact-specific allegations in the Rule 7 Reply. *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc). The complaint must state facts defeating qualified immunity, not mere legal conclusions. *Schultea*, 47 F.3d at 1433. In many instances, the proposed Supplement is as vague as the Amended Complaint. By now, Plaintiffs should be able to allege with specificity rather than assert conclusions.

B.   Plaintiff Muñoz's "New" Allegations Do Not Save His Prior Claims

The Supplement, ¶ 1, claims that Muñoz's transfer to the Harlingen Branch office was a "demotion" because he is performing the functions of a cashier and lost the use of a cell phone. This does not avoid the problems raised by the motions to dismiss. He alleged his demotion occurred in May 2002. Dkt #23, ¶ 38. First, this adds nothing to the alleged retaliation for giving the sheriff a statement in August 2002 (Dkt # 23, ¶ 39) because the alleged "demotion" had already occurred. Second, this does not save the alleged claims related to his alleged earlier statements; the problem with those is a failure to show the statements were on a matter of public concern.

C.   Plaintiff Muñoz's "New" Claim Fails to State A Claim for Relief

The Supplement, ¶ 2, claims that on October 20, 2003, Defendant Yzaguirre "ordered" the lock on Muñoz's changed so that Muñoz could not get certain "personal belongings" in that office. This fails to state a claim.

First, this is not First Amendment retaliation claim at all. Changing locks is not an

"adverse personnel action."

If this comes close to stating a section 1983 claim, it is a "Due Process" claim for taking property. It fails for two reasons. First, as a procedural Due Process claim, a claimant must prove an intentional deprivation, something more than negligence. *Daniels v. Williams*, 474 U.S. 327, 330-32 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Muñoz alleges that Defendant Yzaguirre ordered the locks changed, but he does not claim Yzaguirre ordered his property taken or done in a way to do so. Second, a state actor's random or unauthorized violation taking/damaging of property does not violate Due Process if the state law provides an adequate post-deprivation remedy. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

If Muñoz wishes to label this a "taking without compensation," he has a ripeness problem. The Fifth Amendment prohibits taking without "just compensation;" if the state provides a state law remedy, the "taking" is not complete until that remedy fails to provide adequate compensation. *Williamson County Reg. Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 196 (1985). The federal claim is not "ripe" until after the plaintiff has utilized that procedure. *Id.* at 196-97. Consequently, Muñoz cannot bring the claim until he exhausts state law remedies and is denied relief. *Sandy Creek Investors, Ltd. v. City of Jonestown*, 325 F.3d 623, 626 (5th Cir. 2003).

D.   Weaver's Supplement Does Not Save Her Prior Claims

The Supplement, ¶ 8, makes the new claim that her termination was also in retaliation for a written statement she gave the sheriff on August 2, 2002. Dkt # 41, Exh. 1. First,

Defendant Yzaguirre objects to Exh. 1 and requests the court strike it in any case. FED. R. CIV. P. 12(f)(permitting the court to strike "immaterial, impertinent, or scandalous matter"). They cannot agree to its authenticity. Weaver does not claim she (or anyone else) ever gave it to Defendants; it is unlikely that, if she did give the writing to the sheriff, that he would send it to Yzaguirre. Defendants had not seen the document until it was filed with Plaintiffs' motion. Moreover, it should be stricken under Rule 12(f). The sole purpose of attaching the statement is to bolster the false impression that law enforcement officials have given credence to alleged complaints she has made.

The allegations about the statement do not save her claim. First, she pleads she was put on "forced vacation" in May 2002 and then officially terminated in September 2002. Dkt # 23, ¶ 51. Exh. 1 is dated August 2, 2002. Under Weaver's allegation, she gave her statement after she was effectively forced out; Exh. 1 could not be the motive for actions that had already occurred.

Second, Exh. 1 is not a speech on a matter of public concern. It was obviously not intended to be disseminated. At best it says that auto dealers brought title papers into the main office for processing and in each case they were delivered to the proper person in the office to process title transfers. Dealers are required to submit the title transfer documents. TEX. TRANS. CODE §501.0234. No part of the statement accuses Yzaguirre of a crime or serious official misconduct. At best it simply asserts that title transfer applications were sometimes brought by dealers to the main office.

The Supplement, ¶ 4, claims that Yzaguirre cut Weaver's pay by $3000.00 at the same time Muñoz lost his $3000 stipend. This does not save her claims. Her problem is that none of her alleged speech actions were on a matter of public concern. Therefore, it is immaterial whether she suffered a pay cut before she was terminated.

E.   Alvarado's New Claims Fail to State Claims for Relief

Alvarado tries to recast her association and speech claims with matters that, if true, were known to her long ago. Even so they fail to state a claim and fail to get past qualified immunity.

The Supplement, ¶ 9, now alleges that Alvarado met with Cantu and Weaver, that they worked together, and they discussed concerns about unspecified "unlawful actions" in processing vehicle title registrations. She now claims it was associating with Cantu and Weaver who spoke out that resulted in her transfer and her constructive termination. Supplement, ¶¶ 9, 10. First, this fails to state that there was an expressive "association" for First Amendment purposes. *Finch v. Ft. Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003); *Henrise v. Horvath*, 174 F. Supp.2d 493, 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part*, 45 Fed. Appx. 323 (5th Cir. 2002)(unpublished). Second, Alvarado does not allege Defendants knew of this.

The Supplement, ¶13, claims she called Mr. Montoya at the Texas Board of Tax Professional Examiners and left "a message attempting to make a complaint" that Defendant Yzaguirre was "violating Texas laws" in the manner in which he was running his office; she

admits she never spoke to him. First, Alvarado does not expressly state what was in her message or what laws she might have said Yzaguirre violated. The Board of Tax Professional Examiners is a state agency that establishes standards of conduct and education for tax assessors, collectors, and appraisers. TEX. OCCUPATIONS CODE ANN. §1151.103 (Vernon 2004). It registers certain assessor/collectors and certifies persons for levels of specialization. TEX. OCCUPATIONS CODE ANN. §1151.151, et seq. (Vernon 2004). It is authorized only to investigate (1) violations of Texas Occupations Code Chapter 1151 or (2) a requirement by a governing body of a taxing unit that its assessors or collectors act unprofessionally as a necessity for employment. TEX. OCCUPATIONS CODE ANN. §1151.004 (Vernon 2003). Alvarado does not state (1) what part of Chapter 1151 she complained that Yzaguirre violated, or (2) what "unprofessional" act she complained that his office had required assessors or collectors perform. This should be fatal given that the issue is qualified immunity which demands specificity instead of obscurity. Therefore, she does not allege facts showing her "attempted" speech was on a matter of public concern.

A careful reading of Alvarado's Rule 7 Reply shows that probably she sought to complain (if an "attempt" to complain amounts to speech) about Yzaguirre's alleged failure to fund courses necessary for her work. Reply, Dkt # 23 ¶ 64. The Board administers certification exams for tax collectors; Alvarado alleges she supervised auto tax collection. Dkt # 23, ¶ 54. It is apparent that Alvarado was calling about Yzaguirre's alleged decision not to pay for courses she needed for her certification. Neither Chapter 1151 nor any other

law requires Yzaguirre pay for her courses or assist in certification. There is no "violation of law" she could be reporting to that Board.

Finally, the Supplement, ¶ 14, now alleges that from 1998-2002 she complained to Yzaguirre's subordinate (Jesse Garcia) that the Special Inventory Tax was "not being properly administered." This is spurious for several reasons. First, she does not complain that Defendants ever learned of her alleged statements. Second, she does not alleged that she said that Yzaguirre, Jesse Garcia, or anyone was violating the law or committing serious official misconduct. Therefore, this is not speech on a matter of public concern. Third, she is vague and conclusory about she said. To defeat qualified immunity, Alvarado must allege specific statements that are clearly protected speech on matters of public concern. *Foley v. Univ. of Houston System,* 324 F.3d 310, 318 (5th Cir. 2003). At this point, if she does not plead exactly what she said to Jesse Garcia and what misconduct she spoke of, that is proof positive that she cannot and the claim is meritless.

F.    Garcia's New Claim Fails to State a Claim for Relief

The Supplement, ¶15, raises the totally new claim that in September 2003, Yzaguirre "and others working on his behalf" instituted a false criminal charge that Garcia tampered with a government record. She fails to state facts showing a claim, much less one that survives qualified immunity.

There is no general Due Process claim under the 14th Amendment for "malicious prosecution." *Albright v. Oliver,* 510 U.S. 266, 275 (1994). Instead, the claimant must rely

on another federal right protected under the Constitution. *Gordy v. Burns,* 294 F.3d 722, 725 (5th Cir. 2002). The Fifth Circuit has tentatively recognized a Fourth Amendment "malicious prosecution" claim, but readily concedes that this is an "uneasy fit," one that is "confused and confusing." *Gordy,* 294 F.3d at 725; *Kerr v. Lyford,* 171 F.3d 330, 342-43 (5th Cir. 1999). Garcia does not alleged a Fourth Amendment "malicious prosecution" claim and it is not clear that the Fifth Circuit will recognize one. *See Castellano v. Fragozo,* 311 F.3d 689 (5th Cir. 2002), *pet. for reh. en banc granted,* 321 F.3d 1203 (5th Cir. 2003)(en banc)[1]. Moreover, such a claim if recognized would probably require proof of "seizure," i.e., arrest or confinement. *Castellano,* 311 F.3d at 698-700 (majority), 722-28 (Barksdale, J., dissenting). No such "seizure" is alleged.

It is not clear First Amendment rights will support a section 1983 "malicious prosecution" claim. *See Castellano,* 311 F.3d at 727 (Barksdale J., dissenting)(noting decisions from other circuits that a section 1983 "malicious prosecution" claim can lie only under the Fourth Amendment). If it will, a First Amendment "malicious prosecution" claim requires Garcia allege and prove:

    a.    she engaged in a conduct protected by the First Amendment;

    b.    Defendants' action caused her to suffer an injury that would chill a person of ordinary firmness from continuing in that activity;

---

[1] The Fifth Circuit held oral argument en banc in May 2003 in *Castellano*. The case remains pending.

  c. Defendants' action were substantially motivated by her First Amendment conduct; and

  d. the elements of a common-law malicious prosecution claim under Texas law.

*Keenan v. Tejeda,* 290 F.3d 252, 258, 260 (5th Cir. 2002). Malicious prosecution under Texas law requires Garcia prove:

  a. a criminal action was commenced against her;

  b. Defendants caused the prosecution;

  c. The criminal case ended in her favor;

  d. Garcia is innocent;

  e. Defendants acted without probable cause and with malice; and,

  f. The criminal proceedings damaged Garcia.

*Castellano,* 311 F.3d at 699-700. If the decision to prosecute was left to the discretion of another (e.g., the district attorney, grand jury), Garcia must prove Defendants knowingly provided to that party with false information and but for the false information the decision to prosecute would not have been made. *King v. Graham,* ___ S.W.3d ___, Cause No. 01-0171 (Tex., Nov. 7, 2003).

  First, as argued in the original motions to dismiss, her speech was not on a matter of public concern. Second, Garcia's claim fails because she does not allege that the prosecution has or would chill her First Amendment conduct. Given that she appears to want to continue this suit, it is not likely it will.

Third, she does not allege the elements of a Texas common-law malicious prosecution claim. This is particularly glaring, particularly because of what Garcia must know. She neglects to mention whether she was indicted by the grand jury, probably because under *King* she carries an extra burden to show Defendants knowingly provided false information to the district attorney or grand jury which information was material to their decision. The information is known to her because she has criminal counsel in that case, was arraigned, and the trial is set in state district court. Her failure to allege the elements is a last minute attempt to insert new claims to stall the motions to dismiss.

First, she does not allege the criminal prosecution has terminated in her favor. Therefore the alleged claim is premature. *Eugene v. Alief I.S.D.*, 65 F.3d 1299, 1306 (5th Cir. 1995), *cert. denied*, 517 U.S. 1191 (1996). Second, she does not allege Defendants lacked probable cause; there are no facts alleged at all, much less facts showing Defendants knew the charges were false or lacked probable cause. This is particularly important to the qualified immunity claim. Third, she has not alleged how Defendants caused her prosecution. She knows how the prosecution was instituted and chooses not to plead it specifically because of the rule in *King*.

## III. Conclusion

The Court should deny the motion for leave. The Amended Complaint and the Rule 7(a) Reply (even if the Supplement were filed) fail to allege facts sufficient to state a claim for relief or to defeat qualified immunity. The Court should granted Defendants' motions to dismiss.

Respectfully submitted,

By _____
**Charles Willette, Jr.**
State Bar No. 21509700
Federal ID No. 1937
**Roman "Dino" Esparza**
State Bar No. 00795337
Federal ID No. 22703
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520
Phone (956) 541-1846
Fax   (956) 541-1893

Attorneys for Defendant Cameron County, Texas

By _____
Roger W. Hughes
State Bar No. 10229500
Federal ID No. 5950
**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756

                    **ADAMS & GRAHAM, L.L.P.**
                    P. O. Drawer 1429
                    Harlingen, Texas 78551-1429
                    Telephone: (956) 428-7495
                    Facsimile: (956) 428-2954

ATTORNEYS FOR DEFENDANT TONY YZAGUIRRE, Assessor-Collector of Cameron County and Director of Cameron County Automobile Crimes Enforcement Task Force in his Individual Capacity

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the 13 day of November, 2003.

Ms. Gay E. Gilson  
**LAW OFFICE OF GAY E. GILSON**  
719 South Shoreline, Suite 301A  
Corpus Christi, TX 78401

*CM/RRR 7001 2510 0004 2063 6432*

Mr. David Lee McGee  
**LAW OFFICES OF DAVID LEE McGEE, P.C.**  
201 S. 15th, Ste. 204, McAllen (78501)  
701 Park Avenue  
Corpus Christi, TX 78401

*Via Ordinary Mail*

Mr. Roman "Dino" Esparza  
**WILLETTE & GUERRA, L.L.P.**  
3505 Boca Chica Blvd., Suite 460  
Brownsville, TX 78520

*Via Ordinary Mail*

_____  
Roger W. Hughes