IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 2 6 2004

Michael N. Milby
Clerk of Court

| | |
|---|---|
| VICENTA CANTU, et al. | : |
| Plaintiffs | : |
| vs. | : CIVIL ACTION NO. B-03-096 |
| CAMERON COUNTY, et al. | : |
| Defendants | : |

**DEFENDANT COUNTY'S SECOND MOTION TO DISMISS
NEW CLAIMS OF PLAINTIFFS ALVARADO AND WEAVER,
UNDER RULE 12(b)(6)**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant County**, and files this Second Motion to Dismiss New Claims of Plaintiffs Alvarado and Weaver Under Rule 12(b)(6) and would respectfully show the Court as follows:

**I. Status of Proceeding**

Plaintiffs Diamantina Alvarado and Ruth Weaver sued Defendant Yzaguirre individually under 42 U.S.C. § 1983 for depriving them of rights under the First Amendment, U.S. Constitution, i.e., for freedom of speech and freedom of "association." Dkt # 8. After Defendant County moved to dismiss their complaints for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), they filed a Supplemental Rule 7(a) Reply raising new claims. Dkt # 16, 17. The Court's March 31, 2004, Order did not rule on Alvarado and Weaver's new claims raised in the Supplemental Rule 7(a) Reply; rather the Court permitted Defendants to file

a second motion to dismiss aimed at only those new claims. Dkt #48, pp. 29-30. Defendant County files this motion and incorporates by reference herein, Defendant Yzaguirre's Second Motion to Dismiss New Claims of Plaintiffs Alvarado and Weaver Under Rule 12(b)(6)

## II. Issues Presented

1. Whether Alvarado has alleged a violation of any right of association protected by the First Amendment if her only alleged "association" with co-workers was going to lunch and discussing with them complaints about Yzaguirre.

2. Whether Plaintiff Alvarado has alleged an "adverse employment" action if:

   a. Her alleged transfer was merely a personal inconvenience, or

   b. She has failed to allege behavior deliberately directed by Defendant Yzaguirre towards her that would amount to a "constructive discharge."

3. Whether Weaver has alleged facts showing that her alleged statement to the sheriff was on a matter of "public concern" or that it caused an adverse action.

## III. Factual Background

### A. Alvarado's New Allegations of Retaliation for Association

Alvarado was the former supervisor for the Property Tax Division. Supplement, ¶10; Dkt #41. She alleges that from 1998-February 2003 she complained to Jesse Garcia (Yzaguirre's chief deputy) that the Special Inventory Tax was "not being properly administered." Supplement, ¶14; Dkt #41.

Alvarado now alleges that she, Munoz, Cantu, and Weaver "closely associated" at work and went to lunch often. Suppl. ¶9; Dkt #41. She alleges that, between 2001 and May 2002, she, Weaver, and Cantu discussed concerns about unspecified "unlawful actions" by Yzaguirre in

processing vehicle title registrations. Suppl. ¶9; Dkt #41. Any alleged talks (or association) with Cantu and/or Weaver ended in May 2002 because that is when Cantu was terminated and Weaver went on vacation.

She now claims it was associating with Cantu and Weaver who spoke out that resulted in her transfer and her constructive termination. Suppl. ¶¶ 9, 10; Dkt #41. On February 28, 2003, Alvarado was transferred to Defendant Yzaguirre's San Benito office. Am. Comp. ¶ 59. Dkt. # 8. Alvarado alleges her transfer was in retaliation for her (1) "association" with Munoz, Cantu, and Weaver, and (2) her "protected speech"; she alleges that her transfer was "adverse" because it was a further drive for her to drive from her home and from her part time job at Dillard's in Brownsville. Suppl. Dkt #41.

In March 2003, she alleges that Mr. Jesse Garcia told her she would have to pay for certain professional courses on her own. Am. Compl., ¶ 61 (Dkt # 8); Reply ¶ 64 (Dkt #23). She claims she called Mr. Montoya at the Texas Board of Tax Professional Examiners and left "a message attempting to make a complaint" that (1) Defendant Yzaguirre was "violating Texas laws" in the manner in which he was running his office, and (2) Yzaguirre was denying her training she needed to update her tax assessor license; she admits she never spoke to him. Suppl. ¶13; Dkt #41. She does not allege Yzaguirre ever learned of the call.

Plaintiff claims that she was "constructively discharged" on March 24, 2003. Am. Comp. ¶ 63; Dkt #8. She claims this resulted from the hostility from co-workers. Am. Comp. ¶¶ 56, 57 and 62; Dkt #8. The "hostile" acts were that a co-worker told her that Yzaguirre would not pay for continuing education and that she must move her house plants from the office in which she no longer worked. Am. Comp. ¶¶ 59, 61, 64; Dkt#8

B.   **Weaver's New Speech Retaliation Claim**

Weaver makes a new claim that her termination was also in retaliation for a written statement she gave the sheriff on August 2, 2002, about "possible unlawful conduct." Suppl. ¶ 8 Exh. 1; Dkt # 41. Her statement (Exh. 1) described only (1) that she processed vehicle title registrations or observed them being processed in her office; and (2) some of them had "irregularities," e.g. interlineations, "white-outs," etc. She also pleads that Yzaguirre put her on "forced vacation" in July 2002 and, upon returning to work in September 27, 2002, she was immediately fired. Am.Comp. ¶51; Dkt # 8.

## IV. Argument and Authorities

A.   **Standard of Review**

The Court's March 31, 2004, Order (Dkt # 48)["Order"], pp., 2, 20-21, sets out the standards for a Rule 12(b)(6) motion to dismiss for failure to state a claim. They are incorporated by reference.

The district court at some point may assume that Plaintiffs have had a fair opportunity to plead their best facts. *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir. 1985). The court may consider that Plaintiffs have filed an amended complaint and two Rule 7 replies. *Compare, Jacquez v. Procunier,* 801 F.2d 789, 792-93 (5th Cir. 1986). It is fair at this point to conclude Plaintiffs cannot allege any new facts.

B.   **Alvarado Failed to Allege a Speech Retaliation Claim**

1.   Alleged Statements to Mr. Garcia Concerning Inventory Tax

Alvarado's alleged complaints to Mr. Garcia about the inventory tax is spurious for several reasons. First, Alvarado does not allege that Yzaguirre ever learned of her alleged statements.

Second, she does not allege facts showing this was on a matter of public concern. She does

not alleged that she said that Yzaguirre, Jesse Garcia, or anyone was violating the laws concerning the Special Inventory Tax or committing serious official misconduct. She does not allege there was any public controversy. She does not allege that her statements were to the public or made in her role as a citizen. Previously this Court concluded that similar statements by Munoz and Weaver were insufficient to protected speech. Order, pp. 12-13,14; Dkt #48.

Third, she is vague and conclusory about what she said. Alvarado must allege specific statements that are clearly protected speech on matters of public concern. *Foley v. Univ. of Houston System,* 324 F.3d 310, 318 (5th Cir. 2003). At this point, if she does not plead exactly what she said to Jesse Garcia and what misconduct she spoke of, that is proof positive that she cannot and the claim is meritless.

2. The March 2003 Phone Call

First, Alvardo does not say she actually made a complaint to Board of Tax Professional Examiners; she alleges she "left a message *attempting* to make a complaint." Suppl. ¶13; Dkt #41 [emphasis added]. She does not allege Mr. Montoya got the message she left or even understood it as a complaint about anything. If she did not say anything, that is not speech, much less speech on a matter of public concern.

Second, Alvarado does not expressly state what was in her message and therefore fails to show how the statement was on a matter of "public concern." She alleges her "attempt" was to complain about (1) being denied training needed to update her license, and (2) Yzaguirre was violating Texas laws in the way he ran his office. The Board of Tax Professional Examiners is a state agency that establishes standards of conduct and education for tax assessors, collectors, and appraisers. TEX. OCCUPATIONS CODE ANN. §1151.103 (Vernon 2004). It registers certain

assessor/collectors and certifies persons for levels of specialization. TEX. OCCUPATIONS CODE ANN. §1151.151, et seq. (Vernon 2004).

A careful reading of Alvarado's Rule 7 Reply and her Supplemental Reply shows that probably she sought to complain (if an "attempt" to complain amounts to speech) about Yzaguirre's alleged failure to fund courses necessary for her work. Reply ¶ 64, Dkt # 23; Suppl. Dkt # 41. The Board administers certification exams for tax collectors; Alvarado alleges she supervised auto tax collection. Reply ¶ 54, Dkt # 23. It is apparent that Alvarado was calling about Yzaguirre's alleged decision not to pay for courses she needed for her certification. Neither Chapter 1151 nor any other law requires Yzaguirre pay for her courses or assist in certification. She is not even required to be certified to hold her job. There is no "violation of law" she could be reporting to that Board.

This was purely a personnel matter, not a matter of "public concern." It involved essentially a personnel action individual to her. There was no public controversy at the time over whether the Tax Assessor should voluntarily pay for employee training.

Otherwise, Alvarado does not state what part of Chapter 1151 or other law she "attempted" to complain that Yzaguirre violated. Therefore, she does not allege facts showing her "attempted" speech was on a matter of public concern.

Third, Alvarado does not allege Yzaguirre ever learned she called Mr. Montoya or of what she said to him. There is no retaliation absent knowledge of the speech.

### C. <u>Alvarado's Association Claim</u>

Alvarado alleges that associating with Cantu and Weaver before May 2002 resulted in her transfer in February 2003 and her constructive termination in March 2003. Suppl., ¶¶ 9, 13; Dkt # 41. The only facts alleged are that she worked with Cantu and Weaver, went to lunch with them,

and they discussed Yzaguirre's alleged unlawful actions in processing title registrations. Suppl. ¶ 9; Dkt # 41.

First, the Fifth Circuit has rejected similar allegations as sufficient to prove an expressive "association" for First Amendment purposes. *Finch v. Ft. Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003); *Henrise v. Horvath*, 174 F. Supp.2d 493, 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part*, 45 Fed. Appx. 323 (5th Cir. 2002)(unpublished; copy attached as exh. 1 to Dkt #16). Strictly speaking, the First Amendment does not protect a "right of association". *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). Rather, the First Amendment embraces the right to associate only in two circumstances: (1) the choice to enter into certain intimate human relationships ("familial association"), or (2) an association for the purpose of engaging in activities protected by the First Amendment, as such speech, exercise of religion, etc. ("expressive association'). *Stanglin*, 490 U.S. at 24; *Wallace v. Texas Tech Unv.*, 80 F.3d 1042, 1051 (5th Cir. 1996). The right of "expressive association" extends to groups organized to engage in speech. *Stanglin*, 490 U.S. at 25. There is no recognized right of "social association" protected under the constitution. *Stanglin*, 490 U.S. at 25; *Wallace*, 80 F.3d at 1051; *Ibarra v. Houston I.S.D.*, 84 F.Supp.2d 825, 837 (S.D. Tex. 1999).

In *Finch*, a school superintendent claimed she was forced to resign over an unsuccessful program to create special courses for gifted children. 333 F.3d at 559. Apparently Finch met with members of the school board and students' parents in the course of developing and advocating her proposal. The Fifth Circuit concluded that restraining her interactions with the students' parents and the school board members did not implicate rights of expressive association. *Id.* at 564.

In *Henrise*, a police officer claimed he was harassed and demoted as a result of his association with his partner who was terminated. 174 F.Supp. 493, 495. Henrise and his supervisor

Pothen came to the conclusion that the Police Chief Horvath was involved in significant public corruption; both made these allegations to superiors and Pothen was terminated. *Id.* at 496. Pothen then sued and Henrise was expected to be a witness. *Id.* During this time, Henrise claimed he developed a strong association with Pothen, both as a fellow officer and a close personal "police friend." *Id.* Henrise claimed that he was then demoted and harassed as a result of his close personal relationship with Pothen. *Id.* at 497. The District Court granted a Rule 12(b)(6) motion on Henrise's association claim. *Id.* at 500. It concluded that his personal and professional affinity with Pothen did not give rise to an expressive association right. *Id.* at 500.

On that point, the Fifth Circuit affirmed. See Exh. 1 (pp. 13-15) to Dkt # 16. The unpublished opinion concluded there was no indication the complaint alleged expressive association rights. *Id.* at p. 14.

Second, Alvarado does not allege Defendants knew of this "association." There can be no retaliation unless Yzaguirre knew of the association, i.e., knew it existed and was aware that it was an "expressive" association.

**D.  Alvarado Fails to Allege Facts Showing an Adverse Personnel Action**

Although some employment actions may have the effect of chilling speech or protective liberties, they are not actionable. *Pierce v. Texas Dept. of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994), *cert. denied*, 514 U.S. 1107 (1995). "Adverse employment actions" are discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Pierce*, 37 F.3d at 1149; *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000). The Fifth Circuit has declined to expand the list of actionable actions, even if such actions might chill the exercise of speech. *Breaux*, 205 F.3d at 157. Alvarado alleges only two types of adverse actions:

a transfer and constructive termination.

    1.    <u>Transfer Was Not an Adverse Personnel Action</u>

To be an "adverse action," a transfer must be the equivalent of a demotion, reprimand, failure to promote, etc. *Breaux,* 205 F.3d at 157. To suffice, Alvarado must show that the transfer was sufficiently punitive, i.e., objectively viewed it was punitive or a demotion. *Breaux,* 205 F.3d at 157; *Pierce,* 37 F.3d at 1150. To be a constitutional injury, the transfer must result in harm that is serious, objective, and tangible. *Serna v. City of San Antonio,* 244 F.3d 479, 483, (5th Cir. 2001), *cert. denied,* 534 U.S. 951 (2001). Her Reply, ¶ 62, is vague when it should be specific. Alvarado does not claim that her transfer involved a pay change; she does not claim it was a demotion of any kind.

Alvarado first alleges her transfer to San Benito was "adverse" because it was further away from home and her part time job. Suppl. #13; Dkt # 41. However, a transfer is an "adverse employment action" only if it is equivalent to one of the recognized injuries, e.g., a demotion, a refusal to promote, a reprimand, etc. *Serna,* 244 F.3d at 479; *Breaux,* 205 F.3d at 157. Plaintiff's subjective preferences or perceptions are insufficient to transmute a transfer into a constitutional injury. *Serna,* 244 F.3d at 483. Consequently, Alvarado's mere inconvenience to drive from Brownsville to San Benito does not make her transfer a constitutional injury.

Her next reason is that a transfer of "that nature" was known by employees as a means by which Defendants terminated employees. Suppl. ¶13; Dkt #41. This is immaterial; Alvarado was not terminated- she admits she quit. If "known by employees as a means by which Defendants terminated employees" means criticism or the threat of termination, neither is sufficient. Ostracism, criticism or the threat of termination will not transmute a transfer into an adverse employment action. *Breaux,* 205 F.3d at 158-160; *Roe,* 205 F.3d at 157.

Her last reason is that this transfer was a "demotion" because her supervisory privileges were taken away. Suppl. ¶13; Dkt # 41. This is insufficient to show the change was a demotion. There is no allegation of loss in pay, seniority, etc. She does not allege that her new position lacked supervisory responsibilities. She alleges she lost the use of the computer and the ability to make long distance calls. Suppl. ¶13; Dkt # 41. However, these were adjuncts to her former position; she does not allege she needed them for her new job or that other employees had this access as a "perk" of general employment.

2.  Alvarado Does Not Allege Facts Sufficient to Prove "Constructive Termination"

Alvarado claims "constructive discharge." Am. Comp.¶ 63; Dkt #8. A voluntary resignation is not an "adverse employment action." *Upshaw v. Alvin I.S.D.*, 31 F. Supp.2d 553, 557 (S.D. Tex. 1999). To establish constructive discharge, Plaintiff must prove that Defendant Yzaguirre deliberately made her working conditions so difficult and unpleasant that a reasonable person would have felt compelled to quit. *Breaux*, 205 F.3d at 160; *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998), *cert. denied*, 526 U.S. 1065 (1999); *Upshaw*, 31 F. Supp.2d at 557. This requires a greater severity and pervasiveness of harassment than that required to prove a hostile work environment. *Benningfield*, 157 F.3d at 378.

Here, the alleged actions failed to meet that standard. First, Plaintiff alleges only that she was given the cold shoulder, was told the department would not pay for a course, and was to move her plants from an office she had left three weeks earlier. Reply, ¶¶ 64-65; Dkt # 23. This hardly amounts to a campaign of harassment and humiliation. Second, the allegations do not attribute this to Defendant, but rather to co-workers. Alvarado must allege facts showing Defendant Yzaguirre's personal involvement. *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

E.  **Weaver Fails To Allege Facts Showing Speech on a Matter of Public Concern That Cause Her Termination**

The allegations made by Plaintiff Weaver regarding a statement made to the sheriff's department, Exh. 1 to the Supplemental Reply (dkt # 41), do not save her claim. First, she pleads she was put on "forced vacation" in May 2002 and then officially terminated in September 2002. Dkt # 23, ¶ 51. Exh. 1 is dated August 2, 2002. Under Weaver's allegation, she gave her statement after she was effectively forced out; Exh. 1 could not be the motive for actions that had already occurred.

Second, Exh. 1 is not a speech on a matter of public concern. It was obviously not intended to be disseminated. At best it says that auto dealers brought title papers into the main office for processing and in each case they were delivered to the proper person in the office to process title transfers. Dealers are required to submit the title transfer documents. TEX. TRANS. CODE §501.0234. No part of the statement accuses Yzaguirre of a crime or serious official misconduct. At best it simply asserts that title transfer applications were sometimes brought by dealers to the main office. The Court has already concluded that similar speech by Munoz was not on a matter of "public concern" and was too nebulous to be protected speech. Order, pp. 12-13; Dkt # 48.

WHEREFORE, PREMISES CONSIDERED, Defendant County prays that upon submission of this motion, the Court dismiss the complaints or claims of Plaintiffs Alvarado and/or Weaver, for such other and further relief to which it may show itself entitled.

Respectfully submitted,

**WILLETTE & GUERRA, L.L.P.**
International Boulevard, Suite 460
3505 Boca Chica Boulevard
Brownsville, TX 78520
(956) 541-1846
(956) 541-1893 (Fax)

By _____
**Charles Willette**
State Bar No. 21509700
Federal ID 1937
**Dino Esparza**
State Bar No. 00795337
Federal ID 22703

Attorneys for Defendant CAMERON COUNTY

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the ___26th___ day of April, 2004.

Mr. Craig Vittitoe
Mr. Roger Hughes
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas 78551-1429

Mr. David Lee McGee
LAW OFFICES OF DAVID LEE McGEE, P.C.
201 S. 15th, Ste. 204, McAllen (78501)
701 Park Avenue
Corpus Christi, TX 78401

Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

                                                      _____
                                                         Roman "Dino" Esparza