

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
JUN 0 7 2004
Michael N. Milby
Clerk of Court

| | |
|---|---|
| VICENTA CANTU, et al. | : |
| Plaintiffs | : |
| vs. | : CIVIL ACTION NO. B-03-096 |
| CAMERON COUNTY, et al. | : |
| Defendants | : |

**DEFENDANT TONY YZAGUIRRE'S REPLY IN SUPPORT
OF HIS SECOND MOTION TO DISMISS NEW CLAIMS OF
PLAINTIFFS ALVARADO AND WEAVER
UNDER RULE 12(b)(6) and UNDER QUALIFIED IMMUNITY**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant Tony Yzaguirre, Jr.**, and files this his Reply in Support of His Motion to Dismiss New Claims of Plaintiffs Alvarado and Weaver Under Rule 12(b)(6) and Under Qualified Immunity, and would respectfully show the Court as follows:

### I. Nature of the Cases Status of Proceeding

The Court's March 31, 2004, Order [Dkt #48] did not rule on Plaintiff Diamantina Alvarado and Ruth Weaver's new claims in their Supplemental Reply; rather the Court permitted Yzaguirre and Cameron County ("County") to file renewed motions to dismiss aimed at only those new claims. Dkt #48, pp. 29-30. Yzaguirre and the County filed second motions to dismiss. Dkts # 52, 53. Alvarado and Weaver filed a Response. Dkt # 54.

Pursuant to Judge Tagle's Civil Procedures, Rule 5.C, Yzaguirre files this reply in support of his motion.

## II. Argument and Authorities

A. <u>Court Should Deny Plaintiffs' Request for Another Rule 7 Reply</u>

Plaintiffs' Alvarado and Weaver ask to file yet a third Rule 7 Reply. Response, p. 10; dkt # 54. The Court permitted them one Rule 7 Reply (dkt # 23), and then gave them leave to file their "Supplemental" Rule 7 Reply (dkt #41) as an amendment under FRCP 15. March 2004 Order, p. 30 n.8; dkt # 48.

The Court should not permit a third Rule 7 pleading. The district court at some point may assume that Plaintiffs have had a fair opportunity to plead their best facts. *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir. 1985). The court may consider that Plaintiffs have amended their complaint and filed two Rule 7 replies. *Compare, Jacquez v. Procunier,* 801 F.2d 789, 792-93 (5th Cir. 1986). Moreover, granting leave for another Rule 7 Reply will only cause delay. The March 2004 Order stated the Court wished to make a prompt ruling on the renewed motions. Dkt # 48, p. 30.

B. <u>Alvarado Does Not Plead Facts Showing Her Luncheons Were An Expressive Association Protected by the First Amendment</u>

Alvarado's Response offers no explanation how her luncheons with Cantu and Weaver became an expressive association entitled to First Amendment protection. Her Response, pp. 3-5, provides generic citations to cases about First Amendment policies and then repeats her conclusory allegations. What is missing is any analysis how these

conclusions satisfy Alvarado's burden.

Alvarado nowhere discusses or distinguishes recent cases holding that similar allegations fall far short of an expressive "association" for First Amendment purposes. *Henrise v. Horvath*, 174 F. Supp.2d 493, 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part*, 45 Fed. Appx. 323 (5th Cir. 2002)(unpublished; copy attached as exh. 1 to dkt #16); *Finch v. Ft. Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003). Her failure to even mention these cases proves she has no argument.

The Court may consider that Alvarado tries to resurrect her claim that talking to her sister at Dillard's was a protected First Amendment association. Response, ¶ 14, p. 6; dkt #54. The Court flatly rejected this argument in its March 2004 Order and dismissed that claim. Dkt # 48, pp. 19-20. Her blatant attempt to reassert a recently dismissed claim demonstrates that her new "association" claim lacks merit.

C.  Alvarado Fails To Allege Facts Showing She Made Statements On A Matter of "Public Concern"

Alvarado must be specific about what she said, when, to whom, and the context. *Connick v. Myers,* 461 U.S. 138, 147 (1983); *Foley v. Univ. of Houston System,* 324 F.3d 310, 318 (5th Cir. 2003). She alleged only two speech acts: (1) complaining to her supervisor that a tax was not "being properly administered," and (2) leaving a phone "message attempting to make a complaint" that Yzaguirre was denying her training and was violating "Texas laws" in the way he ran his office.

Alvarado does not say what she said in either instance. She simply repeats her allegations and, without argument, states a bald conclusion that they are sufficient. The Court

found similar "nebulous" statements by Munoz and Weaver insufficient. March 2004 Order, p. 12-13, 14-15; dkt # 48. The same reasoning applies to these allegations.

D.　Weaver Fails To Allege Facts Showing Her Statement To Sheriff Was Protected Speech

Yzaguirre argues that Weaver's alleged statement to the Cameron County Sheriff's Department was not speech on a matter of public concern. Second Motion to Dismiss, p. 13; dkt # 53. Rather that explain how the statement's content involved a matter of public concern, Weaver apparently argues that giving a statement to law enforcement agents is *per se* protected speech. Response, ¶ 19, p. 8 (dkt # 54) citing *Neubauer v. City of McAllen,* 766 F. 2d 1567 (5th Cir. 1985). Carefully read, *Neubauer* did not say or hold that statements to law enforcement are *per se* protected speech.

In *Neubauer,* McAllen Police Officer Davis was suspected of sexually assaulting a female detainee in the McAllen jail. 766 F.2d at 1569. A grand jury began investigating the incident. *Id.* Officer Neubauer gave the grand jury an affidavit that he and Officer Saldana were on duty that night, Officer Saldana went to investigate a disturbance at the female's cell, and the later observed Saldana and Davis discussing that Davis should leave before he got in trouble. *Id.* at 1570. Neubauer then testified live before the grand jury. *Id.* at 1569. The McAllen PD then began an internal investigation; Neubauer gave his superior his affidavit and said he it contained his testimony before the grand jury. *Id.* at 1570. It turned out that Saldana was on vacation that day and could not have been present; Neubauer refused to concede any error. *Id.* Neubauer was then terminated for making a false statement to a superior officer. *Id.* at 1571. Neubauer sued McAllen for speech retaliation based on

(1) his participation in public debate over adopting a civil service plan for McAllen police, and (2) providing a statement to the grand jury. *Id.* at 1571.

The issue on appeal was proving harmful error in a global jury charge if one theory lacked evidence. The court submitted globally in one question retaliation for (1) support for the civil service issue and (2) making written or oral statements that he in good faith believed true. *Id.* at 1572. McAllen argued there was no evidence to support the first claim. The Fifth Circuit noted that McAllen did not argue that the second action was not protected speech and McAllen did not object to its inclusion in the charge. *Id.* at 1572 n.5. It noted in a footnote that furnishing truthful information to the grand jury on matters it was properly investigation, would absent unusual circumstances, be a matter of public concern. *Id.* The holding of the case was that lack of evidence to support the first activity was reversible error. *Id.* at 1576-77. Consequently, the observation in the footnote was dicta.

*Neubauer* cannot be stretched to cover this case. Weaver did not speak to the grand jury. She does not allege that the Cameron County Sheriff's Department was investigating anything, much less a suspected offense or a matter of public concern. If simply making a statement to a law enforcement agent were *per se* a matter of public concern, much of the discussion in cases about reporting suspected official misconduct would be superfluous. The Fifth Circuit would have simply stated that making any statement to law enforcement officers was automatically of "public concern," rather than discuss what was the nature and content of the statement, whether it was personal or official, etc. Instead, the Fifth Circuit employs this analysis in all cases and sometimes finds that statements to law enforcement officers do

not touch on matters of public concern. *See e.g., Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir. 1993); *Teague v. City of Flower Mound,* 179 F.3d 377, 382 (5th Cir. 1999).

Because Weaver provides no explanation of how her statement otherwise constituted a matter of "public concern," her speech claim on this point should fail.

WHEREFORE, PREMISES CONSIDERED, Defendant Yzaguirre prays that the Court dismiss the complaints or claims of Plaintiffs Alvarado and/or Weaver, for such other and further relief to which he may show himself entitled.

Respectfully submitted,

By _____
**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950
**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile: (956) 428-2954

Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

Case 1:03-cv-00096   Document 55   Filed in TXSD on 06/07/2004   Page 7 of 7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the 7th day of June 2004.

Ms. Gay E. Gilson  
**LAW OFFICE OF GAY E. GILSON**  
719 South Shoreline, Suite 301A  
Corpus Christi, TX 78401

*CM/RRR 7003 2260 0000 0440 3401*

Mr. David Lee McGee  
**LAW OFFICES OF DAVID LEE McGEE, P.C.**  
701 Park Avenue  
Corpus Christi, TX 78401

*Via Ordinary Mail*

Mr. Roman "Dino" Esparza  
**WILLETTE & GUERRA, L.L.P.**  
3505 Boca Chica Blvd., Suite 460  
Brownsville, TX 78520

*Via Ordinary Mail*

_____  
Roger W. Hughes

[10-fmg] C:\FILES\N\Y80\Motions\ReplySuppMtn2Dismiss        Page 7 of 7