

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 0 7 2004

Michael N. Milby
Clerk of Court

VICENTA CANTU, et al.  :
:
    Plaintiffs  :
:
vs.  :      CIVIL ACTION NO. B-03-096
:
CAMERON COUNTY, et al.  :
:
    Defendants

## DEFENDANT COUNTY'S REPLY IN SUPPORT OF ITS SECOND MOTION TO DISMISS NEW CLAIMS OF PLAINTIFFS ALVARADO AND WEAVER UNDER RULE 12(b)(6)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendant Cameron County**, and files this Reply in Support of Its Motion to Dismiss New Claims of Plaintiffs Alvarado and Weaver Under Rule 12(b)(6) and would respectfully show the Court as follows:

### I. Nature of the Cases Status of Proceeding

The Court's March 31, 2004, Order [Dkt #48] did not rule on Plaintiff Diamantina Alvarado and Ruth Weaver's new claims in their Supplemental Reply; rather the Court permitted Yzaguirre and Cameron County ("County") to file renewed motions to dismiss aimed at only those new claims. Dkt #48, pp. 29-30. Yzaguirre and the County filed second motions to dismiss. Dkts # 52, 53. Alvarado and Weaver filed a Response. Dkt # 54.

Pursuant to Judge Tagle's Civil Procedures, Rule 5.C, the County files this reply in support of his motion.

## II.  Argument and Authorities

A.   Court Should Deny Plaintiffs' Request for Another Rule 7 Reply

Plaintiffs' Alvarado and Weaver ask to file yet a third Rule 7 Reply. Response, p. 10; dkt # 54. The Court permitted them one Rule 7 Reply (dkt # 23), and then gave them leave to file their "Supplemental" Rule 7 Reply (dkt #41) as an amendment under FRCP 15. March 2004 Order, p. 30 n.8; dkt # 48.

The Court should not permit a third Rule 7 pleading. The district court at some point may assume that Plaintiffs have had a fair opportunity to plead their best facts. *Morrison v. City of Baton Rouge,* 761 F.2d 242, 246 (5th Cir. 1985). The court may consider that Plaintiffs have amended their complaint and filed two Rule 7 replies. *Compare, Jacquez v. Procunier,* 801 F.2d 789, 792-93 (5th Cir. 1986). Moreover, granting leave for another Rule 7 Reply will only cause delay. The March 2004 Order stated the Court wished to make a prompt ruling on the renewed motions. Dkt # 48, p. 30.

B.   Alvarado  Does  Not  Plead  Facts  Showing  Her  Lunches  Were  An  Expressive
     Association Protected by the First Amendment

Alvarado's Response offers no explanation how her luncheons with Cantu and Weaver became an expressive association entitled to First Amendment protection. Her Response, pp. 3-5, provides generic citations to cases about First Amendment policies and then repeats her conclusory allegations. What is missing is any analysis how these conclusions satisfy Alvarado's burden.

Alvarado nowhere discusses or distinguishes recent cases holding that similar allegations fall far short of an expressive "association" for First Amendment purposes. *Henrise v. Horvath*, 174 F. Supp.2d 493, 500-501 (N.D. Tex. 2001), *aff'd in part, rev'd in part*, 45 Fed. Appx. 323 (5th Cir. 2002)(unpublished; copy attached as exh. 1 to dkt #16); *Finch v. Ft. Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003). Her failure to even mention these cases proves she has no argument.

The Court may consider that Alvarado tries to resurrect her claim that talking to her sister at Dillards was a protected First Amendment association. Response, ¶ 14, p. 6; dkt #54. The Court flatly rejected this argument in its March 2004 Order and dismissed that claim. Dkt # 48, pp. 19-20. Her blatant attempt to reassert a recently dismissed claim demonstrates that her new "association" claim lacks merit.

C.    Alvarado Fails to Allege Facts Showing She Made Statements on A Matter of "Public Concern"

Alvarado must be specific about what she said, when, to whom, and the context. *Connick v. Myers*, 461 U.S. 138, 147 (1983); *Foley v. Univ. of Houston System*, 324 F.3d 310, 318 (5th Cir. 2003). She alleged only two speech acts: (1) complaining to her supervisor that a tax was not "being properly administered," and (2) leaving a phone "message attempting to make a complaint" that Yzaguirre was denying her training and was violating "Texas laws" in the way he ran his office.

Alavarado does not say what she said in either instance. She simply repeats her allegations and, without argument, states a bald conclusion that they are sufficient. The Court found similar "nebulous" statements by Munoz and Weaver insufficient. March 2004 Order,

p. 12-13, 14-15; dkt # 48.  The same reasoning applies to these allegations.

D.   Weaver Fails to Allege Facts Showing Her Statement to Sheriff Was Protected
     Speech

The County contends that Weaver's alleged statement to the Cameron County Sheriff's Department was not speech on a matter of public concern.  Rather than explain how the statement's content involved a matter of public concern, Weaver apparently argues that giving a statement to law enforcement agents is *per se* protected speech.  Response, ¶ 19, p. 8 (dkt # 54) citing *Neubauer v. City of McAllen,* 766 F. 2d 1567 (5th Cir. 1985).  Carefully read, *Neubauer* did not say or hold that statements to law enforcement are *per se* protected speech.

In *Neubauer,* McAllen Police Officer Davis was suspected of sexually assaulting a female detainee in the McAllen jail.  766 F.2d at 1569.  A grand jury began investigating the incident.  *Id.*  Officer Neubauer gave the grand jury an affidavit that he and Officer Saldana were on duty that night, Officer Saldana went to investigate a disturbance at the female's cell, and the later observed Saldana and Davis discussing that Davis should leave before he got in trouble.  *Id.* at 1570.  Neubauer then testified live before the grand jury.  *Id.* at 1569.  The McAllen PD then began an internal investigation; Neubauer gave his superior his affidavit and said he it contained his testimony before the grand jury.  *Id.* at 1570.  It turned out that Saldana was on vacation that day and could not have been present; Neubauer refused to concede any error.  *Id.*  Neubauer was then terminated for making a false statement to a superior officer.  *Id.* at 1571.  Neubauer sued McAllen for speech retaliation based on (1) his participation in public debate over adopting a civil service plan for McAllen police, and (2)

providing a statement to the grand jury. *Id.* at 1571.

The issue on appeal was proving harmful error in a global jury charge if one theory lacked evidence. The court submitted globally in one question retaliation for (1) support for the civil service issue and (2) making written or oral statements that he in good faith believed true. *Id.* at 1572. McAllen argued there was no evidence to support the first claim. The Fifth Circuit noted that McAllen did not argue that the second action was not protected speech and McAllen did not object to its inclusion in the charge. *Id.* at 1572 n.5. It noted in a footnote that furnishing truthful information to the grand jury on matters it was properly investigating, would absent unusual circumstances, be a matter of public concern. *Id.* The holding of the case was that lack of evidence to support the first activity was reversible error. *Id.* at 1576-77. Consequently, the observation in the footnote was dicta.

*Neubauer* cannot be stretched to cover this case. Weaver did not speak to the grand jury. She does not allege that the Cameron County Sheriff's Department was investigating anything, much less a suspected offense or a matter of public concern. If simply making a statement to a law enforcement agent were *per se* a matter of public concern, much of the discussion in cases about reporting suspected official misconduct would have superfluous. The Fifth Circuit would have simply stated that making any statement to law enforcement officers was automatically of "public concern," rather than discuss what was the nature and content of the statement, whether it was personal or official, etc. Instead, the Fifth Circuit employs this analysis in all case and sometimes finds that statements to law enforcement officers are not on matters of public concern. *See e.g., Gillum v. City of Kerrville,* 3 F.3d

117, 121 (5th Cir. 1993); *Teague v. City of Flower Mound,* 179 F.3d 377, 382 (5th Cir. 1999).

Because Weaver provides no explanation of how her statement otherwise constituted a matter of "public concern," her speech claim on this point should fail.

WHEREFORE, PREMISES CONSIDERED, Defendant County prays that the Court dismiss the complaints or claims of Plaintiffs Alvarado and/or Weaver, for such other and further relief to which it may show itself entitled.

Respectfully submitted,

**WILLETTE & GUERRA, L.L.P.**
1534 E. 6th Street, Suite 200
Brownsville, Texas 78520
(956) 541-1846
(956) 541-1893 (Fax)

By _____

**Charles Willette**
State Bar No. 21509700
Federal ID 1937

**Dino Esparza**
State Bar No. 00795337
Federal ID 22703

Attorneys for Defendant CAMERON COUNTY

-6-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the ___7th___ day of June, 2004.

**Via CMRRR 7002 3150 0001 8820 2526**
Gay E. Gilson
LAW OFFICE OF GAY E. GILSON
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401
Attorney in charge for Plaintiffs

**Via CMRRR 7002 3150 0001 8820 2533**
Mr. David Lee McGee
LAW OFFICES OF DAVID LEE McGEE, P.C.
701 Park Avenue
Corpus Christi, TX 78401
Co-Counsel for Plaintiffs

**Via CMRRR 7002 3150 0001 8820 2540**
Mr. Craig Vittitoe
Mr. Roger Hughes
ADAMS & GRAHAM, L.L.P.
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Attorney for Co-Defendant Tony Yzaguirre

Roman "Dino" Esparza