United States District Court
Southern District of Texas
ENTERED

MAR 3 1 2005

Michael N. Milby, Clerk of Court
By Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| VICENTA CANTU, ET AL. § | |
|     Plaintiffs § | |
| § | |
| v. § | C.A. No. B-03-96 |
| § | |
| CAMERON COUNTY AND TONY § | |
| YZAGUIRRE, Tax Assessor-Collector § | |
| of Cameron County and Director, § | |
| Cameron County Automobile Crimes § | |
| Enforcement Task Force, in his § | |
| individual capacity § | |
|     Defendants. § | |

## ORDER

BE IT REMEMBERED that on March 31, 2005, the Court **DENIED** Defendants' Motions to Dismiss [Dkt. Nos. 52 & 52].

### I. Prodedural History

After granting in part and denying in part Defendants' Motions to Dismiss [Dkt. No. 48], the Court allowed the parties to file additional motions to dismiss in light of Plaintiffs' then recent supplement to their 7(a) Reply filing [Dkt. No. 41]. The Court instructed the Defendants that their additional motions to dismiss should only address the new claims raised by Plaintiffs Alvarado and Weaver. Defendants complied with the Court's instruction and have limited the content of their motions to those Plaintiffs mentioned.

For the sake of efficiency, the Court incorporates by reference all recitations of the factual background, law, and analyses pertaining to Plaintiffs' First Amendment Retaliation claims laid out in the Court's previous 31-page opinion [Dkt. No. 48].

### II. Plaintiff Alvarado's Additional Speech Retaliation Claims Raised in the Supplemental Rule 7(a) Reply

Plaintiff Diamantina Alvarado is the former Supervisor of the Property Tax Collection Division for the Office of the Tax Assessor-Collector for Cameron County, Texas. Plaintiff alleges that on or about February 28, 2003, she was involuntarily

transferred and demoted from her position as Supervisor of the Tax Division at the central office of the Tax Assessor-Collector to the position of auto clerk in the San Benito Branch Tax Office.  Plaintiff Alvarado alleges her transfer and demotion were the direct result of her protected speech and association with Plaintiffs Cantu, Weaver, and Munoz.  Plaintiff argues the involuntary transfer was a demotion because her duties substantially changed, she no longer held a supervisory position, her computer privileges were revoked, she was no longer advised of office events, and she was not allowed to make long distance calls on the telephone.  See Pl's Supplement 7(a) Reply, ¶ 13 [Dkt. No. 41].

### A. Alleged Statements to Mr. Garcia Concerning the Inventory Tax

"During the pendency of the Special Inventory Tax," Alvarado spoke to "Jesse Garcia, Jr., Chief Deputy-Administration, that the tax was not being properly administered." *Id.* ¶ 14.  She alleges this speech started in 1998 and continued on a monthly basis until Plaintiff was involuntarily transferred to the auto clerk position in San Benito.  She further alleges this speech to Mr. Garcia is protected and that adverse actions taken against her were due to this speech.

Defendants argue Alvarado's complaints to Mr. Garcia are "spurious" because (1) Alvarado does not allege Yzaguirre ever learned of the alleged statements, (2) Alvarado does not allege facts showing this was on a matter of public concern, and (3) Alvarado's allegations concerning the content of her speech are vague and conclusory.  Defendants argue this Court dismissed similarly vague statements allegedly made by Munoz and Weaver.

To prove a First Amendment free speech retaliation claim under section 1983, a plaintiff must show that (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on matters of public concern outweighed the government employer's interest in promoting efficiency, and (4) his speech motivated the adverse employment action.  *See Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).

Unlike the statements Defendants reference, which this Court held in its earlier order were vague and based on rumor, the Court cannot so easily dismiss Alvarado's

statement at this early stage of the litigation. Alvarado's statement that the "tax was not being properly administered" could very well constitute a matter of public concern. Additionally, Alvarado alleges her involuntary transfer and demotion were in retaliation for her statements to Garcia, which implicitly means she is alleging Yzaguirre at some point found out about the statements. Taking these allegations as true, as the Court must on a motion to dismiss, the Court finds Alvarado has generally, but sufficiently, alleged a First Amendment free speech retaliation claim.

### B. The March 2003 Phone Call

Alvarado alleges she "called the Executive Director, David E. Montoya, of the Board of Tax Professional Examiners located in Austin, Texas wherein she left a message attempting to make a complaint against Defendant Yzaguirre stating that he was violating Texas laws in the manner in which he was running the office and that she was being denied required training so that her license may be updated." Pls' Supplemental 7(a) Reply, ¶ 13. According to Alvarado, Mr. Montoya returned her call, but the office staff did not inform her because they had been instructed to not put the call through.

Defendants argue Alvarado only alleges she left a message *attempting* to make a complaint. Additionally, Defendants argue Alvarado does not expressly state what was in her message and she fails to show how the statement is on a matter of public concern. Defendants infer from Plaintiffs' Supplemental 7(a) reply that she "probably. . . sought to complain (if an "attempt to complaint amounts to speech) about Yzaguirre's alleged failure to fund courses necessary for her work." Def. Cameron County's Second Motion to Dismiss, at p. 6.

The Court is not concerned with any ineffectual complaint or message that simply requested that Mr. Montoya return her call. But, the Court is not convinced that Alvarado only left a message that contained no speech on a matter of public concern. Plaintiff's pleading is unclear as to whether her message stated "that he was violating Texas laws in the manner in which he was running the office and that she was being denied required training so that her license may be updated," or whether this would have been the nature of her complaint had she actually spoken with Mr. Montoya. If the

former is the case, it is possible this message could constitute a matter of public concern. Again, the Court must take these allegations as true on a motion to dismiss. This also means resolving any ambiguities in Plaintiff's favor. The Court finds Alvarado has again generally, but sufficiently, alleged a First Amendment free speech retaliation claim.

### III. Plaintiff Alvarado's Association Claims Raised in the Supplemental Rule 7(a) Reply

Alvarado alleges,

> Plaintiffs Cantu, Munoz, Weaver, and Alvarado closely associate with each other in the performance of their duties for Defendant. Plaintiff Cantu, Plaintiff Weaver and Plaintiff Alvarado went to lunch together every day and worked closely together in the office. From 2001 to approximately May 2002, Plaintiff Cantu, Plaintiff Weaver, and Plaintiff Alvarado discussed their concerns about Defendant Yzaguirre's unlawful actions in processing vehicle title registrations. The adverse actions taken against Plaintiffs Cantu, Munoz, Alvarado and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in processing of vehicle title registrations.

Pls' Supplemental 7(a) Reply, ¶ 9.

Defendants argue Alvarado only alleges that she worked with Cantu and Weaver, she went to lunch with them, and they discussed Yzaguirre's alleged unlawful actions. These actions, Defendants assert are not entitled to First Amendment "right of association" claims. More specifically, Defendants argue two cases support their contention that Alvarado's associational rights are not protected under the circumstances of this case. They cite *Finch v. Ft. Bend I.S.D.* in which a school superintendent claimed she was reassigned to a position where she was isolated and instructed not to return to the school at which she previously worked in retaliation for exercising her right to freedom of association. 333 F.3d 555, 564 (5th Cir. 1999). Additionally the superintendent claimed the school violated her association rights by prohibiting her from meeting with parents and school board members. *Id.* The Fifth Circuit, without detailed analysis, ruled the superintendent had not provided adequate case law explaining how restraining these types of interactions implicated expressive association rights. *Id.* Defendants also cite an unpublished decision in which a police

officer claimed he was harassed and demoted as a result of, among other First Amendment claims, his association with his partner who was terminated. *See Henrise v. Horvarth*, 174 F.Supp.2d 493, 500-501 (N.D. Tex. 2001), *aff'd in relevant part*, 45 Fed. Appx. 323 (5th Cir. 2002). Henrise and his supervisor determined the police chief was involved in various forms of wrongdoing, some of which implicated criminal wrongdoing. Henrise was eventually demoted and harassed, and he alleged these actions were taken in part because of his association with a "police friend." *Id.* at 499-500. The district court determined that Henrise's complaint spoke

> exclusively in terms of a "strong association with Pothen, both as a fellow officer and close personal police friend". . . .Nowhere in Plaintiff's complaint d[id] he allege that he joined with or associated himself with Pothen for the express purpose of speaking out on mismanagement, corruption or illegal activity that may have been occurring in the DeSoto Police Department. . . . Henrise's personal affinity with Pothen bears no relationship to the expression of beliefs protected the First Amendment.

*Id.* at 500.

As the Court determined in its previous order, Plaintiffs did not plead facts alleging their associational right to friendship or right to socialize is protected under the First Amendment. Rather, Cantu, Munoz, Weaver, and now Alvarado allege that even in spite of their close association as co-workers and the existence of their friendships, they gathered during certain lunches for the specific or express purpose of discussing Yzaguirre's alleged wrong doings. Defendants argue Plaintiffs' associational claim hinges on their right to socialize or gather for lunch. But, *Roberts v. United States Jaycees* requires that Plaintiffs gather for the express purpose –not the *exclusive* purpose–of engaging in protected activities, such as speech, assembly, petition for redress of grievances, and the exercise of religion. 468 U.S. 609, 617-18 (1984). Although the Court is certainly not finding Plaintiffs' claims will ultimately survive motions for summary judgment, Plaintiffs' factual allegations differ from the cases Defendants cite, and thus cannot be dismissed at this stage.

## IV. Plaintiff Alvarado's Claims Concerning an Adverse Personnel Action

### A. Defendants' Argument that Transfer is Not an Adverse Employment Action

Defendants argue Alvarado alleges only two types of adverse actions: a transfer and constructive termination. *See* Def. Cameron County's Second Motion to Dismiss, at pp. 8-9. This categorization is simply not accurate. In Plaintiff's Rule 7(a) Reply she alleges her involuntary transfer was a demotion because her duties substantially changed, she no longer held a supervisory position, her computer privileges were revoked, she was no longer advised of office events, and she was not allowed to make long distance calls on the telephone. *See* Pl's Supplement 7(a) Reply, ¶ 13 [Dkt. No. 41]. Under the case law Defendants cite, if these allegations are true, these actions would constitute an adverse personnel action. *See Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Transfers can constitute adverse employment actions if they are sufficiently punitive, . . ., or if the new job is markedly less prestigious and less interesting than the old one.") (citations omitted). Plaintiff alleges she was stripped of her supervisory duties and relegated to a lower position, which could constitute a demotion. *See also Serna v. City of San Antonio*, 244 F.3d 479, 483 (5th Cir. 2001) ("Personnel actions that are commonly considered serious enough to inflict constitutional injury are discharges, demotions, refusals to hire, refusals to promote, and reprimands.") (citations omitted); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) ("It is now well established that, for the purpose of a § 1983 retaliation claim, an adverse employment action can include a transfer, because it may serve as a demotion."). Defendants present the Court with no authority for their contention that a personnel action can only be considered a demotion if it is accompanied by a loss in pay or seniority. *See Sharp*, 164 F.3d at 933 ("To be equivalent to demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement.") (citations omitted). The Court, therefore, will not dismiss Alvarado's claim for failure to allege an adverse employment decision.

### B. Defendants' Argument that Alvarado Does Not Allege Sufficient Facts to Prove "Constructive Termination"

Defendants argue Alvarado has failed to state a claim for "constructive discharge." *See* Def. Cameron County's Motion to Dismiss, at p. 10 (citing Pl's Am. Cmplt. ¶ 63, Dkt. No. 8). The Court has already determined that Plaintiff Alvarado has adequately alleged an adverse employment action in the form of a transfer that served as a demotion. Additionally, Plaintiff also alleged she was actually terminated and suffered other adverse employment actions in retaliation for her protected speech. *See* Pls' Second Am. Cmplt. ¶ 67, Dkt. No. 58. Thus, to the extent Plaintiff is alleging the transfer was a constructive demotion, the Court will not dismiss this claim because Alvarado has sufficiently pled facts that if proven could lead a jury to conclude she suffered an actual demotion. To the extent Plaintiff is alleging she was constructively discharged, the Court can find no factual allegations that support this in light of the fact that she alleges actual termination.

### V. Plaintiff Weaver's Speech on a Matter of Public Concern

Plaintiff Weaver was employed as the Executive Secretary for the Tax Collector - Assessor Tony Yzaguirre. Weaver alleges she was retaliated against based on a statement she made to the Cameron County Sheriff's Department about Defendant Yzaguirre's possible unlawful conduct as the Cameron County Tax Assessor-Collector. *See* Pls' Supplemental 7(a) Reply ¶ 8. She alleges this statement was on a matter of public concern, and thus is speech protected by the First Amendment.

Defendants argue Weaver's allegations concerning her statement to the sheriff's department do not save her claim for First Amendment retaliation for two reasons. First, Weaver's statement was made in August 2002, but she pleads she was forced to take vacation in May 2002 and then officially terminated in September 2002. Thus, Defendants argue her speech in August 2002 could not be the motive for retaliatory action that had already occurred in May 2002. Second, Defendants argue the statement was not on a matter of public concern because it was obviously not intended to be disseminated, no part of the statement accuses Yzaguirre of misconduct, and "at best it simply asserts that title transfer applications were sometimes brought by dealers

to the main office." Def. Cameron County's Motion to Dismiss, at p. 11.

Because the Court has determined the majority of Plaintiffs' claims have survived Defendants' Motions to Dismiss, the Court will await detailed briefing, including reference to case law, at the summary judgment stage on whether Weaver's statement to the sheriff contained matters of public concern. Similarly, because Weaver's actual termination occurred after she gave her statement, the Court will not now determine the speech could not have motivated the termination.

## VI. Conclusion

The Court **DENIES** Defendants' Motions to Dismiss [Dkt. Nos. 52 & 53]. The Court will enter a scheduling order contemporaneously with this order.

DONE this 31st day of March 2005, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge