**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **VICENTA CANTU, ET AL.** | § | |
| **Plaintiffs** | § | |
| | § | |
| **v.** | § | **C.A. No. B-03-96** |
| | § | |
| **CAMERON COUNTY AND TONY** | § | |
| **YZAGUIRRE, Tax Assessor-Collector** | § | |
| **of Cameron County and Director,** | § | |
| **Cameron County Automobile Crimes** | § | |
| **Enforcement Task Force, in his** | § | |
| **individual capacity** | § | |
| **Defendants.** | § | |

## OPINION AND ORDER

BE IT REMEMBERED that on August 2, 2005, the Court **DENIED** Defendants'
Third Motion to Dismiss New Claims of Plaintiff Alvarado [Dkt. No. 61].

## I.  Procedural History

After granting in part and denying in part Defendants' first Motions to Dismiss
[Dkt. No. 48], the Court allowed the parties to file additional motions to dismiss in light
of Plaintiffs' then recent supplement to their 7(a) Reply [Dkt. No. 41].  The Court
instructed the Defendants that their additional motions to dismiss should only address
the new claims raised by Plaintiffs Alvarado and Weaver.  Defendants complied with
the Court's instruction and limited the content of their motions to those new claims
raised by Plaintiffs [Dkt. Nos. 52 & 53].  In its order issued on March 31, 2005, the
Court denied Defendants' Motions to Dismiss Plaintiff Alvarado's additional speech
retaliation claims raised in the supplemental Rule 7(a) Reply; denied dismissal based
on Alvarado's association claims; and denied dismissal of Plaintiff Weaver's speech
claim [Dkt. No. 65].

The Court granted Plaintiffs leave to file a second amended complaint, and
Defendants now move to dismiss the new claims raised in the second amended
complaint.  As it did previously, the Court incorporates by reference all factual

recitations, legal background, legal standards, and analyses pertaining to Plaintiffs'
First Amendment Retaliation claims laid out in the Court's original 31-page opinion
addressing Defendants' first Motion to Dismiss [Dkt. No. 48].

## II.  Plaintiff Alvarado's Claim of Retaliation[1]

Plaintiff Diamantina Alvarado is the former supervisor of the Property Tax
Collection Division for the Office of the Tax Assessor-Collector for Cameron County,
Texas.  Plaintiff previously alleged that on or about February 28, 2003, she was
involuntarily transferred and demoted from her position as supervisor of the Tax
Division at the central office of the Tax Assessor-Collector to the position of auto clerk
in the San Benito Branch Tax Office.  Plaintiff Alvarado alleges her transfer and
demotion were the direct result of her protected speech and association with Plaintiffs
Cantu, Weaver, and Munoz.  Moreover, in her Rule 7(a) supplement, Plaintiff argued
the involuntary transfer was a demotion because her duties substantially changed, she
no longer held a supervisory position, her computer privileges were revoked, she was
no longer advised of office events, and she was not allowed to make long distance calls
on the telephone.  *See* Pl's Supplement 7(a) Reply, ¶ 13 [Dkt. No. 41].

Plaintiff's new claim is based on alleged events that occurred after March 24,
2003, the date on which she argues she was constructively discharged.  In April or May
2004, Plaintiff alleges the County Judge extended a conditional offer of employment to
her for a secretary position with the Emergency Response Department of Cameron
County.  *See* Pls' Second Am. Cmplt. ¶ 66.[2]   The offer was conditioned on Plaintiff's
dismissal of the present lawsuit.  Plaintiff argues the conditional offer of employment

---

[1]Defendants point out to the Court that Plaintiff has included in her second amended
complaint claims the Court already dismissed in its March 31, 2004, order.  *See, e.g.* Pls'
Second Am. Cmplt. ¶¶ 68-70; 58-65; 47-53.  For those claims already dismissed by the Court,
Plaintiffs inclusion of them in their second amended complaint has no effect when no new
facts are alleged that would change the dismissal outcome.  The Court, therefore, will not
needlessly address claims the Court already dismissed.

[2]In Plaintiffs' Second Amended Complaint, they omit the complete date on which
Plaintiff Alvarado's offer of employment was extended.  In her response to Defendants' Third
Motion to Dismiss, Plaintiff states the date of the conditional offer was April/May 2004.

violated her First Amendment free speech rights because it was conditioned on dismissal of the lawsuit, which itself is protected speech.  Moreover, Plaintiff argues she was retaliated against because she lost a job opportunity.  *See id.*

### A.  Defendants' Argument that Alvarado's Conditional Job Offer Is Not an Adverse Employment Action

To prove a First Amendment free speech retaliation claim under section 1983, a plaintiff must show that (1) he suffered an adverse employment action, (2) his speech involved a matter of public concern, (3) his interest in commenting on matters of public concern outweighed the government employer's interest in promoting efficiency, and (4) his speech motivated the adverse employment action.  *See Harris v. Victoria Ind. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999).  It is axiomatic, therefore, that in the context of a public employee speech retaliation case, the Plaintiff must suffer an adverse employment action that constitutes retaliation for protected speech.  *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

Defendants argue "neither Alvarado's alleged speech nor her lawsuit allegations are speech on a matter of public concern."  Defs' Third Motion to Dismiss, at p. 5.  Additionally, they argue a rejected conditional job offer is not retaliation or an adverse employment action.  Defendants cite distinguishable case law.  Namely, they state,

> [a]n outright refusal to deal with someone who is suing an agency does not improperly chill First Amendment rights.  *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir. 1994), *cert. denied*, 513 U.S. 926 (2004) [sic].  There, plaintiffs had sued the U.S. Army Engineer Corps to declare a minority set-aside program unlawful; during the lawsuit the Corps chose not to offer contracts for bidding to anyone and instructed its officers not to speak to Plaintiff or other contractors in order to avoid giving them statements that could be used as evidence.  *Id.* at 1296.  The Fifth Circuit held that a refusal to speak to or deal with plaintiff about the basis of the lawsuit did not chill any First Amendment rights.  *Id.*  Therefore, the refusal to offer a non-employee a job until a civil suit is dropped is neither retaliation nor an adverse employment action.

Defs' Third Motion to Dismiss, at p. 7.  Additionally, Defendants liken this case to those in which courts "have approved agreements to drop criminal charges in exchange for release of section 1983 claims incident to arrest or prosecution.  *See, e.g., Mozzochi v.*

*Borden*, 959 F.2d 1174, 1180-81 (2d Cir. 1992).

The Court does not find either of these cited cases to be applicable to this case or dispositive to the outcome. *Mozzochi* was not an employment retaliation case, and the Second Circuit made clear that "[w]here a criminal prosecution remains supported by probable cause, the Constitution does not necessarily prohibit the prosecutor from seeking a release-dismissal agreement with the criminal defendant." 959 F.2d at 1181 (citations omitted). As a result, the Plaintiff in *Mozzochi* was not deprived of his right to access the courts. Additionally, in *Enplanar*, the Fifth Circuit determined there was no evidence that the contracting officers' refusal to speak to the contractors during the pendency of the suit constituted an effort to chill the contractors' access to the courts or punish them for having brought suit. *See* 11 F.3d at 1296.

Plaintiff Alvarado alleges she was denied a job opportunity on the basis of her exercising her First Amendment rights–that is, filing the present lawsuit.

> As a general rule, the First Amendment prohibits not only direct limitations on speech but also adverse government action against an individual because of her exercise of First Amendment freedoms. For example, the government may not place conditions on public benefits, *including jobs*, that penalize applicants for their speech, beliefs or association. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 574-75, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (holding impermissible under the First Amendment the dismissal of a high school teacher for speaking on "issues of public importance"); *Sherbert v. Verner*, 374 U.S. 398, 409-10, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (holding that unemployment compensation may not be withheld on the condition that a person accept Saturday employment contrary to her religious faith); *Torcaso v. Watkins*, 367 U.S. 488, 495-96, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961) (holding that a citizen cannot be refused a public office for failure to declare his belief in God); *Speiser v. Randall*, 357 U.S. 513, 528-29, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (prohibiting on First Amendment grounds the limiting of state tax exemptions to only those who take a loyalty oath); *cf. Cafeteria & Restaurant Workers Union Local 473 v. McElroy*, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (recognizing that the government cannot deny employment because of previous membership in a particular political party).

*Colson v. Grohman*, 174 F.3d 498, 508-09 (5th Cir. 1999) (collecting relevant cases) (emphasis added). Thus, the First Amendment shields speech "not only [from] direct limitations . . . but also [from] adverse government action against . . . individual[s]

because of [their speech]," which includes the denial of public benefits in an effort to punish individuals for their speech. *Id.* at 508. *See also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests –especially his interest in freedom of speech."); *c.f. Bd. of County Commissioners v. Umbehr*, 518 U.S. 668, 670-71 (1996) (holding that county officials had no duty to place contracts with independent contractor plaintiffs who had no right to the contracts, but the county could not refuse to renew the contracts in retaliation for the contractor's exercise of freedom of speech).

Although the Fifth Circuit has taken a decidedly "narrow view of what constitutes an adverse employment action," "discharges, demotions, *refusals to hire*, refusals to promote, and reprimands" are recognized as adverse actions. *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) (citing *Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994)) (emphasis added). Moreover, in *Rutan v. Republic Party of Illinois*, low-level public employees and an employment applicant brought an action under the First Amendment challenging the Governor's use of political considerations in hiring, rehiring, transferring, and promoting. 497 U.S. 62, 78 (1990). The Supreme Court reversed the dismissal of a claim premised on the finding that hiring decisions based on political affiliation do not violate the First Amendment. *Id.* at 79. The Court stated:

> [u]nder our sustained precedent, conditioning *hiring decisions* on political belief and association plainly constitutes an unconstitutional condition, unless the government has a vital interest in doing so. *See Elrod v. Burns*, 427 U.S. 347, 362-363, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976) (plurality opinion) and 375, 96 S.Ct., at 2690 (Stewart, J., concurring in judgment); *Branti v. Finkel*, 445 U.S. 507, 515-516, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980); *see also Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (unemployment benefits); *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) (tax exemption). We find no such government

interest here, for the same reasons that we found the government lacks
justification for patronage promotions, transfers, or recalls . . . .

*Rutan*, 497 U.S. at 78 (emphasis added).  Thus, the "unconstitutional conditions"
doctrine, as *Rutan* clearly held, is not only applicable to government benefits.  At least
two circuits have even applied this analysis to volunteer government positions.  *See,
e.g., Anderson v. McCotter*, 100 F.3d 723, 727 (10th Cir. 1996); *Hyland v. Wonder*, 972
F.2d 1129, 1135 (9th Cir. 1992).

Because the Court must interpret Plaintiff's pleadings in the light most favorable
to her, the Court cannot determine at this stage that a job offer[3] contingent upon
Plaintiff's dismissal of a civil case cannot as a matter of law constitute an adverse
action for the purpose of a First Amendment retaliation claim.  Furthermore, the Court is
not convinced by Defendants' cited case law, which is not applicable and fails to take
into consideration established Fifth Circuit and Supreme Court precedent.  Should
Defendants cite case law that is on-point and dispositive of this case, the Court will
address the issue again in a summary judgment.

**B.  Plaintiff's Lawsuit as a Matter of Public Concern**

"'Whether the speech at issue relates to a matter of public concern is a question
of law to be resolved by the court.'" *Bradshaw v. Pittsburg Indep. Sch. Dist.*, 207 F.3d
814, 816 (5th Cir. 2000) (per curiam) (quoting *Tompkins v. Vickers*, 26 F.3d 603, 606
(5th Cir. 1994)).  In cases specifically concerning retaliation premised on the previous
filing of a lawsuit, the Court must determine whether the lawsuit itself is on a matter of
public concern such that a job offer may not be conditioned upon its dismissal.  *See
Rathjen v. Litchfield*, 878 F.2d 836, 841 (5th Cir. 1989).  In *Rathjen*, the Fifth Circuit
noted the First Amendment does not prevent a government employer from taking a
response to an employees's expression when that expression is not on a matter of

---

[3]As Defendants point out, the circumstances giving rise to this job offer are not clear
from the Second Amended Complaint.  Plaintiff's complaint simply states she was extended
a conditional offer of employment to be a secretary for the Emergency Response Department of
Cameron County.  Defendants do not present any case law that would suggest the conditional
offer of employment is only an adverse employment action in the context of a First Amendment
retaliation claim if Plaintiff actually applied for the job before the offer was extended.

6

public concern.  *See id.*  Additionally, the Court stated, "[t]he law is not different where the act which allegedly gave rise to the retaliation claim is the filing of a grievance or a lawsuit."  *Id.* at 842.  The question in this case, therefore, is whether Alvarado's lawsuit embraces matters of public concern as set forth in *Connick v. Myers*, 461 U.S. 138 (1983).

The Court has previously determined this lawsuit contains matters of a public concern sufficient to withstand dismissal at an early stage of the litigation.  *See* Court Order, March 31, 2004 [Dkt. No. 48] (granting in part and denying in part Defendant Cameron County's Motions to Dismiss); Court Order, March 31, 2005 [Dkt. No. 65] (denying Defendants' Motions to Dismiss).  In light of this, and again taking the complaint in the light most favorable to Plaintiff, the Court declines to dismiss Alvarado's claim on the basis that her speech does not constitute a matter of public concern.  *See Feingold v. New York*, 366 F.3d 138, 160 (2d Cir. 2004) (finding complaints suggesting that fairness, impartiality, and productivity of a DMV office may have been compromised by the discriminatory conduct of officials were "clearly matters of public concern").

### C. *Pickering* Balancing Test

In the public employment context, the government has an interest in effectively and efficiently running the government, and because of this interest, the Supreme Court carved out a test for balancing the interest of the public employee and the government.  *See Pickering v. Board of Ed.*, 391 U.S. 563, 569 (1968).  Thus, the employee's, or prospective employee's, interests must outweigh the government's interest in "promoting the efficiency of the public services it performs through its employees."  *Pickering*, 391 U.S. at 568.[4]  Defendants argue

---

[4]As Defendants argue, the *Pickering* balancing test applies to hiring decisions.  *See, e.g., Worrell v. Henry*, 219 F.3d 1197, 1207 (10th Cir. 2000); *Franklin v. Atkins*, 562 F.2d 1188, 1190 (10th Cir. 1977); *Shahar v. Bowers*, 114 F.3d 1097, 1102-03 (11th Cir. 1997) (en banc) (applying *Pickering* to withdrawal of job offer); *Hubbard v. EPA*, 949 F.2d 453, 460 (D.C. Cir. 1992) (applying *Pickering* to hiring decision and stating "[m]erely because an employer is *hiring* rather than *firing* . . . does not justify unconstitutional action).

[i]t requires no leap of imagination to believe that co-workers may feel a distinct lack of trust when working with someone who is suing the employer. *Lytle* [*v. Wondrash*] , 182 F.3d 1083, 1089 (9th Cir. 1999). They may well conclude that the plaintiff will use the pending litigation as leverage to obtain favoritism in the workplace and undeserved promotions. Given that Alvarado has already named her former co-workers as her persecutors, her co-workers might wonder if they too will be named if they do not become her "buddy."

Defs' Third Motion to Dismiss, at p. 9.

Defendants present the Court with mere speculation that the government has a greater interest in not hiring Plaintiff Alvarado because the efficient administration of the government would be compromised than Plaintiff has in expressing her speech through the filing of this lawsuit. These arguments will not induce the Court to grant dismissal when a motion under Rule 12(b)(6) should only be granted when it appears beyond doubt that Plaintiff can prove no set of facts to support her claim. *See Conley v. Gibson*, 355 U.S. 45, 46 (1957).

### D.  Defendants' Argument that Yzaguirre is Entitled to Qualified Immunity

Defendants' request that this Court grant Yzaguirre qualified immunity on Plaintiff Alvarado's speech claim. Because Plaintiff Alvarado alleges an entirely different governmental department within Cameron County committed the retaliation acts, it does not appear Plaintiff brings this claim against Yzaguirre in his individual capacity, but rather brings the claim against the County. Plaintiff confirms this in her response when she states, "[i]n the present case, the action alleged to have caused the particular constitutional violation is the action of the Cameron County Judge," whom she argues is the final policy maker concerning the conditional job offer made to Plaintiff Alvarado. On this basis, therefore, the Court denies Defendants' request that the Court rule on whether Yzaguirre is entitled to qualified immunity for this allegation.

### III.  Conclusion

The Court **DENIES** Defendants' Third Motion to Dismiss [Dkt. No. 61].


DONE this 2nd day of August 2005, at Brownsville, Texas.


_____
Hilda G. Tagle
United States District Judge