MOTION TO COMPEL
EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU; FELIX R. MUNOZ; | § | |
| RUTH WEAVER; | § | |
| DIAMANTINA ALVARADO; AND | § | |
| LINDA GARCIA | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | Civil Action No. 03-CV-96 |
| | § | |
| CAMERON COUNTY and | § | **JURY TRIAL REQUESTED** |
| TONY YZAGUIRE, JR., Tax Assessor- | § | |
| Collector of Cameron County and Director, | § | |
| Cameron County Automobile Crimes | § | |
| Enforcement Task Force, in his | § | |
| individual capacity | § | |

**VICENTA CANTU'S RESPONSES TO DEFENDANT'S INTERROGATORIES**

Now comes Plaintiff and provides the following responses to Defendant's interrogatories.

Respectfully submitted,

By: _____

GAY E. GILSON
Law Office of Gay E. Gilson
719 South Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Facsimile (361) 887-0554
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE FOR PLAINTIFFS

1

DAVID LEE MCGEE
Law Office of David Lee McGee, P.C.
3827 North 10th Street, Suite 302 A
Plaza 10 Building
McAllen, Texas 78501
SBN 13612550/Fed I.D.5932
Telephone: (956) 687-2010
Facsimile: (956) 687-2937
CO COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that a copy of this instrument was served on the following attorney's of record according to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas:

Roger Hughes
Adams & Graham, L.L.P.
P.O. Drawer 1429
Harlingen, Texas 78551-1429

Mr. Charles Willette
Willette & Guerra, L.L.P.
1534 East 6th Street Suite 200
Brownsville, Texas 78520

on this December 2, 2005.

Gay E. Gilson

2

1.     Please identify yourself by supplying your full name, current address, telephone number, social security number and date of birth.

ANSWER:    Vicenta B. Cantu
           3192 La Plaza Dr.
           Brownsville, Texas 78521
           (956) 455-2633
           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
           12/15/1964

2.     Please list for each place of your employment since leaving employment the Cameron County Tax Assessor giving the following information:

       a)    name and address of your employer;
       b)    the date that you commenced working for such employer and the date that you left; and
       c)    your position and compensation.

ANSWER:

       a)    Southern Texas Title Company
             717 N. Expressway
             Brownsville, Texas 78520
       b)    I started working there approximately November 3, 2003 and I am still working there.
       c)    Typist making $1,400.00/month.

3.     Please identify each physician, chiropractor, doctor of osteopathy, psychiatrist, psychologist, hospital or clinic who has examined, treated you or with whom you have consulted, or to whom you have gone for any reason for a period of since January 1, 1998, by giving the name, address and telephone number of each such healthcare provider; describe the reason for treatment.

ANSWER:    UMS Unidad Medica Sandoval and the custodian of records
           Analisis Clinicos
           Q.F.B. Celia Carrera Martinez
           Ej. Estacion Sandoval Mpio. De H. Matamoros, Tam.
           Tel: 847-21-15
           Provided medical services to Vicenta Cantu for damages she sustained as a result of the facts made the basis of this lawsuit.  May be called to provide expert testimony.

           Dr. Gustavo M. Rivero Aragon and his custodians of records
           Universidad Autonoma De Guerrero

3

Domicilio Concocido S/N
Estacion Sandoval
H. Matamoros, Tamps
Tel: 868 847-2115
Provided medical services to Vicenta Cantu for damages she sustained as a result of the
facts made the basis of this lawsuit. May be called to provide expert testimony.

Dr. Gale Thomas Downey
Austin Dr. Ass.
1867 North Shore Dr.
San Benito, Texas
(512) 305-7030

4.     Please identify each physician, chiropractor, doctor of osteopathy, psychiatrist,
       psychologist, hospital or clinic who has examined, treated you or with whom you have
       consulted by reason of your consortium claim which forms the basis of this lawsuit by
       giving the name, address and telephone number of each such healthcare provider; and the
       condition or reason for treatment.

ANSWER:

       Dr. Gustavo M. Rivero Aragon and his custodians of records
       Universidad Autonoma De Guerrero
       Domicilio Concocido S/N
       Estacion Sandoval
       H. Matamoros, Tamps
       Tel: 868 847-2115
       Provided medical services to Vicenta Cantu for damages she sustained as a result of the
       facts made the basis of this lawsuit. May be called to provide expert testimony.

       Dr. Gale Thomas Downey
       Austin Dr. Ass.
       1867 North Shore Dr.
       San Benito, Texas
       (512) 305-7030

5.     Heave you ever been arrested, indicted for, plead guilty to or been found guilty of any
       crime? If so, please state when and where and the nature of the charge.

ANSWER:     No.

6.     Have you ever been a party to a lawsuit prior the present suit? If so, please state the
       nature of the suit, the court in which said suit took place in, including the complete style,

4

the cause of action, whether you were Plaintiff or Defendant, the date each such suit was filed and the final disposition of said suit.

ANSWER:     No.

7.    Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that:

    a.    Defendant accepted money or favors from any person or business to process fraudulent or improper vehicle registrations, title applications, or title transfers, stating the names and addresses of such persons, the amounts of money and the favors.

    b.    Defendant Yzaguirre gave "special treatment" to anyone in the processing of vehicle registrations, title transfer, or title transfers, or title applications, stating the names and addresses of such persons and describing each individual actual act of special/preferential treatment.

    c.    Defendant Yzaguirre engaged in unprofessional, corrupt or unlawful activity, describing each such act and when it occurred and stating the names of the persons present or involved.

ANSWER:     I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

8.    Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that on any occasion you told Defendants or any third party that Defendant Yzaguirre did any illegal, improper, or corrupt act. For each occasion of speech, give the names and addresses of all present, the date of such speech activities, and state exactly what you said.

ANSWER:     I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

9.    Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that you made complaints to the Texas Department of Transportion or any other law enforcement agency concerning any complaint about Defendant Yzaguirre's acts or omissions. For each occasion, give the names and addresses the persons to whom Plaintiff Cantu complained, the date of such speech activities, and state exactly what you said.

5

ANSWER:     I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

10.     Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that you were part of any association to speak out about alleged improprieties, encourage others to do so, or discuss same. Describe when and how the association began and who were its members.

ANSWER:     I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

11.     Identify specifically each vehicle registration, title transfer application, or title application you claim was fraudulent or improper that should have been rejected or questioned. For each instances, describe the reasons it was fraudulent or improper, the persons involved in the underlying sale or transfer, and how Defendant Yzaguirre knew of the alleged fraud or impropriety.

ANSWER:     I cannot recall every specific fraudulent or improper transaction that I witnessed while working for Defendants. I have identified as many as I can in the 7a Reply. I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

12.     For each person identified by you in your disclosures, provide a description of the relevant facts known to that person.

ANSWER:     Vicenta Cantu
c/o Law Office of Gay E. Gilson
719 S. Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Plaintiff in this case. Has knowledge of the claims, facts and damages as specified in complaint.

Felix R. Munoz
c/o Law Office of Gay E. Gilson
719 S. Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Plaintiff in this case. Has knowledge of the claims, facts and damages as specified in complaint.

Sonia Castano
234 Southmost Rd
Brownsville, Texas 78520
May have knowledge of improper title transactions made the basis of this lawsuit.

UMS Unidad Medica Sandoval and the custodian of records
Analisis Clinicos
Q.F.B. Celia Carrera Martinez
Ej. Estacion Sandoval Mpio. De H. Matamoros, Tam.
Tel: 847-21-15
Provided medical services to Vicenta Cantu for damages she sustained as a result of the facts
made the basis of this lawsuit. May be called to provide expert testimony.

Dr. Gustavo M. Rivero Aragon and his custodians of records
Universidad Autonoma De Guerrero
Domicilio Concocido S/N
Estacion Sandoval
H. Matamoros, Tamps
Tel: 868 847-2115
Provided medical services to Vicenta Cantu for damages she sustained as a result of the facts
made the basis of this lawsuit. May be called to provide expert testimony.

Elena Garza
Plaintiff Cantu's sister
(956) 542-8099
Has knowledge of Plaintiff's damages - emotional distress.

Rolando Mancillas
Cameron County Park Ranger - South Padre Island
(956) 371-5999

Maz Martinez
(956) 983-7270

13.    Please give the name, address and telephone number of each person with knowledge of
       relevant facts who has given a witness statement.

ANSWER:    No person with knowledge of relevant facts has given a witness statement to my
           attorney.

14.    State the amounts of money you claim in your Prayer for Relief for each type of monetary
       damage (e.g. compensatory damages, actual damages, punitive damages, front pay, back
       pay, loss of past and future earnest, lost of retirement/other benefits, and mental anguish);

83

state each element separately.

ANSWER:    I will the amount of damages for such things as mental anguish, emotional distress, hurt, shame and humiliation to the jury to decide. Also, I leave the amount of punitive damages to the jury. I need to conduct further discovery in order to determine damages related to pay and other benefits.

## AFFIDAVIT OF Vicenta Cantu

STATE OF TEXAS                    §
                                 §
COUNTY OF NUECES                 §

BEFORE ME, the undersigned authority, on this day personally appeared Vicenta Cantu after being by me duly sworn did upon his oath depose and say:

"I am the Plaintiff in the above styled and numbered cause, and I have read the foregoing answers to Interrogatories propounded by the Defendant and state that the same are true and correct."



Vicenta Cantu

SWORN TO AND SUBSCRIBED BEFORE ME by the said Plaintiff, Vicenta Cantu, on this 01- Dec. 2005 to certify which witness my hand and seal of office.

ROLANDO PEREZ GARZA
Notary Public, State of Texas
My Commission Expires
January 25, 2009

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

MY COMMISSION EXPIRES: 1/25/09

MOTION TO COMPEL
EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| VICENTA CANTU; FELIX R. MUNOZ; RUTH WEAVER; DIAMANTINA ALVARADO; AND LINDA GARCIA | § § § § § § |
| Plaintiffs | § § |
| vs. | § § § Civil Action No. 03-CV-96 |
| CAMERON COUNTY and TONY YZAGUIRE, JR., Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task Force, in his individual capacity | § § § JURY TRIAL REQUESTED § § § § |

**VICENTA CANTU'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT'S INTERROGATORIES**

Now comes Plaintiff and provides the following responses to Defendant's interrogatories.

Respectfully submitted,

By: _____
GAY E. GILSON
Law Office of Gay E. Gilson
719 South Shoreline, Suite 301A
Corpus Christi, Texas 78401
(361) 887-0552
Facsimile (361) 887-0554
SBN 00784131/Fed.I.D. 16385
ATTORNEY IN CHARGE FOR PLAINTIFFS

DAVID LEE MCGEE
Law Office of David Lee McGee, P.C.
3827 North 10th Street, Suite 302 A
Plaza 10 Building
McAllen, Texas 78501
SBN 13612550/Fed I.D.5932
Telephone: (956) 687-2010
Facsimile: (956) 687-2937
CO COUNSEL FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I certify that a copy of this instrument was served on the following attorney's of record according to the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas:

Roger Hughes
Adams & Graham, L.L.P.
P.O. Drawer 1429
Harlingen, Texas 78551-1429

Mr. Charles Willette
Willette & Guerra, L.L.P.
1534 East 6th Street Suite 200
Brownsville, Texas 78520

on this December 19, 2005.

_____
Gay E. Gilson

1

2

---

1.  Please identify yourself by supplying your full name, current address, telephone number, social security number and date of birth.

ANSWER:     Vicenta B. Cantu
            3192 La Plaza Dr.
            Brownsville, Texas 78521
            (956) 455-2633
            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
            12/15/1964

2.  Please list for each place of your employment since leaving employment the Cameron County Tax Assessor giving the following information:

    a)  name and address of your employer;
    b)  the date that you commenced working for such employer and the date that you left; and
    c)  your position and compensation.

ANSWER:

    a)  Southern Texas Title Company
        717 N. Expressway
        Brownsville, Texas 78520
    b)  I started working there approximately November 3, 2003 and I am still working there.
    c)  Typist making $1,400.00/month.

3.  Please identify each physician, chiropractor, doctor of osteopathy, psychiatrist, psychologist, hospital or clinic who has examined, treated you or with whom you have consulted, or to whom you have gone for any reason for a period of since January 1, 1998, by giving the name, address and telephone number of each such healthcare provider; describe the reason for treatment.

ANSWER:     UMS Unidad Medica Sandoval and the custodian of records
            Analisis Clinicos
            Q.F.B. Celia Carrera Martinez
            Ej. Estacion Sandoval Mpio. De H. Matamoros, Tam.
            Tel: 847-21-15
            Provided medical services to Vicenta Cantu for damages she sustained as a result of the facts made the basis of this lawsuit. May be called to provide expert testimony.

            Dr. Gustavo M. Rivero Aragon and his custodians of records
            Universidad Autonoma De Guerrero

3

Domicilio Conocido S/N
Estacion Sandoval
H. Matamoros, Tamps
Tel: 868 847-2115
Provided medical services to Vicenta Cantu for damages she sustained as a result of the facts made the basis of this lawsuit. May be called to provide expert testimony.

Dr. Gale Thomas Downey
Austin Dr. Ass.
1867 North Shore Dr.
San Benito, Texas
(512) 305-7030

4.  Please identify each physician, chiropractor, doctor of osteopathy, psychiatrist, psychologist, hospital or clinic who has examined, treated you or with whom you have consulted by reason of your consortium claim which forms the basis of this lawsuit by giving the name, address and telephone number of each such healthcare provider; and the condition or reason for treatment.

ANSWER:

            Dr. Gustavo M. Rivero Aragon and his custodians of records
            Universidad Autonoma De Guerrero
            Domicilio Conocido S/N
            Estacion Sandoval
            H. Matamoros, Tamps
            Tel: 868 847-2115
            Provided medical services to Vicenta Cantu for damages she sustained as a result of the facts made the basis of this lawsuit. May be called to provide expert testimony.

            Dr. Gale Thomas Downey
            Austin Dr. Ass.
            1867 North Shore Dr.
            San Benito, Texas
            (512) 305-7030

5.  Heave you ever been arrested, indicted for, plead guilty to or been found guilty of any crime? If so, please state when and where and the nature of the charge.

ANSWER:     No.

6.  Have you ever been a party to a lawsuit prior the present suit? If so, please state the nature of the suit, the court in which said suit took place in, including the complete style,

4

the cause of action, whether you were Plaintiff or Defendant, the date each such suit was filed and the final disposition of said suit.

ANSWER:     No.

7.     Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that:

    a.    Defendant accepted money or favors from any person or business to process fraudulent or improper vehicle registrations, title applications, or title transfers, stating the names and addresses of such persons, the amounts of money and the favors.

    b.    Defendant Yzaguirre gave "special treatment" to anyone in the processing of vehicle registrations, title transfer, or title transfers, or title applications, stating the names and addresses of such persons and describing each individual actual act of special/preferential treatment.

    c.    Defendant Yzaguirre engaged in unprofessional, corrupt or unlawful activity, describing each such act and when it occurred and stating the names of the persons present or involved.

ANSWER:     I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiff's live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

During Plaintiff Cantu's employment with Defendants, she noted that Defendant Yzaguirre was violating Texas laws, regulations and policies, including, but not limited to the Texas Transportation Code Chapters 502.002 (b); 502.410 (a); Defendant Yzaguirre accepted payments to process various deficient and/or unlawful transactions which may also be a violation of Chapter 502.411(a)(2) of the Texas Transportation Code; Defendant Yzaguirre violated the Texas Administrative Code, Title 43 Transportation, Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, et seq; and the Texas Administrative Code, Title 43 Transportation, Part 1, Texas Department of Transportation, Chapter 17, Subchapter B. Specifically, Defendant Yzaguirre allowed fraudulent and deficient vehicle registration paperwork to pass through his office as a "paid" favor to friends and business associates such as Moises Torres, Enrique Barreda and Enrique Barreda, Jr.

Plaintiff Cantu served as the Titles Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force, a subdivision of the Office of the Tax Assessor-Collector of Cameron County. It was Plaintiff Cantu's job to

5

ensure that the vehicle registration paperwork going through the Cameron County's Tax Assessor-Collector's Office was correct, complete and lawful and, if it was not, that an investigation be conducted.

In the course of Plaintiff's duties with Defendants, she was to reject vehicle registrations which did not meet legal requirements or which contained inadequate documentation. However, on several occasions, Defendant Yzaguirre "overrode" her rejections of title paperwork that did not meet legal requirements and/or did not consist of the appropriate title paperwork and, despite the fact that the vehicle registration paperwork was clearly fraudulent and/or deficient, either ordered Plaintiff Cantu to process the paperwork or took the vehicle title registration paperwork from Plaintiff Cantu and had someone else process the vehicle registration paperwork. Specific examples of Plaintiff's protected speech to Defendant Yzaguirre about vehicle title registrations are as follows:

A.     Transaction I.D.: 0311013655054532 which has been provided in a pleading. In the latter part of 2000, Defendant Yzaguirre came to Plaintiff Cantu's office and asked her if she was holding a rejection for Jose L. Aguilar. Plaintiff Cantu responded that she was holding a rejection for Mr. Aguilar. Defendant Yzaguirre then inquired as to why Plaintiff Cantu rejected the title paperwork. Plaintiff Cantu responded that the vehicle was sold for export and that it could not be registered for that reason according to the law. Plaintiff Cantu continued to explain that the title was issued from the State of Louisiana and if a vehicle is sold for export, it is not to be registered in Texas, it must be registered in the Country to which it is stamped for export. Mr. Aguilar's paperwork indicated that his vehicle was to be exported Mexico. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 1. Defendant Yzaguirre said nothing more and walked out of the room. On January 8, 2001, the title was stamped rejected and sold for export by Eli Tella, an investigator within the Cameron County Auto Crime Task Force and the title was returned to Mr. Aguilar. Approximately six months later, the same vehicle presented for title registration at the Cameron County Tax Office- Vehicle Registration, but with a different title. This time the title came from Arkansas. Plaintiff Cantu instructed Julio Hernandez to hold the paperwork and set-up an appointment for the title holder to meet with either Plaintiff Cantu or one of the investigators with the Cameron County Auto Crimes Task Force. Within minutes of Plaintiff Cantu's instructions to Julio Hernandez, Defendant Yzaguirre called Plaintiff Cantu and asked her why she had instructed Mr. Hernandez to hold the title. Plaintiff Cantu explained that the title had passed through the Cameron County Auto Crimes Task Force approximately six months ago and that it had been

6

stamped sold for export. Defendant Yzaguirre told Plaintiff Cantu that it was "none of her business" to just process the transaction.

B.     Transaction I.D.: 0310003655135724 which has been provided in a pleading. On July 25, 2000, Defendant Yzaguirre came to Plaintiff Cantu's office and asked her if she was holding the title paperwork on Jose Angel Mireles, Jr. Plaintiff Cantu said, "Yes" and Defendant Yzaguirre asked Plaintiff Cantu, "Why?". Plaintiff Cantu responded that the vehicle was sold for export and the title may only be issued by the Country to which it was exported which was Mexico. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 2. Defendant Yzaguirre ordered Plaintiff Cantu to give him the title and Defendant Yzaguirre then processed the paperwork so that Mr. Mireles would have a Texas title for this vehicle.

C.     Transaction I.D.: 0312013656211418 which has been provided in a pleading. On July 16, 2001, Defendant Yzaguirre came to Plaintiff Cantu's desk and asked her what happened to Alfonso Garcia's title paperwork. Plaintiff Cantu responded that the dealer, Charlie's Used Cars, had bought the vehicle for export only and had sold the vehicle to Mr. Garcia without his knowledge that the title was for "export only." Plaintiff Cantu also explained to Defendant Yzaguirre that she spoke with the owner of Charlie's Used Cars and told him to give Mr. Garcia his money back or to give him another vehicle. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 3. Defendant Yzaguirre ordered that the title paperwork be processed.

D.     Transaction I.D.: 0313003566844145304 which has been provided in a pleading. On January 25, 2002, Defendant Yzaguirre went to Plaintiff Cantu's office and asked her if she was holding paperwork for Gerardo Leal. Plaintiff Cantu said yes and she explained that the reason that the paperwork was being held was because a trade-in credit on the vehicle sale in the amount of $14,000.00 was not valid because the trade-in vehicle was in the seller's name, Ramirez Used Cars, not the buyer's name, Gerardo Leal. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 4. Defendant Yzaguirre signed the Title Status Report indicating to release the title paperwork. The false information indicated that the trade-in vehicle was owned by Mr. Leal, but in truth the trade-in vehicle was owned by Ramirez Used Cars. This is in violation of Chapter 502.410(a) of the Texas Transportation Code.

7

E.     Transaction I.D.: 0312003676660083710 which has been provided in a pleading. On August 30, 2001, Defendant Yzaguirre went to Plaintiff Cantu's office and asked her if she was holding paperwork for Noe Infante. Plaintiff Cantu responded that she was holding the paperwork because Mr. Infante needed an invoice from Summit Wholesalers in Katy, Texas because the dealer is supposed to register the vehicle in the county where the dealer resides and the dealer did not do that. Further, there was information scratched out and written over which is not allowed in the vehicle title paperwork according the Cameron County Office Policy. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 5. Defendant Yzaguirre wrote on the Title Status Report that the file was to be released and that a sticker was to be issued.

F.     Transaction I.D.: 0310073678813454 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office. Defendant Yzaguirre asked Plaintiff Cantu if she had the paperwork on Agustin Ortiz. Plaintiff Cantu said yes and explained that there were serious discrepancies in the seller's signatures which needed to be investigated by the Cameron County Auto Crimes Task Force investigators. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 6. Defendant Yzaguirre asked for the paperwork from Plaintiff Cantu and he wrote on the Title Status Report that "title work ok process title."

G.     Transaction I.D.: 0310073679915501 which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork on Jorge Antonio Ruvalcaba. Plaintiff Cantu responded that she had held the title paperwork because Mr. Ruvalcaba needed an invoice from Smith Sales in Opelousas, Louisiana because necessary signatures were missing from the application and the invoice was necessary to collect the appropriate sales tax. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 7. Defendant Yzaguirre asked that Plaintiff Cantu give him the title paperwork and he wrote on the Title Status Report, "increase sales price to $2,000.00 and process title. TY 06/08/01."

H.     Transaction I.D.: 0310073679915035 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork for Isauro Garza. Plaintiff Cantu responded that she had held the paperwork because

8

it was "sold for export" to Mexico and that the registration could not be processed for that reason. The vehicle must go to Mexico for registration. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 8. Defendant Yzaguirre asked for the paperwork from Plaintiff Cantu and he wrote on the Title Status Report "Sales price ok process title work TY 6/6/01."

I.   Transaction I.D.: 03100736821144746 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she was holding the title paperwork for Isauro Garza. Plaintiff Cantu responded that she did have the title paperwork and that it needed an invoice from Auto Brokers in W. Monroe, Louisiana because the bill of sale was false because the sales price was too low. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 9. Defendant Yzaguirre told Plaintiff Cantu to give him the title paperwork and he wrote on the Title Status Report, "total price will be $2,000.00 adjust tax and process title. TY 6/6/01".

J.   Transaction I.D.: 03100736837140526 which has been provided in a pleading. On November 27, 2001 at approximately 11:30 a.m., Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the paperwork on Andres Angeles. Plaintiff Cantu responded that she had and she told Defendant Yzaguirre that Enterprise Leasing had sent her a letter by Federal Express stating that they never sold the vehicle to Mr. Angeles and that they never signed the 130U Form; the Affidavit to a Fact; and the Purchase Order. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 10. Plaintiff Cantu told Defendant Yzaguirre that the Cameron County Tax Office could not process the paperwork because it contained false information and was based upon a fraudulent bill of sale and Affidavit to a Fact. Defendant Yzaguirre answered, "Is the vehicle stolen?" Plaintiff Cantu responded, "No." Defendant Yzaguirre then ordered Plaintiff Cantu to process the paperwork. Plaintiff Cantu responded to Defendant Yzaguirre, "Why should the paperwork be processed if it is wrong; it contains a fraudulent affidavit and a fraudulent purchase order?" Defendant Yzaguirre responded, "I don't care, just do it and if you don't, you know what is going to happen to you." Plaintiff Cantu asked Defendant Yzaguirre, "What was going to happen to me?" and Defendant Yzaguirre responded, "You know what is going to happen to you." Defendant Yzaguirre slammed the door to Plaintiff Cantu's office as he left. Defendant Yzaguirre was furious.

9

K.   Transaction I.D.: 03100736848112715 which has been provided in a pleading. On February 6, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Mark Garcia. Plaintiff Cantu responded that she did hold the title paperwork because it was a "sold for export" vehicle and Cameron County could not issue a vehicle registration for that reason. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 11. Defendant Yzaguirre told Plaintiff Cantu to give him the title paperwork and he wrote on the Title Status Report, "OK to release car sold already TY 2/6/02".

L.   Transaction I.D.: 03100736859151920 which has been provided in a pleading. On January 8, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Bulmaro Guzman. Plaintiff Cantu responded that she did hold the paperwork for Mr. Guzman because B&M Wholesales, a used auto dealer, was using a dealer number, P-793W, that was registered to Emerald Fleet in Collinsville, Texas. B&M Wholesales was using two different addresses for their business – one in Harlingen, Texas and the other in Corpus Christi, Texas. Plaintiff Cantu explained that B&M Wholesales did not exist in Harlingen nor in Corpus Christi. Plaintiff Cantu told Defendant Yzaguirre that they needed to do an investigation into B&M Wholesales for these reasons. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 12. Defendant Yzaguirre took the title paperwork from Plaintiff Cantu and he wrote on the Title Status Report, "OK to release TY 1/15/02 Bank called 1/8/02."

M.   Transaction I.D.: 03100368621412146 which has been provided in a pleading. On February 8, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork for Tomas C. Torres. Plaintiff Cantu responded that she had held the title paperwork because they needed an invoice from A&I Auto Sales in Brownsville, Texas because the dealer/seller was located in Houston and the buyer was located in Port Isabel. State law required that the vehicle be registered in the county where the dealer is located. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 13. Defendant Yzaguirre asked that Plaintiff Cantu give him the title paperwork and he wrote on the Title Status Report, "OK to release and issue renewal sticker TY 2/8/02."

N.   Transaction I.D.: 03120037054083537 which has been provided in a pleading. In 2001, Defendant Yzaguirre approached Plaintiff Cantu in her

10

office and asked if she held the title paperwork on Abraham Perez. Plaintiff Cantu responded that she did because the dealer, JC Motors, had unlawfully released the transfer paperwork to the customer, Abraham Perez, when the dealer is legally responsible for completing the title transfer paperwork. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 14. Defendant Yzaguirre responded to Plaintiff Cantu to "Just let it go and just do it."

O.   Transaction I.D.: 03100736878154042 which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the paperwork on Gabriel S. Carrilleja. Plaintiff Cantu responded that she did hold the title paperwork because Mr. Carrilleja needed a bill of sale from Mark Dennington of Stonewall, Louisiana because the selling price was too low. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 15. Defendant Yzaguirre responded by taking the title paperwork away from Plaintiff Cantu and he wrote in the Title Status Report "needed bill of sale ok to process the title TY 6/8/01."

P.   Transaction I.D.: 03120037278111141 which has been provided in a pleading. On January 15, 2002, Defendant Yzaguirre called Plaintiff Cantu over the telephone and asked her if she held the paperwork on Rosalinda Gutierrez. Plaintiff Cantu responded that she had because the vehicle was "sold for export" and Cameron County could not register the vehicle for that reason. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 16. Defendant Yzaguirre told Plaintiff Cantu to process the transaction and give the paperwork to the Chief Title Examiner Lupita DeLeon.

Q.   Transaction I.D.: 03100036911104513 which has been provided in a pleading. On May 22, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Leonor Lisbeth Salazar. Plaintiff Cantu responded that she had held the title paperwork for Ms. Salazar because Ms. Salazar needed an invoice from a dealer called McDaniel Brothers because all information indicated that they were not a dealer currently licensed to sell automobiles in Texas. Plaintiff Cantu also told Defendant Yzaguirre that they needed the Repossess Affidavit to be notarized before it could be processed. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 17.

11

Defendant Yzaguirre took the original paperwork. On June 8, 2001, Defendant Yzaguirre approved the paperwork.

R.   Transaction regarding Elizabeth DeLeon which has been provided in a pleading. During the first half of 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office about holding paperwork in her office on Elizabeth DeLeon. Plaintiff Cantu told Defendant Yzaguirre that she did hold paperwork in her office regarding Ms. DeLeon because Junior's Used Cars released the title paperwork to Ms. DeLeon when the dealer is legally responsible for transferring title. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 18. Defendant Yzaguirre took the paperwork from Plaintiff Cantu and made the following entry on the Title Status Report: "gave original to Enrique [Barreda] SR to give to [Barreda] JR to take care of."

S.   Transaction regarding Leticia Garcia which has been provided in a pleading. On May 23, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding paperwork on Leticia Garcia. Plaintiff Cantu responded that the vehicle was held for export only and it could not be processed for that reason. Plaintiff Cantu also told Defendant Yzaguirre that she had already faxed the paperwork to Austin to Rayna Squires [who is an investigator with the Texas Department of Transportation]. Knowledge or suspicion of any legal violations that are encountered during audits--including fraud, theft, embezzlement, forgery, or serious irregularities--must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 19. Defendant Yzaguirre took title paperwork from Plaintiff Cantu and approved it.

T.   Transaction I.D.: 03120037117141437 which has been provided in a pleading. On August 16, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she was holding the title paperwork on Santos De La Garza, Jr. Plaintiff Cantu responded that the seller's signature did not match and that the selling price was too low. Plaintiff Cantu also told Defendant Yzaguirre that the buyer also needed to bring in a bill of sale. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 20. Defendant Yzaguirre told Plaintiff Cantu to give

12

him the paperwork and he wrote on the Title Status Report: "Add $800 to selling price."

U.  Transaction regarding Rosa Maria and Alejandro Garza which has been provided in a pleading. On May 21, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she was holding the title paperwork on Rosa Maria and Alejandro Garza. Plaintiff Cantu responded that GT Motors had sold the vehicle to the Garzas since May. 16, 2000 – which was over one year ago and GT Motors had not given them title. Plaintiff Cantu told Defendant Yzaguirre that she needed to send the paperwork to Austin to Rayna Squires  because it was a Dealer Complaint.  As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 21.  Defendant Yzaguirre instructed Plaintiff Cantu to give him the paperwork and he gave it to Lupita DeLeon to process.

V.  Transaction regarding Gerardo Gonzalez which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she held the title paperwork on Gerardo Gonzalez.  Plaintiff Cantu responded that Mario Solis Auto Sales, the seller, did not have a current dealer license.  As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 22. Defendant Yzaguirre took the title paperwork away from Plaintiff Cantu and ordered that the title paperwork be processed.

W.  Transaction I.D.:0310073706916363 which has been provided in a pleading. On January 15, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why Josefa Gonzalez' title paperwork was held.  Plaintiff Cantu responded that she had been notified by B&M Wholesales, Nick Abusslah, that the signature on the title paperwork was not his – it was a fraud.  As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 23. Plaintiff Cantu told Defendant Yzaguirre that she kept the title paperwork for further investigation.  Defendant Yzaguirre took the title paperwork from Plaintiff Cantu and he wrote on the Title Status Report: "OK to release TY 1/15/02".

X.  Transaction regarding Charlene Townsend which has been provided in a pleading. On January 4, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding title paperwork for Charlene Townsend.  Plaintiff Cantu responded that she was because on July 2, 2001, Efren Coronado came to the Auto Crime Enforcement Task

13

Force and reported that Ramon Auto Sales sold him a vehicle for the price of $5,560.00. Mr. Coronado stated that he had purchased this vehicle since November 8, 2000 and that the dealer did not transfer the vehicle to his name.  On November 26, 2001, Ramon's Auto Sales came to the Tax Office to register the same vehicle in another person's name, which is Charlene Townsend.  Plaintiff Cantu stated that the paperwork was held for investigation.  As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 24. Defendant Yzaguirre took the paperwork from Plaintiff Cantu and he wrote in the Title Status Report, "ok to release TY 1/4/02."

On occasions set-out herein as A through X, Plaintiff told Defendant Yzaguirre that there was a violation of Texas law, regulations and/or by allowing these vehicle title transactions which were either fraudulent, unlawful or which did not follow State or Local policy. Plaintiff's speech in telling Defendant Yzaguirre that he was violating Texas law, regulations and/or State and Local policies by allowing these either fraudulent, unlawful or incomplete transactions is a matter of public concern because it involves misuse of Texas taxpayer money and violation of Texas laws, rules and State and Local policies.  Plaintiff Cantu's speech promoted the efficiency and the mission of the office.

Plaintiff Cantu also spoke out about Defendant Yzaguirre's unlawful practices on January 9, 2001 at approximately 9:30 a.m..  Plaintiff Cantu rejected several vehicle registration files because they did not comply with Texas law.  Defendant Yzaguirre approached Plaintiff Cantu and asked her why the files were rejected. Plaintiff Cantu responded with words to the effect that the files did not comply with Texas laws, regulations or policies.  Defendant Yzaguirre became extremely upset and ordered Plaintiff Cantu to release the transactions and that the only thing she should be concerned about is whether the vehicle was stolen – "he didn't care about the rest."  Plaintiff Cantu again told Defendant Yzaguirre that the Cameron County Tax Assessor-Collector's office and the Cameron County Automobile Crimes Enforcement Task Force were obligated to follow the law. Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force,  was violating the law in the manner that the vehicle registrations were processed is free speech protected by the First Amendment to the United States Constitution.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

On or about June 29, 2001, Defendant Yzaguirre contacted Lt. Adalberto Bennett and told him to "close the case on Omar Garza" of Cardoza Used Cars. Omar

14

Garza is one of the "friends and business associates" that Defendant Yzaguirre has accepted payments from to process fraudulent vehicle registrations.

On or about July 30, 2001, Defendant Yzaguirre ordered Plaintiff Cantu to stop faxing complaints about fraudulent vehicle registration from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division. Defendant Yzaguirre told Plaintiff that she would only be allowed to fax such a complaint if it approved it first. This is in violation of law.  Knowledge or suspicion of any legal violations that are encountered during audits–including fraud, theft, embezzlement, forgery, or serious irregularities–must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws.  These complaints that Plaintiff Cantu was faxing to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division were about fraudulent vehicle registration paperwork submitted by mostly "friends and business associates" of Defendant Yzaguirre. Plaintiff Cantu's act of faxing complaints regarding automobile registrations to the Texas Automobile Theft Prevention Authority is free speech protected by the First Amendment to the United States Constitution.  Plaintiff's speech in faxing the complaints about the fraudulent vehicle registrations from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division and telling Defendant Yzaguirre that those complaints should be faxed to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division, is speech involving a matter of public concern because it involves misuse of taxpayer money by the Cameron County Appraisal District and Defendant Yzaguirre's violation of Texas laws which are meant to prevent fraudulent vehicle titles and vehicle theft prevention.

On or about December 12, 2001, Defendant Yzaguirre removed Plaintiff Cantu from her job duties as Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force and replaced her with Lupita DeLeon. Ms. DeLeon cooperated with Defendant Yzaguirre in processing fraudulent vehicle registration payments in exchange for monetary payments.  Ms. DeLeon was given a $3,000.00/year raise to assume that position.  Plaintiff was removed from her position with the Cameron County Automobile Crimes Enforcement Task Force in retaliation for her protected speech to Defendant Yzaguirre regarding the illegalities of the manner in which he was processing vehicle registrations.  Plaintiff's speech in telling Defendant Yzaguirre that there were violations of  law, rules and policies by allowing these fraudulent and incomplete transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, rules and policies.

15

On or about December 13, 2001, Defendant Yzaguirre called Lupita DeLeon and Plaintiff Cantu into his office and told them that from that point forward, vehicle titles were not going to Plaintiff Cantu for processing through the Automobile Crimes Enforcement Task Force.  Instead, the vehicle titles were going to be given to Lupita DeLeon and Susana Castillo for processing. Defendant Yzaguirre stripped Plaintiff of her job duties in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating State and local laws, regulations and policies by accepting fraudulent and incomplete title registrations.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent and incomplete  transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, regulations and policies.

Between December 13, 2001 and May 6, 2002, Plaintiff Cantu continued telling Defendant Yzaguirre that he was not following the law regarding the processing of fraudulent vehicle registrations. Some specific examples of this protected speech is contained in paragraph 23, A-X herein.  This speech is protected pursuant to the First Amendment to the United States Constitution.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of  taxpayer money and violation of State and local laws, rules and policies.

On May 6, 2002, Plaintiff Cantu was again demoted.  This time Plaintiff Cantu was demoted  to a position as a clerk.  Plaintiff Cantu's work was highly scrutinized, unlike similarly situated employees. Defendant Yzaguirre demoted Plaintiff in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating State and local laws, rules and policies by accepting fraudulent and incomplete title registrations.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent and incomplete vehicle registration transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, regulations and policies.

On May 17, 2002, Plaintiff Cantu was terminated in retaliation for her protected speech as stated herein when she spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent and incomplete title registrations.  Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent and incomplete vehicle registration transactions.

This is what I recall at this time.  If I recall additional facts, I will supplement these disclosures and/or provide the information through deposition testimony.

16

8.    Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that on any occasion you told Defendants or any third party that Defendant Yzaguirre did any illegal, improper, or corrupt act. For each occasion of speech, give the names and addresses of all present, the date of such speech activities, and state exactly what you said.

ANSWER:    I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

During Plaintiff Cantu's employment with Defendants, she noted that Defendant Yzaguirre was violating Texas laws, regulations and policies, including, but not limited to the Texas Transportation Code Chapters 502.002 (b); 502.410 (a); Defendant Yzaguirre accepted payments to process various deficient and/or unlawful transactions which may also be in violation of Chapter 502.411(a)(2) of the Texas Transportation Code; Defendant Yzaguirre violated the Texas Administrative Code, Title 43 Transportation, Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, et seq; and the Texas Administrative Code, Title 43 Transportation, Part 1, Texas Department of Transportation, Chapter 17, Subchapter B. Specifically, Defendant Yzaguirre allowed fraudulent and deficient vehicle registration paperwork to pass through his office as a "paid" favor to friends and business associates such as Moises Torres, Enrique Barreda and Enrique Barreda, Jr.

Plaintiff Cantu served as the Titles Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force, a subdivision of the Office of the Tax Assessor-Collector of Cameron County. It was Plaintiff Cantu's job to ensure that the vehicle registration paperwork going through the Cameron County's Tax Assessor-Collector's Office was correct, complete and lawful and, if it was not, that an investigation be conducted.

In the course of Plaintiff's duties with Defendants, she was to reject vehicle registrations which did not meet legal requirements or which contained inadequate documentation. However, on several occasions, Defendant Yzaguirre "overrode" her rejections of title paperwork that did not meet legal requirements and/or did not consist of the appropriate title paperwork and, despite the fact that the vehicle registration paperwork was clearly fraudulent and/or deficient, either ordered Plaintiff Cantu to process the paperwork or took the vehicle registration paperwork from Plaintiff Cantu and had someone else process the vehicle registration paperwork. Specific examples of Plaintiff's protected speech to Defendant Yzaguirre about vehicle title registrations are as follows:

    A.    Transaction I.D.: 03110136550154532 which has been provided in a

17

pleading. In the latter part of 2000, Defendant Yzaguirre came to Plaintiff Cantu's office and asked her if she was holding a rejection for Jose L. Aguilar. Plaintiff Cantu responded that she was holding a rejection for Mr. Aguilar. Defendant Yzaguirre then inquired as to why Plaintiff Cantu rejected the title paperwork. Plaintiff Cantu responded that the vehicle was sold for export and that it could not be registered for that reason according to the law. Plaintiff Cantu continued to explain that the title was issued from the State of Louisiana and if a vehicle is sold for export, it is not to be registered in Texas. It must be registered in the Country to which it is stamped for export. Mr. Aguilar's paperwork indicated that his vehicle was to be exported Mexico. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 1. Defendant Yzaguirre said nothing more and walked out of the room. On January 8, 2001, the title was stamped rejected and sold for export by Eli Tella, an investigator within the Cameron County Auto Crime Task Force and the title was returned to Mr. Aguilar. Approximately six months later, the same vehicle presented for title registration at the Cameron County Tax Office- Vehicle Registration, but with a different title. This time the title came from Arkansas. Plaintiff Cantu instructed Julio Hernandez to hold the paperwork and set-up an appointment for the title holder to meet with either Plaintiff Cantu or one of the investigators with the Cameron County Auto Crimes Task Force. Within minutes of Plaintiff Cantu's instructions to Julio Hernandez, Defendant Yzaguirre called Plaintiff Cantu and asked her why she had instructed Mr. Hernandez to hold the title. Plaintiff Cantu explained that the title had passed through the Cameron County Auto Crimes Task Force approximately six months ago and that it had been stamped sold for export. Defendant Yzaguirre told Plaintiff Cantu that it was "none of her business" to just process the transaction.

    B.    Transaction I.D.: 03100036551135724 which has been provided in a pleading. On July 25, 2000, Defendant Yzaguirre came to Plaintiff Cantu's office and asked her if she was holding the title paperwork on Jose Angel Mireles, Jr. Plaintiff Cantu said, "Yes" and Defendant Yzaguirre asked Plaintiff Cantu, "Why?". Plaintiff Cantu responded that the vehicle was sold for export and the title may only be issued by the Country to which it was exported which was Mexico. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 2. Defendant Yzaguirre ordered Plaintiff Cantu to give him the title and Defendant Yzaguirre then processed the paperwork so that Mr. Mireles would have a Texas title for this vehicle.

18

    C.    Transaction I.D.: 03120136562114118 which has been provided in a pleading. On July 16, 2001, Defendant Yzaguirre came to Plaintiff Cantu's desk and asked her what happened to Alfonso Garcia's title paperwork. Plaintiff Cantu responded that the dealer, Charlie's Used Cars, had bought the vehicle for export only and had sold the vehicle to Mr. Garcia without his knowledge that the title was for "export only." Plaintiff Cantu also explained to Defendant Yzaguirre that she spoke with the owner of Charlie's Used Cars and told him to give Mr. Garcia his money back or to give him another vehicle. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 3. Defendant Yzaguirre ordered that the title paperwork be processed.

    D.    Transaction I.D.: 03130536684145304 which has been provided in a pleading. On January 25, 2002, Defendant Yzaguirre went to Plaintiff Cantu's office and asked her if she was holding paperwork for Gerardo Leal. Plaintiff Cantu said yes and she explained that the reason that the paperwork was being held was because a trade-in on the vehicle sale in the amount of $14,000.00 was not valid because the trade-in was in the seller's name, Ramirez Used Cars, not the buyer's name, Gerardo Leal. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 4. Defendant Yzaguirre signed the Title Status Report indicating to release the title paperwork. The false information indicated that the trade-in vehicle was owned by Mr. Leal, but in truth the trade-in vehicle was owned by Ramirez Used Cars. This is in violation of Chapter 502.410(a) of the Texas Transportation Code.

    E.    Transaction I.D.: 03120036766083710 which has been provided in a pleading. On August 30, 2001, Defendant Yzaguirre went to Plaintiff Cantu's office and asked her if she was holding paperwork for Noe Infante. Plaintiff Cantu responded that she was holding the paperwork because Mr. Infante needed an invoice from Summit Wholesalers in Katy, Texas because the dealer is supposed to register the vehicle in the county where the dealer resides and the dealer did not do that. Further, there was information scratched out and written over which is not allowed in the vehicle title paperwork according the Cameron County Office Policy. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 5. Defendant Yzaguirre wrote on the Title Status Report that the file was to be released and that a sticker was to be issued.

    F.    Transaction I.D.: 03100736788133454 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff

19

Cantu in her office. Defendant Yzaguirre asked Plaintiff Cantu if she had the paperwork on Agustin Ortiz. Plaintiff Cantu said yes and explained that there were serious discrepancies in the seller's signatures which needed to be investigated by the Cameron County Auto Crimes Task Force investigators. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 6. Defendant Yzaguirre asked for the paperwork from Plaintiff Cantu and he wrote on the Title Status Report that "title work ok process title."

    G.    Transaction I.D.: 03100736799155501 which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork on Jorge Antonio Ruvalcaba. Plaintiff Cantu responded that she had held the title paperwork because Mr. Ruvalcaba needed an invoice from Smith Sales in Opelousas, Louisiana because necessary signatures were missing from the application and the invoice was necessary to collect the appropriate sales tax. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 7. Defendant Yzaguirre asked that Plaintiff Cantu give him the title paperwork and he wrote on the Title Status Report, "increase sales price to $2,000.00 and process title. TY 06/08/01."

    H.    Transaction I.D.: 03100736799150035 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Isauro Garza. Plaintiff Cantu responded that she had held the paperwork because it was "sold for export" to Mexico and that the registration could not be processed for that reason. The vehicle must go to Mexico for registration. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 8. Defendant Yzaguirre asked for the paperwork from Plaintiff Cantu and he wrote on the Title Status Report, "Sales price ok process title work TY 6/6/01."

    I.    Transaction I.D.: 03100736821144746 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she was holding the title paperwork for Isauro Garza. Plaintiff Cantu responded that she did have the title paperwork and that it needed an invoice from Auto Brokers in W. Monroe, Louisiana because the bill of sale was false because the sales price was too low. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as

20

Exhibit 9. Defendant Yzaguirre told Plaintiff Cantu to give him the title paperwork and he wrote on the Title Status Report, "total price will be $2,000.00 adjust tax and process title. TY 6/6/01".

J.  Transaction I.D.: 03100736837140526 which has been provided in a pleading. On November 27, 2001 at approximately 11:30 a.m., Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the paperwork on Andres Angeles. Plaintiff Cantu responded that she had and she told Defendant Yzaguirre that Enterprise Leasing had sent her a letter by Federal Express stating that they never sold the vehicle to Mr. Angeles and that they never signed the 130U Form; the Affidavit to a Fact; and the Purchase Order. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 10. Plaintiff Cantu told Defendant Yzaguirre that the Cameron County Tax Office could not process the paperwork because it contained false information and was based upon a fraudulent bill of sale and Affidavit to a Fact. Defendant Yzaguirre answered, "Is the vehicle stolen?" Plaintiff Cantu responded, "No." Defendant Yzaguirre then ordered Plaintiff Cantu to process the paperwork. Plaintiff Cantu responded to Defendant Yzaguirre, "Why should the paperwork be processed if it is wrong; it contains a fraudulent affidavit and a fraudulent purchase order?" Defendant Yzaguirre responded, "I don't care, just do it and if you don't, you know what is going to happen to you." Plaintiff Cantu asked Defendant Yzaguirre, "What was going to happen to me?" and Defendant Yzaguirre responded, "You know what is going to happen to you." Plaintiff Cantu slammed the door to Plaintiff Cantu's office as he left. Defendant Yzaguirre was furious.

K.  Transaction I.D.: 03100736848112715 which has been provided in a pleading. On February 6, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork because it was a "sold for export" vehicle and Cameron County could not issue a vehicle registration for that reason. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 11 Defendant Yzaguirre told Plaintiff Cantu to give him the title paperwork and he wrote on the Title Status Report, "OK to release car sold already TY 2/6/02".

L.  Transaction I.D.: 03100736859151920 which has been provided in a pleading. On January 8, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Bulmaro Guzman. Plaintiff Cantu responded that she did hold the paperwork for Mr. Guzman because B&M Wholesales, a used auto dealer,

was using a dealer number, P-793W, that was registered to Emerald Fleet in Collinsville, Texas. B&M Wholesales was using two different addresses for their business – one in Harlingen, Texas and the other in Corpus Christi, Texas. Plaintiff Cantu explained that B&M Wholesales did not exist in Harlingen nor in Corpus Christi. Plaintiff Cantu told Defendant Yzaguirre that they needed to do an investigation into B&M Wholesales for these reasons. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 12. Defendant Yzaguirre took the title paperwork from Plaintiff Cantu and he wrote on the Title Status Report, "OK to release TY 1/15/02 Bank called 1/8/02."

M.  Transaction I.D.: 03100036862141246 which has been provided in a pleading. On February 8, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork for Tomas C. Torres. Plaintiff Cantu responded that she had held the title paperwork because they needed an invoice from A&1 Auto Sales in Brownsville, Texas because the dealer/seller was located in Houston and the buyer was located in Port Isabel. State law required that the vehicle be registered in the county where the dealer is located. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 13. Defendant Yzaguirre asked that Plaintiff Cantu give him the title paperwork and he wrote on the Title Status Report. "OK to release and issue renewal sticker TY 2/8/02."

N.  Transaction I.D.: 03120037054083537 which has been provided in a pleading. In 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork on Abraham Perez. Plaintiff Cantu responded that she did because the dealer, JC Motors, had unlawfully released the transfer paperwork to the customer, Abraham Perez, when the dealer is legally responsible for completing the title transfer paperwork. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 14. Defendant Yzaguirre responded to Plaintiff Cantu to "Just let it go and just do it."

O.  Transaction I.D.: 03100736878154042 which has been provided in a pleading. On May 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the paperwork on Gabriel S. Carrilleja. Plaintiff Cantu responded that she did hold the title paperwork because Mr. Carrilleja needed a bill of sale from Stonewall, Louisiana because the selling price was too low. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle

registration paperwork which is attached hereto as Exhibit 15. Defendant Yzaguirre responded by taking the title paperwork away from Plaintiff Cantu and he wrote in the Title Status Report "needed bill of sale ok to process the title TY 6/8/01".

P.  Transaction I.D.: 03120037278111141 which has been provided in a pleading. On January 15, 2002, Defendant Yzaguirre called Plaintiff Cantu over the telephone and asked her if she held the paperwork on Rosalinda Gutierrez. Plaintiff Cantu responded that she had because the vehicle was "sold for export" and Cameron County could not register the vehicle for that reason. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 16. Defendant Yzaguirre told Plaintiff Cantu to process the transaction and give the paperwork to the Chief Title Examiner Lupita DeLeon.

Q.  Transaction I.D.: 03100036911104513 which has been provided in a pleading. On May 22, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Leonor Lisbeth Salazar. Plaintiff Cantu responded that she had held the title paperwork for Ms. Salazar because Ms. Salazar needed an invoice from a dealer called McDaniel Brothers because all information indicated that they were not a dealer currently licensed to sell automobiles in Texas. Plaintiff Cantu also told Defendant Yzaguirre that they needed the Repossess Affidavit to be notarized before it could be processed. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 17. Defendant Yzaguirre took the original paperwork. On June 8, 2001, Defendant Yzaguirre approved the paperwork.

R.  Transaction regarding Elizabeth DeLeon which has been provided in a pleading. During the first half of 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office about holding paperwork in her office on Elizabeth DeLeon. Plaintiff Cantu told Defendant Yzaguirre that she did hold paperwork in her office regarding Ms. DeLeon because Junior's Used Cars released the title paperwork to Ms. DeLeon when the dealer is legally responsible for transferring title. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 18. Defendant Yzaguirre took the paperwork from Plaintiff Cantu and made the following entry on the Title Status Report: "gave original to Enrique [Barreda] SR to give to [Barreda] JR to take care of."

S.  Transaction regarding Leticia Garcia which has been provided in a pleading. On May 23, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding paperwork on Leticia Garcia. Plaintiff Cantu responded that the vehicle was sold for export only and it could not be processed for that reason. Plaintiff Cantu also told Defendant Yzaguirre that she had already faxed the paperwork to Austin to Rayna Squires [who is an investigator with the Texas Department of Transportation]. Knowledge or suspicion of any legal violations that are encountered during audits--including fraud, theft, embezzlement, forgery, or serious irregularities--must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 19. Defendant Yzaguirre took title paperwork from Plaintiff Cantu and approved it.

T.  Transaction I.D.: 03120037117141437 which has been provided in a pleading. On August 16, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she was holding the title paperwork on Santos DeLa Garza, Jr. Plaintiff Cantu responded that the seller's signature did not match and that the selling price was too low. Plaintiff Cantu also told Defendant Yzaguirre that the buyer also needed to bring in a bill of sale. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 20. Defendant Yzaguirre told Plaintiff Cantu to give him the paperwork and he wrote on the Title Status Report: "Add $800 to selling price."

U.  Transaction regarding Rosa Maria and Alejandro Garza which has been provided in a pleading. On May 21, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she was holding the title paperwork on Rosa Maria and Alejandro Garza. Plaintiff Cantu responded that GT Motors had sold the vehicle to the Garza since May 16, 2000 – which was over one year ago and GT Motors had not given them title. Plaintiff Cantu told Defendant Yzaguirre that she needed to send the paperwork to Austin to Rayna Squires because it was a Dealer Complaint. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 21. Defendant Yzaguirre instructed Plaintiff Cantu to give him the paperwork and he gave it to Lupita DeLeon to process.

21

22

23

24

V.  Transaction regarding Gerardo Gonzalez which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she held the title paperwork on Gerardo Gonzalez. Plaintiff Cantu responded that Mario Solis Auto Sales, the seller, did not have a current dealer license. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 22. Defendant Yzaguirre took the title paperwork away from Plaintiff Cantu and ordered that the title paperwork be processed.

W.  Transaction I.D.:031007370691636353 which has been provided in a pleading. On January 15, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why her Josefa Gonzalez' title paperwork was held. Plaintiff Cantu responded that she had been notified by B&M Wholesales, Nick Abusalah, that the signature on the title paperwork was not his – it was a fraud. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 23. Plaintiff Cantu told Defendant Yzaguirre that she kept the title paperwork for further investigation. Defendant Yzaguirre took the title paperwork from Plaintiff Cantu and he wrote on the Title Status Report: "OK to release TY 1/15/02".

X.  Transaction regarding Charlene Townsend which has been provided in a pleading. On January 4, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding title paperwork for Charlene Townsend. Plaintiff Cantu responded that she was because on July 2, 2001, Efren Coronado came to Auto Crime Enforcement Task Force and reported that Ramon Auto Sales sold him a vehicle for the price of $5,560.00. Mr. Coronado stated that he had purchased this vehicle since November 8, 2000 and that the dealer did not transfer the vehicle to his name. On November 26, 2001, Ramon's Auto Sales came to the Tax Office to register the same vehicle in another person's name, which is Charlene Townsend. Plaintiff Cantu stated that the paperwork was held for investigation. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 24. Defendant Yzaguirre took the paperwork from Plaintiff Cantu and he wrote in the Title Status Report, "ok to release TY 1/4/02."

On occasions set-out herein as A through X, Plaintiff told Defendant Yzaguirre that there was a violation of Texas law, regulations and/or policies by allowing these vehicle title transactions which were either fraudulent, unlawful or which did not follow State or Local policy. Plaintiff's speech in telling Defendant

25

Yzaguirre that he was violating Texas law, regulations and/or State and Local policies by allowing these either fraudulent, unlawful or incomplete transactions is a matter of public concern because it involves misuse of Texas taxpayer money and violation of Texas laws, rules and State and Local policies. Plaintiff Cantu's speech promoted the efficiency and the mission of the office.

Plaintiff Cantu also spoke out about Defendant Yzaguirre's unlawful practices on January 9, 2001 at approximately 9:30 a.m.. Plaintiff Cantu rejected several vehicle registration files because they did not comply with Texas law. Defendant Yzaguirre approached Plaintiff Cantu and asked her why the files were rejected. Plaintiff Cantu responded with words to the effect that the files did not comply with Texas laws, regulations or policies. Defendant Yzaguirre became extremely upset and ordered Plaintiff Cantu to release the transactions and that the only thing she should be concerned about is whether the vehicle was stolen – "he didn't care about the rest." Plaintiff Cantu again told Defendant Yzaguirre that the Cameron County Tax Assessor-Collector's office and the Cameron County Automobile Crimes Enforcement Task Force were obligated to follow the law. Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law in the manner that the vehicle registrations were processed is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

On or about June 29, 2001, Defendant Yzaguirre contacted Lt. Adalberto Bennett and told him to "close the case on Omar Garza" of Cardoza Used Cars. Omar Garza is one of the "friends and business associates" that Defendant Yzaguirre has accepted payments to process fraudulent vehicle registrations.

On or about July 30, 2001, Defendant Yzaguirre ordered Plaintiff Cantu to stop faxing complaints about fraudulent vehicle registration from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division. Defendant Yzaguirre told Plaintiff that she would only be allowed to fax such a complaint if he approved it first. This is in violation of law. Knowledge or suspicion of any legal violations that are encountered during audits—including fraud, theft, embezzlement, forgery, or serious irregularities—must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws. These complaints that Plaintiff Cantu was faxing to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division were about fraudulent vehicle registration paperwork submitted by

26

mostly "friends and business associates" of Defendant Yzaguirre. Plaintiff Cantu's act of faxing complaints regarding automobile registrations to the Texas Automobile Theft Prevention Authority is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in faxing the complaints about the fraudulent vehicle registrations from automobile dealers to the Texas Department of Transportation that those complaints should be faxed to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division, is speech involving a matter of public concern because it involves misuse of taxpayer money by the Cameron County Appraisal District and Defendant Yzaguirre's violation of Texas laws which are meant to prevent fraudulent vehicle titles and vehicle theft prevention.

On or about December 12, 2001, Defendant Yzaguirre removed Plaintiff Cantu from her job duties as Titles and Registration Examiner for the Cameron County Automobile Crimes Enforcement Task Force and replaced her with Lupita DeLeon. Ms. DeLeon cooperated with Defendant Yzaguirre in processing fraudulent vehicle registration paperwork in exchange for monetary payments. Ms. DeLeon was given a $3,000.00/year raise to assume that position. Plaintiff was removed from her position with the Cameron County Automobile Crimes Enforcement Task Force in retaliation for her protected speech to Defendant Yzaguirre regarding the illegalities of the manner in which he was processing vehicle registrations. Plaintiff's speech in telling Defendant Yzaguirre that there were violations of law, rules and policies by allowing these fraudulent and incomplete transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, rules and policies.

On or about December 13, 2001, Defendant Yzaguirre called Lupita DeLeon and Plaintiff Cantu into his office and told them that from that point forward, vehicle titles were not going to Plaintiff Cantu for processing through the Automobile Crimes Enforcement Task Force. Instead, the vehicle titles were going to be given to Lupita DeLeon and Susana Castillo for processing. Defendant Yzaguirre stripped Plaintiff of her job duties in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating State and local laws, regulations and policies by accepting fraudulent and incomplete title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent and incomplete transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, regulations and policies.

Between December 13, 2001 and May 6, 2002, Plaintiff Cantu continued telling Defendant Yzaguirre that he was not following the law regarding the processing of fraudulent vehicle registrations. Some specific examples of this protected

27

speech is contained in paragraph 23, A-X herein. This speech is protected pursuant to the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, rules and policies.

On May 6, 2002, Plaintiff Cantu was again demoted. This time Plaintiff Cantu was demoted to a position as a clerk. Plaintiff Cantu's work was highly scrutinized, unlike similarly situated employees. Defendant Yzaguirre demoted Plaintiff in retaliation for her protected speech wherein she spoke out about the fact that Defendant Yzaguirre was violating State and local laws, rules and policies by accepting fraudulent and incomplete title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent and incomplete vehicle registration transactions is a matter of public concern because it involves misuse of taxpayer money and violation of State and local laws, regulations and policies.

On May 17, 2002, Plaintiff Cantu was terminated in retaliation for her protected speech as stated herein when she spoke out in opposition to the fact that Defendant Yzaguirre was violating Texas law by accepting fraudulent and incomplete title registrations. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these fraudulent and incomplete vehicle registration transactions.

This is what I recall at this time, if I recall additional information, I will supplement this interrogatory and/or provide the information in deposition testimony.

9.  Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that you made complaints to the Texas Department of Transportation or any other law enforcement agency concerning any complaint about Defendant Yzaguirre's acts or omissions. For each occasion, give the names and addresses the persons to whom Plaintiff Cantu complained, the date of such speech activities, and state exactly what you said.

ANSWER:  I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

Transaction regarding Leticia Garcia which has been provided in a pleading. On May 23, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding paperwork on Leticia Garcia. Plaintiff Cantu responded that she

28

vehicle was sold for export only and it could not be processed for that reason. Plaintiff Cantu also told Defendant Yzaguirre that she had already faxed the paperwork to Austin to Rayna Squires [who is an investigator with the Texas Department of Transportation]. Knowledge or suspicion of any legal violations that are encountered during audits–including fraud, theft, embezzlement, forgery, or serious irregularities–must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 19. Defendant Yzaguirre took title paperwork from Plaintiff Cantu and approved it.

On or about July 30, 2001, Defendant Yzaguirre ordered Plaintiff Cantu to stop faxing complaints about fraudulent vehicle registration from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division. Defendant Yzaguirre told Plaintiff that she would only be allowed to fax such a complaint if he approved it first. This is in violation of law. Knowledge or suspicion of any legal violations that are encountered during audits–including fraud, theft, embezzlement, forgery, or serious irregularities–must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws. These complaints that Plaintiff Cantu was faxing to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division were about fraudulent vehicle registration paperwork submitted by mostly "friends and business associates" of Defendant Yzaguirre. Plaintiff Cantu's act of faxing complaints regarding automobile registrations to the Texas Automobile Theft Prevention Authority is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in faxing the complaints about the fraudulent vehicle registrations from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division and telling Defendant Yzaguirre that those complaints should be faxed to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division, is speech involving a matter of public concern because it involves misuse of taxpayer money by the Cameron County Appraisal District and Defendant Yzaguirre's violation of Texas laws which are meant to prevent fraudulent vehicle titles and vehicle theft prevention.

This is what I recall at this time. If I recall additional information, I will supplement this interrogatory and/or I will provide this information during deposition testimony.

29

10.   Please state and describe your legal contentions and the factual basis for those contentions pertaining to your claim that you were part of any association to speak out about alleged improprieties, encourage others to do so, or discuss same. Describe when and how the association began and who were its members.

ANSWER:   I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

Plaintiffs Cantu, Munoz and Weaver closely associated with each other in the performance of their duties for Defendant. The adverse actions taken against Plaintiffs Cantu, Munoz and Weaver were also taken against them because of their close association with each other in speaking out against Defendant Yzaguirre's unlawful actions in the processing of vehicle title registrations.

11.   Identify specifically each vehicle registration, title transfer application, or title application you claim was fraudulent or improper that should have been rejected or questioned. For each instances, describe the reasons it was fraudulent or improper, the persons involved in the underlying sale or transfer, and how Defendant Yzaguirre knew of the alleged fraud or impropriety.

ANSWER:   I cannot recall every specific fraudulent or improper transaction that I witnessed while working for Defendants. I have identified as many as I can in the 7a Reply. I incorporate by reference as if full set-out herein, the paragraphs which pertain to me in Plaintiffs' live pleading and in all 7a Replys. These pleadings are detailed and explain the basis of my claims.

Those specific incidents that I recall at this time are:

A.   Transaction I.D.: 03110136550154532 which has been provided in a pleading. In the latter part of 2000, Defendant Yzaguirre came to Plaintiff Cantu's office and asked her if she was holding a rejection for Jose L. Auguilar. Plaintiff Cantu responded that she was holding a rejection for Mr. Auguilar. Defendant Yzaguirre then inquired as to why Plaintiff Cantu rejected the title paperwork. Plaintiff Cantu responded that the vehicle was sold for export and that it could not be registered for that reason according to the law. Plaintiff Cantu continued to explain that the title was issued from the State of Louisiana and if a vehicle is sold for export, it is not to be registered in Texas, it must be registered in the Country to which it is stamped for export. Mr. Auguilar's paperwork indicated that his vehicle was to be exported Mexico. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 1. Defendant Yzaguirre said nothing

30

more and walked out of the room. On January 8, 2001, the title was stamped rejected and sold for export by Eli Tella, an investigator within the Cameron County Auto Crime Task Force and the title was returned to Mr. Aguilar. Approximately six months later, the same vehicle presented for title registration at the Cameron County Tax Office- Vehicle Registration, but with a different title. This time the title came from Arkansas. Plaintiff Cantu instructed Julio Hernandez to hold the paperwork and set-up an appointment for the title holder to meet with either Plaintiff Cantu or one of the investigators with the Cameron County Auto Crimes Task Force. Within minutes of Plaintiff Cantu's instructions to Julio Hernandez, Defendant Yzaguirre called Plaintiff Cantu and asked her why she had instructed Mr. Hernandez to hold the title. Plaintiff Cantu explained that the title had passed through the Cameron County Auto Crimes Task Force approximately six months ago and that it had been stamped sold for export. Defendant Yzaguirre told Plaintiff Cantu that it was "none of her business" to just process the transaction.

B.   Transaction I.D.: 03100036550135724 which has been provided in a pleading. On July 25, 2000, Defendant Yzaguirre came to Plaintiff Cantu's office and asked her if she was holding the title paperwork on Jose Angel Mireles, Jr. Plaintiff Cantu said, "Yes" and Defendant Yzaguirre asked Plaintiff Cantu, "Why?". Plaintiff Cantu responded that the vehicle was sold for export and that the title may only be issued by the Country to which it was exported which was Mexico. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 2. Defendant Yzaguirre ordered Plaintiff Cantu to give him the title and Defendant Yzaguirre then processed the paperwork so that Mr. Mireles would have a Texas title for this vehicle.

C.   Transaction I.D.: 03120136562114118 which has been provided in a pleading. On July 16, 2001, Defendant Yzaguirre came to Plaintiff Cantu's desk and asked her what happened to Alfonso Garcia's title paperwork. Plaintiff Cantu responded that the dealer, Charlie's Used Cars, had bought the vehicle for export only and had sold the vehicle to Mr. Garcia without his knowledge that the title was for "export only." Plaintiff Cantu also explained to Defendant Yzaguirre that she spoke with the owner of Charlie's Used Cars and told him to give Mr. Garcia his money back or to give him another vehicle. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 3. Defendant Yzaguirre ordered that the title paperwork be processed.

31

D.   Transaction I.D.: 03130536684145304 which has been provided in a pleading. On January 25, 2002, Defendant Yzaguirre went to Plaintiff Cantu's office and asked her if she was holding paperwork for Gerardo Leal. Plaintiff Cantu said yes and she explained that the reason that the paperwork was being held was because a trade-in credit on the vehicle sale in the amount of $14,000.00 was not valid because the trade-in vehicle was in the seller's name, Ramirez Used Cars, not the buyer's name, Gerardo Leal. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 4. Defendant Yzaguirre signed the Title Status Report indicating to release the title paperwork. The false information indicated that the trade-in vehicle was owned by Mr. Leal, but in truth the trade-in vehicle was owned by Ramirez Used Cars. This is in violation of Chapter 502.410(a) of the Texas Transportation Code.

E.   Transaction I.D.: 03120036766083710 which has been provided in a pleading. On August 30, 2001, Defendant Yzaguirre went to Plaintiff Cantu's office and asked her if she was holding paperwork for Noe Infante. Plaintiff Cantu responded that she was holding the paperwork because Mr. Infante needed an invoice from Summitt Wholesalers in Katy, Texas because the dealer is supposed to register the vehicle in the county where the dealer resides and the dealer did not do that. Further, there was information scratched out and written over which is not allowed in the vehicle title paperwork according the Cameron County Office Policy. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 5. Defendant Yzaguirre wrote on the Title Status Report that the file was to be released and that a sticker was to be issued.

F.   Transaction I.D.: 03100736788133454 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office. Defendant Yzaguirre asked Plaintiff Cantu if she had the paperwork on Agustin Ortiz. Plaintiff Cantu said yes and explained that there were serious discrepancies in the seller's signatures which needed to be investigated by the Cameron County Auto Crimes Task Force investigators. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 6. Defendant Yzaguirre asked for the paperwork from Plaintiff Cantu and he wrote on the Title Status Report that "title work ok process title."

G.   Transaction I.D.: 03100736799155501 which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork on Jorge

32

Antonio Ruvalcaba. Plaintiff Cantu responded that she had held the title paperwork because Mr. Ruvalcaba needed an invoice from Smith Sales in Opelousas, Louisiana because necessary signatures were missing from the application and the invoice was necessary to collect the appropriate sales tax. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 7. Defendant Yzaguirre asked that Plaintiff Cantu give him the title paperwork and he wrote on the Title Status Report, "increase sales price to $2,000.00 and process title. TY 06/08/01."

H.    Transaction I.D.: 0310073679915035 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork for Isauro Garza. Plaintiff Cantu responded that she had held the paperwork because it was "sold for export" to Mexico and that the registration could not be processed for that reason. The vehicle must go to Mexico for registration. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 8. Defendant Yzaguirre asked for the paperwork from Plaintiff Cantu and he wrote on the Title Status Report "Sales price ok process title work TY 6/6/01."

I.    Transaction I.D.: 0310073682114746 which has been provided in a pleading. On June 6, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she was holding the title paperwork for Isauro Garza. Plaintiff Cantu responded that she did have the title paperwork and that it needed an invoice from Auto Brokers in W. Monroe, Louisiana because the bill of sale was false because the sales price was too low. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 9. Defendant Yzaguirre told Plaintiff Cantu to give him the title paperwork and he wrote on the Title Status Report, "total price will be $2,000.00 adjust tax and process title. TY 6/6/01".

J.    Transaction I.D.: 0310073683714052G which has been provided in a pleading. On November 27, 2001 at approximately 11:30 a.m., Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the paperwork on Andres Angeles. Plaintiff Cantu responded that she had and she told Defendant Yzaguirre that Enterprise Leasing had sent her a letter by Federal Express stating that they never sold the vehicle to Mr. Angeles and that they never signed the 130U Form; the Affidavit to a Fact; and the Purchase Order. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is

33

attached hereto as Exhibit 10. Plaintiff Cantu told Defendant Yzaguirre that the Cameron County Tax Office could not process the paperwork because it contained false information and was based upon a fraudulent bill of sale and Affidavit to a Fact. Defendant Yzaguirre answered, "Is the vehicle stolen?" Plaintiff Cantu responded, "No." Defendant Yzaguirre then ordered Plaintiff Cantu to process the paperwork. Plaintiff Cantu responded to Defendant Yzaguirre, "Why should the paperwork be processed if it is wrong; it contains a fraudulent affidavit and a fraudulent purchase order?" Defendant Yzaguirre responded, "I don't care, just do it and if you don't, you know what is going to happen to you." Plaintiff Cantu asked Defendant Yzaguirre, "What was going to happen to me?" and Defendant Yzaguirre responded, "You know what is going to happen to you." Defendant Yzaguirre slammed the door to Plaintiff Cantu's office as he left. Defendant Yzaguirre was furious.

K.    Transaction I.D.: 0310073684811271S which has been provided in a pleading. On February 6, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Mark Garcia. Plaintiff Cantu responded that she did hold the title paperwork because it was a "sold for export" vehicle and Cameron County could not issue a vehicle registration for that reason. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 11. Defendant Yzaguirre told Plaintiff Cantu to give him the title paperwork and he wrote on the Title Status Report, "OK to release car sold already TY 2/6/02".

L.    Transaction I.D.: 0310073685915192O which has been provided in a pleading. On January 8, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Bulmaro Guzman. Plaintiff Cantu responded that she did hold the paperwork for Mr. Guzman because B&M Wholesales, a used auto dealer, was using a dealer number, P-793W, that was registered to Emerald Fleet in Collinsville, Texas. B&M Wholesales was using two different addresses for their business – one in Harlingen, Texas and the other in Corpus Christi, Texas. Plaintiff Cantu explained that B&M Wholesales did not exist in Harlingen nor in Corpus Christi. Plaintiff Cantu told Defendant Yzaguirre that they needed to do an investigation into B&M Wholesales for these reasons. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 12. Defendant Yzaguirre took the title paperwork from Plaintiff Cantu and he wrote on the Title Status Report, "OK to release TY 1/15/02 Bank called 1/8/02."

M.    Transaction I.D.: 0310003686214124G which has been provided in a

34

pleading. On February 8, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork for Tomas C. Torres. Plaintiff Cantu responded that she had held the title paperwork because they needed an invoice from A&I Auto Sales in Brownsville, Texas because the dealer/seller was located in Houston and the buyer was located in Port Isabel. State law required that the vehicle be registered in the county where the dealer is located. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 13. Defendant Yzaguirre asked that Plaintiff Cantu give him the title paperwork and he wrote on the Title Status Report, "OK to release and issue renewal sticker TY 2/8/02."

N.    Transaction I.D.: 0312003705408353T which has been provided in a pleading. In 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked if she held the title paperwork for Abraham Perez. Plaintiff Cantu responded that she did because the dealer, JC Motors, had unlawfully released the transfer paperwork to the customer, Abraham Perez, when the dealer is legally responsible for completing the title transfer paperwork. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 14. Defendant Yzaguirre responded to Plaintiff Cantu to "Just let it go and just do it."

O.    Transaction I.D.: 0310073687815404Z which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the paperwork on Gabriel S. Carrilleja. Plaintiff Cantu responded that she did hold the title paperwork because Mr. Carrilleja needed a bill of sale from Mark Dennington of Stonewall, Louisiana because the selling price was too low. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 15. Defendant Yzaguirre responded by taking the title paperwork away from Plaintiff Cantu and he wrote in the Title Status Report "needed bill of sale ok to process the title TY 6/8/01."

P.    Transaction I.D.: 0312003727811114I which has been provided in a pleading. On January 15, 2002, Defendant Yzaguirre called Plaintiff Cantu over the telephone and asked her if she held the paperwork on Rosalinda Gutierrez. Plaintiff Cantu responded that she had because the vehicle was "sold for export" and Cameron County could not register the vehicle for that reason. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 16. Defendant Yzaguirre told Plaintiff Cantu to process the

35

transaction and give the paperwork to the Chief Title Examiner Lupita DeLeon.

Q.    Transaction I.D.: 0310003691110451S which has been provided in a pleading. On May 22, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she held the title paperwork for Leonor Lisbeth Salazar. Plaintiff Cantu responded that she held the title paperwork for Ms. Salazar because Ms. Salazar needed an invoice from a dealer called McDaniel Brothers because all information indicated that they were not a dealer currently licensed to sell automobiles in Texas. Plaintiff Cantu also told Defendant Yzaguirre that they needed the Repossess Affidavit to be notarized before it could be processed. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 17. Defendant Yzaguirre took the original paperwork. On June 8, 2001, Defendant Yzaguirre approved the paperwork.

R.    Transaction regarding Elizabeth DeLeon which has been provided in a pleading. During the first half of 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office about holding paperwork in her office on Elizabeth DeLeon. Plaintiff Cantu told Defendant Yzaguirre that she did hold paperwork in her office regarding Ms. DeLeon because Junior's Used Cars released the title paperwork to Ms. DeLeon when the dealer is legally responsible for transferring title. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 18. Defendant Yzaguirre took the paperwork from Plaintiff Cantu and made the following entry on the Title Status Report: "gave original to Enrique [Barreda] SR to give to [Barreda] JR to take care of."

S.    Transaction regarding Leticia Garcia which has been provided in a pleading. On May 23, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding paperwork on Leticia Garcia. Plaintiff Cantu responded that the vehicle was sold for export only and it could not be processed for that reason. Plaintiff Cantu also told Defendant Yzaguirre that she had already faxed the paperwork to Austin to Rayna Squires [who is an investigator with the Texas Department of Transportation]. Knowledge or suspicion of any legal violations that are encountered during audits--including fraud, theft, embezzlement, forgery, or serious irregularities--must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of

36

Laws. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 19. Defendant Yzaguirre took title paperwork from Plaintiff Cantu and approved it.

T.  Transaction I.D.: 0312003717141437 which has been provided in a pleading. On August 16, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she was holding the title paperwork on Santos DeLa Garza, Jr. Plaintiff Cantu responded that the seller's signature did not match and that the selling price was too low. Plaintiff Cantu also told Defendant Yzaguirre that the buyer also needed to bring in a bill of sale. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 20. Defendant Yzaguirre told Plaintiff Cantu to give him the paperwork and he wrote on the Title Status Report: "Add $800 to selling price."

U.  Transaction regarding Rosa Maria and Alejandro Garza which has been provided in a pleading. On May 21, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she was holding the title paperwork on Rosa Maria and Alejandro Garza. Plaintiff Cantu responded that GT Motors had sold the vehicle to the Garzas since May, 16, 2000 – which was over one year ago and GT Motors had not given them title. Plaintiff Cantu told Defendant Yzaguirre that she needed to send the paperwork to Austin to Rayna Squires because it was a Dealer Complaint. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 21. Defendant Yzaguirre instructed Plaintiff Cantu to give him the paperwork and he gave it to Lupita DeLeon to process.

V.  Transaction regarding Gerardo Gonzalez which has been provided in a pleading. On June 8, 2001, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why she held the title paperwork on Gerardo Gonzalez. Plaintiff Cantu responded that Mario Solis Auto Sales, the seller, did not have a current dealer license. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 22. Defendant Yzaguirre took the title paperwork away from Plaintiff Cantu and ordered that the title paperwork be processed.

W.  Transaction I.D.:0310073706916365S which has been provided in a pleading. On January 15, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her why Josefa Gonzalez' title paperwork

37

was held. Plaintiff Cantu responded that she had been notified by B&M Wholesales, Nick Abusalah, that the signature on the title paperwork was not his – it was a fraud. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 23. Plaintiff Cantu told Defendant Yzaguirre that she kept the title paperwork for further investigation. Defendant Yzaguirre took the title paperwork from Plaintiff Cantu and he wrote on the Title Status Report: "OK to release TY 1/15/02".

X.  Transaction regarding Charlene Townsend which has been provided in a pleading. On January 4, 2002, Defendant Yzaguirre approached Plaintiff Cantu in her office and asked her if she was holding title paperwork for Charlene Townsend. Plaintiff Cantu responded that she was because on July 2, 2001, Efren Coronado came to the Auto Crime Enforcement Task Force and reported that Ramon Auto Sales sold him a vehicle for the price of $5,560.00. Mr. Coronado stated that he had purchased this vehicle since November 8, 2000 and that the dealer did not transfer the vehicle to his name. On November 26, 2001, Ramon's Auto Sales came to the Tax Office to register the same vehicle in another person's name, which is Charlene Townsend. Plaintiff Cantu stated that the paperwork was held for investigation. As Plaintiff gave this explanation to Defendant Yzaguirre, she showed him the vehicle registration paperwork which is attached hereto as Exhibit 24. Defendant Yzaguirre took the paperwork from Plaintiff Cantu and he wrote in the Title Status Report, "ok to release TY 1/4/02."

On occasions set-out herein as A through X, Plaintiff told Defendant Yzaguirre that there was a violation of Texas law, regulations and/or policies by allowing these vehicle title transactions which were either fraudulent, unlawful or which did not follow State or Local policy. Plaintiff's speech in telling Defendant Yzaguirre that he was violating Texas law, regulations and/or State and Local policies by allowing these either fraudulent, unlawful or incomplete transactions is a matter of public concern because it involves misuse of Texas taxpayer money and violation of Texas laws, rules and State and Local policies. Plaintiff Cantu's speech promoted the efficiency and the mission of the office.

Plaintiff Cantu also spoke out about Defendant Yzaguirre's unlawful practices on January 9, 2001 at approximately 9:30 a.m.. Plaintiff Cantu rejected several vehicle registration files because they did not comply with Texas law. Defendant Yzaguirre approached Plaintiff Cantu and asked her why the files were rejected. Plaintiff Cantu responded with words to the effect that the files did not comply with Texas laws, regulations or policies. Defendant Yzaguirre became extremely upset and ordered Plaintiff Cantu to release the transactions and that the only thing

38

she should be concerned about is whether the vehicle was stolen – "he didn't care about the rest." Plaintiff Cantu again told Defendant Yzaguirre that the Cameron County Tax Assessor-Collector's office and the Cameron County Automobile Crimes Enforcement Task Force were obligated to follow the law. Plaintiff Cantu's act of telling Defendant Yzaguirre that he, as Tax Assessor-Collector of Cameron County and Director, Cameron County Automobile Crimes Enforcement Task force, was violating the law in the manner that the vehicle registrations were processed is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in telling Defendant Yzaguirre that he was violating the law by allowing these transactions is a matter of public concern because it involves misuse of taxpayer money and violation of Texas laws.

On or about June 29, 2001, Defendant Yzaguirre contacted Lt. Adalberto Bennett and told him to "close the case on Omar Garza" of Cardoza Used Cars. Omar Garza is one of the "friends and business associates" that Defendant Yzaguirre has accepted payments from to process fraudulent vehicle registrations.

On or about July 30, 2001, Defendant Yzaguirre ordered Plaintiff Cantu to stop faxing complaints about fraudulent vehicle registration from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division. Defendant Yzaguirre told Plaintiff that she would only be allowed to fax such a complaint if he approved it first. This is in violation of law. Knowledge or suspicion of any legal violations that are encountered during audits--including fraud, theft, embezzlement, forgery, or serious irregularities--must be communicated in writing to the Texas Department of Transportation upon discovery. Title 43 Transportation Part 3 Automobile Theft Prevention Authority, Chapter 57 Automobile Theft Prevention Authority, Rule §57.41 Known or Suspected Violations of Laws. These complaints that Plaintiff Cantu was faxing to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division were about fraudulent vehicle registration paperwork submitted by mostly "friends and business associates" of Defendant Yzaguirre. Plaintiff Cantu's act of faxing complaints regarding automobile registrations to the Texas Automobile Theft Prevention Authority is free speech protected by the First Amendment to the United States Constitution. Plaintiff's speech in faxing the complaints about the fraudulent vehicle registrations from automobile dealers to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division and telling Defendant Yzaguirre that those complaints should be faxed to the Texas Department of Transportation, Texas Motor Vehicle Enforcement Division, is speech involving a matter of public concern because it involves misuse of taxpayer money by the Cameron County Appraisal District and Defendant Yzaguirre's violation of Texas laws which are meant to prevent fraudulent vehicle titles and vehicle theft prevention.

39

If I recall additional specific incidents, I will supplement these interrogatories and/or provide the information during deposition testimony.

12.  For each person identified by you in your disclosures, provide a description of the relevant facts known to that person.

ANSWER:
13.  Please give the name, address and telephone number of each person with knowledge of relevant facts who has given a witness statement.

ANSWER:  No person with knowledge of relevant facts has given a witness statement to my attorney.

14.  State the amounts of money you claim in your Prayer for Relief for each type of monetary damage (e.g. compensatory damages, actual damages, punitive damages, front pay, back pay, loss of past and future earnest, lost of retirement/other benefits, and mental anguish); state each element separately.

ANSWER:  I will the amount of damages for such things as mental anguish, emotional distress, hurt, shame and humiliation to the jury to decide. Also, I leave the amount of punitive damages to the jury. I need to conduct further discovery in order to determine damages related to pay and other benefits.

40