IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' FIRST AMENDMENT CLAIMS FOR RETALIATION FOR EXERCISE OF ASSOCIATIONAL RIGHTS**

Charles Willette
**WILLETTE & GUERRA, L.L.P.**
1534 East 6th Street, Suite 200
Brownsville, Texas 78520
Phone: 956/541-1846
Fax: 956/541-1893

Richard Burst
Bruce Hodge
**CAMERON COUNTY ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520
Phone: 956/550-1345
Fax: 956/550-1348

Attorneys for *Defendant* CAMERON COUNTY

Craig H. Vittitoe
Roger W. Hughes
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Phone: 956/428-7495
Fax: 956/428-2954

Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

# TABLE OF CONTENTS

Page:

TABLE OF CONTENTS . . . . . ii

TABLE OF AUTHORITIES . . . . . iv

I. NATURE OF THE CASES STATUS OF PROCEEDING . . . . . 1

II. ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT . . . . . 1

III. Summary Judgment Evidence . . . . . 2

IV. Factual Background . . . . . 2

A. The Lunch Meetings. . . . . . 2

B. Alvarado's Association with Weaver and Cantu. . . . . . 4

V. Summary of the Argument . . . . . 5

VI. Argument and Authorities . . . . . 6

A. Standard of Review . . . . . 6

1. Standard for granting summary judgment. . . . . . 6

2. Standards for Defendant Yzaguirre's qualified immunity. . . . . . 7

3. Plaintiffs must prove a County final policy maker is responsible for the retaliation. . . . . . 9

B. Elements of First Amendment Association Retaliation Claim . . . . . 9

C. Plaintiffs did not have an association protected by the First Amendment. . . . . . 11

1. Alvarado's relationship to his sister Weaver is not a protected association. . . . . . 11

2. The alleged association of Plaintiffs at lunch is not a protected First Amendment "association." . . . . . . . . . . . . . . . . . . 11

D. Any Adverse Employment Action Was Not Motivated or Caused by Participation in the Alleged Association. . . . . . . . . . . . . . . 13

E. Yzaguirre is Entitled to Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . 14

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**TABLE OF AUTHORITIES**

Page:

Cites:

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Anderson v. Pasadena I.S.D.*, 184 F.3d 439 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 10

*Board of Directors of Rotary Internat'l v. Rotary Club of Duarte*, 481 U.S. 537 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrell*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Flores v. Cameron County*, 92 F3d 258 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fyfe v. Curlee*, 902 F.2d 401 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gutierrez v. City of San Antonio*, 139 F.3d 441 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Henrise v. Horvath*, 45 Fed. Appx. 323 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Hernandez v. Duncanville School Dist.*, 2005 WL 3293995 (N.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Hitt v. Connell*, 301 F.3d 240 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kaiser v. Garrett*, 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Matsushita Electric Industrial Co. v. Zenith radio Corp.*, 475 U.S. 560 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McClendon v. City of Columbia*, 305 F.3d 314
(5th Cir. 2002)(en banc), *cert. denied,*
123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Monell v. Department of Social Services,*
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pi Lambda Phi Fraternity v. Univ. of Pittsburgh,*
229 F.3d 435 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001),
*cert. denied*, 534 U.S. 820 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roberts v. United States Jaycees,* 468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Slaughter v. Allstate Ins. Co.*, 803 F.2d 857 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 7

*Swanson v. City of Bruce, Miss.,*
105 Fed. Appx. 540 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Thompson v. Upshur County*, 245 F.3d 447
(5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wallace v. Texas Tech Unv.*, 80 F.3d 1042 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 10

<u>Federal Rules of Civil Procedure:</u>
Rule 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Federal Statutes:</u>
42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendants Cameron County** and **Tony Yzaguirre, Jr.**, and file

Defendants' Motion for Summary Judgment on Plaintiffs' First Amendment Claims Retaliation for Exercise of Associational Rights, and would respectfully show the Court as follows:

## I. NATURE OF THE CASES STATUS OF PROCEEDING

Plaintiffs Vicenta Cantu, Felix Munoz, Diamantina Alvarado, and Ruth Weaver[1] sued Defendants under 42 U.S.C. §1983 for depriving them of rights under the First Amendment, U.S. Constitution; their claims are for retaliation for exercise of freedom of speech and of "association." Dkt #58.

Defendants move for summary judgment that Plaintiffs take nothing on their claims based on denial of rights to association under the First Amendment.

## II. ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT

1. Whether Plaintiffs or any of them were part of an association protected by the First Amendment. There is no evidence that Plaintiffs (or any of them) were part of an expressive association.

2. Whether membership in any such association was a cause of or motivating factor for any adverse employment action if neither the County nor Mr. Yzaguirre was aware of the association, that any Plaintiff was a member, or that the association was for any expressive activity. There is no evidence that Mr. Yzaguirre or a final policymaker for the County knew or was aware that any association existed, that Plaintiffs (all or any of them) were members of it, or that the association engaged in or had the

[1] Plaintiff Weaver has married recently; her married name is McGinnis. For consistency, Defendants will continue to refer to her as Weaver.

purpose of engaging in activity protected by the First Amendment.

3. Whether Yzaguirre is entitled to qualified immunity against the First Amendment claims for retaliation for the exercise of rights of association.

## III. Summary Judgment Evidence

Defendant's submit the attached exhibits as summary judgment evidence:

| Exh. | Description |
|---|---|
| 1 | Deposition excerpts of Plaintiff Vicenta "Bibi" Cantu |
| 2 | Deposition excerpts of Plaintiff Felix Munoz |
| 3. | Deposition excerpts of Plaintiff Ruth Weaver |
| 4 | Deposition excerpts of Plaintiff Diamantina "Tina" Alvarado |
| 5 | Declaration of Roger W. Hughes |

## IV. Factual Background

Plaintiffs claim that they worked closely together and associated to discuss alleged "unusual and unlawful practices" and ways to correct them. 2nd Am. Compl. ¶33, 46, 54, 67, 86; Dkt #58. They alleged these discussions took place at meetings over lunch. Supp. Rule 7a Reply, ¶9; Dkt # 41. Alvarado claims she suffered retaliation because she was Weaver's sister and she met socially with Cantu at Dillards. 2nd Am. Compl. ¶¶60-61, 67, 86; Dkt#58.

### A. The Lunch Meetings.

Plaintiffs Weaver and Alvarado usually ate lunch together just because they were sisters. Exh. 3, p. 88(l.12-17); Exh. 4, pp. 80 (l.8-18), 154 (l.15-25). Neither of them could recall how or when Cantu began to join them for lunch, it was on-and-off. Exh. 3, pp. 87 (l.17-22), 163(l.12-22); Exh. 4, pp. 80(l.12)-81(l.12). No one could recall when or why

Munoz began to join the group for lunch. Exh. 3, p. 95(l.2-7); Exh. 4, pp. 81(l.10)-82(l.3). Sometimes other co-workers joined them for lunch. Exh. 1, pp. 218(l.6-12), 219(l.20-24), 640(l.6-10), 643(l.19)-644(l.4); Exh. 3, p. 164(l.7-12); Exh. 2, p. 226(l.17-24).

No one could recall when or how often the three or four Plaintiffs ate lunch together. Exh. 1, p. 215(l.19-22); Exh. 3, pp. 93-(l.15)-94(l.8); Exh. 4, p. 107(l.2-6). They did not eat any particular place. Exh. 4, p. 134(l.19-21). There were no formal meetings. Exh. 1, pp. 216(l.17-22), 643(l.2-8). Lunches together just happened; they were not planned in advance. Exh. 1, pp. 216(l.17-22), 297(l.14-18); 643(l.2-8); Exh. 3, pp. 94(l.15-19), 103(l.12-16).

No one claimed the purpose of any lunch meeting was to discuss Defendant Yzaguirre or what occurred at work. Exh. 1, pp. 297(l.22)-298(l.2), 643(l.22)-644(l.4); Exh. 3, p. 96(l.17-25); Exh. 4, p. 107(l.12-24). There was never a purpose to scheme or plot against Defendant Yzaguirre. Exh. 1, pp. 643(l.22)-644(l.4).

The Plaintiffs do not quite agree on what they discussed. Munoz and Alvarado do not recall any Plaintiff saying anything about what they had observed at work. Exh. 2, pp. 226(1.22)-228(l.25); Exh. 4, pp. 107(l.12)-109(l.17). Alvarado and Munoz did not recall that anyone "bad mouthed" about Defendant Yzaguirre. Exh. 2, p. 253(1.19-24); Exh. 4, p. 135(l.18-20). Alvarado did not think she was part of what they were discussing. Exh. 4, p. 135(l.6-7).

Cantu claimed that they talked about a lot of things, including office problems that were going on. Exh. 1, p. 216(l.21-25). However, no one was really critical of Defendant Yzaguirre or accused him of a crime. Exh. 1, p. 642(l.2-7).

Weaver claimed that sometimes Cantu told them at lunch that Defendant Yzaguirre

had "gotten after her" about title transfers Cantu had held up that; Cantu called the transaction illegal title but did not explain why. Exh. 3, pp. 97(l.14)-98(l.24). Weaver also recalled that Munoz said he did not understand why Mr. Yzaguirre had authorized "documentation" brought in by Moises Torres, Enrique Barreda Sr., and Enrique Torres, Jr. Exh. 3, pp. 99(l.19)-100(l.24).

No one claims that anyone encouraged the others to do anything or speak out. Exh. 1, p. 641(l.5-8); Exh. 2, pp. 227(1.23)-228(1-20), 229(l.2-9); Exh. 3, pp. 101-(l.21)-102(l.23); Exh. 4, pp. 108(l.22)-109(l.17).

No Plaintiff had any idea or any evidence that Defendant Yzaguirre knew about the lunch meetings or what they discussed. Exh. 1, pp. 298(l.3)-299(l.11), 300(l.21-25), 301(l.18-22); Exh. 2, pp. 229(1.24)-230(1.13); Exh. 3, pp. 198(l.20)-199(l.18); Exh. 4, pp. 135(l.15-17), 136(l.14-17).

**B. Alvarado's Association with Weaver and Cantu.**

Alvarado and Weaver are sisters. Exh. 4, p. 22(l.16). Weaver was fired in September 2002 and Alvarado was transferred to the Tax Assessor office in San Benito in February 2003.

Alvarado works part time at Dillards. Exh. 4, p. 9(l.17-18). On February 26, 2003, Cantu happened to be at Dillards and spoke to her; this was seen by Defendant Yzaguirre's wife. Exh. 4, p. 139(1.15)-141(1.5). Two days later Alvarado was transferred to the Tax Assessor Office in San Benito, Texas. Exh. 4, p. 142(1.3-5).

## V. Summary of the Argument

Plaintiffs' "association" was essentially an *ad hoc* meeting for lunch on a random

basis with no agenda. Munoz and Alvarado could not recall anything specific that was ever discussed about the office and denied that anyone "bad mouthed" Defendant Yzaguirre. Although Weaver and Cantu could recall talking about what was going on at the office from time to time, that was not the purpose of meeting together. They talked of Defendant Yzaguirre only occasionally. Such discussions were never planned, nor were they the fixed purpose of getting together. No one claims that anyone was urged to speak out or take any action. For this reason, the alleged association is not a protected "expressive" group under the First Amendment. There is a threshold requirement that the group have an expressive purpose and that the members take positions on public questions or otherwise engage in protected expression. A mere showing of isolated expressive speech is insufficient; it must have more than an incidental relationship to the group's character. Because the group had no formal structure, no formal statement of purpose, no public expressive activity and no selectivity, it is not a "association" much less one organized for expressive purposes.

## VI. Argument and Authorities

### A. Standard of Review

1. Standard for granting summary judgment.

Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law.

A party seeking summary judgment bears the initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell,* 477 U.S. 317, 322, (1986). Where a party will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.* at 322-323.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith radio Corp.,* 475 U.S. 560 (1986).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 323; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, Defendants are entitled to summary judgment when the Plaintiff "fails to make a showing sufficient to

establish the existence of an element essential to the Plaintiff's case, and on which [the Plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See also Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

2. Standards for Defendant Yzaguirre's qualified immunity.

Qualified immunity protects a public official from claims under 42 USC §1983 if a reasonably prudent official would not know the actions violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The public official will have qualified immunity if the conduct was objectively reasonable under the existing federal law. *McClendon v. City of Columbia*, 305 F.3d 314, 327 (5th Cir. 2002)(en banc), *cert. denied*, 123 S.Ct. 1335 (2003).

The U.S. Supreme Court has set out a clear, two step process to determine whether the complaint can defeat qualified immunity. Once the defense of qualified immunity is alleged, the trial judge must first determine whether the plaintiff has alleged a constitutional violation at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998). The court must then determine whether defendant's actions violated "clearly established" constitutional law at the time of the conduct and whether the defendant's actions were objectively reasonable. *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900.. Acts are objectively reasonable unless all reasonable officials under the same

circumstances would have know the conduct violation the Constitution. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001).

For constitutional law to be "clearly established," plaintiff must prove more than the broad contours of established rights or broad legal truisms. *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995). The contours of the constitutional right must be defined well enough so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law. *McClendon*, 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515-16, (2002); *McClendon*, 305 F.3d at 329.

3. Plaintiffs must prove a County final policy maker is responsible for the retaliation.

Governmental liability does not arise vicariously through the acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiffs must show that a policy adopted by the governmental unit's policymaker with deliberate indifference to the likelihood of a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-80 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2002).

The County is not liable unless a "policymaker" for the County either (1) made or adopted a policy responsible for the injury, or (2) knew of a custom and ratified it. *Piotrowski*, 237 F.3d at 578-79. A "policymaker" is the person for that governmental unit that has final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

(1988). State law determines this issue. *Flores v. Cameron County*, 92 F3d 258, 263 (5th Cir. 1996).

Ordinarily, the Commissioners Court is the final policymaker for a Texas county. *Flores*, 92 F3d at 264.

**B. Elements of First Amendment Association Retaliation Claim**

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The employee must (1) suffer an adverse employment action, (2) engage in an association protected by the First Amendment, (3) show that his/her interest in the association outweighs the public employer's interest and efficiency, and (4) show that participation in the protected association motivated the adverse employment action. *Breaux v. City of Garland*, 205 F.3d 150, 157, n.12 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000); *Anderson v. Pasadena I.S.D.*, 184 F.3d 439, 444 (5th Cir. 1999); *see also Fyfe v. Curlee*, 902 F.2d 401, 403 (5th Cir. 1990).

Strictly speaking, the First Amendment does not protect a "right of association." *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). Rather, the First Amendment embraces the right to associate only in two circumstances: (1) the choice to enter into certain intimate human relationships ("familial association"), or (2) an association for the purpose of engaging in activities protected by the First Amendment, such as speech, exercise of religion, etc. ("expressive association'). *Stanglin*, 490 U.S. at 24; *Wallace v. Texas Tech Unv.*, 80 F.3d 1042, 1051 (5th Cir. 1996). The right of "expressive association" extends to groups organized to engage in speech. *Stanglin*, 490 U.S. at 25.

The "familial association" right recognized under the First Amendment has only been

recognized in the area of marriage, procreation and child rearing. *Stanglin*, 490 U.S. at 24-25; *Fyfe*, 902 F.2d at 403. There is no recognized right of "social association" protected under the constitution. *Stanglin*, 490 U.S. at 25; *Wallace*, 80 F.3d at 1051. Close professional or working relationships are not protected. *Henrise v. Horvath,* 45 Fed. Appx. 323, *6 (5th Cir. 2002); *Swanson v. City of Bruce, Miss.*, 105 Fed. Appx. 540, 542 (5th Cir. 2004); *Hernandez v. Duncanville School Dist.*, 2005 WL 3293995, *10 (N.D.Tex. 2005).

To constitute an "expressive association," the group must engage in some form of protected expression, whether it be public or private. *Boy Scouts of America v. Dale,* 530 U.S. 640, 648 (2000). There is a threshold requirement for an expressive purpose. *Pi Lambda Phi Fraternity v. Univ. of Pittsburgh*, 229 F.3d 435, 443 (3rd Cir. 2000). There must be proof the members take positions on public questions or engages in other protected expression. *Dale*, 530 U.S. at 648; *Pi Lambda*, 229 F.3d at 444. Protected expression does not include any possible expression. *Stanglin*, 490 U.S. at 25; *Pi Lambda*, 229 F.3d at 444. The court should consider whether the association has a creed, a formal structure, its formally statement of purpose, the group' size, selectivity, congeniality, the expressive activity within its meetings, and any public expressive activity. *Dale,* 530 U.S. at 648-50; *Board of Directors of Rotary Internat'l v. Rotary Club of Duarte*, 481 U.S. 537, 548-49 (1987); *Roberts v. United States Jaycees,* 468 U.S. 609, 620-22 (1984); *Pi Lambda*, 229 F.3d at 444.

**C. Plaintiffs did not have an association protected by the First Amendment.**

1. <u>Alvarado's relationship to his sister Weaver is not a protected association</u>.

Alvarado alleges that Yzaguirre transferred her and "constructively" terminated her

because of she was Weaver's sister and met socially with Cantu at a Dillard's store. 2nd Am. Compl. ¶60; Dkt #58. The Court previously ruled that these were a purely social relationships that were not protected First Amendment "associations." Dkt #48, p. 18-19. This remains the law and the Court should dismiss the claims. *See, e.g., Stanglin*, 490 U.S. at 25; *Henrise,* 45 Fed. Appx. at *6; *Swanson,* 105 Fed. Appx. at 542.

2. The alleged association of Plaintiffs at lunch is not a protected First Amendment "association."

Plaintiffs' alleged close working relationship within the office is insufficient. The fact that they worked together, even closely, is insufficient to be a protected association. *Henrise,* 45 Fed. Appx. at *6; *Swanson,* 105 Fed. Appx. at 542.

Plaintiffs then allege they ate lunch together where they discussed Yzaguirre's alleged misconduct. Suppl. Rule 7a Reply, ¶9; Dkt#41. Before fall 2001, the only two who ate lunch together were Alvarado and Weaver; they did this solely because they were sisters. Exh. 4, pp. 80 (l.8-18), 154 (l.15-25). This is a social association which is not protected. See, e.g., *Stanglin*, 490 U.S. at 25.

This "association" fails as an "expressive" association for several reasons. First, it is not clear that it is an association of any kind. Between Fall 2001 and May 2002 (when Cantu was terminated and Weaver went on leave), Weaver, Alvarado, Cantu, and Munoz had lunch sporadically, without any fixed schedule. Exh. 1, pp. 216(l.17-22), 643(l.2-8); Exh. 3, pp. 87(l.17-22), 88(l.18-24), 163(l.12-22). It had no creed, no formal statement of purpose adopted by the membership, no regular meetings, no formal means to determine membership, etc. At best, it was four co-workers who occasionally ate lunch together

randomly and happened to discuss work whenever the topic came up. The fact they may have been momentarily bound by common speech concerns does not change the fact that the relationship was essentially social and professional in nature, rather than a group purposefully meeting to engaged in protected speech. *Compare Swanson*, 105 Fed. Appx. at 542 (plaintiff's vocal support for police chief did not create a protected expressive association between them).

Second, there is no evidence the group engaged in expressive activity protected by the First Amendment or had this as its purpose. There is no evidence that the group as a whole spoke out publically on matters of a public concern. *Stanglin*, 490 U.S. at 25; *Pi Lambda*, 229 F.3d at 444. No one encouraged the others to speak out on any issue. Exh. 1, p. 641(l.5-8); Exh. 2, pp. 227(1.23)-228(1.20); 229(l.2-9); Exh. 3, pp. 101-(l.21)-102(l.23); Exh. 4, pp. 108(l.22)-109(l.17). Munoz and Alvarado could not recall what was discussed at any of the meetings. Exh. 2, pp. 226(1.22)-228(l.25); Exh. 4, pp. 107(l.12)-109(l.17). Although Weaver and Cantu claimed that Cantu and Munoz spoke about processing deficient title applications, this was not the purpose of the luncheons. Exh. 1, pp. 297(l.22)-298(l.2), 643(l.22)-644(l.14); Exh. 3, p. 96(l.17-25); Exh. 4, p. 107(l.12-24). Cantu or Munoz could not convert a spontaneous social gathering into an "expressive" association simply because *sua sponte* they chose to speak about Yzaguirre. A meager showing of isolated expressive speech is insufficient; it must have more than an incidental relationship to the group's character. *Pi Lambda*, 229 F.3d at 444; *Hernandez*, 2005 WL 3293995 at *10.

Finally, there is no proof the speech was on a public concern. Plaintiffs have the

burden to establish the content of the speech within the group and that was on a matter of public concern. *Hernandez*, 2005 WL 3293995 at *9. Given that any speech occurred privately, was directed at co-workers, was not intended to be overheard or repeated outside the group, did not take place within a larger public debate, and concerned almost entirely issues of Plaintiff Cantu's job, the speech was not on a matter of public concern. *Compare Pi Lambda*, 229 F3d at 443-44.

**D. Any Adverse Employment Action Was Not Motivated or Caused by Participation in the Alleged Association.**

There is no proof that Defendant Yzaguirre or a County policymaker because aware that Plaintiffs had an expressive association or that the lunch group engaged in an expressive association. Plaintiffs have all admitted they have no evidence that Defendant Yzaguirre knew they were meeting for lunch or what was being said at lunch. Exh. 1, pp. 298(l.3)-299(l.11), 300(l.21-25), 301(l.18-22); Exh. 2, pp. 229(1.24)-230(l.13); Exh. 3, pp. 198(l. 20)-199(l.18); Exh. 4, pp. 135(l.15-17), 136(l.14-17).

There can be no retaliation if the defendant is unaware the association exists or that it is engaging in a protected activity, i.e., protected speech. Causation requires proof the defendant had actual knowledge of the association and its protected activities. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

**E. Yzaguirre is Entitled to Qualified Immunity.**

Here the law was not clearly established in 2002 and 2003 that an "association" like the one Plaintiffs' describe was a protected "expressive association." Based on the facts, Yzaguirre could reasonably conclude either (1) that it was not an association at all, (2) it was

a purely social *ad hoc* group, or (3) it did not engage in expressive activity. In each case, the lunch group would not merit First Amendment protection.

## VII. CONCLUSION

The Court should grant summary judgment to dismiss Plaintiffs' First Amendment claims based on denial of any protected rights of association.

Respectfully submitted,

By /s/ *Bruce Hodge*

**Bruce Hodge**
State Bar No. 09751700
Fed. ID No. 4003
**Richard O. Burst**
State Bar No. 00785586
Fed. ID No. 15515
Cameron County Attorney's Office
964 E. Harrison
Brownsville TX 78520
Telephone: (956) 550-1345
Facsimile: (956) 550-1348
**Charles Willette**
State Bar No. 21509700
Fed. ID No. 1937
**WILLETTE & GUERRA, L.L.P.**
1534 E. 6th Str., Suite 200
Brownsville, TX 78520
Telephone: (956) 541-1846
Facsimile: (956) 371-1428

Attorneys for *Defendant* CAMERON COUNTY

By /s/ *Roger W. Hughes*

**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950
**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile: (956) 428-2954
Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the March 1, 2006.

Ms. Gay E. Gilson *CM/RRR 7005 1160 0000 5657 5967*
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Mr. David Lee McGee *Via Ordinary Mail*
**LAW OFFICES OF DAVID LEE MCGEE, P.C.**
701 Park Avenue
Corpus Christi, TX 78401

Mr. Charles Willette *Via Ordinary Mail*
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

Mr. Bruce Hodge *Via Ordinary Mail*
Mr. Richard O. Burst
**CAMERON COUNTY ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520

/s/ *Roger W. Hughes*
Roger W. Hughes