IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF ALVARADO'S FIRST AMENDMENT SPEECH CLAIMS**

Charles Willette
**WILLETTE & GUERRA, L.L.P.**
1534 East 6th Street, Suite 200
Brownsville, Texas 78520
Phone: 956/541-1846
Fax: 956/541-1893

Richard Burst
Bruce Hodge
**CAMERON COUNTY
  ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520
Phone: 956/550-1345
Fax: 956/550-1348

Attorneys for *Defendant* CAMERON
COUNTY

Craig H. Vittitoe
Roger W. Hughes
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Phone: 956/428-7495
Fax:  956/428-2954

Attorneys for *Defendant* TONY
YZAGUIRRE, ASSESSOR-COLLECTOR
OF CAMERON COUNTY AND DIRECTOR OF
 CAMERON COUNTY AUTOMOBILE CRIMES
ENFORCEMENT TASK FORCE IN HIS
INDIVIDUAL CAPACITY

# TABLE OF CONTENTS

Page:

I.  NATURE OF THE CASES STATUS OF PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . 1

III.  Summary Judgment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.      Statements to Supervisor in 1997 About Processing
              Registration Renewals Without Proof of Insurance. . . . . . . . . . . . . . . . . . 2

       B.      Alvarado's Statements about Waiver of $500 Penalty
              for Late Filing of Monthly Car Dealer Inventory Reports. . . . . . . . . . . . . 3

       C.      Alvarado's Call to State Board of Professional Tax Examiners. . . . . . . . 4

       D.      Alleged Offer of Employment with County. . . . . . . . . . . . . . . . . . . . . . . . 6

V.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.  Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              1.      Standard for granting summary judgment. . . . . . . . . . . . . . . . . . . 7

              2.      Standards for Defendant Yzaguirre's qualified immunity. . . . . . . 8

              3.      Plaintiff must show a final policy maker for the County
                    is responsible for the retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . 10

       B.      Elements for a First Amendment Speech Retaliation Claim. . . . . . . . . . . 10

       C.      Alvarado's Alleged Speech Activities Do Not Meet Standards
              for Retaliation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

              1.      1997 statements to Alvarado's supervisor
                    about processing registrations  without proof insurance. . . . . . . . 14

              2.      Statements concerning waiver of penalty for late VIT reports. . . . 14

       3.    <u>The call to Mr. Montoya in March 1993.</u> . . . . . . . . . . . . . . . . . . . . 16

D.    The alleged conditioned job offer claim does not meet
the *Connick-Pickering* test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       1.    Neither Alvarado's alleged speech nor her
<u>lawsuit allegations are speech on a matter of "public concern.</u>" . . 17

       2.    A rejected conditional job offer is not an adverse
<u>employment action or a Constitutional injury</u> . . . . . . . . . . . . . . . 18

       3.    The *Pickering* balance permits public employers
<u>to offer employment conditioned on dropping a civil suit</u>. . . . . . . 19

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

Page:

Cites:

*Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021
    (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Alexander v. Eeds,* 392 F.3d 138 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Anderson v. Creighton,* 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Beattie v. Madison County School Dist.,*
    254 F.3d 595 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bradshaw v. Pittsburg I.S.D.,* 207 F.3d 814
    (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15

*Breaux v. City of Garland,* 205 F.3d 150 (5th Cir. 2000),
    *cert. denied,* 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Celotex Corp. v. Catrell,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664
    (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Colson v. Grohman,* 174 F.3d 498 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Connick v. Myers,* 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

*Enplanar, Inc. v. Marsh,* 11 F.3d 1284 (5th Cir. 1994),
    *cert. denied,* 513 U.S. 926 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Finch v. Fort Bend I.S.D.,* 333 F.3d 555
    (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Flores v. Cameron County,* 92 F3d 258
    (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Foley v. Univ. of Houston System,* 355 F.3d 333

(5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Galveston I.S.D. v Heartland Fed. Sav. & Loan Ass'n,*
 159 B.R. 198 (S.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gillum v. City of Kerrville*, 3 F3d 117 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Glatt v. Chicago Park Dist.,* 87 F.3d 190
 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gutierrez v. City of San Antonio*, 139 F.3d 441
 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hernandez v. Duncanville School Dist.,*
 2005 WL 3293995 (N.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hitt v. Connell,* 301 F.3d 240 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 17

*Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Horwitz v. Bd. of Educ. Of Avoca School Dist.,*
 260 F.3d 602 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Johnson v. State of Louisiana,* 369 F.3d 826
 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jones v. Collins*, 132 F.3d 1048 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kaiser v. Garrett*, 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Keenan v. Tejeda,* 290 F.3d 252 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kennedy v. Tangipahoa Parish Library Bd. of Control,*
 224 F.3d 359 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Kinney v. Weaver,* 367 F.3d 337 (5th Cir. 2004) (en banc),
 *cert. denied*, 125 S.Ct. 102 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Lytle v. Wondrash,* 182 F.3d 1083 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Mahaffey v. Winston County Sheriffs Dep't,*
    96 Fed. Appx. 191 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Martin v. Swift,* 781 F.Supp. 1250 (E.D.Mich. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mata v. Cameron County,* 2005 WL 2001128
    (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 560 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086
    (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

*McClendon v. City of Columbia,* 305 F.3d 314 (5th Cir. 2002)
    (en banc), *cert. denied,* 123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Monell v. Department of Social Services,*
    436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Noyola v. Texas Dept. of Human Resources,*
    846 F.2d 1021 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 16

*O'Connor v. Chicago Transit Authority,*
    985 F.2d 1362 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pickering v. Bd of Educ.,* 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001),
    *cert. denied*, 534 U.S. 820 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rankin v. McPherson,* 483 U.S. 378 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Rathjen v. Litchfield,* 878 F.2d 836 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rutan v. Republican Party of Ill.,* 497 U.S. 62 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Serna v. City of San Antonio*, 244 F.3d 479 (5th Cir. 2001),
    *cert. denied*, 534 U.S. 951 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Slaughter v. Allstate Ins. Co.*, 803 F.2d 857 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Smith v. Plati,* 258 F.3d 1167 (10th Cir. 2001),
    *cert. denied*, 537 U.S. 823 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Thompson v. City of Aransas Pass,*
    2005 WL 1503543 (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Thompson v. Upshur County,* 245 F.3d 447
    (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vanderhurst v. Colorado Mt. College Dist.,*
    16 F. Supp.2d 1297 (D. Colo. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Federal Rules of Civil Procedure:
Rule 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Texas Tax Code:
§23.121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

§23.122(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15

§23.122(n) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15


Texas Occupational Code:
§1151.103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

§1151.151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16


Federal Statutes:
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendants Cameron County** and **Tony Yzaguirre, Jr.**, and file Defendants' Motion for Summary Judgment on Plaintiff Alvarado's First Amendment Speech Claims, and would respectfully show the Court as follows:

## I. NATURE OF THE CASES STATUS OF PROCEEDING

Plaintiff Diamantina Alvarado sued Defendants under 42 U.S.C. § 1983 for depriving her of First Amendment rights; her claims are for retaliation for exercise of freedom of speech and freedom of "association." Dkt #58.

Defendants move for summary judgment that Plaintiff Alvarado take nothing on her retaliation claims for exercising speech protected by the First Amendment.[1]

## II. ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT

1.  Whether Plaintiff Alvarado engaged in speech protected by the First Amendment. There is no evidence that Plaintiff Alvarado's alleged speech activities were "speech" at all or speech on a matter of public concern.

2.  Whether any such speech was a cause of or motivating factor for any adverse employment action or constructive termination if neither the County nor Mr. Yzaguirre was aware of the speech or expressive activity. There is no evidence that Mr. Yzaguirre or a final policymaker for the County knew or was aware of any speech protected by the First Amendment. The evidence shows that some alleged speech occurred so long before the alleged speech activity that it could not be the

---

[1] Plaintiff Alvarado's claim concerning a job offer from Defendant County is also addressed by a separate motion. Dkt#111.

cause or motivating factor for the alleged adverse employment actions or constructive termination.

3.    Whether the alleged offer of employment by the County in return for dropping the lawsuit was (1) an adverse employment action, or (2) in retaliation for protected speech on a matter of public concern.  There is no evidence that Alvarado's speech claims in fact involved speech on a matter of public concern or that the alleged offer was an adverse employment action.  The County has a compelling interest to condition employment on dropping a lawsuit against itself.

4.    Whether Yzaguirre is entitled to qualified immunity against the First Amendment claims for retaliation for protected speech.

### III.  Summary Judgment Evidence

Defendants' submit the attached exhibits as summary judgment evidence:

| Exh. | Description |
|------|-------------|
| 1 | Deposition excerpts of Plaintiff Diamantine "Tina" Alvarado |
| 2 | Tax Assessor Policy Letter on Waiver, dated January 13, 1999 |
| 3 | Declaration of Roger W. Hughes |

### IV.  Factual Background

**A.    Statements to Supervisor in 1997 About Processing Registration Renewals Without Proof of Insurance.**

In 1997, Alvarada was temporarily assigned to the auto department for cross-training. Exh. 1, p. 40(l.1-11).  The supervisor was Lupita De Leon.  Exh. 1, p. 55(l.17-25). Sometimes while Alvarado was helping a customer, Ms. De Leon would bring her other

vehicle registration renewals to process; sometimes the paperwork did not have the insurance cards. Exh. 1, pp. 41(l.2)-42(l.24). When Alvarado would ask where were the insurance cards, Ms. De Leon would tell her to process them anyway as per Mr. Yzaguirre. Exh. 1, pp. 43(l. 25)-45(l.17). Alvarado did not know if the owner might have presented proof of insurance before Ms. De Leon got the paperwork; insurance cards were normally returned to the customer after taking the renewal forms. Exh. 1, pp. 44(l.20)-47(l.9). These discussion occurred in the context of her job to process vehicle registration renewals.

Her statements to Ms. De Leon occurred in 1997. Exh. 1, pp. 40(l.8)-41(l.1), 55(l.17-25). Alvarado has no evidence that Mr. Yzaguirre learned of her statements to Ms. De Leon. Exh. 1, pp. 54(l.11)-55(l.16).

## B.    Alvarado's Statements about Waiver of $500 Penalty for Late Filing of Monthly Car Dealer Inventory Reports.

In 1997, Alvarado was promoted to deputy auto tax clerk to the tax collection supervisor. Exh. 1, pp. 56(l.23)-57(l.8). Jesse Garcia supervised her. Exh. 1, p. 36, (l.13-19), 56(l.13-15).

Part of her job was to process monthly Vehicle Inventory Tax ("VIT") reports from auto dealers. [2] Exh. 1, pp. 57(l.14)-58(l.19). The VIT reports contained the number of sales; the dealers had to pay a tax monthly based on the value of the cars. Exh. 1, p. 58(l.3-12).

---

[2] In 1994, Texas substantially revised the property tax scheme on a dealer's inventory of vehicles. TEX. TAX CODE ANN. §23.121, et seq. (Vernon 2004). Dealers must file monthly reports listing sales with the County's Tax Assessor and Tax Appraisal District. TEX. TAX CODE ANN. §23.122(f) (Vernon 2004).

There was a "late fee" of $500. Exh. 1, p. 58(l.20-24).[3] If the report was late, she would tell the dealer to pay the $500 before she would process the report. Exh. 1, pp. 69(l.9)-71(l.21). Sometimes, instead of paying, the dealer would go to Mr. Garcia or Defendant Yzaguirre. Exh. 71(l.22-24). Mr. Garcia would then tell the late fee was waived; she could not say how often this occurred or which dealers got a waiver. Exh. 1, pp. 58(l.25)-59(l.24) 64(l.9-11), 66(l.20-25).

On some occasions, she told Mr. Garcia this was wrong, that Defendant Yzaguirre had no authority to waive penalties. Exh. 1, pp. 61(l.7)- 64(l.8). She said this to him only after he would tell her if the late fee had been waived. Exh. 1, pp. 71(l.19)-72(l.21). She does not recall when or how often she said this. Exh. 1, 58(l.25)-59(l.24).

She has no evidence that Mr. Yzaguirre ever learned of her statements to Mr. Garcia. Exh. 1, pp. 74(l.13-20). From 1998 until February 2003, she got good evaluations, was not demoted, and kept her pay. Exh. 1, pp. 74(l.21)-75(l.5).

In 1999, due to considerable confusion over the VIT, Defendant Yaguirre adopted a policy to waive the late fee for good cause on a "one-time-only" basis, but Alvarado did not know of it. Exh. 1, p. 64(l.15-25); Exh. 2. She admitted some dealers had trouble calculating the proper fees and sometimes sent the VIT to the wrong tax office. Exh. 1, pp. 65(l.9)-66(l.4), 67(l.1-5).

## C.    Alvarado's Call to State Board of Professional Tax Examiners.

Alvarado has a certification from the State Board of Professional Tax Examiners.

---

[3]    The law allows a $500 penalty for each late report. TEX. TAX CODE ANN. §23.122(n) (Vernon 2004).

Exh. 1, pp. 75(l.6)-76(l.19). In the past, Defendant Yzaguirre paid for the courses needed to obtain her certification, but this was not promised as part of her job. Exh. 1, pp. 75(l.20)-76(l.7), 89(l.16-19).

In February 2003, she was sent to the San Benito branch office for cross-training. Exh. 1, p. 82(l.16-23). She needed to take the final exam sometime in 2003 to reach the next level. Exh. 1, p. 88(l.18)-89(l.5). In March, Jesse Garcia called to advise that Defendant Yzaguirre would not pay for the exam because there was not enough money in the budget. Exh. 1, p. 88(l.5-15), 89(l.6-15), 90(l.8-19).

Alvarado then called the State Board of Professional Tax Examiners to ask if Defendants had to pay for the exam. Exh. 1, pp. 98(l.12-20), 99(l.3)-100(l.8). She spoke to an unknown woman there and asked if she had to pay for exams. Exh. 1, p. 99(l.1-10). The person said she had not heard of this and the county should pay. Exh. 1, p. 99(l.5-10). Alvarado then asked for Mr. Montoya (the Board's director), but he was out so she left a message to call her. Exh. 1, p. 99(l.11-21), 101(l.1-6). She was just calling to see if Defendants had to pay for her course; she did not intend to accuse Defendant Yzaguirre of anything criminal. Exh. 1, pp. 99(l.3)-100(l.25), 102(l.11-14).

Later at work, her supervisor gave her a message that Mr. Montoya had returned her call. Exh. 1, p. 103(l.3-8). She did not return his call because, shortly after that, she resigned. Exh. 1, p. 104(l.2-10).

She has no evidence that Defendant Yzaguirre learned she had called Mr. Montoya's office before she resigned. Exh. 1, p. 157(l.11-13).

**D.    Alleged Offer of Employment with County.**

See factual statement and exhibits in Dkt#118.

### V.  Summary of the Argument

Alvarado's alleged statements were not on matters of public concern.  The statements to Ms. Garcia about the insurance cards did not complain of anything at all.  Though Alvarado claims she said she did not think she could process the paperwork without insurance cards, her remarks did not accuse her of corruption or a crime.  They arose only in connection with the performance of her job, processing registration renewals and title transfers.

Her alleged statements to Mr. Garcia also did not address the matter of public concern.  Though Ms. Alvarado may think otherwise, Defendant Yzaguirre has the authority to waive or compromise statutory penalties.  Her statements arose only after dealers complained that they were entitled to a waiver.  At best, her statements are criticisms of the application of an office policy, not an accusation of fraud, corruption, or crime.

Finally, her statement to an unknown woman at the Board of Professional Tax Examiners is not legally sufficient.  Alvarado simply inquired whether Defendants should pay for a course she needed for certification.  This is a purely personal matter, and not a matter of public concern.

Finally, Alvarado cannot prove causation or motivation.  She has no evidence that Defendant Yzaguirre ever learned of these alleged statements.

## VI. Argument and Authorities

### A.    Standard of Review

1.    <u>Standard for granting summary judgment</u>.

Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A party seeking summary judgment bears the initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell,* 477 U.S. 317, 322 (1986). Where a party will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.* at 322-323.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole

cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 560 (1986).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 323; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, Defendants are entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the Plaintiff's case, and on which [the plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See also Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

2.    <u>Standards for Defendant Yzaguirre's qualified immunity</u>.

Qualified immunity protects a public official from claims under 42 USC § 1983 if a reasonably prudent official would not know the actions violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The public official will have qualified immunity if the conduct was objectively reasonable under the existing federal law. *McClendon v. City of Columbia,* 305 F.3d 314, 327 (5th Cir. 2002)(en banc), *cert. denied,* 123 S.Ct. 1335 (2003).

The U.S. Supreme Court has set out a clear, two step process to determine whether

8

the complaint can defeat qualified immunity.  Once the defense of qualified immunity is alleged, the trial judge must first determine whether the plaintiff has alleged a constitutional violation at all.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998).  The court must then determine whether defendant's actions violated "clearly established" constitutional law at the time of the conduct and whether the defendant's actions were objectively reasonable.  *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900.  Acts are objectively reasonable unless all reasonable officials under the same circumstances would have know the conduct violation the Constitution.  *Thompson v. Upshur County,* 245 F.3d 447, 457 (5th Cir. 2001).

For constitutional law to be "clearly established," plaintiffs must prove more than the broad contours of established rights or broad legal truisms.  *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995).  The contours of the constitutional right must be defined well enough so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law.  *McClendon,* 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998).  The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional.  *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515-16, (2002); *McClendon,* 305 F.3d at 329.

     3.     Plaintiff must show a final policy maker for the County is responsible for the <u>retaliation</u>.

Governmental liability does not arise vicariously through the acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  Plaintiffs must show

that a policy adopted by the governmental unit's policymaker with deliberate indifference to the likelihood of a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-80 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2002).

The County is not liable unless a "policymaker" for the County either (1) made or adopted a policy responsible for the injury, or (2) knew of a custom and ratified it. *Piotrowski*, 237 F.3d at 578-79. A "policymaker" is the person for that governmental unit that has final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). State law determines this issue. *Flores v. Cameron County*, 92 F3d 258, 263 (5th Cir. 1996).

Ordinarily, the Commissioners Court is the final policymaker for a Texas county. *Flores*, 92 F3d at 264. Cameron County has not delegated final policy making authority for hiring decisions for the Emergency Management Office to any lower level official. *Compare Mata v. Cameron County,* 2005 WL 2001128, *4-5 (S.D.Tex. 2005).

**B.    Elements for a First Amendment Speech Retaliation Claim.**

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983. The employee must (1) suffer an adverse employment action, (2) show that his/her speech in question was a matter of public concern, (3) show that his/her interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001); *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000).

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). However, speech may involve both matters of public concern and private matters. *Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 366 (5th Cir. 2000). Where the speech activity mixes both personal and public concerns, the court looks at both (1) content-form-context, and (2) the citizen-employee analysis. *Kennedy,* 224 F.3d at 365-66; *Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664, 670-73 (5th Cir. 2005). In "mixed speech" cases, the content-form-context tests weighs the most heavily. *Kennedy,* 224 F.3d at 366-67; *Chavez,* 135 Fed. Appx. at 671. The "citizen-employee" test focuses is on the employee's role and motives when speaking. *Id.* The issue is whether the plaintiff spoke primarily as a citizen rather than as an employee addressing matters only of personal concern. *Id.*; *Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021, *6 (S.D.Tex. 2005).

Determination of whether a statement is primarily a matter of public concern is a legal question to be determined by the court from the content, form and context of the statement. *Bradshaw,* 207 F.3d at 816-17 (5th Cir. 2000). A matter is not a public concern because it could be, in different circumstances, of general interest to the public. *Id.* The rationale behind the "public concern" requirement is to prevent public employees from relying on the Constitution to redress their personal grievances. *Connick v. Myers*, 461 U.S. 138, 149 (1983). The First Amendment does not require a public office be operated as a round table for employee complaints over internal office affairs. *Connick*, 461 U.S. at 149.

Employee speech motivated primarily to defend one's own personal philosophies on office policy and management is insufficient. *See, e.g. Finch v. Fort Bend I.S.D.*, 333 F.3d

555, 564 (5th Cir. 2003); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988). This is particularly so when the employee is responding to criticism of their job performance. *Bradshaw,* 207 F.3d at 817. Although the choice to make an internal grievance privately rather than publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public. *Id.* The court must also consider whether the statements are addressed to a backdrop of a public debate on the issue in the employee's speech. *Kennedy,* 224 F.3d at 372.

Corruption, malfeasance, and criminal acts of public offices are usually matters of public concern. *Alexander v. Eeds,* 392 F.3d 138, 145 (5th Cir. 2004). However, complaints of official incompetence, carelessness, or violations of departmental policies are not usually matters of public concern. *Id.* at 145-46. Also, claims of illegal behavior may not be of public concern when the context shows they are simply a part of a larger dispute over job performance, "office politics," or an employment dispute. *Chavez,* 135 Fed. Appx. at 675-76; *Mahaffey v. Winston County Sheriffs Dep't,* 96 Fed. Appx. 191, 193 (5th Cir. 2004); *Alaniz,* 2005 WL 1651021 at *10.

The speech activity must precede and be the cause of the adverse employment action. *Finch,* 333 F.3d at 564; *Hernandez v. Duncanville School Dist.,* 2005 WL 3293995, *6-7 (N.D.Tex. 2005). The defendants must have actual knowledge of the speech activity prior to the adverse employment action. *Beattie v. Madison County School Dist.,* 254 F.3d 595, 603-4 (5th Cir. 2001); *Hitt v. Connell,* 301 F.3d 240, 246 (5th Cir. 2002). There is no inference of causation if the protected activity occurred or began long before the adverse employment action. *See e.g., Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092-93 (5th

Cir. 1995) (protected activity began ten years before suit and continued until suit filed); *Horwitz v. Bd. of Educ. Of Avoca School Dist.,* 260 F.3d 602, 619 (7th Cir. 2001) (span of 18 months between speech and termination no evidence speech motivated firing); *Thompson v. City of Aransas Pass,* 2005 WL 1503543, *6 (S.D.Tex. 2005) (two years between speech and the employment action was too long to permit inference).

**C.     Alvarado's Alleged Speech Activities Do Not Meet Standards for Retaliation Claims.**

Alavarado alleges three instances of speech that somehow led to her constructive termination in March 2003: (1) her comments to Ms. de Leon in 1997 that about processing registration renewals without proof of insurance, (2) her comments to her supervisor on various dates from 1997 to 2003 that Yzaguirre was improperly waiving a $500 penalty on late tax reports from dealers, and (3) her phone call in March 2003 to Mr. Montoya at the Texas Board of Tax Professional Examiners to attempt to make a complaint.[4]

1.     1997 statements to Alvarado's supervisor about processing registrations without proof insurance.

First, these were not statements on a matter of public concern.  These arose only in the employment context.  Her supervisor De Leon asked her to process some registrations and Alvarado said lacked proof of insurance; when the supervisor told her to process them anyway, Alvarado did not accuse De Leon, Yzaguirre or anyone else of breaking state law, of doing fraudulent acts, etc.  Alvarado has no proof that the vehicle were in fact uninsured;

---

[4]  Alvarado also alleges the speech of Plaintiffs Cantu is "imputed to her."  2nd Am. Comp.¶¶ 61 ; Dkt #58.  Alvarado does not claim she was present when Cantu or Weaver spoke or that she expressly adopted their statements.  There is no protection from retaliation against silence or for other people's statements.  See *Jones v. Collins*, 132 F.3d 1048, 1053 (5th Cir. 1998); *Vanderhurst v. Colorado Mt. College Dist.*, 16 F. Supp.2d 1297, 1305 (D. Colo. 1998).

for all she knew the proof of insurance had been exhibited to some other clerk. There was currently no public debate on this issue. As such it was a purely private conversation over job issues, not a public outcry of fraudulent activity by a public servant. *Compare Noyola*, 846 F.2d at 1024; *Chavez*, 135 Fed.Appx. at 675-76.

Second, Alvarado has no evidence that Yzaguirre or a County policymaker had actual knowledge of her remarks to De Leon. Exh. 1, pp. 54(l.11)-55(l.16). Therefore, there is no evidence that these remarks caused or motivated either (1) her transfer in February 2003, or (2) her constructive discharge in March 2003. *Hitt,* 301 F.3d at 246.

Third, a gap of six years between the statements to De Leon and the actions in 2003 prevent any inference of causation or motivation. *Mayberry ,* 55 F.3d at 1092-93; *Horwitz,* 260 F.3d at 619 (7th Cir. 2001); *Thompson,* 2005 WL 1503543 at \*6 .

2.    <u>Statements concerning waiver of penalty for late VIT reports.</u>

Alvarado claims that at various times during from 1998 to 2003 she told her supervisor she thought that Yzaguirre could not waive a $500 penalty for late Motor Vehicle Inventory. 2nd Am. Compl. ¶57; Dkt #58; Supp. Rule 7a Reply, ¶14; Dkt #41. In 1994, Texas substantially revised the property tax scheme on a dealer's inventory of vehicles. TEX. TAX CODE ANN. §23.121, et seq. (Vernon 2004). Dealers must file monthly sales reports with the County Tax Assessor and the Tax Appraisal District. TEX. TAX CODE ANN. §23.122(f) (Vernon 2004). The law allows a $500 penalty for each late report. TEX. TAX CODE ANN. §23.122(n) (Vernon 2004). There were many misunderstandings with dealers over when and where reports were to be made, as well as good faith errors. Exh. 1, pp. 65(l.9)-66(l.4), 67(l.1-5). As a result, Yzaguirre adopted a policy of waiving the penalty on

14

a "one time only" basis in certain cases. Exh. 2.

First, these were not statements on a matter of public concern. These arose only in the employment context. Her supervisor Garcia asked her to process the reports after a dealer had complained and gotten a waiver; Alvarado did not initiate the conversations and responded only to explain what she had done and why. Exh. 1, pp. 71(l.22)-72(l.22). There was no public debate on this issue. In fact, Mr. Yzaguirre has authority as Tax Assessor to compromise penalties. *Galveston I.S.D. v Heartland Fed. Sav. & Loan Ass'n,* 159 B.R. 198, 207 (S.D. Tex. 1993). The alleged statement occurred (if at all) within a purely private discussion of granting waivers, not a public outcry of fraudulent activity by a public servant. *Compare Bradshaw*, 207 F3d at 817; *Gillum v. City of Kerrville*, 3 F3d 117, 121 (5th Cir. 1993).

Second, Alvarado has no evidence that Yzaguirre or a County policymaker had actual knowledge of her remarks to Garcia. Exh. 1, pp. 74(l.13-20). Therefore, there is no evidence that these remarks caused or motivated either (1) her transfer in February 2003, or (2) her constructive discharge in March 2003. *Hitt,* 301 F.3d at 246.

Third, the alleged speech began in 1998, six years before the adverse employment actions; there is no inference of causation or motivation when the protected conduct begins years before the employment action. *Mayberry ,* 55 F.3d at 1092-93.

3.    The call to Mr. Montoya in March 1993.

First, it is not clear that an "attempted message" is speech at all. Expressing a desire to speak with someone, does not convey to anyone what might be the subject. Certainly, it cannot rationally be understood as expressive speech.

Second, these were not statements on a matter of public concern. These arose only in the employment context. The conversion with the unidentified person at the Board pertained solely to a personal employment matter: whether Defendants should pay for a course Alvarado desired in order to obtain a higher certification.[5]  Alvarado did not accuse Mr. Yzaguirre of anything, much less a crime or fraud. There is no law that requires Defendants pay for the course. As such it was a purely private conversation over job issues. *Compare Noyola*, 846 F2d at 1024.

Third, Alvarado has no evidence that Yzaguirre or a County policymaker had actual knowledge of attempted message to Montoya or he statements to the unidentified employee. Exh. 1, p. 157(l.11-13). Therefore, there is no evidence that these remarks caused or motivated  her constructive discharge in March 2003. *Hitt,* 301 F.3d at 246.

**D.    The alleged conditioned job offer claim does not meet the *Connick-Pickering* test.**

1.    Neither Alvarado's alleged speech nor her lawsuit allegations are speech on a matter of "public concern."

If the alleged retaliation is for filing a suit, the suit must involve a matter of public concern. *Foley v. Univ. of Houston System,* 355 F.3d 333, 341 (5th Cir. 2003); *Lytle v. Wondrash,* 182 F.3d 1083, 1087 (9th Cir. 1999). An ordinary tort suit or a suit on a matter of personal concern does not qualify. *Rathjen v. Litchfield,* 878 F.2d 836, 841-42 (5th Cir. 1989); *Glatt v. Chicago Park Dist.,* 87 F.3d 190, 193 (7th Cir. 1996). Therefore the alleged

---

[5]  The Board of Tax Professional Examiners is a state agency that establishes standards of conduct and education for tax assessors, collectors, and appraisers. TEX. OCCUPATIONS CODE ANN. §1151.103 (Vernon 2004). It registers certain assessor/collectors and certifies persons for levels of specialization. TEX. OCCUPATIONS CODE ANN. §1151.151, et seq. (Vernon 2004). Registration and certification were not required for her position. TEX. OCCUPATIONS CODE ANN. §§1151.151, 160 (Vernon 2004)

speech or lawsuit allegations must be reviewed under the *Connick*[6] test for public concern, i.e., content, form, and context.  *Foley*, 355 F.3d at 341; *Lytle,* 182 F.3d at 1088.

The Court has already ruled that Alvarado's allegations concerning her rights of association fail to state a claim.  Dkt # 48.  Thus, those claims cannot satisfy the first element.

Alvarado's own deposition proves the alleged speech activities before she quit in 2003 were not on a matter of public concern.  If her actual speech is not on a matter of "public concern," then about them fail to satisfy the first element. Her petition alleged her speech only in vague terms; Alvarado cannot hide unprotected speech behind conclusory pleadings and then claim those vague allegations are protected speech if the actual speech was not in fact protected.

> 2.    A rejected conditional job offer is not an adverse employment action or a <u>Constitutional injury</u>.

Alvarado must explain how an offer of employment conditioned on dropping this suit is itself a constitutional injury.  She must show the alleged offer caused her an injury that would chill a person of ordinary firmness from continuing to engage in constitutionally protected speech.  *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002).  A retaliation claim requires a constitutional injury, i.e., that the exercise of free speech has been curtailed.  *Id*. at 259.  In the context of employment, this element requires proof of an adverse employment action.  *Id*. at 258, citing *Colson v. Grohman,* 174 F.3d 498, 510, 514 (5th Cir. 1999).  Not every retaliatory act that might chill future speech is actionable, either because it is too trivial

---

[6]  *Connick v. Myers,* 461 U.S. 138, 147-48 (1983).

or because it did not and is not likely to a deter future protected speech. *Colson*, 174 F.3d at 510-514.  It is not likely that former employees will avoid filing speech retaliation suits by the prospect that if, after they have quit their jobs, they might be offered re-employment conditioned on dropping the suit.

Previously, the Court determined that an offer of employment conditioned on dropping a speech retaliation suit is an "adverse employment" action. Dkt #65, pp. 4-6 citing *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 78 (1990).  Admittedly there is no case directly in point, though the Fifth Circuit has found a flat refusal to deal with someone who is suing an agency does not improperly chill First Amendment rights.  *Enplanar, Inc. v. Marsh,* 11 F.3d 1284, 1296 (5th Cir. 1994), *cert. denied*, 513 U.S. 926 (1994).  The County urges the Court reconsider.

While being denied employment may be adverse, that does not end the discussion. Not all disadvantages imposed for speech activities constitute actionable retaliation.  *Colson*, 174 F.3d at 510 (city councilwoman was subjected to public criticism by other council members who also threatened to instigate a recall petition; held, such criticism and threats were not actionable retaliation).  Moreover, Alvarado does not claim that the offer impaired her ability to prosecute her claims or speak as she chose. *Compare  Smith v. Plati,* 258 F.3d 1167, 1177 (10th Cir. 2001), *cert. denied*, 537 U.S. 823 (2002); *Martin v. Swift,* 781 F.Supp. 1250, 1254 (E.D.Mich. 1992) (section 1983 plaintiff who alleged police officer groped her during an arrest had no retaliation claim for prosecutor's offer to drop the criminal charges against plaintiff if she released a threatened civil suit, because plaintiff did not take the offer and filed the civil suit).

18

3.     The *Pickering* balance permits public employers to offer employment
<u>conditioned on dropping a civil suit.</u>

Alvarado's claim must satisfy the *Pickering*[7] balance test, i.e., the balance between

the plaintiff's right to comment on matters of public concern and the public employer's

interest in the efficiency of the public services it performs. *Kinney v. Weaver,* 367 F.3d 337,

357-61 (5th Cir. 2004) (en banc), *cert. denied*, 125 S.Ct. 102 (2004); *Lytle,* 182 F.3d at 1088.

The issue is the importance of the social value of the specific speech, not Alvarado's

personal gain. *Id.*  The balance does not tip in her favor just because she might allege serious

misconduct. *Johnson v. State of Louisiana,* 369  F.3d 826, 831 (5th Cir. 2004).

On the Defendants' side, the Court considers whether the speech impairs discipline

by superiors or harmony among co-works, has a detrimental impact on close working

relations for which personal loyalty and confidence are necessary, or interferes with the

regular operation of the enterprise.  *Rankin v. McPherson,* 483 U.S. 378, 388 (1987).  The

Court should consider the reasonable likelihood of disruption in the workplace. *Kinney,* 367

F.3d at 364.  The public employer has an interest in preserving loyalty and close working

relations.  *Id.* at 365-66.

It requires no leap of imagination to believe that co-workers may feel a distinct lack

of trust when working with someone who is suing the employer.  *Lytle,* 182 F.3d at 1089.

Given that Alvarado has already named her former co-workers as her persecutors, her co-

workers might wonder if they too will be named if they do not become her "buddy."

Moreover, the County was entitled to consider whether her participation in a highly

---

[7]  *Pickering v. Bd of Educ.,* 391 U.S. 563, 568 (1968).

adversarial suit and the discovery process would distract her from work, interfere with her performance, and impair her work attitude. *Compare O'Connor v. Chicago Transit Authority,* 985 F.2d 1362, 1370-71 (7th Cir. 1993) (proof that lawsuit distracted employee, kept him from work, and affected his attitude satisfied *Pickering* test to justify firing him).

## V.  CONCLUSION

The Court should grant summary judgment to dismiss Alvardo's First Amendment claims based on denial of her rights to engage in speech activities.

Respectfully submitted,

By  /s/ Bruce Hodge
**Bruce Hodge**
State Bar No. 09751700
Fed. ID No. 4003


**Richard O. Burst**
State Bar No. 00785586
Fed. ID No. 15515
Cameron County Attorney's Office
964 E. Harrison
Brownsville TX 78520
Telephone: (956) 550-1345
Facsimile: (956) 550-1348

**Charles Willette**
State Bar No. 21509700
Fed. ID No. 1937
**WILLETTE & GUERRA, L.L.P.**
1534 E. 6th Str., Suite 200
Brownsville, TX 78520
Telephone: (956) 541-1846
Facsimile: (956) 371-1428

Attorneys for *Defendant* CAMERON COUNTY

By  /s/ Roger W. Hughes

**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950
**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile:  (956) 428-2954

Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the March 1, 2006.

Ms. Gay E. Gilson                                        *CM/RRR 7005 1160 0000 5657 5967*
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Mr. David Lee McGee                                          *Via Ordinary Mail*
**LAW OFFICES OF DAVID LEE MCGEE, P.C.**
701 Park Avenue
Corpus Christi, TX 78401

Mr. Charles Willette                                          *Via Ordinary Mail*
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

21

Mr. Bruce Hodge                                                              *Via Ordinary Mail*
Mr. Richard O. Burst
**CAMERON COUNTY ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520


/s/  Roger W. Hughes
Roger W. Hughes