IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF MUNOZ'S FIRST AMENDMENT SPEECH CLAIMS**

Charles Willette
**WILLETTE & GUERRA, L.L.P.**
1534 East 6th Street, Suite 200
Brownsville, Texas 78520
Phone: 956/541-1846
Fax: 956/541-1893

Richard Burst
Bruce Hodge
**CAMERON COUNTY
 ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520
Phone: 956/550-1345
Fax: 956/550-1348

Attorneys for *Defendant* CAMERON
COUNTY

Craig H. Vittitoe
Roger W. Hughes
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Phone: 956/428-7495
Fax:  956/428-2954

Attorneys for *Defendant* TONY
YZAGUIRRE, ASSESSOR-COLLECTOR
OF CAMERON COUNTY AND DIRECTOR OF
 CAMERON COUNTY AUTOMOBILE CRIMES
ENFORCEMENT TASK FORCE IN HIS
INDIVIDUAL CAPACITY

# TABLE OF CONTENTS

Page:

I.  NATURE OF THE CASES STATUS OF PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . 1

II.  ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . 1

III.  Summary Judgment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     Munoz's statement to Ms. De Leon Concerned an Office Procedure. . . . . 3

      B.     Munoz's Ambiguous Remark to Defendant Yzaguirre
            About Moises Torres. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      C.     Munoz's Statement to Cameron County Sheriff's
            Deputy Rumaldo Rodriguez. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.     The Events Leading to Munoz's Resignation. . . . . . . . . . . . . . . . . . . . . . . . 5

V.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

VI.  Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            1.     Standard for granting summary judgment. . . . . . . . . . . . . . . . . . . 8

            2.     Standards for Defendant Yzaguirre's qualified immunity. . . . . . 10

            3.     Plaintiff must show a final policy maker for the County
                  is responsible for the retaliation. . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.     Elements for a First Amendment Speech Retaliation Claim. . . . . . . . . . . 12

      C.     Munoz's Alleged Speech Activities Do Not Meet
            Standards for Retaliation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            1.     Statements to Ms. de Leon about handling money at her desk. . . . 15

            2.     Statement to Mr. Yzaguirre in February 2002. . . . . . . . . . . . . . . 16
            3.     Statement to Sheriff's Deputy Rodriguez in August 2002. . . . . . 17

        4.    <u>The lawsuit allegations in May 2003</u>. . . . . . . . . . . . . . . . . . . . . . . 18

    D.    Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

Page:

Cites:

*Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021
(S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Alexander v. Eeds,* 392 F.3d 138 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Beattie v. Madison County School Dist.,* 254 F.3d 595
(5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17

*Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814
(5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000),
*cert. denied*, 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Celotex Corp. v. Catrell,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664
(5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*Finch v. Fort Bend I.S.D.*, __ F.3d ___, 2003
WL 21290879 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Flores v. Cameron County*, 92 F3d 258
(5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Foley v. Univ. of Houston System,* 355 F.3d 333
(5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gillum v. City of Kerrville,* 3 F.3d 117 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 17

iv

*Glatt v. Chicago Park Dist.,* 87 F.3d 190
　　(7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gutierrez v. City of San Antonio*, 139 F.3d 441
　　(5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hernandez v. Duncanville School Dist.,*
　　2005 WL 3293995 (N.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hitt v. Connell,* 301 F.3d 240 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 18

*Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Horwitz v. Bd. of Educ. Of Avoca School Dist.,*
　　260 F.3d 602 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 18, 20

*Johnson v. State of Louisiana,* 369  F.3d 826
　　(5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Kaiser v. Garrett*, 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kennedy v. Tangipahoa Parish Library Bd. of Control,*
　　224 F.3d 359 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Kinney v. Weaver,* 367 F.3d 337 (5th Cir. 2004) (en banc),
　　*cert. denied*, 125 S.Ct. 102 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lytle v. Wondrash,* 182 F.3d 1083 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Mahaffey v. Winston County Sheriffs Dep't,*
　　96 Fed. Appx. 191 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
　　475 U.S. 560 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086
　　(5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McClendon v. City of Columbia,* 305 F.3d 314 (5th Cir. 2002)
　　(en banc), *cert. denied,* 123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Monell v. Department of Social Services*,
　　436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Noyola v. Texas Dept. of Human Resources*,
　　846 F.2d 1021 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*O'Connor v. Chicago Transit Authority,*
985 F.2d 1362 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 18, 20

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Pickering v. Bd of Educ.,* 391 U.S. 563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001),
　　*cert. denied*, 534 U.S. 820 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Rankin v. McPherson,* 483 U.S. 378 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rathjen v. Litchfield,* 878 F.2d 836 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Serna v. City of San Antonio*, 244 F.3d 479 (5th Cir. 2001),
　　*cert. denied*, 534 U.S. 951 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Slaughter v. Allstate Ins. Co.*, 803 F.2d 857 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . 9

*Teague v. City of Flower Mound, Texas,*
　　179 F.3d 377 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Thompson v. City of Aransas Pass,*
　　2005 WL 1503543 (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Thompson v. Upshur County,* 245 F.3d 447
　　(5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Federal Rules of Civil Procedure:</u>
Rule 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Federal Statutes:</u>
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 12

TO THE HONORABLE JUDGE OF SAID COURT:

1

COMES NOW **Defendants Cameron County** and **Tony Yzaguirre, Jr.**, and file Defendants' Motion for Summary Judgment on Plaintiff Munoz's First Amendment Speech Claims, and would respectfully show the Court as follows:

## I. NATURE OF THE CASES STATUS OF PROCEEDING

Plaintiff Felix Munoz sued Defendants under 42 U.S.C. § 1983 for depriving him of First Amendment rights; his claims are for retaliation for exercise of freedom of speech and freedom of "association."  Dkt #58.

Defendants move for summary judgment that Plaintiff Munoz take nothing on his retaliation claims for exercising speech protected by the First Amendment.

## II. ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT

1. Whether Plaintiff Munoz engaged in speech protected by the First Amendment. There is no evidence that Plaintiff Munoz's alleged speech activities were speech on a matter of public concern.  If so, the alleged speech fails the *Pickering* test.

2. Whether any such speech was a cause of or motivating factor for any adverse employment action or constructive termination if neither the County nor Mr. Yzaguirre was aware of the speech or expressive activity.  There is no evidence that Mr. Yzaguirre or a final policymaker for the County knew or was aware of any speech protected by the First Amendment.  The evidence shows that some alleged speech occurred so long before the alleged speech activity that it could not be the cause or motivating factor for the alleged adverse employment actions or constructive termination.

3. Whether Plaintiff Munoz was constructively terminated by Defendants Yzaguirre or

2

Cameron County. There is no evidence that Munoz's working conditions became intolerable.

4.    Whether Yzaguirre is entitled to qualified immunity against the First Amendment claims for retaliation for the exercise of protected speech.

### III.  Summary Judgment Evidence

Defendants' submit the attached exhibits as summary judgment evidence:

| Exh. | Description |
|------|-------------|
| 1 | Deposition excerpts of Plaintiff Felix Munoz |
| 2 | ATF Project Coordinator job description; Chief Deputy of job description |
| 3 | Letter from County Auditor, dated May 21, 2003. |
| 4 | Letter from Defendant Yzaguirre, dated May 23, 2003 |
| 5 | Munoz affidavit, dated August 3, 2003 |
| 6 | Letter from Defendant Yzaguirre, dated September 26, 2002 |
| 7 | Declarations of Roger W. Hughes |

### IV.  Factual Background

Munoz alleges three instances of protected speech: (1) he told Lupita De Leon it "looked bad" to be counting money in the open, (2) he told Defendant Yzaguirre he was suspicious of Moises Torres and was concerned Yzaguirre gave Torres special treatment, and (3) his lawsuit allegations.

### A.    Munoz's statement to Ms. De Leon Concerned an Office Procedure.

Munoz was Defendant Yzaguirre's chief of operations.  Exh. 1, p. 18(l.10-14).  He had an office across the hall from the Yzaguirre's administration office at Cameron County

courthouse; Munoz had security monitors that could view the entire office. Exh. 1, pp. 62(l.
_3-10), 64(l.1-13). Lupita De Leon was the supervisor for the auto tax division; she had a
desk behind the main counter in that division. Exh. 1, pp. 24(l.21)-25(l.11), 63(l.22)-
64(l.13). The auto tax clerks all turned their money into Ms. De Leon; he trusted her to
handle money. Exh. 1, pp. 64(l.10)-65(l.17).

Sometime in 2001 or 2002, he twice saw Ms. De Leon at the reception area counting
money; she was with Moises Torres and he thought she was handling a title application for
him. Exh. 1, pp. 68(l.8-22), 69(l.1)-70(l.22). When she returned to the auto tax division, he
told it "looked bad" to be counting money in the reception area. Exh. 1, pp. 69(l.7)-70(l.8),
74(l.5-13). He thought that if a member of the public saw this, they would think it improper,
but he could not explain why. Exh. 1, p. 67(l.6-24). His only objection was to where she
counting the money. Exh. 1, p. 66(l.12-18).

On the third occasion, he saw Ms. De Leon appear to hand a co-worker money while
both of them were working at the auto tax counter. Exh. 1, pp. 74(l.17)-75(l.25), 91(l.10)-
92(l.13). In each case, he only asked what she was doing; she told him "nothing." Exh. 1,
pp. 76(l.7-25), 93(l.3-15).

Munoz has no evidence Defendant Yzaguirre ever learned of these remarks to Ms.
De Leon. Exh. 1, pp. 90(l.19)-91(l.2).

## B.    Munoz's Ambiguous Remark to Defendant Yzaguirre About Moises Torres.

Munoz became distrustful of Moises Torres, a local businessman. In 2001 Munoz
began seeing Torres start leaving title transfer applications at the administrative office
instead of the auto division. Exh. 1, p. 47(l.10-25). As far as Munoz knew, the applications

and fees were in order and the fees paid; initially, he saw nothing wrong with leaving them at the administrative office.  Exh. 1, p. 59(l.18)-60(l.4).  He became concerned only when it seemed to become more frequent.  Exh. 1, p. 62(l.11-15).  Also, Torres briefly loaned Defendant Yzaguirre a truck; Munoz ran its license tags and found a local dealer, Mr. Sosa, owned it.  Exh. 1, pp. 113(l.17)-114(l.18).  He did not think this was wrong and said nothing to Defendant Yzaguirre about who owned the truck.  Exh. 1, p. 115(l.4-22).

In February 2002, he and Defendant Yzaguirre were inspecting junkyards in Matamoros.  Exh. 1, p. 110(l.3-18).  While they were alone in a car, he told Yzaguirre in Spanish to take care around Torres ("*ten cuidado*") and that he distrusted Torres.  Exh. 1, pp. 110(l.19)-113(l.16).  Munoz was thinking of the truck loan and leaving the paperwork at the administrative office, but he did not expressly tell Yzaguirre why he was suspicious of Torres.  Exh. 1, pp. 119(l.22)-120(l.12).  Munoz has no idea if Yzaguirre understood to what, about Torres, he was referring.  Exh. 1, pp. 121(l.18)-122(l.8), 123(l.13-23).

## C.    Munoz's Statement to Cameron County Sheriff's Deputy Rumaldo Rodriguez.

In August 2002, Munoz was called by Plaintiff Cantu that she had been questioned by the Cameron County Sheriff's department.  Exh. 1, pp. 161(l.20)-164(l.24).  A few days later, Deputy Rumaldo Rodriguez called him for an interview.  Exh. 1, pp. 160(l.18)-161(l.19).[1]  Munoz became concerned that he needed legal representation, so he retained Plaintiff Cantu's attorney, Mr. Everardo Garcia.  Exh. 1, pp. 168(l.8)-170(l.l.19).

He and attorney Garcia met with Dep. Rodriguez.  Exh. 1, p. 168(l.8-17).  Deputy

---

[1]  This was the same Rumaldo Rodriguez convicted by this Court in *United States v. Cantu, et al.,* Case No. 05-458.

Rodriguez mainly asked about who was coming to the administrative office.  Exh. 2, pp. 172(l.20)-173(l.12).  All he knew about processing the applications was hearsay he had received from Plaintiff Cantu a few weeks earlier.  Exh. 1, pp. 177(l.11-23), 182(l.14)-183(l.18); Exh. 6.  He then signed a statement.  Exh. 6.

Munoz told Cantu about the interview and statement, but no one else.  Exh. 1, pp. 187(l.12)-188(l.2).  Munoz has no evidence Defendant Yzaguirre learned about the interview or the statement before Munoz alleged the statement in August 2003.  Exh. 1, pp. 188(l.13), 189(l.5), 192(l.8-24).

**D.    The Events Leading to Munoz's Resignation.**

In May 2002, County Auditor Yates requested Defendant Yzaguirre send a top assistant to the Tax Assessor's Harlingen branch office to investigate and correct possible financial and staffing problems there.  Exh. 1, pp. 152(l.1)-153(l.14); Exh. 3.  Recently, Munoz had worked closely with that office to prosecute two clerks who had misused the title application computers to steal money.  Exh. 1, pp. 153(l.17)-154(l.18).  Munoz was the logical person to go; Defendant Yzaguirre instructed him to go to that office in May 2002.  Exh. 1, pp. 155(l.8)-156(l.11); Exh. 4.

Munoz was also the Auto Task Force ("ATF") Project Coordinator; it paid a monthly stipend of $250.  Exh. 1, pp. 189(l.9)-190(l.10).  He wrote its job description, which stated he had to supervise the ATF office and staff in Brownsville; once he went to Harlingen, he could no longer do that.  Exh. 1, pp. 190(l.17)-191(l.5); Exh. 3.  In October 2002, he stopped getting the stipend; he did not contest this or ask to be returned to Brownsville.  Exh. 1, pp. 190(l.17-24), 191(l.16)-192(l.7), 212(l.1-7); Exh. 6.

Munoz had personal problems with the Harlingen branch manager, Elida Barbosa. He resented her asking him to help process vehicle registrations and title transfers. Exh. 1, p. 212(l.14-19).

In August 2004, Munoz gave Ms. Barbosa a written reprimand which threatened to fire her. Exh. 1, p. 212(l.8-13). The only specific reason Munoz gave was that Ms. Barbosa would not talk to him; he could not recall the rest. Exh. 1, pp. 212(l.14)-213(l.22). The County Personnel Manual does not permit Munoz to put a reprimand in her file or to fire here. Exh. 1, p. 218(l.1-7). He relied on his job description as chief deputy that allowed him to "initiate" disciplinary matters. Exh. 1, p. 215(l.9-20); Exh. 2. However, he conceded that after he signed the letter, the only thing left to do was put it in her file. Exh. 1, pp. 216(l.3-6), 218(l.17)-219(l.8).

Munoz knew that letter of reprimand go in the official personnel folder and have serious consequences for promotion and pay. Exh. 1, pp. 217(l.11)-218(l.3). He did not ask or consult Defendant Yzaguirre in advance; he did not tell Defendant Yzaguirre his letter was tentative. Exh. 1, pp. 216(l.7-11), 217(l.6-10), 219(l.9-23). Other supervisors had always consulted Defendant Yzaguirre first before issuing a letter of reprimand. Exh. 1, pp. 216(l.12)-217(l.5).

On September 7, 2004, Defendant Yaguirre demoted him to auto tax clerk for issuing the letter without permission. Exh. 1, p. 220(l.5-7). However, Yzaguirre offered to let Munoz file a formal grievance and let the Cameron County Advisory Grievance Committee decide whether to reinstate Munoz or affirm the demotion. Exh. 1, p. 220(l.8-19).

Munoz submitted a grievance and provided the Committee with everything he thought

appropriate. Exh. 1, pp. 220(l.18)-221(l.2). He knew the people on the Committee; they had no bias and were not influenced by anything outside the proceedings. Exh. 1, pp. 221(l.3)-222(l.14). The Committee decided to deny the grievance and did not reinstate Munoz. Exh. 1, p. 222(l.15-19). Munoz resigned in November 2004 because his salary was then too low and he did not like working in the Harlingen office. Exh. 1, pp. 222(1.20)-223(l.12).

## V.  Summary of the Argument

Munoz has failed to prove that his alleged statements were on matters of public concern or that they motivated Defendant Yzaguirre to take any action concerning employment. First, the Court previously ruled his statements to Ms. De Leon concerning counting the money in the open were not a matter of public concern. The evidence only confirms this. There is no evidence that Defendant Yzaguirre ever learned of these remarks.

The alleged statement to Yzaguirre about Moises Torres is vague; it does not charge Defendant Yzaguirre (or anyone else in his office) with corruption, fraud, or criminal misconduct. If anything, he was critical only of Mr. Torres. There is too large a gap in time for this to have motivated Defendant Yzaguirre to remove the stipend or to demote him.

Finally, the statements to Deputy Rodriguez did not clearly accuse anyone in Defendant Yzaguirre's office of a crime, corruption, or fraud. Rather it appeared that Munoz was simply reporting hearsay and attempting to deflect the investigation from himself. In any event, there is no evidence that Defendant Yzaguirre learned of it prior to removing the stipend; there is too large a gap, in time, before the demotion for it to have motivated Defendant Yzaguirre.

Moreover, Defendant Yzaguirre had a reasonable basis for removing the stipend and

demoting Mr. Munoz.  Mr. Munoz wrote the job description for the ATF Project Manager, which required him to be in Brownsville.  He could no longer perform that job after May 2002.  The demotion was a fit punishment for an unauthorized reprimand against a subordinate.  Defendant Yzaguirre's actions were reviewed and upheld by an independent body within the County.

### VI.  Argument and Authorities

**A.    Standard of Review**

      1.    <u>Standard for granting summary judgment</u>.

Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor.  Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A party seeking summary judgment bears the initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrell,* 477 U.S. 317, 322 (1986).  Where a party will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial.  *Id.* at 322-323.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 560 (1986).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 323; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, Defendants are entitled to summary judgment when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the Plaintiff's case, and on which [the plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See also Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

2.    Standards for Defendant Yzaguirre's qualified immunity.

Qualified immunity protects a public official from claims under 42 USC § 1983 if a reasonably prudent official would not know the actions violated clearly established

10

constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The public official will have qualified immunity if the conduct was objectively reasonable under the existing federal law. *McClendon v. City of Columbia,* 305 F.3d 314, 327 (5th Cir. 2002)(en banc), *cert. denied,* 123 S.Ct. 1335 (2003).

The U.S. Supreme Court has set out a clear, two step process to determine whether the complaint can defeat qualified immunity. Once the defense of qualified immunity is alleged, the trial judge must first determine whether the plaintiff has alleged a constitutional violation at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998). The court must then determine whether defendant's actions violated "clearly established" constitutional law at the time of the conduct and whether the defendant's actions were objectively reasonable. *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900. Acts are objectively reasonable unless all reasonable officials under the same circumstances would have know the conduct violation the Constitution. *Thompson v. Upshur County,* 245 F.3d 447, 457 (5th Cir. 2001).

For constitutional law to be "clearly established," plaintiffs must prove more than the broad contours of established rights or broad legal truisms. *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995). The contours of the constitutional right must be defined well enough so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law. *McClendon,* 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional. *Hope v. Pelzer,* 536 U.S.

730, 122 S.Ct. 2508, 2515-16, (2002); *McClendon,* 305 F.3d at 329.

      3.    Plaintiff must show a final policy maker for the County is responsible for the <u>retaliation</u>.

Governmental liability does not arise vicariously through the acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  Plaintiffs must show that a policy adopted by the governmental unit's policymaker with deliberate indifference to the likelihood of a constitutional violation.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578-80 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2002).

The County is not liable unless a "policymaker" for the County either (1) made or adopted a policy responsible for the injury, or (2) knew of a custom and ratified it. *Piotrowski*, 237 F.3d at 578-79.  A "policymaker" is the person for that governmental unit that has final policymaking authority.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  State law determines this issue.  *Flores v. Cameron County*, 92 F3d 258, 263 (5th Cir. 1996).

Ordinarily, the Commissioners Court is the final policymaker for a Texas county. *Flores*, 92 F3d at 264.

**B.**    **Elements for a First Amendment Speech Retaliation Claim.**

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983.  The employee must (1) suffer an adverse employment action, (2) show that his/her speech in question was a matter of public concern, (3) show that his/her interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action.

*Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001); *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000).

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). However, speech may involve both matters of public concern and private matters. *Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 366 (5th Cir. 2000). Where the speech activity mixes both personal and public concerns, the court looks at both (1) content-form-context, and (2) the citizen-employee analysis. *Kennedy,* 224 F.3d at 365-66; *Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664, 670-73 (5th Cir. 2005). In "mixed speech" cases, the content-form-context tests weighs the most heavily. *Kennedy,* 224 F.3d at 366-67; *Chavez,* 135 Fed. Appx. at 671. The "citizen-employee" test focuses is on the employee's role and motives when speaking. *Id*. The issue is whether the plaintiff spoke primarily as a citizen rather than as an employee addressing matters only of personal concern. *Id.*; *Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021, *6 (S.D.Tex. 2005).

Determination of whether a statement is primarily a matter of public concern is a legal question to be determined by the court from the content, form and context of the statement. *Bradshaw,* 207 F.3d at 814. A matter is not a public concern because it could be, in different circumstances, of general interest to the public. *Id*. The rationale behind the "public concern" requirement is to prevent public employees from relying on the Constitution to redress their personal grievances. *Connick v. Myers*, 461 U.S. 138, 149 (1983). The First Amendment does not require a public office be operated as a round table for employee

complaints over internal office affairs. *Connick*, 461 U.S. at 149.

Employee speech motivated primarily to defend one's own personal philosophies on office policy and management is insufficient. *See, e.g. Finch v. Fort Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988). This is particularly so when the employee is responding to criticism of their job performance. *Bradshaw,* 207 F.3d at 817. Although the choice to make an internal grievance privately rather than publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public. *Id.* The court must also consider whether the statements are addressed to a backdrop of a public debate on the issue in the employee's speech. *Kennedy,* 224 F.3d at 372.

Corruption, malfeasance, and criminal acts of public offices are usually matters of public concern. *Alexander v. Eeds,* 392 F.3d 138, 145 (5th Cir. 2004). However, complaints of official incompetence, carelessness, or violations of departmental policies are not usually matters of public concern. *Id.* at 145-46. Also, claims of illegal behavior may not be of public concern when the context shows they are simply a part of a larger dispute over job performance, "office politics," or an employment dispute. *Chavez,* 135 Fed. Appx. At 675-76; *Mahaffey v. Winston County Sheriffs Dep't,* 96 Fed. Appx. 191, 193 (5th Cir. 2004); *Alaniz,* 2005 WL 1651021 at *10.

The speech activity must precede and be the cause of the adverse employment action. *Finch,* 333 F.3d at 564; *Hernandez v. Duncanville School Dist.,* 2005 WL 3293995, *6-7 (N.D.Tex. 2005). The defendants must have actual knowledge of the speech activity prior to the adverse employment action. *Beattie v. Madison County School Dist.,* 254 F.3d 595,

603-4 (5th Cir. 2001); *Hitt v. Connell,* 301 F.3d 240, 246 (5th Cir. 2002).  There is no

inference of causation if the protected activity occurred or began long before the adverse

employment action.  *See e.g., Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092-93 (5th

Cir. 1995) (protected activity began ten years before suit and continued until suit filed);

*Horwitz v. Bd. of Educ. Of Avoca School Dist.,* 260 F.3d 602, 619 (7th Cir. 2001) (span of

18 months between speech and termination no evidence speech motivated firing); *O'Connor*

*v. Chicago Transit Authority,* 985 F.2d 1362, 1370 (7th Cir. 1993) (nine months too long to

permit inference); *Thompson v. City of Aransas Pass,* 2005 WL 1503543, *6 (S.D.Tex.

2005) (two years was too long to permit inference).

### C.    Munoz's Alleged Speech Activities Do Not Meet Standards for Retaliation Claims.

Munoz alleges four instances of protected speech: (1) his comments to Ms. de Leon

in 2001 or 2002 about handling money at her desk, (2) his statement to Yzaguirre in

February 2002, (3) his affidavit to Dep. Rodriguez in August 2002, and (4) his lawsuit in

June 2003.  Carefully reviewed each fails one or more of the elements for a retaliation claim.

### 1.    Statements to Ms. de Leon about handling money at her desk.

First, the statements are obviously not on a matter of public concern.  The Court

found as much earlier.  Dkt #48, pp. 12-13.  The statement was entirely about an office

practice, made to a subordinate, and at work.  There was no evidence of fraud or corruption

by Ms. De Leon or anyone else in the office.

Second, there was no evidence that Defendant Yzaguirre or any County policy maker

was aware of these statements before suit was filed in May 2003.  Therefore it could not

cause or motivate any alleged employment actions before that date.  *Beattie,* 254 F.3d at 603-4; *Hitt,* 301 F.3d at 246.

Third, there is no evidence of causation or motivation for the subsequent alleged adverse employment actions.  Munoz made the remarks in 2001 or 2002; he lost his stipend in October 2002.  A gap of that length is too long to permit an inference this caused or motivated the action.  *O'Connor,* 985 F.2d at 1370; *Horwitz,* 260 F.3d at 619.[2]  The gap is certainly too long to connect it to his demotion in 2004.  *Id.*

2.      Statement to Mr. Yzaguirre in February 2002.

This statement is not on a matter of public of concern.  The literal words merely express personal disapproval of Mr. Torres and advised Defendant Yzaguirre to be careful of him.  The words do not expressly accuse anyone of a crime, much less insinuate Defendant Yzaguirre or anyone in his office had done or would do anything fraudulent, corrupt, or criminal.  Exh. 1, pp. 110(l.19)-113(l.16).  At best, the statement expresses disapproval of Torres, not Defendant Yzaguirre.  He does not know if Defendant Yzaguirre even understood the substance, if any, of Munoz's comment about Mr. Torres.  Exh. 1, pp. 121(l.18)-122(l.18), 123(l.13-23).

Moreover, there is no evidence of causation or motivation for the subsequent alleged adverse employment actions.  Munoz made the remarks in February 2002; he lost his stipend in October 2002.  A gap of nearly seven months is too long to permit an inference this

---

[2]  Munoz's transfer to the Harlingen branch office in May 2002 was not an adverse employment action.  First, he kept his title as ATF Project Coordinator and stipend until October 2002.  Exh. 2, p. 59.  Second, he conceded he was the logical person for Mr. Yzaguirre to send to the office as the County Auditor's request.  Exh. 2, pp. 25-26.

caused or motivated the action. *O'Connor,* 985 F.2d at 1370; *Horwitz,* 260 F.3d at 619.[3] The gap is certainly too long to connect it to his demotion in 2004. *Id.*

   3.    <u>Statement to Sheriff's Deputy Rodriguez in August 2002.</u>

First, the statement is not on a matter of public concern. Munoz's statement does not accuse Defendant Yzaguirre of any crime or wrongdoing. Exh. 5. His statement does not expressly state that Yzaguirre was doing any fraudulent or criminal acts. Exh. 5. Munoz did initially thought leaving the applications at the administrative office was alright; he assumed the paperwork and fees were in order. Exh. 1, p. 59(l.18)-60(l.4). He did not claim to have knowledge about the paperwork; he just reported hearsay from Cantu. Exh. 1, pp. 177(l.11-23), 182(l.14)-183(l.18); Exh. 5.

Munoz did not seek out Dep. Rodriguez; in fact, he was concerned for self in making the statement. The fact Munoz retained and brought counsel to the interview shows his intent was to protect himself. Munoz had nothing more than suspicions of any wrongdoing by Defendant Yzaguirre. Exh. 1, p. 275(l.3-7).

Therefore, the content and context show the statement was not a matter of public concern. *Compare Chavez,* 135 Fed. Appx. at 675-76 (flyer that charged school board with violating state law did not make it a matter of public concern); *Teague v. City of Flower Mound, Texas,* 179 F.3d 377, (5th Cir. 2004) (grievance was focused primarily on clearing plaintiff's name); *Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir. 1993).

Second, Munoz has no evidence that Yzaguirre or a County policymaker had actual

---

   [3]  As to the transfer in May 2002, see fn.2 above.

knowledge of his statement to Dep. Rodriguez before Munoz alleged it in August 2003. Exh. 1, pp. 188(l.13)-189(l.5), 192(l.8-24). Rule 7a Reply, Dkt #23. Therefore, there is no evidence that these remarks caused or motivated any action before August 2003. *Beattie,* 254 F.3d at 603-4; *Hitt,* 301 F.3d at 246.

Third, a gap of 13 months between the date Munoz revealed the affidavit's existence and the his demotion prevents any inference of causation or motivation. *Horwitz,* 260 F.3d at 619 (7th Cir. 2001); *O'Connor,* 985 F.2d at 1370.

4.    The lawsuit allegations in May 2003.

If the alleged retaliation is for filing a suit, the suit must involve a matter of public concern. *Foley v. Univ. of Houston System,* 355 F.3d 333, 341 (5th Cir. 2003); *Lytle v. Wondrash,* 182 F.3d 1083, 1087 (9th Cir. 1999). An ordinary tort suit or a suit on a matter of personal concern does not qualify. *Rathjen v. Litchfield,* 878 F.2d 836, 841-42 (5th Cir. 1989); *Glatt v. Chicago Park Dist.,* 87 F.3d 190, 193 (7th Cir. 1996). Therefore the alleged speech or lawsuit allegations must be reviewed under the *Connick*[4] test for public concern, i.e., content, form, and context. *Foley*, 355 F.3d at 341; *Lytle,* 182 F.3d at 1088.

Defendants have filed for summary judgment on Munoz's association claims. For the reasons cited in that motion, those allegations cannot satisfy the first element.

Munoz's own deposition proved alleged speech actions are not on a matter of public concern. If his actual speech was not on a matter of "public concern," then the allegations about them fail as well. His petition alleged these matters only generally; he should not be

---

[4]    *Connick v. Myers,* 461 U.S. 138, 147-48 (1983).

allowed to hide unprotected speech behind conclusory pleadings and then claim those vague allegations are protected speech if the alleged speech was not in fact protected.

Second, Munoz's claim must satisfy the *Pickering*[5] balance test, i.e., the balance between the plaintiff's right to comment on matters of public concern and the public employer's interest in the efficiency of the public services it performs. *Kinney v. Weaver,* 367 F.3d 337, 357-61 (5th Cir. 2004) (en banc), *cert. denied,* 125 S.Ct. 102 (2004); *Lytle,* 182 F.3d at 1088. The issue is the importance of the social value of the specific speech, not Munoz's personal gain. *Id.* The balance does not tip in his favor just because he might allege serious misconduct. *Johnson v. State of Louisiana,* 369 F.3d 826, 831 (5th Cir. 2004).

On the Defendants' side, the Court considers whether the speech impairs discipline by superiors or harmony among co-works, has a detrimental impact on close working relations for which personal loyalty and confidence are necessary, or interferes with the regular operation of the enterprise. *Rankin v. McPherson,* 483 U.S. 378, 388 (1987). Munoz admits that the Tax Assessor-Collector must be able to trust his Chief Deputy of operations. He also admits that he would want a Chief Deputy he could trust were he the Tax Assessor-Collector. Exh. 1, p. 281(l.2-15). The Court should consider the reasonable likelihood of disruption in the workplace. *Kinney,* 367 F.3d at 364. The public employer has an interest in preserving loyalty and close working relations. *Id.* at 365-66.

It requires no leap of imagination to believe Munoz's subordinates may feel a distinct

---

[5] *Pickering v. Bd of Educ.,* 391 U.S. 563, 568 (1968).

lack of trust when working with a supervisor who is suing the employer. *Lytle,* 182 F.3d at 1089. Moreover, the County was entitled to consider whether his participation in a highly adversarial suit and the discovery process would distract him from work, interfere with his performance, and impair his work attitude. *Compare O'Connor,* 985 F.2d at 1370-71 (proof that lawsuit distracted employee, kept him from work, and affected his attitude satisfied *Pickering* test to justify firing him).

Third, there is no evidence that filing the lawsuit in May 2003 caused or motivated his demotion in September 2004 or his "constructive termination" in November 2004. A gap of 15 months or more is insufficient to permit an inference of causation or motivation. *O'Connor,* 985 F.2d at 1370 (nine month gap between plaintiff's First Amendment suit and firing severely undercut any inference); *Horwitz,* 260 F.3d at 619 (18 months too long).

Moreover, the cause of his demotion is plain: Munoz gave an unauthorized written reprimand to a subordinate due to personal animosity. The County's Manual gave authority to issue a written reprimand only to Mr. Yzaguirre. Exh. 7. Though Munoz's job description allowed him to "initiate" discipline, his letter was the end of the process, not its beginning. Exh. 1, pp. 216(l.3-6), 218(l.17)-219(l.8). Munoz understood that written reprimands threatened careers and therefore were serious matters, particularly if they threatened firing. Exh. 1, pp. 217(l.16)-218(l3). Nonetheless, he did not seek Mr. Yzaguirre's consent and he sent it to office to be put in her file. Mr. Yzaguirre was not required to tolerate usurping his authority to ruin a branch manager's career and making improper threats of firing.

Mr. Yzaguirre's evenhanded treatment was proven by his offer to submit the matter

to the Grievance Committee and to abide by its decision, an offer that the County Manual did not require. Munoz concedes that he submitted everything he thought appropriate to the Committee and the hearing officials had no axe to grind against him. Exh. 1, pp. 221(l.3-222)-222(l.14).

### D.    Qualified Immunity.

Defendant Yzaguirre is entitled to qualified immunity because either (1) Munoz's alleged statements are not "clearly" on matters of public concern, and (2) his behavior was objectively reasonable. First, the statements are not clearly on matters of public concerns.

Second, he had an objectively reasonable basis for every alleged adverse employment action. Munoz concedes he was the logical person to go to the Harlingen Branch office. Once he was there, he was ineligible to be ATF Project Coordinator under its job description (which he wrote) and thus not entitled to the stipend. The demotion was objectively reasonable. In violation of the County Personnel Manual, Munoz reprimanded a branch manager and threatened to fire her without Defendant Yzaguirre's approval. In fact, an independent Grievance Committee reviewed and approved the demotion.

### V.  CONCLUSION

The Court should grant summary judgment to dismiss Munoz's First Amendment claims based on denial of his rights to engage in speech activities. Mr. Munoz has been given an opportunity to substantiate his bare allegations of a constitutional free speech claim at the time he was deposed. He has utterly failed to do so.

Respectfully submitted,


By  /s/ Bruce Hodge
        **Bruce Hodge**
        State Bar No. 09751700
        Fed. ID No. 4003
        **Richard O. Burst**
        State Bar No. 00785586
        Fed. ID No. 15515
        Cameron County Attorney's Office
        964 E. Harrison
        Brownsville TX 78520
        Telephone: (956) 550-1345
        Facsimile: (956) 550-1348


        **Charles Willette**
        State Bar No. 21509700
        Fed. ID No. 1937
        **WILLETTE & GUERRA, L.L.P.**
        1534 E. 6th Str., Suite 200
        Brownsville, TX 78520
        Telephone: (956) 541-1846
        Facsimile: (956) 371-1428


Attorneys for *Defendant* CAMERON COUNTY



By  /s/ Roger W. Hughes
        **Roger W. Hughes**
        State Bar No. 10229500
        Federal ID No. 5950
        **Craig H. Vittitoe**
        State Bar No. 20593900
        Federal ID NO. 18756

22

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile:  (956) 428-2954

Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the March 1, 2006.

Ms. Gay E. Gilson                                   *CM/RRR 7005 1160 0000 5657 5967*
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Mr. David Lee McGee                                 *Via Ordinary Mail*
**LAW OFFICES OF DAVID LEE MCGEE, P.C.**
701 Park Avenue
Corpus Christi, TX 78401

Mr. Charles Willette                                *Via Ordinary Mail*
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

Mr. Bruce Hodge                                     *Via Ordinary Mail*
Mr. Richard O. Burst
**CAMERON COUNTY ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520

/s/ *Roger W. Hughes*
Roger W. Hughes