IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| VICENTA CANTU, et al. | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. B-03-096 |
| | : | |
| CAMERON COUNTY, et al. | : | |
| | : | |
| Defendants | | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF WEAVER'S FIRST AMENDMENT SPEECH CLAIMS**

Charles Willette
**WILLETTE & GUERRA, L.L.P.**
1534 East 6th Street, Suite 200
Brownsville, Texas 78520
Phone: 956/541-1846
Fax: 956/541-1893

Richard Burst
Bruce Hodge
**CAMERON COUNTY
 ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520
Phone: 956/550-1345
Fax: 956/550-1348

Attorneys for *Defendant* CAMERON
COUNTY

Craig H. Vittitoe
Roger W. Hughes
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Phone: 956/428-7495
Fax:  956/428-2954

Attorneys for *Defendant* TONY
YZAGUIRRE, ASSESSOR-COLLECTOR
OF CAMERON COUNTY AND DIRECTOR OF
 CAMERON COUNTY AUTOMOBILE CRIMES
ENFORCEMENT TASK FORCE IN HIS
INDIVIDUAL CAPACITY

# TABLE OF CONTENTS

Page:

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I. NATURE OF THE CASES STATUS OF PROCEEDING . . . . . . . . . . . . . . . . . . . . . 1

II. ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT . . . . . . . . . . . 1

III. Summary Judgment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Weaver Did Not "Question" Why Titles Were Left
           at the Administrative Office. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Weaver's Statement about Estella Guerra Was to Advise
           Defendant Yzaguirre About the Reason Ms. Guerra
           Wanted to Talk to Him. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    Weaver's Statement to Sheriff's Deputy Rodriguez. . . . . . . . . . . . . . . . . . 4

      D.    Weaver Fired When Money In Office Fund Under Her
           Control was Found Missing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V. Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI. Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           1.    Standard for granting summary judgment. . . . . . . . . . . . . . . . . . . 6

           2.    Standards for Defendant Yzaguirre's qualified immunity. . . . . . . 8

           3.    Plaintiff must show a final policy maker for the County
               is responsible for the retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.    Elements for a First Amendment Speech Retaliation Claim. . . . . . . . . . 10

      C.    Weaver's Alleged Speech Activities Do Not Meet Standards

for Retaliation Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    1.    Statements about Estella Guerra. . . . . . . . . . . . . . . . . . . . . . . . . . 13

    2.    Questions about office practices between
         October 2001 and May 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    3.    Statement to Sheriff's Deputy Rodriguez in August 2002. . . . . . 14

  D.    Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

Page:

Cites:

*Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021
(S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Alexander v. Eeds,* 392 F.3d 138 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Beattie v. Madison County School Dist.,*
254 F.3d 595 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Bradshaw v. Pittsburg I.S.D.,* 207 F.3d 814
(5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814
(5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000),
*cert. denied*, 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Celotex Corp. v. Catrell,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664
(5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12, 15

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Finch v. Fort Bend I.S.D.*, 333 F.3d 555
(5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Flores v. Cameron County*, 92 F3d 258 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Gillum v. City of Kerrville,* 3 F.3d 117 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gutierrez v. City of San Antonio*, 139 F.3d 441
    (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hernandez v. Duncanville School Dist.,*
    2005 WL 3293995 (N.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hitt v. Connell,* 301 F.3d 240 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Horwitz v. Bd. of Educ. Of Avoca School Dist.,*
    260 F.3d 602 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Kaiser v. Garrett*, 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kennedy v. Tangipahoa Parish Library Bd. of Control,*
    224 F.3d 359 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Mahaffey v. Winston County Sheriffs Dep't,*
    96 Fed. Appx. 191 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
    475 U.S. 560 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Mayberry v. Vought Aircraft Co.,*
    55 F.3d 1086 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*McClendon v. City of Columbia,* 305 F.3d 314
    (5th Cir. 2002)(en banc), *cert. denied,*
    123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Monell v. Department of Social Services*,
    436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Noyola v. Texas Dept. of Human Resources*,
    846 F.2d 1021 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001),
    *cert. denied*, 534 U.S. 820 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Serna v. City of San Antonio*, 244 F.3d 479 (5th Cir. 2001),

*cert. denied*, 534 U.S. 951 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Slaughter v. Allstate Ins. Co.*, 803 F.2d 857
    (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Teague v. City of Flower Mound, Texas,*
    179 F.3d 377, (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Thompson v. City of Aransas Pass,* 2005 WL 1503543
    (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*Thompson v. Upshur County,* 245 F.3d 447 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . 8


Federal Rules of Civil Procedure:
Rule 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6


Federal Statues:
42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW **Defendants Cameron County** and **Tony Yzaguirre, Jr.**, and file Defendants' Motion for Summary Judgment on Plaintiff Weaver's First Amendment Speech Claims, and would respectfully show the Court as follows:

## I. NATURE OF THE CASES STATUS OF PROCEEDING

Plaintiff Ruth Weaver sued Defendants under 42 U.S.C. § 1983 for depriving her of rights under the First Amendment, U.S. Constitution; her claims are for retaliation for exercise of freedom of speech and freedom of "association." Dkt #58.

Defendants move for summary judgment that Plaintiff Weaver take nothing on her retaliation claims for exercising speech protected by the First Amendment.

## II. ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT

1.  Whether Plaintiff Weaver engaged in speech protected by the First Amendment. There is no evidence that Plaintiff Weaver's alleged speech activities were "speech" on a matter of public concern.

2.  Whether any such speech was a cause of or motivating factor for any adverse employment action if neither the County nor Mr. Yzaguirre was aware of the speech or expressive activity. There is no evidence that Mr. Yzaguirre or a final policymaker for the County knew or was aware of any speech protected by the First Amendment. The evidence shows that some alleged speech occurred so long before the alleged speech activity that it could not be the cause or motivating factor for the alleged adverse employment actions.

3.  Whether Yzaguirre is entitled to qualified immunity against the First Amendment

1

claims for retaliation for the exercise of protected speech.

### III.  Summary Judgment Evidence

Defendants submit the attached exhibits as summary judgment evidence:

| Exh. | Description |
|------|-------------|
| 1 | Deposition excerpts of Plaintiff Ruth Weaver |
| 2 | Weaver's written statement to Cameron County Sheriff's Deputy Rodriguez, dated August 2, 2002. |
| 3 | Statements of Anita Llorente, Vickie Saldana, Linda Vallejo, and Mary Ramos. |
| 4. | Declaration of Roger W. Hughes |

### IV.  Factual Background

Plaintiff alleges that (1) in October 2001 she told Defendant Yzaguirre that word was on the street that Estella Guerra could get him to "fix" titles, (2) between October 2001 and May 2002 she questioned Defendant Yzaguirre about why title transfer applications were being left at the administrative office, and (3) in August 2002 she gave a statement to the Cameron County Sheriff Department.  2nd Am. Compl. ¶47, 50; Supp. Rule 7a Reply, ¶8; Dkt #41, 58.

**A.    Weaver Did Not "Question" Why Titles Were Left at the Administrative Office.**

In 2001, Weaver was Defendant Yzaguirre's executive secretary.  Exh. 1, p. 21(1.2-11).  She worked in administrative office which was across the hall from the motor vehicle division.  Exh. 1, p. 20(l.10-16).  Vehicle registrations and title transfers were normally done across the hall at the motor vehicle division.  Exh. 1, p. 29(l.3-20).

2

In 2001, she noticed that Moises Torres, Aaron Torres, Enrique Barreda Sr., Enrique Barreda Jr., and Estella Guerra (a notary) began leaving title transfer applications at the main office with her or another secretary. Exh. 1, pp. 26(l.24)-27(l.13), 30(l.11)-32(l.22). She occasionally noticed that the forms had discrepancies, e.g., missing signatures, white-outs, obliterations, etc. Exh. 1, pp. 33(l.2-21), 37(l.5-19), 44(l.16)-45(l.11), 53(l.1-19). If she saw missing signatures, she returned them to the person who brought them; sometimes she told Defendant Yzaguirre that she had returned them for correction. Exh. 1, pp. 36(l.15)-37(l.4), 42(l.14-24), 54(l.19)-55(l.6). Otherwise, she or the other secretary would then take them across the hall to be processed. Exh. 1, pp. 35(l.2-8), 37(l.20-24), 42(l.14-20), 43(l.6-8), 44(l.15), 46(l.13-19).

Weaver never mentioned the discrepancies in the applications (strikeouts, whiteouts, etc.) to Defendant Yzaguirre or to the motor vehicle division supervisor. Exh. 1, pp. 47(l.3-14), 54(l.15)-55(l.14). Mr. Yzaguirre told her to take the titles across the hall and she just did as instructed. Exh. 1, pp. 27(l.6-17), 28(l.13-24), 55(l.15)-56(l.3).

**B.    Weaver's Statement about Estella Guerra Was to Advise Defendant Yzaguirre About the Reason Ms. Guerra Wanted to Talk to Him.**

In October 2001, on Estella Guerra's birthday, Ms. Guerra came to the office and advised Weaver that other notaries were spreading rumors that Defendant Yzaguirre did favors for her. Exh. 1, p. 61(l.4-23). Guerra was looking for him but he was not in. Exh. 1, p. 61(l.10-14).

Later when Defendant Yzaguirre arrived and asked for his messages, Weaver advised him Ms. Guerra came by and said the "word was out" that he was doing favors for Ms.

Guerra.  Exh. 1, p. 67(l.11-23).  It was part of her job to communicate messages left by a visitor and that is the only reason she said this to him.  Exh. 1, pp. 67(l.11)-69(l.18).

**C.    Weaver's Statement to Sheriff's Deputy Rodriguez.**

Weaver was put on vacation in May 2002.  2nd Am. Compl. ¶52; Dkt #58.  On August 2, 2002, she gave an affidavit to Cameron County Sheriff Deputy Rumaldo Rodriguez.[1]  Exh. 1, p. 195(l.9-19).

A few days before, attorney Everardo Garcia[2] called her to advise that the Sheriff was investigating Defendant Yzaguirre and wanted her statement.  Exh. 1, pp. 104(l.8)-105(l. 11).  She and attorney Garcia then went to meet with Dep. Rodriguez.  Exh. 1, pp. 106(l. 8-11).  Dep. Rodriguez advised there had been complaints about dropping off the vehicle transactions that the administrative office and he wanted to know about her involvement.  Exh. 1, pp. 109(l.10)-110(l.11), 111(l.4-24).  She wanted Dep. Rodriguez to know she had done nothing wrong.  Exh. 1, p. 112(l.14)-113(l.7).  She answered his questions, but avoided mentioning what she had heard from Plaintiffs Cantu or Munoz because, unless he asked directly, she did not wish to involve them.  Exh. 1, pp. 120(l.19)-126(l.19).

After she signed the statement, Dep. Rodriguez told her this was confidential.  Exh. 1, p. 130(l.10-16).  Weaver told Cantu, Munoz, and Alvarado she had given a statement, but no one else.  Exh. 1, pp. 126(l.24)-127(l.23), 131(l.2-8).

She had no evidence that Defendant Yzaguirre learned of the interview, what she told

---

[1]  This is the same Rumaldo Rodriguez later convicted in this court.  Exh. 1, p. 195(l.9-19); *see United States v. Cantu, et al.,* Case No. 05-458.

[2]  Attorney Garcia was retained by Plaintiff Cantu.

4

Dep. Rodriguez, or her statement before he terminated her in September 2002.  Exh. 1, pp.

131(l.9)-132(l.6).  Later, someone called her and said someone at the Sheriff's Department

did tell Defendant Yzaguirre.  Exh. 1, pp. 132(l.12)-133(l.25).  She did not recall who called

her or the person's sex; she considered it gossip and did not believe it.  Exh. 1, p. 133(l.5-

25).

**D.    Weaver Fired When Money In Office Fund Under Her Control was Found Missing**

Weaver was effectively in charge of an office "kitty."   Secretaries voluntarily

contributed money to a fund for birthdays; the money was kept in a lockbox in the break-

room and she kept the keys.  Exh. 1, pp. 71(l. 24)-74(l.24), 77(l.13)-79(l.22).  When she left

on vacation, the keys were in her office.  Exh. 1, p. 83(l.20-25).

While she was gone, it was discovered the lockbox was empty; co-workers gave

affidavits that it should have money and Weaver was the person with control over the funds.

Exh. 3.  Weaver denied responsibility, but had no idea why the co-workers would fabricate

statements against her.  Exh. 1, pp. 84(l.11)-86(l.11).

## V. Summary of the Argument

Weaver's First Amendment claim first fails because none of the alleged speech

activities involves speech on a matter of public concern.  The Court previously ruled that her

alleged statements about leaving paper work at the administrative office and about Ms.

Guerra were not speech on a matter of public concern.  The evidence in fact shows that (1)

she never "questioned" the practice at all, and (2) the statement about Ms. Guerra was simply

the contents of a message that had been left for Defendant Yzaguirre.

The statement to Sheriff's Deputy Rodriguez was not protected speech, given its content and context. The content itself does not expressly accuse Defendant Yzaguirre or anyone else of corruption, official misconduct, or a crime. Part of her motivation to speak was to clear herself of any suspicion.

Finally, there is no evidence that Defendant Yzaguirre learned of her interview with the Sheriff's deputy or the contents of her statement before she was fired. Therefore, the statement could not have motivated or caused her termination. Instead, Defendant Yzaguirre had an objective reason to terminate her; she had control of the office birthday/coffee and money was missing from it.

## VI.  Argument and Authorities

**A.    Standard of Review**

　　1.    <u>Standard for granting summary judgment</u>.

Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A party seeking summary judgment bears the initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell,* 477 U.S. 317, 322 (1986). Where a party will have the burden of proof on an essential element

of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.* at 322-323.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 560 (1986).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 323; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, Cameron County, Texas is entitled to summary judgment when the Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the Plaintiff's case, and on which [the Plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (the burden is not on the moving party to produce evidence showing the absence of genuine issue of material fact). *See Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence

is merely colorable, or is not significantly probative, summary judgment may be granted.").

2.    Standards for Defendant Yzaguirre's qualified immunity.

Qualified immunity protects a public official from claims under 42 USC § 1983 if a reasonably prudent official would not know the actions violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The public official will have qualified immunity if the conduct was objectively reasonable under the existing federal law. *McClendon v. City of Columbia,* 305 F.3d 314, 327 (5th Cir. 2002)(en banc), *cert. denied,* 123 S.Ct. 1335 (2003).

The trial judge must first determine whether the plaintiff has alleged a constitutional violation at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998). The court must then determine whether defendant's actions violated "clearly established" constitutional law at the time of the conduct and whether the defendant's actions were objectively reasonable. *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900. Acts are objectively reasonable unless all reasonable officials under the same circumstances would have know the conduct violation the Constitution. *Thompson v. Upshur County,* 245 F.3d 447, 457 (5th Cir. 2001).

For constitutional law to be "clearly established," plaintiff must prove more than the broad contours of established rights or broad legal truisms. *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995). The contours of the constitutional right must be defined well enough so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law. *McClendon,* 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir.

1998).  The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional.  *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515-16 (2002); *McClendon,* 305 F.3d at 329.

      3.     Plaintiff must show a final policy maker for the County is responsible for the <u>retaliation</u>.

Governmental liability does not arise vicariously through the acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).  Plaintiffs must show that a policy adopted by the governmental unit's policymaker with deliberate indifference to the likelihood of a constitutional violation.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578-80 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2002).

The County is not liable unless a "policymaker" for the County either (1) made or adopted a policy responsible for the injury, or (2) knew of a custom and ratified it. *Piotrowski*, 237 F.3d at 578-79.  A "policymaker" is the person for that governmental unit that has final policymaking authority.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  State law determines this issue.  *Flores v. Cameron County*, 92 F3d 258, 263 (5th Cir. 1996).

Ordinarily, the Commissioners Court is the final policymaker for a Texas county. *Flores*, 92 F3d at 264.

## B.    Elements for a First Amendment Speech Retaliation Claim.

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983.  The employee must (1) suffer an adverse employment action, (2) show that his/her speech in question was a matter of public concern, (3) show that his/her

interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001); *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000).

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee. *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000). However, speech may involve both matters of public concern and private matters. *Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 366 (5th Cir. 2000). Where the speech activity mixes both personal and public concerns, the court looks at both (1) content-form-context, and (2) the citizen-employee analysis. *Kennedy,* 224 F.3d at 365-66; *Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664, 670-73 (5th Cir. 2005). In "mixed speech" cases, the content-form-context tests weighs the most heavily. *Kennedy,* 224 F.3d at 366-67; *Chavez,* 135 Fed. Appx. at 671. The "citizen-employee" test focuses is on the employee's role and motives when speaking. *Id*. The issue is whether the plaintiff spoke primarily as a citizen rather than as an employee addressing matters only of personal concern. *Id.*; *Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021, *6 (S.D.Tex. 2005).

Determination of whether a statement is primarily a matter of public concern is a legal question to be determined by the court from the content, form and context of the statement. *Bradshaw v. Pittsburg I.S.D.,* 207 F.3d 814, 816-17 (5th Cir. 2000). A matter is not a public concern because it could be, in different circumstances, of general interest to the public. *Id.* The rationale behind the "public concern" requirement is to prevent public employees from

relying on the Constitution to redress their personal grievances. *Connick v. Myers*, 461 U.S. 138, 149 (1983). The First Amendment does not require a public office be operated as a round table for employee complaints over internal office affairs. *Connick*, 461 U.S. at 149.

Employee speech motivated primarily to defend one's own personal philosophies on office policy and management is insufficient. *See, e.g. Finch v. Fort Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988). This is particularly so when the employee is responding to criticism of their job performance. *Bradshaw*, 207 F.3d at 817. Although the choice to make an internal grievance privately rather than publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public. *Id.* The court must also consider whether the statements are addressed to a backdrop of a public debate on the issue in the employee's speech. *Kennedy*, 224 F.3d at 372.

Corruption, malfeasance, and criminal acts of public offices are usually matters of public concern. *Alexander v. Eeds*, 392 F.3d 138, 145 (5th Cir. 2004). However, complaints of official incompetence, carelessness, or violations of departmental policies are not usually matters of public concern. *Id.* at 145-46. Also, claims of illegal behavior may not be of public concern when the context shows they are simply a part of a larger dispute over job performance, "office politics," or an employment dispute. *Chavez*, 135 Fed. Appx. At 675-76; *Mahaffey v. Winston County Sheriffs Dep't*, 96 Fed. Appx. 191, 193 (5th Cir. 2004); *Alaniz*, 2005 WL 1651021 at *10.

The speech activity must precede and be the cause of the adverse employment action. *Finch*, 333 F.3d at 564; *Hernandez v. Duncanville School Dist.*, 2005 WL 3293995, *6-7

11

(N.D.Tex. 2005). The defendants must have actual knowledge of the speech activity prior to the adverse employment action. *Beattie v. Madison County School Dist.,* 254 F.3d 595, 603-4 (5th Cir. 2001); *Hitt v. Connell,* 301 F.3d 240, 246 (5th Cir. 2002). Weaver (McGinness) admits that she never went to the county administration with any suspicions or concerns about what was going on at Tax Office. Exh. 1, pp. 202(l.1)-204(l.3). There is no inference of causation if the protected activity occurred or began long before the adverse employment action. *See e.g., Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092-93 (5th Cir. 1995) (protected activity began ten years before suit and continued until suit filed); *Horwitz v. Bd. of Educ. Of Avoca School Dist.,* 260 F.3d 602, 619 (7th Cir. 2001) (span of 18 months between speech and termination no evidence speech motivated firing); *Thompson v. City of Aransas Pass,* 2005 WL 1503543, *6 (S.D.Tex. 2005) (two years between speech and the employment action was too long to permit inference).

## C. Weaver's Alleged Speech Activities Do Not Meet Standards for Retaliation Claims.

Weaver alleges three instances of speech that somehow led to her constructive termination in March 2003: (1) her comments to Defendant Yzaguirre concerning Estella Guerra in October 2001, (2) her questions between October 2001 and May 2002 about accepting title paper work at the main office, and (2) a statement to Cameron County Sheriff Deputy Rumaldo Rodriguez in August 2002.

### 1. Statements about Estella Guerra.

First, the Court previously ruled that Weaver's alleged statements about Ms. Guerra did not amount to speech on a matter of public concern. Dkt #48, p. 14-15. The evidence

fully supports that conclusion. Weaver admits that she merely repeated a message from Ms. Guerra as part of her secretarial duties. Therefore, the Court should dismiss any claims based on that allegation.

Second, Weaver alleged the statement occurred in October 2001. 2nd Am. Compl. ¶47-48; Dkt#58. She was terminated September 27, 2002. A gap of at least a year or more between the statements to Defendant Yzaguirre and the termination in 2003 prevents any inference of causation or motivation. *Mayberry* , 55 F.3d at 1092-93; *Horwitz,* 260 F.3d at 619 (7th Cir. 2001); *Thompson,* 2005 WL 1503543 at *6 .

2.    Questions about office practices between October 2001 and May 2002.

First, the Court previously ruled that Weaver's questions about accepting title transfer applications at the main office were not speech on a matter of public concern. Dkt #48, p. 14-15. The evidence fully supports that conclusion. Weaver never "questioned" anything. Therefore, the Court should dismiss any claims based on that allegation.

Second, Weaver alleged the statements began in October 2001. 2nd Am. Compl. ¶50; Dkt#58. She was terminated September 27, 2002. A gap of nearly a year or more between beginning the practice and her termination in 2003 prevents any inference of causation or motivation. *Mayberry* , 55 F.3d at 1092-93; *Horwitz,* 260 F.3d at 619 (7th Cir. 2001); *Thompson,* 2005 WL 1503543 at *6 .

3.    Statement to Sheriff's Deputy Rodriguez in August 2002.

First, the statement is not on a matter of public concern.[3]  Weaver's statement does

---

[3]  Previously, the Court deferred ruling on this issue, preferring to decide it by summary judgment. Dkt #65, pp. 7-8.

not accuse Defendant Yzaguirre of any crime or wrongdoing.  Exh. 2.  She did not say that any title application was fraudulent, any vehicle had been stolen, or that any of the fees were misapplied.  At best, the statement described the acceptance of title applications and the correct fees at Mr. Yzaguirre's office, rather than across the hall.  Exh. 2.

Weaver did not seek out Dep. Rodriguez; in fact, she was concerned for herself.  Exh. 1, pp. 112(l.14)-113(l.7).  Her intent was simply to saw what she saw and clear herself of any suspicion. Exh. 1, pp. 112(l.14)-113(l.7),120(l.19)-126(l.19).  The interview was confidential and she did not make public, except to Plaintiffs.  Exh. 1, pp. 126(l.24)-127(l.23), 130(l.10-16), 131(l.2-8).

Therefore, the content and context show the statement was not a matter of public concern.  *Compare Chavez,* 135 Fed. Appx. At 675-76 (flyer that charged school board with violating state law did not make it a matter of public concern); *Teague v. City of Flower Mound, Texas,* 179 F.3d 377, (5th Cir. 2004) (grievance was focused primarily on clearing plaintiff's name); *Gillum v. City of Kerrville,* 3 F.3d 117, 121 (5th Cir. 1993).

Second, Weaver has no evidence that Yzaguirre or a County policymaker had actual knowledge of her statement to Dep. Rodriguez before she was fired.  Exh. 1, pp. 131(l.9)-132(l.6)[4].   Therefore, there is no evidence that these remarks caused or motivated her termination.  *Beattie,* 254 F.3d at 603-4; *Hitt,* 301 F.3d at 246.

**D.    Qualified Immunity.**

---

[4]  Weaver would later claimed that a "friend" in the Sheriff's office later told her that someone with the Sheriff's department told Defendant Yzaguirre she had talked to Dep. Rodriguez.  Exh. 1, pp. 132(l.12)-132(l.25).  Weaver could not recall her "friend's" identity or sex and did not believe it. *Id.*.  In any case, Defendants object to this testimony as inadmissible hearsay.  FED. R. EVID. 801, 802.

Defendant Yzaguirre is entitled to qualified immunity because either (1) Weaver's alleged statements are not "clearly" on matters of public concern, and (2) his behavior was objectively reasonable.  First, the statements are not clearly on matters of public concerns. The Court determined the statement about Mrs. Guerra was insufficient.  Dkt #48, pp. 14-15. Weaver's statement to the sheriff's office did not clearly assert any official malfeasance, corruption, or crime.

Second, given statements showing his executive secretary had misappropriated money under her (Exh. 3), he had an objectively reasonable basis to terminate her.

## V.  CONCLUSION

The Court should grant summary judgment to dismiss Weaver's First Amendment claims based on denial of her rights to engage is speech activities.  Weaver was given ample opportunity to substantiate her broad allegations of free speech violations and did not do so.

Respectfully submitted,

By   /s/ Bruce Hodge
       **Bruce Hodge**
       State Bar No. 09751700
       Fed. ID No. 4003
       **Richard O. Burst**
       State Bar No. 00785586
       Fed. ID No. 15515
       Cameron County Attorney's Office
       964 E. Harrison
       Brownsville TX 78520
       Telephone: (956) 550-1345
       Facsimile: (956) 550-1348

       **Charles Willette**
       State Bar No. 21509700
       Fed. ID No. 1937
       **WILLETTE & GUERRA, L.L.P.**

15

       1534 E. 6th Str., Suite 200
       Brownsville, TX 78520
       Telephone: (956) 541-1846
       Facsimile: (956) 371-1428

     Attorneys for *Defendant* CAMERON COUNTY

     By /s/ *Roger W. Hughes*    
       **Roger W. Hughes**
       State Bar No. 10229500
       Federal ID No. 5950
       **Craig H. Vittitoe**
       State Bar No. 20593900
       Federal ID NO. 18756

       **ADAMS & GRAHAM, L.L.P.**
       P. O. Drawer 1429
       Harlingen, Texas 78551-1429
       Telephone: (956) 428-7495
       Facsimile:  (956) 428-2954

     Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

<u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the March 1, 2006.

Ms. Gay E. Gilson          *CM/RRR 7005 1160 0000 5657 5967*
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Mr. David Lee McGee         *Via Ordinary Mail*
**LAW OFFICES OF DAVID LEE MCGEE, P.C.**
701 Park Avenue
Corpus Christi, TX 78401

Mr. Charles Willette                                    *Via Ordinary Mail*
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

Mr. Bruce Hodge                                        *Via Ordinary Mail*
Mr. Richard O. Burst
**CAMERON COUNTY ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520


                          /s/  *Roger W. Hughes*
                        Roger W. Hughes


17