IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION


VICENTA CANTU, et al.               :
                                    :
        Plaintiffs                  :
                                    :
vs.                                 :          CIVIL ACTION NO. B-03-096
                                    :
CAMERON COUNTY, et al.              :
                                    :
        Defendants                  :


**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF CANTU'S FIRST AMENDMENT SPEECH CLAIMS**

Charles Willette
**WILLETTE & GUERRA, L.L.P.**
1534 East 6th Street, Suite 200
Brownsville, Texas 78520
Phone: 956/541-1846
Fax: 956/541-1893

Richard Burst
Bruce Hodge
**CAMERON COUNTY
  ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520
Phone: 956/550-1345
Fax: 956/550-1348

Attorneys for *Defendant* CAMERON
COUNTY

Craig H. Vittitoe
Roger W. Hughes
**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Phone: 956/428-7495
Fax:  956/428-2954

Attorneys for *Defendant* TONY
YZAGUIRRE, ASSESSOR-COLLECTOR
OF CAMERON COUNTY AND DIRECTOR OF
 CAMERON COUNTY AUTOMOBILE CRIMES
ENFORCEMENT TASK FORCE IN HIS
INDIVIDUAL CAPACITY

# TABLE OF CONTENTS

Page:

I.  NATURE OF THE CASES STATUS OF PROCEEDING . . . . . . . . . . . . . . . . . . . . . . 1

II.  ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT . . . . . . . . . . . . 1

III.  Summary Judgment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     In Response to Customer Complaints, Cantu Explains to
            Defendant Yzaguirre Why She Has Held Up Titles for Months. . . . . . . . . 2

      B.     Defendant Yzaguirre asks Cantu to Go Through Him
            when Submitting Routine Dealer Reports to TxDOT. . . . . . . . . . . . . . . . 5

V.  Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.  Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            1.    Standard for granting summary judgment. . . . . . . . . . . . . . . . . . . 6

            2.    Standards for Defendant Yzaguirre's qualified immunity. . . . . . . 8

            3.    Plaintiff must show a final policy maker for the County
                 is responsible for the retaliation. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      B.     Elements for a First Amendment Speech Retaliation Claim. . . . . . . . . . 10

      C.     Cantu's Speech Was Not on a Matter of Public Concern. . . . . . . . . . . . 13

            1.    Cantu's statements about why she is not processing titles. . . . . . 13

            2.    Faxing reports about dealers to TxDOT. . . . . . . . . . . . . . . . . . . . 14

      D.     Qualified Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

Page:

Cites:

*Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021
    (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Alexander v. Eeds,* 392 F.3d 138 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Anderson v. Creighton*, 483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Beattie v. Madison County School Dist.,* 254 F.3d 595
    (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814
    (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000),
    *cert. denied*, 531 U.S. 816 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Celotex Corp. v. Catrell,* 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664
    (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-13

*City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 10

*Compare Fiesel v. Cherry,* 294 F.3d 664 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . 13

*Connick v. Myers*, 461 U.S. 138 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Finch v. Fort Bend I.S.D.*, 333 F.3d 555 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 11, 12

*Flores v. Cameron County*, 92 F3d 258 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 10

*Gillum v. City of Kerrville*, 3 F.3d 117 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 13, 14

iv

*Gutierrez v. City of San Antonio*, 139 F.3d 441
(5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hernandez v. Duncanville School Dist.,*
2005 WL 3293995 (N.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hitt v. Connell,* 301 F.3d 240 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Horwitz v. Bd. of Educ. Of Avoca School Dist.,*
260 F.3d 602 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*Ibarra v. Houston I.S.D.*, 84 F. Supp.2d 825
(S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kaiser v. Garrett,* 67 F.3d 1166 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kennedy v. Tangipahoa Parish Library Bd. of Control,*
224 F.3d 359 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

*Mahaffey v. Winston County Sheriffs Dep't,*
96 Fed. Appx. 191 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
475 U.S. 560 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Mayberry v. Vought Aircraft Co.,*
55 F.3d 1086 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*McClendon v. City of Columbia,* 305 F.3d 314
(5th Cir. 2002)(en banc), *cert. denied,*
123 S.Ct. 1335 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Monell v. Department of Social Services*,
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Noyola v. Texas Dept. of Human Resources*,
846 F.2d 1021 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*O'Connor v. Chicago Transit Authority,*

985 F.2d 1362 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 15

*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001),
    *cert. denied*, 534 U.S. 820 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Serna v. City of San Antonio*, 244 F.3d 479 (5th Cir. 2001),
    *cert. denied*, 534 U.S. 951 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Siegert v. Gilley*, 500 U.S. 226 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Slaughter v. Allstate Ins. Co.*, 803 F.2d 857
    (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Teague v. City of Flower Mound, Texas*,
    179 F.3d 377 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thompson v. City of Aransas Pass*,
    2005 WL 1503543 (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Thompson v. Upshur County,* 245 F.3d 447
    (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


Texas Tax Code:
§152.092 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


Texas Administrative Code:
16 TEX. ADMIN. CODE §111.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


Texas Transportation Code:
§501.0234 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

§533.021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Federal Rules of Civil Procedure:

vi

Rule 56(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Statutes:

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8, 10

Treatises:

27 TEX. REGISTER 1476 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **Defendants Cameron County** and **Tony Yzaguirre, Jr.**, and file Defendants' Motion for Summary Judgment on Plaintiff Cantu's First Amendment Speech Claims, and would respectfully show the Court as follows:

## I.  NATURE OF THE CASES STATUS OF PROCEEDING

Plaintiff Ruth Cantu sued Defendants under 42 U.S.C. § 1983 for depriving her of rights under the First Amendment, U.S. Constitution; her claims are for retaliation for exercise of freedom of speech and freedom of "association." Dkt #58.

Defendants move for summary judgment that Plaintiff Cantu take nothing on her retaliation claims for exercising speech protected by the First Amendment.

## II.  ISSUES PRESENTED/GROUNDS FOR SUMMARY JUDGMENT

1.    Whether Plaintiff Cantu engaged in speech protected by the First Amendment. There is no evidence that Plaintiff Cantu's alleged speech activities were "speech" on a matter of public concern.

2.    Whether any such speech was a cause of or motivating factor for any adverse employment action if neither the County nor Mr. Yzaguirre was aware of the speech or expressive activity.  There is no evidence that Mr. Yzaguirre or a final policymaker for the County knew or was aware of any speech protected by the First Amendment. The evidence shows that some alleged speech occurred so long before the alleged speech activity that it could not be the cause or motivating factor for the alleged adverse employment actions.

3.    Whether Yzaguirre is entitled to qualified immunity against the First Amendment

1

claims for retaliation for the exercise of rights of protected speech.

### III.  Summary Judgment Evidence

Defendants submit the attached exhibits as summary judgment evidence:

| Exh. | Description |
|------|-------------|
| 1 | Deposition excerpts of Plaintiff Vicenta Cantu |
| 2 | Yzaguirre Memo, dated December 11, 2001 |
| 3 | Texas Dept. of Transportation Bulletins |
| 4 | Statement by Melquides Sosa |
| 5. | Deposition excerpts from Moises Torres |
| 6 | Statements from Marisol Sifuentes and Jose Mireles |
| 7. | Declaration of Roger Hughes |

### IV.  Factual Background

Cantu alleges essentially two instances of protected speech: (1) between January 2001 and May 2002, she advised Defendant Yzaguirre that various title transfer applications were "fraudulent" and it was illegal for him to process them, and (2) in July 2001 he told her to stop faxing complaints to the Texas Department of Transportation ("TxDOT").

**A.     In Response to Customer Complaints, Cantu Explains to Defendant Yzaguirre Why She Has Held Up Titles for Months.**

In 1999, Defendant Yzaguirre appointed Cantu to be the Auto Crimes Task Force ("ATF") title examiner.  Exh. 1, p. 45.  Cantu claimed that her responsibility was to examine every title transfer application submitted to the Cameron County Tax Assessor.  Exh. 1, pp. 47-52.  The Tax Assessor office simply receives the title applications, fees, and taxes and

2

then submits it to TxDOT; the final decision on whether to issue a new title rests with TxDOT.  Exh. 1, pp. 580-81, 590.   By December 2001, Defendant Yzaguirre concluded there was a serious problem over delays in processing title applications in his office.  Exh. 2.

Cantu's alleges approximately twenty-four (24) incidents of protected speech to Defendant Yzaguirre concerning why twenty-four applications had been held up.  Rule 7a Reply, ¶17; Dkt #23.  These incidents occurred on various dates between January 2001 and February 2002.  Rule 7a Reply, ¶17; Dkt #23; Exh. 1, pp. 230-275, 452-494, 515-532.  In each case she had held a title rather than process it because of discrepancies and Defendant Yzaguirre had received a complaint.  Exh. 1, p. 531.  None of these cases involved a stolen vehicle.  Exh. 1, pp. 455-56, 603, 621.  Cantu did not think it her job to actually obtain evidence that a vehicle was stolen.  Exh. 1, p. 519.  In many cases, she had held up titles between six to thirteen months without processing them.  Exh. 1, 457, 455, 458, 470, 476, 478-79, 479-80, 522, 533.

In these 24 instances, Cantu's most frequent reason to hold up the application were:

A. The application lack a bill of sale.  Exh. 1, pp. 234, 452, 457, 469, 479, 491, 520.  However, this was just an office policy, not state law.  Exh. 1, p. 236.

B. She believed the vehicle had been "sold for export."  Exh. 1, pp. 232, 236, 259, 293, 465, 466, 477, 488-89, 493.  Buyers do not pay sales tax if the vehicle is sold to be transported out of the state.  TEX. TAX CODE ANN. §152.092 (Vernon 2002).  The purpose of the "for export only" rule is to prevent "curbstoning."  27 TEX. REGISTER 1476 (March 7, 2002), adopting 16

TEX. ADMIN. CODE §111.18.  "Curbstoning" was a practice whereby the Mexican dealer, instead of exporting the vehicle, re-sells it in Texas through informal ("curbstone") sales to local consumers.  27 TEX. REGISTER 1476 (March 7, 2002).  However, a vehicle sold to a Mexican national may still be registered if the title is not stamped "for export only."  See Exh. 3; 16 TEX. ADMIN. CODE §111.18.  None of the titles were so stamped.  Exh. 1, p. 601-2.

C.    Cantu questioned signatures on the title assignment or title application.  Exh. 1, pp. 245-46, 255, 255, 472, 457, 459.  However, Cantu is not a handwriting expert.  Exh. 1, 249.

D.    The dealer had released the title transfer documents to the buyer instead of delivering them to the officer itself.  Exh. 1, pp. 480-81, 492, 493, 523, 604-5.

E.    The dealer's license had expired or the dealer had no license.  Exh. 1, pp. 478, 523, 426-27, 529.

In each of the twenty-four instances, Cantu simply told Defendant Yzaguirre that the title application did not comply with state law.  Exh. 1, pp. 473-74.  On only one or two instances did Cantu tell Yzaguirre that if he approved the title application he was violating state law.  Exh. 1, 259, 265, 475-76.  Cantu had no evidence that Defendant Yzaguirre perpetrated a fraud by approving any transfer.  Exh. 1, p. 583, 600, 645, 647.  In no case did Defendant Yzaguirre approve paperwork on a stolen vehicle.  Exh. 1, pp. 455-56, 621.  Cantu never saw Defendant Yzaguirre receive money for a paid favor.  Exh. 1, p. 645.

In December 1991, Defendant Yzaguirre made changes in the ATF to improve processing time.  Exh. 1, p. 403.  Titles were backed up.  Exh. 1, pp. 414; Exh. 2.  He

assigned the auto division supervisor, Lupita De Leon, to the new position of Chief Titles Examiner for the ATF; she would assist Cantu in processing title work.  Exh. 1, p. 205; Exh. 2.  They were to work as a team.  Exh. 1, p. 418-19.

Cantu was fired in May 2002 based on statements that (1) Cantu had solicited customers for money not to hold up their title applications, and (2) she had fondled a male co-worker in an embarrassing way.  Exhs. 4-6.

**B.    Defendant Yzaguirre asks Cantu to Go Through Him when Submitting Routine Dealer Reports to TxDOT**.

Cantu claims that, in seminars, TxDOT has asked title examiners to forward to its Austin office reports concerning misconduct by licensed auto dealers.  Exh. 1, pp. 482-86. This would be for (1) selling vehicles while a dealer license has expired[1], (2) releasing title transfer documents to the buyer to submit[2], or (3) failing to transfer title timely.  Exh. 1, pp. 482-86.  TxDOT investigator Rayna Squires had asked to fax her such reports about local dealers.  Exh. 1, pp. 393-95.

On July 30, 2001, Defendant Yzaguirre came to Cantu's office and told her not to fax these reports to TxDOT without first clearing it through him.  Exh. 1, p. 394.  Cantu could not recall how many reports she had faxed before this visit.  Exh. 1, p. 486.  After this, she cannot recall if TxDOT asked for any more reports.

---

[1]  Dealers are required to be licensed by TxDOT.  TEX. TRANSP. CODE ANN. §533.021 (Vernon 1999).

[2]  If the seller is a licensed motor vehicle dealer, it must submit the application for the buyer and remit any required sales tax.  TEX. TRANS. CODE ANN. §501.0234 (Vernon Supp. 2003).

## V.  Summary of the Argument

Cantu did not speak in order to reveal some official corruption or fraud.  In each case, she was responding to Defendant Yzaguirre's investigation of complaints about her delays in processing title applications.  The majority of the applications had been held up for six months to a year.  None of the titles involved stolen vehicles or bogus titles.  Most of the applications involve administrative matters that did not preclude processing; approving the transfer was not a crime or fraud.  In short, Cantu spoke primarily to justify complaints about her job performance.

Likewise, the faxing of complaints to TxDOT does not involve a complaint by Cantu.  She was simply faxing documents to TxDOT that it generally requested.  Defendant Yzaguirre had not prohibit her from sending in the reports; rather, he imposed a reasonable limitation that he first be consulted.

## VI.  Argument and Authorities

### A.    Standard of Review

#### 1.    Standard for granting summary judgment.

Rule 56(b), Federal Rules of Civil Procedure provides that a defending party may, at any time, move, with or without supporting affidavits for summary judgment in the party's favor.  Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A party seeking summary judgment bears the initial burden of informing the court of

the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrell,* 477 U.S. 317, 322 (1986). Where a party will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial. *Id.* at 322-323.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986). The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* Where the record as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 560 (1986).

The movant need not disprove the non-moving party's claims in order to secure a summary judgment. Summary judgment is proper whenever the movant demonstrates "an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 323; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986). Thus, Cameron County, Texas is entitled to summary judgment when the Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to the Plaintiff's case, and on which [the Plaintiff], will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (the burden is not on the moving party to

produce evidence showing the absence of genuine issue of material fact). *See Anderson*, 477 U.S. at 249-50 (holding that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.").

2.    Standards for Defendant Yzaguirre's qualified immunity.

Qualified immunity protects a public official from claims under 42 USC § 1983 if a reasonably prudent official would not know the actions violated clearly established constitutional law. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  The public official will have qualified immunity if the conduct was objectively reasonable under the existing federal law. *McClendon v. City of Columbia,* 305 F.3d 314, 327 (5th Cir. 2002)(en banc), *cert. denied,* 123 S.Ct. 1335 (2003).

The trial judge must first determine whether the plaintiff has alleged a constitutional violation at all. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Petta v. Rivera*, 143 F.3d 895, 899 (5th Cir. 1998).  The court must then determine whether defendant's actions violated "clearly established" constitutional law at the time of the conduct and whether the defendant's actions were objectively reasonable. *Siegert*, 500 U.S. at 231; *Petta*, 143 F.3d at 899-900.  Acts are objectively reasonable unless all reasonable officials under the same circumstances would have know the conduct violation the Constitution. *Thompson v. Upshur County,* 245 F.3d 447, 457 (5th Cir. 2001).

For constitutional law to be "clearly established," plaintiff must prove more than the broad contours of established rights or broad legal truisms. *Kaiser v. Garrett*, 67 F.3d 1166, 1170 (5th Cir. 1995).  The contours of the constitutional right must be defined well enough

so that the official would know, given the information known to him at the time of taking action, that his acts violated established constitutional rights in the light of pre-existing law. *McClendon,* 305 F.3d at 331; *Gutierrez v. City of San Antonio*, 139 F.3d 441, 445 (5th Cir. 1998). The standard is whether the state of the law at the time of conduct gave the public official fair notice that the alleged conduct was unconstitutional. *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2515-16 (2002); *McClendon,* 305 F.3d at 329.

> 3. Plaintiff must show a final policy maker for the County is responsible for the <u>retaliation</u>.

Governmental liability does not arise vicariously through the acts of its employees. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Plaintiffs must show that a policy adopted by the governmental unit's policymaker with deliberate indifference to the likelihood of a constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578-80 (5th Cir. 2001), *cert. denied*, 534 U.S. 820 (2002).

The County is not liable unless a "policymaker" for the County either (1) made or adopted a policy responsible for the injury, or (2) knew of a custom and ratified it. *Piotrowski*, 237 F.3d at 578-79. A "policymaker" is the person for that governmental unit that has final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). State law determines this issue. *Flores v. Cameron County*, 92 F3d 258, 263 (5th Cir. 1996).

Ordinarily, the Commissioners Court is the final policymaker for a Texas county. *Flores*, 92 F3d at 264.

**B.    Elements for a First Amendment Speech Retaliation Claim.**

A party must satisfy four elements to recover on a First Amendment retaliation claim under 42 U.S.C. § 1983.  The employee must (1) suffer an adverse employment action, (2) show that his/her speech in question was a matter of public concern, (3) show that his/her interest in commenting on matters of public concern outweighs the public employer's interest and efficiency, and (4) show the speech motivated the adverse employment action. *Serna v. City of San Antonio*, 244 F.3d 479, 482 (5th Cir. 2001), *cert. denied*, 534 U.S. 951 (2001); *Breaux v. City of Garland*, 205 F.3d 150, 156 (5th Cir. 2000), *cert. denied*, 531 U.S. 816 (2000).

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than an employee.  *Bradshaw v. Pittsburg I.S.D.*, 207 F.3d 814, 816 (5th Cir. 2000).  However, speech may involve both matters of public concern and private matters. *Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 366 (5th Cir. 2000). Where the speech activity mixes both personal and public concerns, the court looks  at both (1) content-form-context, and (2) the citizen-employee analysis.  *Kennedy,* 224 F.3d at 365-66; *Chavez v. Brownsville I.S.D.,* 135 Fed. Appx. 664, 670-73 (5th Cir. 2005).  In "mixed speech" cases, the content-form-context tests weighs the most heavily.  *Kennedy,* 224 F.3d at 366-67; *Chavez,* 135 Fed. Appx. at 671.  The "citizen-employee" test focuses is on the employee's role and motives when speaking.  *Id.*  The issue is whether the plaintiff spoke primarily as a citizen rather than as an employee addressing matters only of personal concern.  *Id.*; *Alaniz v. City of Sullivan, Texas,* 2005 WL 1651021, *6 (S.D.Tex. 2005).

Determination of whether a statement is primarily a matter of public concern is a legal

question to be determined by the court from the content, form and context of the statement. *Bradshaw,* 207 F.3d at 816-17.  A matter is not a public concern because it could be, in different circumstances, of general interest to the public.  *Id.*  The rationale behind the "public concern" requirement is to prevent public employees from relying on the Constitution to redress their personal grievances.  *Connick v. Myers*, 461 U.S. 138, 149 (1983).  The First Amendment does not require a public office be operated as a round table for employee complaints over internal office affairs.  *Connick*, 461 U.S. at 149.

Employee speech motivated primarily to defend one's own personal philosophies on office policy and management is insufficient.  *See, e.g. Finch v. Fort Bend I.S.D.*, 333 F.3d 555, 564 (5th Cir. 2003); *Noyola v. Texas Dept. of Human Resources*, 846 F.2d 1021, 1024 (5th Cir. 1988).  This is particularly so when the employee is responding to criticism of their job performance.  *Bradshaw,* 207 F.3d at 817. Although the choice to make an internal grievance privately rather than publicize one's complaints is not dispositive, it weighs in favor of finding the speech private rather than public.  *Id.*  The court must also consider whether the statements are addressed to a backdrop of a public debate on the issue in the employee's speech.  *Kennedy,* 224 F.3d at 372.

Corruption, malfeasance, and criminal acts of public offices are usually matters of public concern.  *Alexander v. Eeds,* 392 F.3d 138, 145 (5th Cir. 2004).  However, complaints of official incompetence, carelessness, or violations of departmental policies are not usually matters of public concern.  *Id.* at 145-46.  Also, claims of illegal behavior may not be of public concern when the context shows they are simply a part of a larger dispute over job performance, "office politics," or an employment dispute.  *Chavez,* 135 Fed. Appx. At 675-

76; *Mahaffey v. Winston County Sheriffs Dep't,* 96 Fed. Appx. 191, 193 (5th Cir. 2004); *Alaniz,* 2005 WL 1651021 at *10.

The speech activity must precede and be the cause of the adverse employment action. *Finch,* 333 F.3d at 564; *Hernandez v. Duncanville School Dist.,* 2005 WL 3293995, *6-7 (N.D.Tex. 2005). The defendants must have actual knowledge of the speech activity prior to the adverse employment action. *Beattie v. Madison County School Dist.,* 254 F.3d 595, 603-4 (5th Cir. 2001); *Hitt v. Connell,* 301 F.3d 240, 246 (5th Cir. 2002). There is no inference of causation if the protected activity occurred or began long before the adverse employment action. *See e.g., Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092-93 (5th Cir. 1995) (protected activity began ten years before suit and continued until suit filed); *Horwitz v. Bd. of Educ. Of Avoca School Dist.,* 260 F.3d 602, 619 (7th Cir. 2001) (span of 18 months between speech and termination no evidence speech motivated firing); *O'Connor v. Chicago Transit Authority,* 985 F.2d 1362, 1370 (7th Cir. 1993) (nine months too long to permit inference); *Thompson v. City of Aransas Pass,* 2005 WL 1503543, *6 (S.D.Tex. 2005) (two years between speech and the employment action was too long to permit inference).

## C.    Cantu's Speech Was Not on a Matter of Public Concern.

1.    <u>Cantu's statements about why she is not processing titles.</u>

First, this was not speech on a matter of public concern. The content and context show that, on each occasion, Cantu spoke as an employee answering to a superior about a matter of a customer complaint; she was only explaining why she held up title applications, not accusing Defendant Yzaguirre of anything criminal or corrupt. None of the vehicles

were stolen; none of the title applications were bogus.  The reasons she gave for holding

them up were mostly administrative matters that could be explained or waived.

The key is that in each case she was being asked to respond to a complaint as the

person responsible holding up a title transfer.  She asked to speak solely as the employee

whose conduct was at issue.  She spoke primarily to explain her conduct.  *Compare Fiesel*

*v. Cherry,* 294 F.3d 664, 668 (5th Cir. 2002)(during interview into inmate's claim that

guards were selling him drugs, plaintiff told co-worker guard that he did not need to speak

and could consult counsel; held, speech was not a matter of public concern);  *Teague v. City*

*of Flower Mound, Texas,* 179 F.3d 377, 383 (5th Cir. 2004) (officers filed grievance

claiming the police chief was covering up another officer's perjury; grievance letter and

related speech held to be primarily a matter of private concern); *Gillum v. City of Kerrville*,

3 F.3d 117, 121 (5th Cir. 1993); *Chavez,* 135 Fed. Appx. at 675-76 (flyer that charged school

board with violating state law did not make it a matter of public concern).  Therefore, the

content and context show the statement was not a matter of public concern.

Second, Cantu claims she began the protected speech in January 2001, seventeen

months before she was fired.[3]  There is no inference of causation or motivation when the

protected conduct begins so long before the employment action.  *Mayberry ,* 55 F.3d at

1092-93. *See also Horwitz,* 260 F.3d at 619 (7th Cir. 2001); *O'Connor,* 985 F.2d at 1370.

2.    Faxing reports about dealers to TxDOT.

First, the speech was not on a matter of public concern.  Cantu was performing the

---

[3] Cantu was not "demoted" in December 2001.  She simply was not promoted to the new
position of chief title examiner for the ATF. Exh. 1, pp. 403, 418-19; Exh. 2.  Therefore she did not
suffer any alleged adverse employment action until May 2002.

routine function of advising TxDOT of dealers who failed to submit title applications themselves and gave them to the buyer. The forms were not Cantu's complaints or even complaints that Defendant Yzaguirre did anything corrupt, fraudulent, or criminal. The content and context show she acted as an employee making a routine communication to another agency, not as a citizen reporting corruption.

Moreover, the limitation that Cantu not fax complaints without Yzaguirre's approval is a reasonable limitation. *Compare Gillum,* 3 F.3d at 121 (telling police officer to cease his investigation and turn it over to IAD did not violate First Amendment); *Ibarra v. Houston I.S.D.*, 84 F. Supp.2d 825, 837 (S.D. Tex. 1999) (limitation placed on school superintendent to avoid discussing school related issues with local politicians without the presence of school's representative did not violate First Amendment right). Here, the requirement was entirely reasonable so that Yzaguirre (as a local elected official) could coordinate and centralize communications with a state agency.

Second, a gap of 10 months between the date of the speech and the her termination prevents any inference of causation or motivation. *Horwitz,* 260 F.3d at 619 (7th Cir. 2001); *O'Connor*, 985 F.2d at 1370.

**D.    Qualified Immunity.**

Defendant Yzaguirre is entitled to qualified immunity because either (1) Cantu's alleged statements are not "clearly" on matters of public concern, and (2) his behavior was objectively reasonable. First, the statements are not clearly on matters of public concerns.

Second, Defendant Yzaguirre had an objectively reasonable basis for terminating Cantu. He had statements that Cantu had solicited money to process the titles she was

holding up.  Exh. 4, 5.  He also had affidavits that she had "fondled" a male co-worker to his embarrassment and that of a witness.  Exh. 6.

## V.  CONCLUSION

The Court should grant summary judgment to dismiss Cantu's First Amendment claims based on denial of her rights to engage in speech activities.

Respectfully submitted,

By  /s/ Bruce Hodge

**Bruce Hodge**
State Bar No. 09751700
Fed. ID No. 4003
**Richard O. Burst**
State Bar No. 00785586
Fed. ID No. 15515
Cameron County Attorney's Office
964 E. Harrison
Brownsville TX 78520
Telephone: (956) 550-1345
Facsimile: (956) 550-1348

**Charles Willette**
State Bar No. 21509700
Fed. ID No. 1937
**WILLETTE & GUERRA, L.L.P.**
1534 E. 6th Str., Suite 200
Brownsville, TX 78520
Telephone: (956) 541-1846
Facsimile: (956) 371-1428
Attorneys for *Defendant* CAMERON COUNTY

By  /s/ Roger W. Hughes

**Roger W. Hughes**
State Bar No. 10229500
Federal ID No. 5950
**Craig H. Vittitoe**
State Bar No. 20593900
Federal ID NO. 18756

15

**ADAMS & GRAHAM, L.L.P.**
P. O. Drawer 1429
Harlingen, Texas 78551-1429
Telephone: (956) 428-7495
Facsimile: (956) 428-2954

Attorneys for *Defendant* TONY YZAGUIRRE, ASSESSOR-COLLECTOR OF CAMERON COUNTY AND DIRECTOR OF CAMERON COUNTY AUTOMOBILE CRIMES ENFORCEMENT TASK FORCE IN HIS INDIVIDUAL CAPACITY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of above and foregoing instrument was forwarded to the following counsel of record on this the March 1, 2006.

Ms. Gay E. Gilson                                    *CM/RRR 7005 1160 0000 5657 5967*
**LAW OFFICE OF GAY E. GILSON**
719 South Shoreline, Suite 301A
Corpus Christi, TX 78401

Mr. David Lee McGee                                    *Via Ordinary Mail*
**LAW OFFICES OF DAVID LEE MCGEE, P.C.**
701 Park Avenue
Corpus Christi, TX 78401

Mr. Charles Willette                                    *Via Ordinary Mail*
**WILLETTE & GUERRA, L.L.P.**
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78520

Mr. Bruce Hodge                                    *Via Ordinary Mail*
Mr. Richard O. Burst
**CAMERON COUNTY ATTORNEY'S OFFICE**
964 E. Harrison
Brownsville TX 78520

*/s/ Roger W. Hughes*
Roger W. Hughes

16